UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARET COWAN,
  as Administratrix of the
  Estate of Victoria Cooper,
          Plaintiff,

V.                                              :          CIVIL NO.: 3:00CV00052(RNC)
                                                           ALL CASES

MICHAEL BREEN,                                  :
          Defendant.


MARGARET COWAN,
  as Administratrix of the
  Estate of Victoria Cooper,
          Plaintiff,

V.                                              :          CIVIL NO.: 301CV00229 (RNC)

TOWN OF NORTH BRANFORD                          :          MAY 5, 2005
          Defendant.


**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' REQUEST FOR LEAVE TO AMEND
RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS
DATED APRIL 29, 2002**

On the eve of trial, defendants seek to amend responses that they filed three years ago to

plaintiff's request for admissions. Despite this timing, plaintiff does not object to the second of

defendants' proposed amendments. Defendants originally did not reply to request number 110

and seek permission to do so now. Although defendants should have raised the issue earlier, the

omission appears to have been unintentional and plaintiff *consents* to the proposed amendment of

the defendants' response to request 110.

1

But defendants do not acknowledge that their first proposed amendment[1] unnecessarily muddies an important admission and unfairly contradicts facts that have been established for years by both formal Rule 36 admissions and the report and sworn testimony of their own expert. At least equally inappropriately, the proposed amendment squarely contradicts defendant Breen's sworn testimony five years ago and the police report he submitted almost six years ago. As a result, the proposed amendment would 1) effectively withdraw other admissions without good cause; 2) impair the presentation of the merits by replacing a clear response suitable for presentation to the jury with a convoluted, confusing and one-sided one; and 3) further prejudice plaintiff both by changing important factual allegations when it is too late properly to investigate and prepare to meet them and by requiring her to present defendants' brand new version of the facts to the jury as a condition of introducing a critical admission.

## FACTS

There were only two people at the scene of the shooting in this case, and one of them is dead. Plaintiff's case is therefore built on the forensic evidence and defendants' admissions. These sources permit a remarkably detailed reconstruction of the shooting, one that is highly

---

[1]Request 24 asked defendants to admit "Breen was approximately 50 feel away from the Camaro when he fired his first shot".  Originally, defendants responded:

> "The defendants admit that Officer Breen was approximately 50 feet away from the Camaro when he began to pull the trigger on his gun that resulted in the firing of the first shot".

They now want to add the following material to their response:

> "However, because the Camaro was traveling toward him at 30 ft/sec. or more, by the time Breen steadied his aim while squeezing the trigger, followed by the firing pin cocking and then striking the bullet and the resultant ejection of the round, the Camaro was much closer to Breen, at a distance Breen estimates to be approximately 20-25 feet".

damaging to defendants. The proposed amendment is an effort to make Breen look less bad by changing and obscuring agreed-upon facts.

Breen's version of the facts in his police report and in his deposition, had been consistent. According to Breen, Vicki Cooper drove a 1985 Camaro directly at him, requiring him to shoot her to save his own life. He says that he shot once as she was heading directly toward him, then a second time as he dove out of the way of the oncoming car. But as luck or fate would have it, Breen's first bullet struck the hood of the car and left a groove about three inches long that exposes his story as false. Both defense and plaintiff's experts have confirmed, through independent testing replicating the first shot under controlled conditions, that the direction of the groove demonstrates that Breen's first shot came in at an angle – that is, Breen was not standing directly in front of the Camaro when he fired the first shot, but instead was off to the driver's side. Moreover, the size of this incoming angle can be calculated from the direction of the groove on the hood.[2]

This fact that Breen's first shot came in at a known angle makes Breen's distance from the Camaro at the time he fired the first shot critical. If he was close to the car, he would not be very far off to the side; the farther away he was, the farther off to the side and out of the car's path he would be – and the less danger he would be in.[3]

---

[2]Defendant's expert engineer, Charles Manning, calculated the incoming angle to be 13 degrees. Plaintiff's expert engineer Kent Schwendy did more exhaustive testing that showed the angle to be slightly greater, at least 15.5 degrees.

[3]Picture a large clock face painted on the road, with 50-foot hands set at 11:55 and the Camaro in the center, on its way from 6 to 12 at the time Breen fired the first shot. If Breen was standing at the tip of the minute hand, on the number 11, he was farther away from the path of the Camaro than if he was half way down the hand. Because of the physical scale of these events,

(continued...)

Thus the effect, and no doubt the intent, of the proposed amendment is to put Breen as close to the Camaro as possible at the time he fired the first shot, in order to make the danger to him seem as grave and imminent as possible and in particular to position him as little off to the side of the Camaro as possible. Having already admitted that Breen was approximately 50 feet away from the Camaro when he started to pull the trigger, defendants now want to say that it would have taken Breen a long time to pull the trigger – long enough for the Camaro to travel 25 to 30 feet (from approximately 50 feet to "a distance Breen estimates to be 20-25 feet," in the words of the proposed amendment).

Defendants do not acknowledge that their Rule 36 admissions already address the specific question of how far the Camaro traveled in the time it took to pull the trigger – and directly contradict the proposed amendment. In Request 162, plaintiff requested that defendants admit that: "Breen aimed his second shot at Vicki Cooper through the driver's side window of the Camaro." Defendants' response admitted that the Camaro moved 9-11 feet during the time it took Breen to pull the trigger. They said:

> **RESPONSE**: The defendants admit that Breen aimed his second shot at the driver of the Camaro at a time when he was in front of but very close to the Camaro. Because the Camaro was traveling between 36-44 feet per second at the time, *it moved forward an additional 9-11 feet during the time it took to squeeze the trigger, activate the firing pin of his gun and discharge the bullet.*

(Emphasis added)

Defendants made this admission not once but three times, in response to three separate

---

[3](...continued)
even 11:55 or later puts Breen well out of danger at any distance close to 50 feet. At the new 20-25 foot distance Breen would still have a lot of explaining to do, but from the defense's point of view, the closer he is, the better the chance of saying he was in danger – and of presenting his original coming-right-at-me story as honest error

requests.[4] Their admission of a 9-11 foot travel distance, which is of course "conclusively

established" by Rule 36, squarely contradicts Breen's new estimate of 25 to 30 feet. And the 25

to 30 foot estimate is indeed new: it comes out of nowhere, nearly six years after the shooting

and after more than five years of litigation including fact and expert discovery, an appeal, and

several tentative trial dates.

Moreover, the admitted 9-11 foot figure, unlike the new number, is based on expert

testimony – *defense expert's* testimony. Both parties have relied on the defense expert's

testimony for more than three years.[5] In 2001, defendants disclosed Dr. Charles Manning, an

engineer, as an expert and submitted his affidavit to both this Court and the Second Circuit in

connection with their motion for summary judgment.[6] Dr. Manning's subsequent report, dated

January 2002, details why defendants' three admissions are reasonable and their new story is not.

His report says:

> The Glock 22 handgun has a trigger pull of 5.5 pounds, and a trigger travel for
> discharge of one half inch. Thus, the gun does not discharge at the instant a force is
> applied to the trigger, but is delayed by the time for trigger pull travel and release of the

---

[4] Request 165 was: "Breen did not aim his second shot through the front windshield."
Request 166 was: "Breen aimed his second shot through the driver's side window."

[5] Defendants say that their proposed amendment is prompted by "the expert discovery in
this case," Memorandum of Law in Support of Defendants' Request for Leave to Amend
Responses to Plaintiff's First Request for Admissions Dated April 29, 2002 ("Def. Mem.") 2 and
say vaguely that "the concept of distance change during the process of firing a gun was discussed
during discovery." But they fail to mention that it was defendants' own expert who addressed
this issue and provided just the same information that defendants formally admitted and now
want to disavow.

[6] In the motion for summary judgment, defendants urged the Court to accept the scientific
merit of Dr. Manning's testimony but did not submit his affidavit for the precise point at issue in
this motion.

firing pin.  It is expected that Officer Breen's second shot would be delayed by about one-quarter of a second, the time required to fully apply the 5.5 pounds of force and move the trigger one-half inch for the second shot.  During that time, the Camaro, moving at 36 to 44 feet each second, moved forward an additional 9 to 11 feet....

Report of Charles Manning, Ph.D, January 9, 2002 (attached to this Memorandum as Tab1.) Dr.

Manning testified to the same facts at his deposition in March 2002:

> Q.      ... [B]etween when he started to squeeze the trigger until when it discharged, how far did the vehicle travel, to a reasonable degree of scientific certainty?
>
> A.      Between ten and eleven feet.

Deposition of Charles Manning, Ph.D.,March 7, 2002, at 114 (attached as Tab 4.)

And not only does defendants' proposed amendment contradict defendants' conclusive admissions and uncontested expert opinion, it also contradicts Breen's sworn deposition testimony and his police report. In his July 27, 1999 police report[7], Breen said: "With the car aiming directly at me and its headlights shining on me ... I fired once at the left front windshield of the car when it was approximately 50 feet from me...." Police Report of Michael Breen, July 27, 1999, 8-9 (attached as Tab 3.)

Under oath at his deposition, Breen repeatedly testified to the same thing:

> Q.      ....Where were you in relation to the car at the time you fired the first shot?
>
> A.      I was in front of it.
>
> Q.      Okay.  How far in front of it?
>
> A.      I approximated in my report about 50 feet.

Deposition of Michael Breen, July 12, 2000, at 79 (attached as Tab 5)

---

[7]His police report was prepared with care. He submitted it two weeks after the shooting, and after he had retained and consulted with counsel. It is a ten-page typewritten document.

Later he said:

> Q.    Okay.  And how long after you yelled "Stop, police" did you wait before you
>       fired?
>
> A.    It was -- this occurred within seconds.  It's very hard to put a time frame on
>       exactly how long it took.  And I indicate in my report that the vehicle was
>       approximately 50 feet from me when I shot my first round.
>
> Q.    Is that your best estimate?
>
> A.    Yes, sir.

*Id.* at 164.  And he said the same thing yet again:

> Q.    You gave an estimate of about 50 feet between you and the vehicle at the time you
>       fired the first shot, Officer?
>
> A.    Yes, sir.
>
> Q.    Is that a reliable estimate?
>
> A.    I believe so.
>
> Q.    You're confident that it's a reasonably accurate estimate?
>
> A.    It's an approximate distance.
>
> Q.    But you think it's a good approximation based on your observation, experience,
>       training, and so on?
>
> A.    Yes, sir.

 *Id.* at 194-95.

There has been not a word from defendants since this case was filed more than five years

ago and gone to the Second Circuit and back on its way to the forthcoming trial that Breen ever

had any estimate even close to the 20-25 foot figure defendants now want to insert into the

record.[8]  Simply put, defendants want to change their story.

Defendants' interest in changing their story, and the harm the proposed amendment would do to plaintiff's case, are best understood in the context of the detailed reconstruction of events that plaintiff plans to present at trial. The defendants' admissions and the forensic evidence permit a reliable and detailed reconstruction of events that is highly damaging to the defense. In fact, the detail is sufficient to lay the foundation for a computerized animation of the events, and plaintiff prepared such an animation and produced it to defendants in late 2003. A copy of the animation is submitted with this Memorandum for the Court's information.

The animation used the findings and conclusions of Dr. Manning, defendants' expert, for some of its data.[9]  Defendants' response to this reconstruction and animation was to announce

_____

[8]Comparing Breen's testimony with the original admission shows that even three years ago defendants were trying to shorten the distance. Breen's sworn testimony is that he was approximately 50 feet from the Camaro when he *fired*. The original response said that he was approximately 50 feet "when he began to pull the trigger that *resulted in the firing* of the first shot." As the other admissions quoted above show, that change shaved 9-11 feet off the distance – but it provided an agreed figure that could form the basis of a reconstruction. Now defendants tell the Court that Breen's estimate of when he actually fired was only "approximately 20-25 feet," much less than the figure the previous admissions would yield and half or less of Breen's original estimate.

[9]The animation includes information from other sources, including principally a survey of the roadway that plaintiff commissioned; a determination of the location of the Camaro at the beginning of the sequence of events made by Dr. Henry Lee based on items found in the roadway; a determination of the location of the Camaro at the moment of the second shot based on the location of broken glass and bullet casings in the roadway shot, also made by Dr. Lee; and Breen's approximate location at the moment of the second shot, determined by Dr. Lee from a reconstruction of the shattered window and the presence of gunshot residue on the window glass. The contribution of all these sources permits a determination of the sequence of events to the level of detail shown in the animation. (The animation contains three views of the same scene, in the following sequence: first, a high overhead view, showing the entire scene; next, a tighter overhead view, for better visibility of the shooting; and third, a view from over the officer's shoulder, which gives the best view of his movements. Watching the key parts of the animation
(continued...)

recently that they were withdrawing Dr. Manning as an expert – and would object to the

introduction of any of his opinions by plaintiff, on *Daubert* grounds.  This after they presented

his opinions to Judge Smith, Judge Squatrito and the Second Circuit in connection with their

motion for summary judgment. However, using a belt-and-suspenders approach, plaintiff had a

set of backup information available to confirm the essentials of Dr. Manning's opinions.  The

admissions that are the subject of this motion are a key component of that backup information.[10]

Now – within days after plaintiff's counsel explained to defense counsel how plaintiff would use

the admissions to replace the data from defendants' expert –  defendants have responded with

this motion, which would undermine plaintiff's backup data and cloud, or at least attempt to

cloud, important information that is confirmed by three separate defense sources - admissions,

the defense expert, and defendant Breen's sworn testimony.


## ARGUMENT

The proposed amendment meets none of the criteria under Rule 36 and Rule 26(e)(2) for

authorizing an amendment. It is unjustified and unnecessary; it will defeat the purpose of Rule

36; it will interfere with the presentation of the merits of this action; and it will prejudice

---

[9](...continued)
in slow motion can be helpful.)

[10]Plaintiffs also retained an expert to do an independent replication of Dr. Manning's
testing to measure the angle of the first bullet. (In exchange for plaintiff's agreement not to object
to the late disclosure of a defense expert, defendants have agreed not to object to the necessary
late disclosure of this expert in response to the withdrawal of Dr. Manning.) The data from the
expert and the information in the admissions are not exactly the same as the data used to make
the animation submitted with this Memorandum, but the differences are small and the revised
animation – which is now being prepared – will look very much like the one submitted with this
Memorandum.

plaintiff.

**1. The Proposed Amendment Is Not a Proper Response to a Request to Admit.**

It is fundamental under Rule 36 that "[q]ualified answers to ...  requests for admissions of

fact [must be] clear, specific and direct so as to meet the compliance requirements of Rule 36(a)

of the Federal Rules of Civil Procedure." *Havenfield Corp. v. H & R Block, Inc.*, 67 F.R.D. 93,

96 (D. Mo., 1973)**.**  Defendants' original response to the request was clear. Instead of simply

admitting, denying, or objecting, the original response identified just what defendants were

prepared to admit.  The proposed amendment, by contrast, is an argumentative narrative

exposition of defendants' new version of the facts that contradicts much of defendants' other

evidence. The proposed amendment obfuscates what had been clear. It therefore flunks the clarity

test.

> The proposed amendment also flunks Rule 36's necessity test:
>
> "Generally, qualification  is permitted if the statement, although containing some
> truth, ... standing alone out of context of the whole truth ... convey[s] unwarranted
> unfair references." *Diederich* [*v. Department of Army*, 132 F.R.D. 614 (S.D.N.Y.,
> 1990)]at 619. These qualifications are to provide clarity and lucidity to the
> genuineness of the issue and not to obfuscate, frustrate, or compound the
> references. Moore's Federal Practice P 36.10[6].

*Henry v. Champlain Enters*., 212 F.R.D. 73, 77-78 (N.D.N.Y., 2003). Defendants do not even

claim necessity: they say that their proposed amendment is offered in "an abundance of caution

..." Memorandum of Law in Support of Defendants' Request for Leave to Amend Responses to

Plaintiff's First Request for Admissions Dated April 29, 2002 ("Def. Mem.") 3.The proposed

amendment is not necessary to clarify anything; the original response is clear.

Nor is the proposed amendment necessary to protect defendants' rights. The original

admission does not restrict defendants' options concerning the issues addressed in the proposed

amendment, because the original admission simply does not address those issues. (However,

defendants are indeed constrained by their *other* admissions that do address the matters raised in

the proposed amendment.)

At bottom, the proposed amendment is an example of what Judge Smith was talking

about when he explained that:

> Though qualifications may be required where a request contains assertions that are only partially correct, a reviewing court should not permit a responding party to undermine the efficiency of the rule by crediting disingenuous, hair-splitting distinctions whose unarticulated goal is unfairly to burden an opposing party**.**

*Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn. 1988) (citations omitted).

Thus, defendants' proposed new response would have been improper no matter when

they submitted it. As we now show, it is particularly inappropriate because it comes so late.

### 2. The Proposed Amendment Would Not Assist the Presentation of the Merits and Would Prejudice Plaintiff.

Defendants  must meet a particularly stringent test because they seek last-minute

permission to amend a prior response. The Second Circuit rule is that defendants must satisfy both

parts of a two-part test in order even to qualify for exercise of the Court's discretion:

> Under Rule 36(b), the decision to excuse the defendant from its admissions is in the court's discretion. 'The court *may* permit withdrawal [of admissions] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.' Fed. R. Civ. P. 36(b) (emphasis added). Thus, the court has the power to make exceptions to the Rule only when (1) the presentation of the merits will be aided and (2) no prejudice to the party obtaining the admission will result. Because the language of the Rule is permissive, the court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule.  Vesting such power in the district court is essential for Rule 36 admissions

effectively to narrow issues and speed the resolution of claims.

*Donovan v. Carls Drug Co.*, 703 F.2d 650, 651-52 (2d Cir. 1983). The proposed amendment does

not satisfy either requirement.

Defendants have not pointed to any way in which the proposed amendment would assist

the presentation of the merits, and there is none.  The admission states an uncontested fact, which

will be helpful for the jury to hear.  Presentation of this uncontested fact will be clearer and more

straightforward if it is not mixed in with contested facts. Any rights defendants may have to

present the information in the proposed amendment notwithstanding their other admissions will

not be prejudiced. They would merely be required to present the information in the form of

evidence, just as with any other contested fact.

Allowing the amendment, on the other hand, would prejudice plaintiff. First, it would

confuse the jury about information that is uncontested by mixing it up with information that is

contested. This confusion would particularly prejudice plaintiff because the key to the

reconstruction and animation is that except for the engineering calculation of the angle of the first

bullet, it uses only facts that are either formally admitted, testified to by Breen, or determined by

Dr. Henry Lee.[11] Mixing contested facts (that contradict defendants' other admissions) in with

these uncontested when presenting them to the jury will undermine plaintiff's ability to present

her case in a coherent way. It will also give defendants a privileged position in presenting their

side of a factual dispute (which, to repeat, plaintiff doesn't think is a legitimate dispute in light of

the other admissions), by having their position read to the jury – probably by plaintiff's counsel –

---

[11]As noted above, the admissions and engineer's calculation of the bullet angle provide information that was previously provided by Dr. Manning, the defense expert whom defendants have now disavowed.

instead of presented in testimony as it ought to be.

The lateness of the proposed amendment would work special prejudice because plaintiff has been given no notice during the past five years that defendants' would make this new factual claim.  It would minimally require that plaintiff be permitted to redepose Breen on the substance of the new pleading in order to determine the basis for his new claim that the Camaro moved 25 to 30 feet while he was pulling the trigger.[12] It is far too late to start going down that road when the defendants' do not even claim that there are any significant considerations weighing in favor of allowing the amendment.

### 3.  The Proposed Amendment Is Not in Accordance with Rule 26(e)(2).

Defendants say that they make their request "in accordance with Fed. R. Civ. P. 26(e)(2)". Def. Mem. 3.  But the rule only applies "if the party [seeking to amend] learns that the response is in some material respect incomplete or incorrect...."  Fed. R. Civ. P. 26(e)(2). Defendants do not claim to have learned anything new since their original response.  Rule 26(e)(2) does not authorize the proposed amendment.

### CONCLUSION

The request for leave to amend the response to request to admit 24 should be denied.

Plaintiff consents to the request for leave to amend the response to request to admit 110.

---

[12]For example, if, as he admitted, the Camaro moved only 9-11 feet when he pulled the trigger the second time, does he claim that he pulled the trigger *slowly* while the Camaro was bearing down on him?  Why didn't he mention that to anyone during the past six years? And so on.

THE PLAINTIFF


B __/s/_____
David N. Rosen
400 Orange Street
New Haven, Connecticut 06511
(203) 787-3513
CT00196
E-mail: drosen@davidrosenlaw.com


CERTIFICATION


       I hereby certify that a copy of the foregoing Memorandum was sent first class mail, postage prepaid on May 5, 2005 to:


Thomas R. Gerarde, Esquire
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut  06114


    /s/_____
David N. Rosen