TAB 1

# Accident Reconstruction Analysis, Inc.

*INVESTIGATION INTO **BREEN SHOOTING***

*TO:*

***HOWD & LUDORF***
***65** Wethersfield **Avenue***
***Hartford, CT 06114-1190***
*Attention: Tom Gerarde*

*FROM:*

*ACCIDENT RECONSTRUCTION ANALYSIS, INC.*
*5801 Lease Lane*
*Raleigh, **North Carolina** 27617*

***Prepared By:** Charles R. **Manning, Jr., Ph.D., P.E.***
***January 9, 2002***



EXHIBIT

1

**PAGE 1**
**Breen Shooting**
**ARAI FILE #**

I am President of Accident Reconstruction Analysis, Inc., 5801 Lease Lane, Raleigh, NC 27617. My Curriculum Vitae is attached as Exhibit "A" and incorporated by reference.

To date I have reviewed numerous documents regarding the death of Victoria Cooper on July 13, 1999, including the following:

Connecticut State Police investigation documents

Connecticut State Police Reconstruction Report

Autopsy and toxicology reports

AUTOSTAT data for the 1985 Chevrolet Camaro IROC Z 2-Door Coupe

Engineer's Report of Michael Miller

Deposition testimony of Michael Breen and Michael Miller

I have also reviewed the results of field tests of spread patterns of shattered window glass, and . field tests of bullet entry and trajectory along a Camaro hood.

Based on my education, training and experience, and review and analysis in this matter, I express the following findings, conclusions and opinions:

1.  The pattern and extent of the pieces of window glass from the driver's side door of the Camaro were documented at the scene. A drawing that depicts the spread of the glass and measurements made at the scene show that the glass had come to rest in a fan shaped pattern 110 feet in length. The glass fragments along Route 80 were deposited diagonally across the road along the path of the Camaro. The speed of the car caused the glass to spread down Route 80, much like small stones being thrown from a bucket. The speed of the glass is initially the same as the speed of the car. This speed causes

the glass to slide down the roadway. This type of spread is often found to result from traffic accidents, and is used to determine the speed of a vehicle at the moment the glass is broken. Using this technique and the length and pattern of the spread glass, the speed of the Camaro is determined to be between 25 and 30 miles per hour.

2. The Camaro, when moving at 25 to 30 miles per hour, is moving forward at 36 to 44 feet per second. The time between the two shots of Officer Breen has been reported as one to two seconds. Thus, during that time, the Camaro moved forward by between 36 and 88 feet. This movement is consistent with the estimated distance between shots given by Officer Breen, who estimated 50 feet to the Camaro at the first shot, and very close to the front bumper when he attempted the second shot. At the time the trigger is squeezed for the second shot, Officer Breen is within  a few feet of the front of the Camaro.

3. The Glock 22 handgun has a trigger pull of 5.5 pounds, and a trigger travel for discharge of one-half inch. Thus, the gun does not discharge at the instant a force is applied to the trigger; but is delayed by the time for trigger pull travel and release of the firing pin. It is expected that Officer Breen's second shot would be delayed by about one-quarter of a second, the time required to fully apply the 5.5 pounds of force and move the trigger one-half inch for the second shot. During that time, the Camaro, moving at 36 to 44 feet each second, moved forward an additional 9 to 11 feet, placing Officer Breen in close proximity to the driver's door window at the time the gun discharged.

4.  Firing a handgun produces residue of the combustion products, and unburned primer or powder fragments. These fragments spread behind and around the bullet in a shape that is approximately conical. Because of their small size, they have a very low mass and they do not travel far beyond the muzzle of the gun. Residue patterns containing many particles can generally be detected at eight inches, but even single particles are seldom observed if the gun is fired at a distance greater than a few feet. Gunshot residue analysis of the glass fragments of the driver's door window of the Camaro

indicates the presence of lead, antimony, and barium. These are the major primer elements. These elements would be found scattered across the window glass fragments only if the gun were discharged in close proximity to the glass surface.

5. Two cartridge cases were found on the roadway at the beginning of the pattern of glass fragments. Both of the cartridge cases were located approximately ten feet from the side of the road, and less than six feet apart. The Glock 22 typically throws a cartridge case upward and outward to a distance of up to five feet. Although the cases do not indicate the exact location of the gun at the time of each firing, the proximity of the two cases indicates that the two shots were fired from within several feet of each other. This distance and location are consistent with the time between shots of one second. During the one to two second interval, Officer Breen could move only up to several feet in attempting to move out of the path of the oncoming Camaro.

6. The first shot fired by Officer Breen struck the hood of the Camaro at a shallow angle. The shallow angle is indicated by the deflection of the bullet, which created an impression approximately three inches long in the surface of the hood. The impression is not straight, but J-shaped. Using a rod placed in the groove with an attached light (a laser), the angle between the gun and the direction of travel of the Camaro was measured by state police investigators. Tests show that Officer Breen was at a significantly narrower angle to the oncoming car than that suggested by the state police investigation.

Respectfully Submitted,

Charles R. Manning, Jr., Ph.D., P.E.

TAB 2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARET COWAN,
  as Administratrix of the
  Estate of Victoria Cooper,
              Plaintiff,


V.                                              CIVIL NO.: 3:000V00052(RNC)
                                                ALL CASES

MICHAEL BREEN,
              Defendant.


MARGARET COWAN,
  as Administratrix of the
  Estate of Victoria Cooper,
              Plaintiff,


V.                                              CIVIL NO.: 301CV00229 (RNC)


TOWN OF NORTH BRANFORD                          MAY 5, 2005
              Defendant.

## <u>NOTICE OF MANUAL</u><u>FILING</u>

Please take notice that plaintiff has manually filed the Cooper Animation.

This thing had not been filed electronically because:

[ X ] the document (or thing) cannot be converted to an electronic format

[   ]    the electronic file size of the document exceeds 1.5 mb

[   ]    the document (or thing) is filed under seal pursuant to Local Rule of Civil

         Procedure 5(d) or Local Rule of Criminal Procedure 57(b) or is filed ex parte

         pursuant to court order, statute or regulation allowing ex parte submissions [e.g.

         Criminal Justice Act Vouchers submitted pursuant to 18 U.S.C. § 3006A]

1

[   ]   Plaintiff/Defendant is excused from electronically filing this document (or thing)

by court order.

The thing has been manually served on all parties.




Respectfully submitted,




___/s/▮▭▭▭▭▭▭▮
David N. Rosen
400 Orange Street
New Haven, CT 06511
Phone: (203) 787-3513
Fax: (203) 789-1605
E-mail: drosen@davidrosenlaw.com
CT00196

TAB 3

PLAINTIFF'S
EXHIBIT NO.
FOR IDENTIFICATION
Mao.
DAT          RPTR

## DEPARTMENT OF POLICE SERVICE NORTH BRANFORD

| CRIS NARRATIVE DETAIL | Report ID |
|---|---|

This CRIS data entry form should dotal the hcdent In a narrative manner. Include the source of actIfIy, officers obsavatlons. people and property Involvement action taken and dIsposItIon. Follow the department requirements for specific tr eatment style.

Case Number   9905888

Report Date   7-13-99

THIS REPORT SIGNED UN _____ ROVIDED   STATE LAW FOR MAKING A FALSE STATEMENT.

SIGNED

DATE 7-27-99   PAGE 1   OF 10 PAGES

SUBSCRIBED AND   0 BEFORE ME   ❑ 1-24 CGS

THIS   DAY O   19   SIGNED   ❑ NOTARY PUBLIC

That on 7-13-99 this officer was on duty and on patrol in a marked

^ai-rnl r'ar vnrir1nrr the hnnrg of 71nn on 7—17—QQ to 0700 on 7-13-99

a red f!hevrnlet Oamarn within the parking 1nt of the Xtra-Mart

gas Rtatinn vhir•hin 1noatei on Fnxnn Road (Route 80) and Ciro

Rnad in the tnvn of Nnrth Rranfnrd  The red C!amarn waS parked

_____'.........bserved two people seated within

this car, one in the riaht front passenger seat and the other in

the drivers seat. I routinely called into our dispatch the card-7

Th{ iR Romething r frequently do as the Xtra-Mart Gras station

is the only business open to the public within the entire town

of North Branford at that hour of the morning and could be easily

targeted for a crime. I also did not recognize this vehicle and

thought it prudent to at least have a record of the registration.

As I turned onto Ciro Road from Foxon Road I observed the person

seated in the drivers seat. This. person appeared to be a white

male with blonde hair protruding down from a baseball style hat

he was wearing. This person was holding the telephone receiver

in his hand, and the cars driver side window was down. As I passed

by the car I noticed this person was staring directly at me and

At his

time our dispatch advised me that the car was re istered to John

## DEPARTMENT OF POLICE SERVICE NORTH BRANFORD

| CRIS NARRATIVE DETAIL | Report ID |
|---|---|

This CRIS data entry form should dotal the Inddent In a narrative manner. Include the source of actllty, officers observations, people and property Involvement. Elko taken and disposition. Follow the department requirements br spec fic Pestilent style.

**Case Number 9905888**

**Report Date 7-13-99**

THIS REPORT SIGNED UN a        3ᵐj•" ~-ROVID        Y STATE LAW FOR MAKING A FALSE STATEMENT.

SIGNED                                    DATE  7-27-99   PAGE 2   OF10   PAGES

SUBSCRIBED AND SWORN TO BEFORE ME                        ❏ 1·24 CGS

THIS         DAY OF            19   SIGNED              ❏ NOTARY PUBLIC

Guerette of 'Wallingford,(`nnnprtir•t,    nn a rᴾ 1 ('hmvrolmt Cama ᴿₒ

I did

and I drove back up Ciro Road toward Foxon Road. As I neared the intersection of Foxon Road and Ciro Road I again saw this car in this same location next to the pay phone. The pay phone is located adjacent to Ciro Road within the east end of the parking lot of the Xtra-Mart gas station.Again I°observed the white male with the blonde hair seated in the cars driver seat,holding the telephone receiver in his hand through the open drivers side window.This person appeared to be engaged in a conversation with someone on the phone,but as I drove by again he began to become focused on me and again began to stare at me to the point of looking back over his left shoulder at me as I passed by the car. I sat for a moment at the intersection of Foxon Road and Ciro Road adjusting my cars outside mirror so I could obtain a better view of the car. I noticed this white male looking nervously out the driver side window at me and turning toward the passenger in the car.I was curious that the occupants of this car were so concerned with my presence so I decided to monitor them further.I drove east on Foxon Road to the intersection of Maple Road,keeping my eyes in the mirror to observe this car,and determine if it was going to 'leave *the' parking* lot or remain parked.I noticed the car remained parked in the lot,and I turned mycar around and began to travel west on Foxon Road.At one point I'requested our dispatch to conduct

## DEPARTMENT OF POLICE SERVICE NORTH BRANFORD

| CRIS NARRATIVE DETAIL | Report ID |
|---|---|

This CRIS data entry form should detail the Inddent In a narrative manner. Include the source of actfty, officers observations. people and property involvement action taken and disposition. Folow the department requirements for specific treatment style.

Case Number 9905888

Report Date 7-13-99

THIS REPO    GNED UN DER PENALTIES PROVIDED BY STATE LAW FOR MAKING A FALSE STATEMENT.

SIGNED _____  DATE 7-27-99  PAGE 3  OF 10  PAGES _____

SUBSCRIBED AND SWORN TO BEFORE ME

THIS        DAY OF         19    SIGNED          ☐ 1-24 CGS

☐ NOTARY PUBLIC

a license validity check and a State Police record check for previous criminal history on the registered owner of the car,Connecticut registration 801KCA.As I drove past the Xtra-Mart gas station westbound on Foxon Road,I again noticed the white male with the blonde hair still seated in the drivers seat of the car looking at me through the open driver side window.I slowed my car speed considerabl  and cou d                                        t with the Camaro moving from side to side as they did so.The passenger now appeared to be looking out the passenger side window as I passed by.I travelled •astthe Xtra-Mart as station and •arked m vehicle . within the lot of the Giant Oak Power Equiptment on Foxon Road and turned off my cars headli ghts so I could further monitor the Camaro and its occu•ants without bean further detected b them.Our dis•atch now advised me that the registered owner of the car,Connecticut registration 801KCA,had a sus ended Connecticut o•erator license and a prior criminal history.Within moments of being parked within the lot of Giant Oak Power Equiptment I observed the Camaro begin to drive away from the pay phone and turn around in the lot of the Xtra-Mart to the edge of the lot where it exits onto Foxon Road.I noticed the car sitting motionless for approximatly one minute prior to exiting right onto Foxon Road eastbound.At the time prior taand after the car exited the lot there was no eastbound or westbound traffic.I immedietly exited the lot of the Giant Oak Power E•ui•tment,turnin• m cars headli ghts on and •uickl cau•ht

## DEPARTMENT OF POLICE SERVICE NORTH BRANFORD

| CRIS NARRATIVE DETAIL | Report ID |
|---|---|
| This CRIS data entry form should dotal the Indent In a narrative manner. Include the source of acl9ly, officers observations, people and property Involvement, action taken and disposition. Follow the deparbnent requirements for spedflc treatment style. | Case Number  9905888 |
| | Report Date  7_1399 |

THIS REPORT SIGNED U ___11___  ROVIDED Y STATE LAW FOR MAKING A FALSE STATEMENT.

SIGNED _____ DATE 7-27_99  PAGE 4  OF 10 PAGES

SUBSCRIBED AND SWORN TO BEFORE ME                    ☐ 1-24 CGS

THIS          DAY OF          19  SIGNED          ☐ NOTARY PUBLIC

up to the Camaro which was still being operated eastbound on Foxon Road.As I followed the car I noticed it was travelling at a speed of approximatly 35 miles per hour which is 10 miles per hour slower than the posted speed of 45 miles per hour for that portion of Foxon Road.I noticed that the two front seat occupants

to swerve within the eastbound travel lane and cross the center ti line of the road on three seperate occasions.Based on my observationf of the occupants while within the car when parked in the lot of the Xtra-Mart gas station,the fact that the registered owner of the car might be o•eratin• with a sus ended Connecticut o•erator license and have a prior criminal history and the excessive movement b the cars occu•ants,enough to allow the car to begin to swerve and cross h_____dwa   ac ivated overhead strobes while directly behind-the Camaro and it began to slowly pull to the right shoulder of the roadway and stop on Foxon Road prior to County Road in the Town of North Branford.At approximatly 0132 hours I radioed our dispatch and advised that I was on a motor vehicle stop with the red Camaro with the registration plate of Connecticut 801KCA.I also gave our dispatch my location which was on Foxon Road near County Road and that the car was alccu•ied b two sub ects.I exited m car and walked up to the-passenger side of the Camaro.I had to knock on the closed passenger side window several times in order to gain the attention

## DEPARTMENT OF POLICE SERVICE NORTH BRANFORD

| CRIS NARRATIVE DETAIL | Report JD |
|---|---|

This CRIS data entry form should detail the incident In a narrative manner. Include M source of actin): officers observaiorn, people and property tnvotvement, action taken and disposition. Follow the department requirements for specific treatment atyie.

**Case Number** 9905888

**Report Date**   7_13-99

THIS REPORT SIGNED UNDER PENALTIES PROVIDED = STATE LAW FOR MAKING A FALSE STATEMENT.

SIGNED _____   DATE  7-27-99    PAGE 5   OF 10   PAGES

SUBSCRIBED AND SWORN TO BEFORE ME

☐ 1-24 CGS

THIS ____ DAY OF ____ 19 SIGNED ____   ☐ NOTARY PUBLIC

f the occu•an s.I        d

female with glasses on and she was attempting to press a switch
on the cars center console which I assumed would allow the window
to roll down.Eventually the passenger window rolled down and I
asked the operator,who was the white male with the blonde hair
' still wearing the baseball style hat,whom I had observed earlier

his drivers license,the vehicles registration and insurance
identification for the car.The operator stated that-he was not
carrying his drivers license and that the car was registered to
his brother.I requested from the female passenger if she was
carrying her drivers license and she stated"No T dont have any TD".
Both of these people were visibly nervous:their arms and legs were
shaking as I spoke to them and they wer_e also looking at each
other quickly as I spoke to them as if'they were unsure-of how
to respond to me.Based on m trainin• and..ex•erience it a eared
as if these people might 0ossibl'v  be under the influence of
of alcohol or drugs or both.I *asked*the operstarto e:cit the
car and walk to I_____

this person his name and he stated it was Steven Guerette.I asked
Mr. Guerette if he owned the car and he stated No it was his
''brothers'car.I asked him his brothers name and he stated"John
Guerette".I asked him if he was carrying his drivers license
and he stated to me that he was a truck driver and all truck

**DEPARTMENT OF POLICE SERVICE NORTH BRANFORD**

## CRIS NARRATIVE DETAIL.

This CRIS data entry form should detail the incident in a narrative manner. Include the source of activity, officer's observations, people and property Involvement, action taken and disposition. Follow the department requirements for specific freetext style.

| Report ID |
|---|
| Case Number 9905888 |
| Report Date 7-13-99 |

drivers leave their drivers licenses in their visors of their trucks they drive and *dont* carry them on them.I asked him if he was carrying a wallet on him and he stated "No'" and canted his body away from me so I could not easily see his back pockets.Iturned him around and found a wallet in his back pocket.I quickly looked through the wallet and could -find no identification.I noticed his body was shaking and his hands were trembling and his eyes were bloodshot and wateryand droopy I also noticed that on several occasions he nervously looked back toward the passenger in the car.Because•theperson claiming to be Steven Guerette could not or would not produce any**documentation**t o⁻ro⁻erly identify himself to me,that he had lied to me,was acting extremely nervous,and appeared to me to possibly be under the influence of **alcohol**or drugs or both,I⁻**atted**him**down**for weapons and found none. I**advised**him that due to the fact that he could not .produce the

ro•er documentation      rose      ide

license mi•h b

alcohol o

have  o   an

## DEPARTMENT OF POLICE SERVICE NORTH BRANFORD

| CRIS NARRATIVE DETAIL | Report ID |
|---|---|
| This CRIS data entry form should deal the kiddent In a narrative manner. Include the source of acWq, officers observatkns, people and property Involvement. action taken and disposition. Follow the department requirements for treatment style. | Case Number 9905888 |
| | Report Date 7—13_99 |

THIS REPORT SIGNED • ND '     ES PROVI s$^f$ D BY STATE LAW FOR MAKING A FALSE STATEMENT.

SIGNE ~~~j%     DATE 7-27-99    PAGE 'j   OF 10   PAGES

SUBSCRIBED AND   •'TO BEFO''     ☐ 1-24 CGS

THIS    DA • F    SIGNED     ☐ NOTARY PUBLIC

he had any other items in his pockets and he stated"Nn"_Trear'hed into his right front pocket and found. two plastic bags 'nntaining a white powdery substance,which based on my training and experience I believed to be narcotics.I asked him what was inside the plastic. bags I had just taken from his right front pants pocket and he • stated "Its Just para phernalia".Itook out my handcuffs and tonic hold of one of his arms and told him he was under arrest.He said "Wait,Wait,Wait" and Quickly pulled his arm away from me and began to run down the passenger side of the Camaro.Timmedi ptly gave foot chase.He was running in an easterly dir r•tinn• an Pnxnn Road.He began to run across Foxon Road toward County Road.T took out my portable radio and attempted to call onr dispatr•h.T attempted calling several times _and only heard a beeping sound coming from the radio which indicated that the radin hattpry was weak and would not transmit.T could hear j'ln response from onr dis•atch on m ˢortable ra•

_____ rass island from _____ _____

surface and the grass were wet 'om rain,and T saw him fail drown onto County Road as he exited from the grassy island nntnthe

•avement.I was in close •r •x ▮ ▬ ▬ -

awa and shouted at him " ▮ ▮ _____ ᵘ ▬

regain hisfootin• and be•into run back to Foxon Roa•.I wa

still in close _roximit _to him and was_____ _____ ▬

He now bean runnin in an e_____ ▬▬ ▬▬

## DEPARTMENT OF POUCE SERVICE NORTH BRANFORD

| | |
|---|---|
| **CRIS NARRATIVE DETAIL** | Report ID |

TMs CRIS data s*y form should dotal r1• intl*• ln • nruto  t•1ma  ,sV h1     s fl• •OWO•  OCIMp. faMO **IVI**
oOs•IV•1k4IL V•o0a •nd Property MeioMmSn arson tsl4pn  geld dfp  oMoti Foam N dep•m•nt fs   *u mn1b lot ap•CM1e
pektmmd olpiL

Case Number 9905888

Report Date 7-13-99

THIS REPORT SIGNED UNDER PENALTIES PROWODED     STATE LAW FOR MAICNG A FALSE STATEMENT.

SIGNED _____

SUBSCRIBED AND SWORN TO BEFORE ME

THIS ____ DAY OF ____ 19___

0ᴮirs 7-27-99     PAGE8    OF **10**IRGES

0124cGS

☐ NOTARY PUBLIC

from the area of the c r stOD.Re tptally disregarded my commands for *him to sto•* and continued runnin• easterl on Foxon Road drawing we further away from the area of the car stop.Due to the fact..I was without. any radio *communications* and without any other police backup,I decided to abort my foot pursuit,and to return to the location of the car stop to radio our dispatch of the situation and secure the female occu   t in the Camaro until I could receive additional assistance on scene and attempt to apprehend this other •erison still on foot who was still somewhere in the area.!beg!n to run as fast as I could west on Foxon Road back to the area of the car sto•.As•I •ot close to this area I was sur•rised to see that the Camaro *which I* had etc.. ed be an movin• eastbound on Foxon Road directs at me with i  s headlights on.I could hear the vehicles en•ine *acceleratin*  .I would estimate that the Camaro was a roximatl 250 feet from me. I was physically tired and nearly out of breath from the foot pursuit and began to yell as loud as I could for the car to stop I yelled at least twice"Stop police,Stop Police".As'I yelled I be an wavin• m arms over m head ho•in• the o•erator would see me and sto .I saw that the car did not stop but was instead bearing down on me.I was *not runnin•* at this •oint and felt exhausted. 'I knew that I vas not going to be able to get out of the cars •ath and that I was •oin• to be struck and seriousl in ured **or** killed if I did not act to defend myself.With the car aiming

## DEPARTMENT OF POLICE SERVICE NORTH BRANFORD

| **CRIS NARRATIVE DETAIL** | **Report ID** |
|---|---|
| *This CRIS* data entry form should detail the Incident In a narrative manner. Include the source of actAty, omcers observado ns, people and property involvement, action taken and disposition. Follow the department requirements for **wik** treatment style. | **Case Number** 990 5 8 8 8 |
| | **Report Date** 7-13-99 |

THIS REPORT SIGNED UNDER PENALTIES PROVIDED BY STATE LAW FOR MAKING A FALSE STATEMENT.

SIGNED _____  DATE 7-27-99   PAGE 9 OF 10   PAGES _____

SUBSCRIBED AND SWORN TO BEFORE ME                    ☐ 1-24 CGS

This _____ DAY OF _____ 19 ___ SIGNED                    **D** NOTARY PUBLIC

was attempting to strike me with the car.I drew my 40 caliber
Glock service pistol from my holster with my right hand and
yelled once more "Stop Police".I fired once at the left front
windshield of the car when it was approximately 50 feet from me.
and travelling at approximatly 25 to 30 miles per hour.I fired a
second shot approximately one second later as I quickly moved to my
right to avoid being struck by the car as it was still coming
directly at me.I heard the sound of breaking glass.The vehicle
which was still continuing eastbound on Foxon Road passed me on the
roadway with the.left side of the cars body close to my own body.
I would estimate that the car was within three feet of me.I watched
as the car drifted into the westbound lane of Foxon Road and
subsequently mounted the end of a metal guard rail system with its
front end,and come to a rest.I did not observe any further movement
from the car or the operator.I sot to m car and radioed our dis.atc:
that I needed additional personnel,medical assistance,and that shots
had been fired.I drove up to the rear of the Camaro and got out of
my car and cautiously approached it.I could hear the person within
making a wheezing type sound.I then saw the persons head recline
against the back of the drivers seat.T he person was motionless in
te drivers seat of the car.I observed that she was the same female
passenger who was within the car when I had stopped it minutes
before.I reached inside the car and shut off the cars

## DEPARTMENT OF POLICE SERVICE NORTH BRANFORD

| CRIS NARRATIVE DETAIL | Report ID |
| --- | --- |

This CRIS data entry form should detail the Mucldert In a narrative manner. Include the source of salty, offices observation people and property Involvement action taken and disposition. Follow the department requirements for specific treatment style.

**Case Number 9905888**

**Report Date 7-13-99**

THIS REPORT SIGNED UNDER PENALTIES PROVIDED BY STATE LAW FOR MAKING A FALSE STATEMENT.

SIGNED _____    DATE 7‾27‾99    PAGE **10** OF **10** PAGES

SUBSCRIBED AND SWORN TO BEFORE ME

1-24 CGS

THIS _____ DAY OF _____ SIGNED _____    ☐ NOTARY PUBLIC

ignition and checked the females neck for a pulse.I found none.

I again returned to my car and again radioed into our dispatch

that I needed assistance and medical assistance to the scene

for the female operator.I also radioed in a complete description

of the male subject who was still on foot- in the area.Moments

later I saw a Town of Guilford police car arrive.A short time

later units from North Branford police arrived.I remained on

scene and also observed police units from the Town of East

Haven and Madison arrive on scene.I observed police K-9 units

from East Haven and Madison emerge from a wooded area of Foxon

Road and Stroud Road with a white male I.positively identified

as being the person who fled from me and led me on a foot chase.

He was subsequently turned over to officers of the North Branford

police and placed under arrest.While at the scene I was instructed

to turn over my service pistol to Sergeant Manner of the North

Branford Police Department ,which I did ,and to provide a gunshot

residue test to State Police major crime investigators of both

my hands which I also did:I was then transported to the North

Branford Police Department by Sergeant Emmons of the East Haven

Police De •a        ꞁ ▭      m          h      ants shoes

and entire sunbelt to State Police investi•ators. _____

TAB 4

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARET COWAN, as       |
Administratrix           |
of the Estate of         |
Victoria Cooper,         |
    Plaintiff,     |
                        CIVIL NO.:  3:00CV00052(DJS)
  vs.                    |   ALL CASES

MICHAEL BREEN,           |
    Defendant.      |
------------------------
MARGARET COWAN, as       |
Administratrix           |
of the Estate of         |
Victoria Cooper,         |
    Plaintiff,      |
                        CIVIL NO.: 301CV00229(DJS)
  vs.                    |
                        MARCH 7, 2002
TOWN OF NORTH BRANFORD, )
    Defendant.      |
------------------------

COPY

D E P O S I T I O N  O F

C H A R L E S  R.  M A N N I N G,   P H. D.,   P. E.

A P P E A R A N C E S

For the Plaintiff:          Mr. David N. Rosen
  (via videoconference)     Rosen & Dolan
                            400 Orange Street
                            New Haven, Connecticut
                                              06511

For the Defendants:         Mr. Thomas R. Gerarde
                            Howd & Ludorf
                            65 Wethersfield Avenue
                            Hartford, Connecticut
                                              06114-1190

In Raleigh, N.C.            Reported by:
May 29, 2002                Carol M. Smith, CVR



# Pace Reporting Service

*General Court Reporting & Videotaping*
P.O. Box *252* • *Cary*, North Carolina *27512*
*Telephone:* (919) *859-0000* • *Facsimile:* (919) 859-1215

Manning                    Direct                        -114-

1       a reasonable degree of scientific certainty, the

2       vehicle traveled forty-two feet?

3   A   Yes.  Yes.

4   Q   And during the time he was--between when he started

5       to squeeze the trigger until when it discharged,

6       how far did the vehicle travel, to a reasonable

7       degree of scientific certainty?

8   A   Between ten and eleven feet.

9   Q   Doctor, during our deposition today, have you told

10      me all the opinions you expect to express at trial?

11  A   I believe I have, unless some further information

12      would come up that would cause me to reevaluate

13      something.

14  Q   In your report, Doctor, on Page 3--

15  A   Yes.

16  Q   --you indicate, the last sentence of Paragraph 5,

17      you say, "During the one- to two-second interval,

18      Officer Breen could move only up to several feet in

19      attempting to move out of the path of the oncoming

20      Camaro," is that correct?

21  A   Yes, sir. I put one second. He can only move a

22      certain amount.

23  Q   Approximately what amount?

24  A   I--I didn't calculate it, but trying to move

STATE OF NORTH CAROLINA                                    -127-

COUNTY OF WAKE

### C E R T I F I C A T E

I, Carol M. Smith, CVR, a Notary Public in and for the State of North Carolina, duly commissioned and authorized to administer oaths and to take and certify depositions, do hereby certify that on May 29, 2002, CHARLES R. MANNING, PH.D., P.E., being by me duly sworn to tell the truth, thereupon testified as above set forth as found in the preceding 126 pages, his examination being reported by me verbatim and then reduced to typewritten form under my direct supervision; that the foregoing is a true and correct transcript of said proceedings to the best of my ability and understanding; that I am not related to any of the parties to this action; that I am not interested in the outcome of this case; that I am not of counsel nor in the employ of any of the parties to this action.

IN WITNESS WHEREOF, I have hereto set my hand and affixed my official notarial seal, this the t9 OA`daY of June, 2002.

_____
Notary Public

My Commission Expires 11/30/04

Carol M. Smith, CVR
PACE REPORTING SERVICE
P. O. Box 252
Cary, North Carolina 27512
Telephone:   919/859-0000 (Raleigh)
             910/433-2926 (Fayetteville)
             910/790-5599 (Wilmington)

TAB 5

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

MARGARET COWAN, AS
ADMINISTRATRIX OF THE
ESTATE OF VICTORIA COOPER, .          ORIGINAL

        Plaintiff,

  -versus-                              300 CV 0052 (DJS)

MICHAEL BREEN,

        Defendant.


   Videotaped deposition of MICHAEL BREEN, taken

pursuant to the Federal Rules of Civil Procedure, at

the law offices of Rosen & Dolan, 400 Orange Street,

New Haven Connecticut, before Brenda K. Granfield, a

Registered Professional Reporter and a Notary Public

in and for the State of Connecticut, on Wednesday,

July 12, 2000 at 10:40 a.m.

79

1   didn't think you made those. I didn't think you

2   could use that as a basis.

3                MR. GERARDE:   I'm not going to object

4   to testimony based on foundation, but since you're

5   asking him to create a document, the rules are a

6   little different.

7   BY MR. ROSEN:

8        Q.    All right, Mr. Breen, I'm going to ask you

9   a couple of questions.

10                Where were you in relation to the car at

11  the time you fired the first shot?

12       A.    I was in front of it.

13       Q.    Okay.  How far in front of it?

14       A.    I approximated in my report about 50 feet.

15       Q.    Okay.  And was the car heading straight

16  toward you?

17       A.    Yes, sir.

18       Q.    You're sure of that?

19       A.    Yes.

20       Q.    If you had stood where you were standing

21  at the time you fired the first shot and the vehicle

22  had continued to head straight ahead, the vehicle

23  would have struck you?

24       A.    Yes, sir.

25       Q.    What part of the vehicle would have struck

Page 164

1    possible.  Okay.  It indicates I drew my weapon and

2    at that point I yelled "Stop, police" one more

3    time.

4        Q.    Okay.  And did you -- question withdrawn.

5             What was the reason for yelling "Stop,

6    police" after you drew your weapon?

7        A.    In hopes that the operator would stop the

8    vehicle.

9        Q.    Okay.  And how long after you yelled

10   "Stop, police" did you wait before you fired?

11       A.    It was -- this occurred within seconds.

12   It's very hard to put a time frame on exactly how

13   long it took. And I indicate in my report that the

14   vehicle was approximately 50 feet from me when I

15   shot my first round.

16       Q.    Is that your best estimate?

17       A.    Yes, sir.

18       Q.    And you estimate the vehicle's speed at 25

19   to 30 miles per hour?

20       A.    That's what I estimated it at.

21       Q.    At what point was the vehicle traveling 25

22   to 30 miles per hour?

23       A.    As it was approaching me.

24       Q.    It did not seem reasonable to you to move

25   either to your left or to the right to see if the

Page 194

1    the kind of person she was, did you, or did you?

2        A.    No, sir. I didn't even know who she was

3    at that point.

4        Q.    You didn't base your decision on any --

5    okay.  You based your decision solely and

6    exclusively on what you saw the vehicle doing; is

7    that correct?

8                    MR. GERARDE:  Object to the form.

9        A.    Right.  Again, I based my decision on what

10   the operator was doing driving the vehicle directly

11   at me and disregarding my commands for her to stop,

12   yes, sir.

13       Q.    And who she was or anything about her in

14   particular as compared to anybody else in the world

15   didn't play any part in your decision, correct?

16       A.    No, sir.

17       Q.    You gave an estimate of about 50 feet

18   between you and the vehicle at the time you fired

19   the first shot, Officer?

20       A.    Yes, sir.

21       Q.    Is that a reliable estimate?

22       A.    I believe so.

23       Q.    You're confident that it's a reasonably

24   accurate estimate?

25       A.    It's an approximate distance.

Page 195

1      Q.    But you think it's a good approximation

2   based on your observation, experience, training, and

3   so on?

4      A.    Yes, sir.

5             MR. ROSEN:   Thank you.  I have no

6   further questions.

7             MR. GERARDE:   I have about four

8   minutes of questions, but I need to organize those

9   exhibits.  We can all stay present, but can we go

10  off the record for just a minute and then we'll get

11  going?

12             (Pause in the proceedings.)

13  CROSS-EXAMINATION

14  BY MR. GERARDE:

15     Q.    Officer Breen, good afternoon. I'd like

16  to follow up in a few areas that were raised in

17  direct examination.

18             The first is I'd like to put Exhibit 1 in

19  front of you, which is your report, sir. And there

20  was testimony on direct examination that you did not

21  place an exact location of where you were relative

22  to the oncoming vehicle in the report, and you

23  indicated you did not put an exact location in, but

24  I would like to direct your attention to the very

25  bottom of page 8 if your report over on to page 9.

206

## C E R T I F I C A T E

I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition, to wit: MICHAEL BREEN, came before me on the 12th day of July 2000 and was by me duly sworn and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to computer-aided typewriting under my direction, and the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither attorney nor counsel for nor related to nor employed by any of the parties to the action in which this deposition is taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially interested in this action.

IN WITNESS THEREOF, I have hereunto set my hand as Not y Public his 4th day of August 2000.

_Brenda K. LeField_
Brenda K. Gran, ield, RPR-CP
LSR 00147
Notary Public:
My Commission expires April 30, 2001