# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARGARET COWAN, | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF VICTORIA COOPER | : | NO.: 3:00 CV 0052 (RNC) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BREEN | : | |

| | | |
|---|---|---|
| MARGARET COWAN, | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF VICTORIA COOPER | : | NO.: 3:01 CV 0229 (RNC) |
| | : | |
| v. | : | |
| | : | |
| NORTH BRANFORD | : | June 1, 2005 |

## JOINT TRIAL MEMORANDUM

The parties respectively submit the following joint trial memorandum:

1.    **Trial Counsel**:

      <u>For the Plaintiff</u>:      David N. Rosen
                                 400 Orange Street
                                 New Haven, CT 06511
                                 (203) 787-3513
                                 (203) 789-1605 (fax)

      <u>For the Defendants</u>:     Thomas R. Gerarde
                                 John J. Radshaw, III
                                 Howd & Ludorf
                                 65 Wethersfield Avenue
                                 Hartford, CT 06114
                                 (860) 249-1361.
                                 (860) 249-7665 (fax)

2.    **Jurisdiction**.

This is a civil rights action brought pursuant to 42 U.S.C. Section 1983. Jurisdiction is conferred by 28 U.S.C. Sections 1331 and 1343. Supplementary jurisdiction over state law claims is conferred by 28 U.S.C. Section 1367.

3.      **Jury-Nonjury.**

This is a jury case.

4.      **Nature of the Case**

This case arises out of the fatal shooting of Victoria Cooper, plaintiff's decedent, by the defendant police officer.  In the first case, plaintiff seeks compensatory and punitive damages for her daughter's wrongful death. She makes a Section 1983 civil rights claim of unlawful seizure in violation of the Fourth Amendment and a state law claim of assault.  The defendant responds that the officer's use of force was not in violation of Ms Cooper's Fourth Amendment rights and that the shooting was justifiable self-defense.

5.      **Stipulations of Fact and Law**

The parties stipulate as follows:

1. At all times relevant to this case, the defendant was acting under color of law.

2. The life expectancy of a white female aged 41 is 40.5 years (from NCHS 2002)

6.      **Plaintiff's Contentions**

Concerning the federal and state claims against the officer, plaintiff claims that early in the morning of July 13, 1999, the defendant stopped the car in which  Ms. Cooper was a passenger on Route 80 in North Branford, near the Guilford line.  The driver got out of the car at the defendant's command, but ran away down the country road, and the defendant lost him in the woods. While the defendant was chasing the driver, Ms. Cooper got behind the wheel of the Camaro; and while the defendant was returning from the chase, she started to drive away. She drove at most at a moderate rate of speed on the far right hand side of the roadway.  The defendant was in the middle of the road, well out of her path. Nevertheless, he fired two shots at her. The first shot, from about 40-50 away, hit the front hood, leaving a mark showing its path. As Ms. Cooper drove by him, the defendant fired a second shot *through the driver's side*

*window*. This shot killed Ms. Cooper.

Both shots were completely unnecessary.  As the plaintiff's and defendant's experts agree, officers should get out of the way of an oncoming vehicle whenever possible rather than shooting the driver. The defendant was *already* out of the way of the Camaro when he fired his first shot.  The Camaro was well on its way past him when he fired the second, fatal shot. The fatal shot was unnecessary and unreasonable. The defendant's explanation for why he fired the second shot is that he was trained to fire a second shot *whenever* he fired a first shot. This explanation is nonsense; it is contrary to fundamental police practice as well as constitutional principles.

Concerning the *Monell* claim, the defendant municipality did nothing to train the officer concerning how to deal with an oncoming car, even though such incidents are unavoidable parts of the job and the department had had one such incident – which was mishandled — not long before this shooting. Plaintiff's expert on law enforcement (James Fyfe, the Deputy Commissioner in charge of training for the New York City Police Department) will testify that the failure to train demonstrated a reckless disregard of the rights of potential victims of police shootings like Ms. Cooper.  Additionally, as noted above, the defendant officer testified that he was trained to fire twice whenever he fired once.  If this testimony is true, that training was unconstitutional and led directly to Ms. Cooper's death.

**7.    Defendants' Contentions**:

This case involves the death of a citizen, Victoria Cooper, who was shot by Officer Michael Breen in the course and scope of his employment as a police officer as she drove a motor vehicle towards him on a darkened roadway in North Branford, Connecticut following a stop of that vehicle and escape of the driver, Steven Guerrette. Despite having ample opportunity to change direction and avoid a confrontation, Cooper drove toward Officer Breen, who, fearing that the deadly force embodied in a moving motor vehicle would be used against him imminently, fired two shots from his service weapon at the vehicle. The first shot deflected off of the hood of the vehicle; the second shot struck Cooper and fatally wounded her. At the moment just prior to pulling the trigger, the undisputed facts demonstrate that Officer Breen reasonably believed that his

life was in danger of the imminent deadly force embodied by the motor vehicle driven toward him by Victoria Cooper.  The defendant submits he has not violated Ms. Cooper's Fourth Amendment rights; that in any event he is protected by the doctrine of qualified immunity and that his use of force was justifiable self-defense.

Concerning the plaintiff's claim that the Town of North Branford violated the decedent's rights as a result of its failure to train its officers about shooting at motor vehicles, the defendants submit that there is no factual basis for this claim.

**8.**   **Legal Issues**.

1.   Whether Defendant used excessive force under the circumstances against the plaintiff in violation of her Fourth Amendment rights?

3.   Whether the defendant's use of force was objectively reasonable under the law?

4.   Whether the defendant is entitled to qualified immunity for his actions?

5.   Whether the defendant's use of force was justified under Connecticut law?

**9.**   **Voir Dire Questions.**

Attached.

10. **List of Witnesses**

    A.    <u>**Plaintiff's Fact Witnesses**</u>

    Plaintiff reserves the right not to call any of these witnesses and if called by the defendants to object to their testimony. Plaintiff further reserves the right to call any witness listed by defense counsel but not called at trial.

| | | |
|---|---|---|
| Detective Thomas Murray, C.S.P | This witness was the case officer on the C.S.P. investigation. He will testify to the following 1. Foundation for exhibits, including photos of scene and objects at scene; 2. Overview of the scene and investigation; and 3. Interviewing of witnesses, including scene witnesses; 4. Some of the circumstances of the State Police reconstruction. | 1 hour |
| Detective Jeffrey Twohill, C.S.P. | This witness was in charge of evidence retrieval. He will testify to the following 1. Location of evidence; 2. Retrieval of evidence. | 1 hour |
| Detective William Guida, C.S.P. | This witness did photography and a sketch map of the scene. He will testify to the following: 1. The accuracy of sketch map; 2. Accuracy of photos of scene | 1 hour |
| Neil Creem, Tom Abram, or Warren Leftridge | These witnesses are DOT drainage engineers who may testify to the slope of the road at the scene. Their testimony should be unnecessary and able to be addressed through stipulation. | Less than one hour |
| Det. J. Schaeffer | This witness will provide a foundation for scene photos. | Less than 1 hour |
| Tprs. Cebelus, Buglione, and Topulos | These State Troopers took statements from neighbors and may testify to what neighbors said, in particular to their not hearing anyone shout "stop, police." Their testimony should be unnecessary and able to be addressed through stipulation. | Less than one hour |

                      **Objection, hearsay.**

| | | |
|---|---|---|
| Tpr. Mellekas | This State Trooper may testify to what was found in the Camaro (subject to motion in limine re contraband) | less than one hour |
| Fire Arms Examiners Mssrs. Stephenson and Jachimowicz | These witnesses are state police firearms experts. One of them may testify concerning their testing of the Glock 22 to verify the characteristics of the weapon. | Less than one hour |
| Michael Breen | The defendant will testify to the following 1. His version of the events; 2. His knowledge of standard police practices such as avoiding motor vehicles; 3. His knowledge of the departmental rules governing his conduct during the encounter; 4. His training and experience (subject to a motion in limine).<br><br>**Objection. Testimony concerning policy, training irrelevant for first trial.** | 1 day |
| Christopher Manner | This witness is a training officer for the defendant's police department. He will testify to the training given to plaintiff and to the department's standards, practices and procedures concerning the use of deadly force.<br><br>**Objection, subject to motion in limine. Matter is irrelevant for the first trial.** | 1 hour |
| Leonard Popolizio | This witness is a training officer for the defendant's police department. He will testify to the training given to plaintiff and to the department's standards, practices and procedures concerning the use of deadly force.<br><br>**Objection, subject to motion in limine. Matter is irrelevant for the first trial.** | 1 hour |
| Matthew Canelli | This witness is the North Branford Police Chief. He will testify concerning the Department's shooting policy and experience with shooting at motor vehicles, including an incident shortly before the one in this case.<br><br>**Objection, subject to motion in limine. Matter is irrelevant for the first trial.** | 1.5 hours |

| | | |
|---|---|---|
| John J. Kelley | This witness was Breen's attorney following the crash. He will testify to the number of times and length of time he met with defendant Breen before Breen filed his report and communications between him and agencies and officials connected with the investigation. | Less than one hour |
| | **Objection, subject to motion in limine.** | |
| Matthew Ursone | This witness will testify, if needed, to the location of the remains of the first bullet. | Less than one hour |
| Maureen Small | This witness will testify to her observations of defendant Breen at the scene. She saw defendant Breen and heard two shots. She did not hear him give any warning but did hear him talking after the shooting. | Less than one hour |
| Stephen Small | This witness will testify to his observations of defendant Breen at the scene. He heard two shots. He did not hear Breen give any warning but did hear him talking after the shooting and saw him go to the Camaro after the shooting, then return to his cruiser and drive to the Camaro's location. | Less than 1 hour |
| Frank Cusano | This witness will testify to what he heard from his bedroom near the scene. Sometime after the shooting, he heard what sounded like a fight and heard someone shout stop. | Less than 1 hour |
| Lyman Pope | This witness was a neighbor of Vicki Cooper's and her landlord. He will testify to Ms. Cooper's warm personality and love and affection for her family. | Less than one hour |
| Abdul Zaugirder | This witness was Vicki Cooper's employer. He will testify about her work, in accordance with the information he gave the State Police. | Less than one hour |
| Keysha Cowan | This witness is Vicki Cooper's daughter. She will testify to Vicki Cooper's relationship with her children; her activities raising her children; and her family relationships | one hour |
| Shane Cooper | This witness is Vicki Cooper's son. He will testify to Vicki Cooper's relationship with her children; her activities raising her children; her family relationships | 1 hour |

| Margaret Cowan | Vicki Cooper's mother will testify about her daughter and their relationship | 1 hour |
|---|---|---|
| Joann Cowan | Vicki Cooper's sister-in-law, will testify her friendship with Vicki; Vicki's work history, especially her waitressing at American Steak House; Vicki's relationship with Joann's children; the period that Vicki lived with Joann and her husband Mark, Vicki's brother, just before Vicki's death; Vicki's interest in taking college courses; Vicki's feelings for her family members; and related topics concerning her personal relationship with Vicki and her observations of Vicki as a person | less than an hour |
| Robert Cowan | Vicki Cooper's older brother, will testify about his relationship with his sister in childhood and, to a lesser extent, during adulthood, primarily before he moved to Florida approximately six years before her death, including her relationship with her children and the rest of her family | less than an hour |
| Toni Carlino | Vicki Cooper's older sister, will testify about Vicki's childhood and growing up together, Vicki's relationship with her children and family, and Vicki's living in the same two-family house in the weeks before her death. | less than an hour |
| Bob Dekoyer | Vicki Cooper's softball couch, will testify about her playing on his women's softball team and socializing with the other people on the team. The defendants have deposed Mr. DeKoyer. | less than an hour |
| Bonnie Dekoyer | Vicki Cooper's softball teammate, will testify about Vicki's playing on the softball team and her socializing with Vicki. The defendants have deposed Ms. DeKoyer. | less than an hour |

## B. **Plaintiff's Expert Witnesses**

| | | |
|---|---|---|
| John Conklin | This expert witness is a surveyor. He will testify to the following: 1. Description of scene; 2. Accuracy of survey map; 3. Accuracy of animation's depiction of the scene based on the  map | 1 hour |
| Constantine Forkiotis, O.D. | This expert witness is an optometrist who provided the State Police with a report on Vicki Cooper's eyesight. This witness will testify to the following: 1. Vicki Cooper's eyesight, corrected and uncorrected. 2. Vicki Cooper's poor night vision and depth perception and lack of ability to perceive figures in the conditions obtaining at the scene. He will base his opinions on the medical records, contained in the State Police file, that were transmitted to him. | 1 hour |

**Objection, subject to motion in limine.**

| | | |
|---|---|---|
| Wayne Carver, M.D. | This expert witness was the State Medical Examiner at the time of the incident and observed Ms. Cooper's  body at the scene. This witness will testify to the following: 1. The nature of Vicki Cooper's injuries, as described in the autopsy report; 2.  Vicki Cooper's position at the time of discovery; 3.  The time lapse before Ms. Cooper lost consciousness. He will base his opinion on his examination of her body. | 1.5 hour |
| Henry Lee | This expert witness was State Police Commissioner at the time of this incident. This witness will testify to the findings and conclusions of the State Police reconstruction report, insofar as they are not limited by *Daubert* considerations. (Plaintiff will address these considerations in a motion in limine.) He will also testify to the most likely location of the officer and the Camaro at the time of the second shot. His testimony is based on his examination of the evidence at the scene, as well as firearms testing and reconstruction of the Camaro window, all as detailed in the reconstruction report.  He will testify concerning the location of the defendant based upon the information now available through admissions and testing by plaintiff and defense experts. | 4 hours |

Kent Schwendy          This expert witness is an engineer and an expert          1 day
                        marksman. He will testify to the following: 1. The methods
                        and results of his tests firing bullets into sheet metal to
                        determine whether there is a relationship between the
                        angle from which a bullet is fired into metal like the
                        Camaro hood and the shape of the strike mark made by
                        the bullet. These include a) there is such a relationship for
                        the horizontal angle, but not for the vertical angle; and b)
                        the horizontal angle at which the bullet hit the Camaro
                        hood was calculated to be 18 degrees, with a standard
                        deviation of 1.5 degrees, so that there is a 95% chance
                        that the bullet hit the Camaro hood at an angle of 15.5
                        degrees or more. 2.  The positions of the car and officer on
                        the road at given points during this event may be
                        determined to a reasonable degree of engineering
                        probability based on data from Dr. Lee, the defendants,
                        and other sources as shown in his report.  These data
                        show that Breen was well off to the side of the Camaro
                        when he fired the first shot and moved toward the Camaro
                        between the first and second shots. 3. It is unlikely that
                        Breen was moving to his right, toward the center of the
                        road, when he fired the second shot for an additional
                        reason – the extraordinary difficulty of the shot from such a
                        position while making such movements. 4. The
                        computerized reconstruction accurately depicts reliable
                        information available to him and is an accurate
                        reconstruction of the event. 5.  The findings of Dr.
                        Manning, defendants' expert engineer, closely agree with
                        the witness's findings and provide an additional basis for
                        believing that the opinions are accurate. 6. The results
                        obtained by testing are consistent with the characteristics
                        of the weapon Breen used. 7. The results he found were
                        not highly sensitive to changes in the input data that he
                        used; changes in the input data unless they were large
                        would not change the conclusion that the officer moved
                        toward the car in between his two shots.  He will base his
                        findings and conclusions on the results of his testing as
                        well as the other sources of input disclosed in his report
                        and his calculations based on that data and will rely on the
                        findings and conclusions of Dr. Manning as stated in Dr.
                        Manning's deposition and report for additional
                        corroboration. It is also anticipated that he will confirm the
                        measurements of the Camaro that he used by checking
                        those measurements in the field. He will use animations
                        and associated still frames and hard copies of animation
                        frames and the objects depicted to explain his testimony
                        and conclusions and to show the similarity of his
                        conclusions to Dr. Manning's.

10

**Objection, subject to motion in limine.**

| | | |
|---|---|---|
| Charles Manning, Ph.D | This expert witness is an engineer retained and presented by the defendants. He will testify either live or by deposition to the following, consistent with the opinions he has previously expressed: 1. The distance of the Camaro from Officer Breen at the time of the first shot (43 to 45 feet at the time the first bullet was discharged); 2. the calculability of the horizontal angle at which the first bullet was fired by examination of the bullet strike mark; 3. the measurement of that mark as 13 degrees (the same measurement Mr. Schwendy made); 4. the unreliability of the vertical angle in the hood as a way to calculate the actual vertical angle of entry; and 5. The most likely time to squeeze the trigger on a Glock 22 (one-quarter second). He will rely on the testing he performed, as disclosed by the defendants | 3 hours |
| | **Objection, subject to motion in limine.** | |
| Bruce Rounsaville, MD | This expert witness's testimony is subject to motion in limine excluding all evidence of drug use from the case on grounds of irrelevance and prejudice. This witness will testify to the following, if necessary:  1. Vicki Cooper was likely a cocaine user for approximately three years before her death. 2. The most likely course for her, had she not been killed, is that she would have stopped using cocaine and would not have had long term impairment or shortened life expectancy as a result of cocaine use. 3. Ms. Cooper most likely met the criteria for cocaine abuse (rather than cocaine dependency) at the time of her death. He will rely on the materials (literature and review of the file) that he disclosed in his report. | 3 hours |
| | **Objection, subject to motion in limine.** | |
| Michael Miller | This expert witness is an engineer. If he is called, this witness will testify to the following: 1. The conditions at night at scene; 2. The reconstruction he performed based on data from Dr. Manning. He will testify based on his own observations and measurements, the survey of the scene, and the data he received from the police reconstruction report, from Dr. Manning, and from defendant Breen. | 2 hours |
| | **Objection, subject to motion in limine.** | |

James Fyfe

(deposition may be used if Dr. Fyfe is unavailable)

This witness is plaintiff's expert on police practices. He will testify that 1) proper police procedure when faced with an on-coming vehicle is to get out of the way rather than shoot, since shooting may disable the car or the driver and put the police officer (and any bystanders) in even greater danger. 2) Thus, even if Breen reasonably believed that the on-coming car posed a serious threat of harm to him the decision to fire at the car was flagrantly inconsistent with proper police procedure. 3) The decision to fire the second shot was entirely inconsistent with proper police procedure for an additional reason.  Breen said that he fired the second shot because he was trained always to fire twice if he fired once.  Such a practice is entirely inconsistent with proper police practice and instruction. Proper police practice requires that each shot be justified. If the second shot was not necessary – as it was not – it was completely inconsistent with proper police practice even if the first shot had been proper (which it wasn't). These principles are fundamental to police work, taught by police departments around the country, and well known to trained police officers.  4) It was completely inconsistent with proper police practice for an officer to open fire on a vehicle that was approaching in the circumstances described by the defendant: the proper practice was perfectly clear: get out of the way of the car.  5)It was also completely inconsistent with proper police practice to fire the second shot under the circumstances described by the officer: the officer's position made the second shot useless at best; and the decision to fire a second shot because a first shot had been fired is completely at odds with the basic rules of the use of force well known to every police officer. 6) Dr. Fyfe will also testify that the decision to shoot from the position where the officer was actually located relative to the car was grossly improper, in violation of the most elementary standards of police practice. This conclusion applies fully to both the first and second shots. 7) A reasonable police officer would know that shooting Vicki Cooper for the purpose of preventing her from leaving the scene was absolutely prohibited by universally applicable principles of police conduct. 8) Defendant Breen's conduct before the shooting was inappropriate and put him in a situation where he was aware of having created unnecessary risks. 9) Such other matters as are covered in his deposition in the pages identified below in the "testimony by deposition" section.

**Objection, subject to motion in limine.**

5 hours

| State Police Officers listed as fact witnesses | Some of the testimony of these witnesses concerning their activities in support of the investigation of the shooting may involve their relying on specialized knowledge that they have acquired as police officers |
|---|---|

### C.   Defendants' Fact Witnesses

Defendants reserve the right not to call any of these witnesses and if called by the plaintiffs to object to their testimony.  Defendants further reserve the right to call any witness listed by plaintiff's counsel but not called at trial.

1       Margaret Cowan, 46 Spring Street, Milford, CT 06460, decedent's mother is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death.**Partial objection – see motion in limine**

2       Stephen Cowan, 46 Spring Street, Milford, CT 06460, decedent's brother is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

3       Marie Cowan, 46 Spring Street, Milford, CT 06460, decedent's sister is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

4       Jackie Cowan, 46 Spring Street, Milford, CT 06460, decedent's sister is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

5       Toni Carlino, 180 Richard Street, West Haven, CT 06516, decedent's sister is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

6       Anthony Carlino, 180 Richard Street, West Haven, CT 06516, decedent's brother-in-law is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death.

7       Stephen Guerette, 7 Burke Heights Road, Wallingford, CT 06492, will testify concerning his relationship with Victoria Cooper, her employment at the American Steak House, her use of crack cocaine, her purchase of crack cocaine for others, the activities of the evening preceding her death and the early morning hours on the date of her death, his encounter with Officer Breen and activity following the traffic stop. **Objection: see motion in limine; objection to cumulative and prejudicial evidence.**

13

8       Robert Cowan, Jr., 54 Dalton Street, West Haven, CT 06516, decedent's brother is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

9       Patricia Fiske, 64 Straitsville Road, Prospect, CT 06712, will testify as to Victoria Cooper's employment at the American Steak House, her use of crack cocaine and her willingness to sell crack cocaine to others. **objection – see motion in limine**

10      Michael Cowan, 155 Union Avenue, West Haven, CT 06516, decedent's brother is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

11      Karen Cowan, 155 Union Avenue, West Haven, CT 06516, decedent's sister-in-law is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

12      Mark Cowan, 182 Richard Street, West Haven, CT 06516, decedent's brother is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

13      Joanne Cowan, 182 Richard Street, West Haven, CT 06516, decedent's sister-in-law is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

14      Pam Bartolotta, 76 Schulman-Veselka, East Haddam, CT 06423, is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

15      Joni Coaches Morales, 3493 Revere Road, Riverside, CA 92503, is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

16      Patty Cwalina, 15 Datura Avenue, Milford, CT 064600, is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

17      Marjorie Dahlmeyer, 653 Long Hill Road, Guilford, CT 06516, is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death.

18      Bob Dekoyer, 89 Corliss Lane, Cheshire, CT 06410, is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

19      Bonnie Dekoyer, 89 Corliss Lane, Cheshire, CT 06410, is a damages witness who

will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

20      Sherri Fitzgerald, 168 Oxford Road, Milford, CT 06460, is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

21      Laurie Luce, 1200 Howellton Road, Woodbridge, CT 06525, is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

22      Tina Monck, 55 Carriage Drive, Naugatuck, CT 06670, is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

23      Patty Twiss, 140 Boston Road, Middletown, CT 06457, is a damages witness who will testify concerning Victoria Cooper's activities, lifestyle and quality of life prior to her death. **Partial objection – see motion in limine**

24      Detective Thomas Murray, Connecticut State Police, will testify regarding his response to the scene, the scope of his investigation, his physical findings and observations, his support of and participation in Dr. Henry C. Lee's reconstruction of the event. **Partial objection – see motion in limine**

25      Detective Jeffrey Twohill, Connecticut State Police, will testify regarding his response to the scene, the scope of his investigation, his physical findings and observations, and his support of and participation in Dr. Henry C. Lee's reconstruction of the event. **Partial objection – see motion in limine**

26      Detective William Guida, Jr., Connecticut State Police, will testify regarding his response to the scene, the scope of his investigation, his physical findings and observations, his support of and participation in Dr. Henry C. Lee's reconstruction of the event **Partial objection – see motion in limine**

27      Detective Stavros Mellakis, Connecticut State Police, will testify regarding his response to the scene, the scope of his investigation, his physical findings and observations, his support of and participation in Dr. Henry C. Lee's reconstruction of the event **Partial objection – see motion in limine**

28      Detective Jeffrey Schaefer, Connecticut State Police, will testify regarding his response to the scene, the scope of his investigation, his physical findings and observations, his support of and participation in Dr. Henry C. Lee's reconstruction of the event **Partial objection – see motion in limine**

29      Chris Manner, North Branford Police Department, will testify concerning his response to the scene, his conversation with Michael Breen, his participation in the

search for Stephen Guerette, his observations of the scene. **Partial objection – see motion in limine**

30    Dr. Harold F. Haase, Amtrak Medical Director, will testify concerning Victoria Coopers use of illegal substances and/or refusal to submit to required urinalysis during her employment at AMTRAK **objection – see motion in limine**

31    Marianne Letterio, Manager Health Services, Amtrak, 30th Street Station, #67, Philadelphia, PA 19104, will testify in person or through the taking of a trial deposition concerning Victoria Coopers use of illegal substances and/or refusal to submit to required urinalysis during her employment at AMTRAK **objection – see motion in limine**

32    Steven Alleman, Assistant General Manager, Division Operations, Amtrak, will testify in person or through the taking of a trial deposition concerning Victoria Coopers use of illegal substances and/or refusal to submit to required urinalysis during her employment at AMTRAK, as well as her employment history and termination.
      **objection – see motion in limine**

33    Officer Michael Breen will testify regarding the events leading to the stop of the Camaro, the arrest of Stephen Guerette, Guerette's escape and his subsequent chase, Victoria Cooper's operation of the Camaro toward him, the speed of the Camaro, his use of deadly force upon Ms. Cooper, his location in the roadway, and in relation to the Camaro at the time deadly force was deployed, that the use of deadly force was reasonable and justified under the circumstances confronting him, that he complied with all investigations conducted by the Connecticut State Police, Dr. Henry C. Lee and Michael Dearington, and that he was not arrested following the shooting. **Partial objection – see motion in limine.**

34    Nancy Carr, 58 Grove Street, Clinton, CT 06413, will testify as to her prior relationship with Stephen Guerette, including that Guerette told her that his plan was to run from police if ever stopped. **objection – see motion in limine**

35    Linda Powers, 321 Essex Road, Westbrook, CT 06498, will testify as to her prior relationship with Stephen Guerette, including that Guerette told her that his plan was to run from police if ever stopped **objection – see motion in limine**

36    State's Attorney Michael Dearington, 233 Church Street, New Haven, CT 06510 will testify as a fact witness as to his statutory mandate to conduct an investigation of Michael Breen's use of deadly force, the course of his investigation, the fact that Michael Breen was not arrested. **objection – see motion in limine**

37    Michael Doody, North Branford Police Department, may be called and if called will testify that he reviewed the report of Atty. Dearington as well as the CSP report and Dr. Lee's reconstruction and that he concluded that Officer Breen complied with NBPD policy when he used deadly force on July 13, 1999. **objection – see motion in limine**

16

**D.     Defendants' Expert Witnesses**

Lt. Dan Wicks

Lt. Wicks will testify concerning his background, training and experience regarding use of deadly force issues, his training responsibilities with the Massachusetts State Police regarding use of deadly force. He will testify as to the standards that exist in law enforcement for the use of deadly force, and that if one were to assume that Officer Breen was in the position and location identified by Dr. Henry Lee in his reconstruction that Officer Breen's use of deadly force would be in compliance with those standards. He will testify that the use of force by Officer Breen was reasonable and justified under the circumstances. The list of materials he relies upon are the CSP investigation, Dr. Lee's reconstruction, Atty. Dearingtons investigation and report, all of which have been marked as exhibits. If the second trial occurs, Lt. Wicks will testify that the policies and training of the North Branford Police Department on use of force issues were adequate and did not contribute to the death of Victoria Cooper. The materials he will rely on are the policies, training materials and training files of the North Branford police Dept regarding use of force, as well as his background and experience in law enforcement, as more fully described at his deposition.

**Plaintiff objects to the use of information subject to plaintiff's motion in limine re: Henry Lee; and to use of conclusions or factual assertions from Mr. Dearington's report that are inaccurate or used as a way of putting Mr. Dearington's opinions before the jury instead of the witness's opinions.**

Alan Eberhardt

He may be called as an expert witness, and will be made available to be called as a witness if the plaintiff seeks to and is allowed to introduce Dr. Eberhardt's opinions in his case in chief. When called, Dr. Eberhardt will testify as to his joint investigation with Dr. Manning into the characteristics of the witness mark made by a bullet fired from a gun similar to officer Breen's. He will testify that there is a difference in the angle formed by the left and right side of the bullet's witness mark and that in an experiment he performed the angle of the right side of the witness mark was found to be 12-17 degrees less than the angle of the left side of the witness mark, based on 6 witness marks he examined, but cautioned that the angles could be greater or lesser, and that he would not be surprised to see a difference of 20 degrees. He will testify that he did not examine the witness mark on the subject Camaro and that he would have to be cautious about saying the angle of entry of the first shot has to be less than or greater than a given numerical angle. He will testify that Dr. Lee's reconstruction is not inconsistent with his test results with respect to the angle of entry of the

first bullet.  He will testify that the CSP measurement of 39 degrees off of the left side of the witness mark is not accurate and is not a reliable estimate of the actual angle at which Officer Breen fired his first shot. He will testify as to the translation of speed in miles per hour into feet per second, and at an assumed speed how far the Camaro would travel in a given time interval.  He will testify that Officer Breen was in front of the Camaro at the time he began to pull the trigger to fire the second shot.  He will testify as to the speed tests he ran, which involved the scattering of broken glass at a given initial speed and measuring the distance the glass scattered and tumbled down the roadway.  He will testify that his findings were consistent with the Camaro traveling in excess of 20 mph at the time of the shots. Dr. Eberhardt will rely on the CSP investigation and Dr. Lee's reconstruction.  He will also rely on his testing and photographs evidencing such testing, which will be marked as identification exhibits.  Dr. Eberhart will also testify as to the firearms testing by Kent Schwendy.  Because Mr. Schwendy was disclosed, by agreement with defense counsel, as an expert on May 12 2005, and deposed on May 13, 2005, the plaintiff has agreed to accept Dr. Eberhardts opinions as to Mr. Schwendy at a later time, and the defendants are trying for disclosure prior to the pretrial conference on June 7, 2005.

**Plaintiff objects to opinions from this witness that differ from those he expressed at his deposition and to the use of information subject to plaintiff's motion in limine re: Henry Lee. Plaintiff reserves her right to object to information about Mr. Schwendy and to any information about Mr. Schwendy not produced prior to June 7.**

| | |
|---|---|
| Dr. Charles Manning | He may be called as an expert witness, and will be made available to be called as a witness if the plaintiff seeks to and is allowed to introduce Dr. Manning's opinions in his case in chief.  When called, Dr. Manning will testify as to his joint investigation with Dr. Eberhart into the characteristics of the witness mark made by a bullet fired from a gun similar to officer Breen's.  He will testify that there is a difference in the angle formed by the left and right side of the bullet's witness mark and that in an experiment performed by Dr. Eberhardt the angle of the right side of the witness mark was found to be 12-17 degrees less than the angle of the left side of the witness mark, based on 6 witness marks examined. He concurs with the cautions issued by Dr. Eberhardt that the angles could be greater or lesser, and that he would not be surprised to see a difference of 20 degrees. He will testify that he did not examine the witness mark on the subject Camaro.  He will testify that when pressed for a response at deposition he opined that it was reasonably probable that the angle from which the first shot was fired was 13 degrees; however, he does not consider himself certain about this opinion, particularly in light of the fact that he never examined the |

subject Camaro.  Dr. Manning agrees with Dr. Eberhart's statement that one would have to be cautious about saying the angle of entry of the first shot has to be less than or greater than a given numerical angle.  He will testify that Dr. Lee's reconstruction is not inconsistent with his investigation and analysis with respect to the angle of entry of the first bullet.  He will testify that the CSP measurement of 39 degrees off of the left side of the witness mark is not accurate and is not a reliable estimate of the actual angle at which Officer Breen fired his first shot.  He will testify as to the translation of speed in miles per hour into feet per second, and at an assumed speed how far the Camaro would travel in a given time interval.  He will testify that Officer Breen was in front of the Camaro at the time he began to pull the trigger to fire the second shot.  He will testify as to the speed tests he ran, which involved the scattering of broken glass at a given initial speed and measuring the distance the glass scattered and tumbled down the roadway.  He will testify that his findings were consistent with the Camaro traveling in excess of 20 mph at the time of the shots. Dr. Manning will rely on the CSP investigation and Dr. Lee's reconstruction.  He will also rely on his testing and photographs evidencing such testing, which will be marked as identification exhibits.  Dr. Manning will also testify as to the firearms testing by Kent Schwendy.  Because Mr. Schwendy was disclosed, by agreement with defense counsel, as an expert on May 12, 2005, and deposed on May 13, 2005, the plaintiff has agreed to accept Dr. Manning's opinions as to Mr. Schwendy at a later time, and the defendants are trying for disclosure prior to the pretrial conference on June 7, 2005. **Plaintiff objects to opinions from this witness that differ from those he expressed at his deposition and to the use of information subject to plaintiff's motion in limine re: Henry Lee.  Plaintiff reserves her right to object to information about Mr. Schwendy and to any information about Mr. Schwendy not produced prior to June 7. Plaintiff specifically objects to testimony in conflict with his deposition testimony that he could determine the angle of the first bullet to a reasonable degree of scientific certainty.**

Dr. Wayne Carver     Dr. Carver is expected to testify concerning his autopsy of Ms. Cooper, her ingestion of cocaine, the amount of cocaine so ingested and his communications with the CSP about her cocaine ingestion.  He will testify that the level of cocaine detected in her blood was .72mg/liter, which is a high quantity and is fatal to some people at that level.  He will testify that cocaine at that level causes manic episodes, paranoia and hyperactivity in some persons.  He relies on his autopsy report and the toxicology test results that are marked as exhibits. **Partial bjection: see motion in limine re illegal drugs. Objection also to speculative testimony about possible effects of cocaine.**
.

| | |
|---|---|
| Dr. Henry Lee | Dr. Lee is expected to testify concerning the forensic reconstruction of the event, the findings and observations made during the scene investigation, including the starting point and path of the Camaro, the speed of the Camaro, the location of officer Breen in the roadway and in relation to the Camaro at the time of his first and second shots, presence and significance of glass fragments, gunshot residue and spent bullet cartridge cases, trajectory patterns of the 2 shots fired, ejection patterns of Officer Breen's handgun, that the shooting incident involved a series of active and dynamic movements, and that the entire shooting incident took place within seconds. His detailed opinions are set forth in his reconstruction report, which is marked as an exhibit, and his deposition transcript. He will rely on the CSP investigation and his own investigation, and photographs, all marked as exhibits. **Partial objection: see motion in limine re: Opinions of Henry Lee** |
| Dr. Kenneth Selig | Dr. Selig is expected to testify concerning Dr. Rounsaville's opinion that the plaintiff's decedent would have spontaneously recovered from her cocaine use. Dr. Selig will testify that neither Dr. Rounsaville nor any other expert could make that determination. He will rely on the records reviewed by Dr. Rounsaville, and his experience as a psychiatrist who has treated substance abuse and addictive behavior.**Objection: see motion in limine re illegal drugs.** |
| Dr. Sherwood Lewis, CT Medical Examiner, Toxicologis | Dr. Lewis is expected to testify concerning his toxicological testing of blood samples drawn from Victoria Cooper and his findings concerning the presence of cocaine and the blood concentration of cocaine. He will testify that he determined that Victoria Cooper had a blood concentration of cocaine in the amount of .72 mg/L at the time of her death. He will testify that he reported his results to Dr. Carver. He will rely on the blood samples provided to him and the tests he performed at his laboratory. **Objection: see motion in limine re illegal drugs** |
| State's Attorney Michael Dearington, 233 Church Street, New Haven, CT 06510 – | Attorney Dearington is expected to testify concerning his analysis of the information provided to him by the State Police and Dr. Henry C. Lee, and his conclusion that the use of deadly force by Officer Breen was justified under the circumstances confronting Officer Breen. He will testify that he conducted his own independent review of the entire investigation and reconstruction and found it to be credible. He will testify that he is charged with responsibility to determine whether an arrest of Officer Breen should be made, and he determined that no arrest was warranted. He relies on the CSP investigation and Dr. Lee's reconstruction, which have been marked as exhibits.**Objection – see motion in limine re Michael Dearington** |
| Dr. Richard Pinder, Office of the Chief | Dr. Pinder will testify concerning his toxicological testing of substances found in the Camaro and the persons of Victoria Cooper and Stephen |

| | |
|---|---|
| Medical Examiner, Toxicologist - | Guerette, and that the tests were positive for cocaine, in differing concentrations and the significance of various concentrations of cocaine.  He will testify that the **objection: see motion in limine re illegal drugs.** |
| Mr. Michael Miller | Michael Miller, plaintiffs disclosed expert, through deposition or in person, will testify as to his analysis and findings concerning the downward trajectory of the first shot fired by Officer Breen, and the implications associated therewith, including the range of distances Officer Breen could have been from the Camaro given his height and testimony concerning how he held his gun at the time the first shot was fired.  He will testify that a person of Breen's height would not likely be farther than approximately 25 feet ahead of the Camaro at the time the first shot left the muzzle of Officer Breen's firearm.  Mr. Miller will also testify as to standard human reaction times for specific tasks, and with respect to the actions Officer Breen took as the Camaro approached him.  The chart created by Mr. Miller regarding reaction times will be marked as an exhibit. Mr. Miller will rely on his education, training, investigation in this case, and his experience, as well as his review of materials produced in discovery, the CSP investigationa nd Dr. Lee's reconstruction.**Objection: plaintiff provisionally objects that if she is not permitted to rely on defense experts, sauce for the goose is sauce for the gander. Plaintiff objects to questioning about conclusions drawn from information from Dr. Lee subject to the motion in limine, particularly with regard to the downward angle of the first bullet.** |
| Detective Thomas Murray | Detective Thomas Murray, Connecticut State Police, will testify regarding his response to the scene, the scope of his investigation, his physical findings and observations, his support of and participation in Dr. Henry C. Lee's reconstruction of the event.  He will testify that the CSP measurement of 39 degrees along the left side of the bullet strike on the subject Camaro was not a reliable indicator of the angle from which Officer Breen fired his first shot.  He will testify that he did not reconstruct the event and that he defers to Dr. Lee's conclusions reached.  He will rely on the CSP investigation and Dr. lees reconstruction report. |
| Det. Jeffrey Twohill | Detective Jeffrey Twohill, Connecticut State Police, will testify regarding his response to the scene, the scope of his investigation, his physical findings and observations, his support of and participation in Dr. Henry C. Lee's reconstruction of the event.  He is expected to testify that the CSP measurement of 39 degrees along the left side of the bullet strike on the subject Camaro was not a reliable indicator of the angle from which Officer Breen fired his first shot.  He will testify that he did not reconstruct the event and that he defers to Dr. Lee's conclusions |

reached.

| | |
|---|---|
| Detective William Guida, Jr. | Detective William Guida, Jr., Connecticut State Police, will testify regarding his response to the scene, the scope of his investigation, his physical findings and observations, his support of and participation in Dr. Henry C. Lee's reconstruction of the event. He will testify that the CSP measurement of 39 degrees along the left side of the bullet strike on the subject Camaro was not a reliable indicator of the angle from which Officer Breen fired his first shot. He will testify that he did not reconstruct the event and that he defers to Dr. Lee's conclusions reached. |
| Detective Stavros Mellakis | Detective Stavros Mellakis, Connecticut State Police, will testify regarding his response to the scene, the scope of his investigation, his physical findings and observations, his support of and participation in Dr. Henry C. Lee's reconstruction of the event. He is expected to tetstify that the CSP measurement of 39 degrees along the left side of the bullet strike on the subject Camaro was not a reliable indicator of the angle from which Officer Breen fired his first shot. He will testify that he did not reconstruct the event and that he defers to Dr. Lee's conclusions reached. |
| Detective Jeffrey Schaefer | Detective Jeffrey Schaefer, Connecticut State Police, will testify regarding his response to the scene, the scope of his investigation, his physical findings and observations, his support of and participation in Dr. Henry C. Lee's reconstruction of the event. He is expected to testify that the CSP measurement of 39 degrees along the left side of the bullet strike on the subject Camaro was not a reliable indicator of the angle from which Officer Breen fired his first shot. He will testify that he did not reconstruct the event and that he defers to Dr. Lee's conclusions reached. |

11.    **Exhibits**

A.    <u>**Plaintiff's Exhibits**</u>

| # | DESCRIPTION |
|---|---|
| 1 | July 27 Breen Report |
| 2 | Sketch map-Guida Sketch map 9/2/99 |
| 3 | Enlargement-Guida Sketch map 9/2/99 |
| 4 | photo 30-Aerial Photography Report by Detective Murray 1/7/00 |
| 5 | photo 6-Aerial Photography Report by Detective Murray 1/7/00 |
| 6 | photo 1-overhead photo of car taken on 10/23/99 |
| 7 | map from Officer Breen-7/13/99 |
| 8 | sketch map from Officer Breen-8/3/99 |
| 9 | aerial photo with marking-Breen ex 7 |
| 11 | Photo 1-attached to photo report 8/25/99 |
| 12 | Photo 9-attached to photo report 8/25/99 |
| 13 | Photo 12-attached to photo report 8/25/99 |
| 14 | State police video (video only) 7/13/99 – **Objection, defense requires audio as well as video** |
| 15 | Photo 1-Color Photography Report 7/13/99 |
| 16 | Photo 2-Color Photography Report 7/13/99 |
| 17 | Photo 6-Color Photography Report 7/13/99 |
| 18 | Photo 9-Color Photography Report 7/13/99 |
| 19 | Photo 10-Color Photography Report 7/13/99 |
| 20 | Photo 11-Color Photography Report 7/13/99 |
| 21 | Photo 13-Color Photography Report 7/13/99 – **Objection, probative value outweighed by prejudicial effect.** |

22      Photo 14-Color Photography Report 7/13/99 – **Objection, probative value outweighed by prejudicial effect.**

23      Photo 18-Color Photography Report 7/13/99 – **Objection, probative value outweighed by prejudicial effect.**

24      Photo 20-Color Photography Report 7/13/99

25      Photo 26-Color Photography Report 7/13/99

26      Photo 29-Color Photography Report 7/13/99

27      Photo 33-Color Photography Report 7/13/99

28      Photo 35-Color Photography Report 7/13/99

29      Photo 37-Color Photography Report 7/13/99

30      Photo 38-Color Photography Report 7/13/99

31      Photo 39-Color Photography Report 7/13/99

32      Photo 40-Color Photography Report 7/13/99

33      Scene Photo 14-State Police Reconstruction Report

34      Scene Photo 24-State Police Reconstruction Report

35      Scene Photo 28-State Police Reconstruction Report

36      Scene Photo 30-State Police Reconstruction Report

37      sketch showing bullet locations

38      Scene Photo 32-State Police Reconstruction Report

39      P-19-Envelopes with Glass - Murray depo exhibits

40      P-20-Envelopes with Glass - Murray depo exhibits

41      P-21-Envelopes with Glass - Murray depo exhibits

42      P-22-Envelopes with Glass - Murray depo exhibits

43      P-23-Envelopes with Glass - Murray depo exhibits

44      Photo 1-Color Print Photography Report done of  hood by Detective Guida 8/23/99

45      Photo 4-Color Print Photography Report done of Camero hood
        by Detective Guida 8/23/99

46      Photo 6-Color Print Photography Report done of Camero hood
        by Detective Guida 8/23/99

47      photo 2-from 2nd Bullet Trajectory Photography Report by
        Detective Murray 1/13/00

48      photo 3-2nd Bullet Trajectory Photography Report by Detective
        Murray 1/13/00

49      Photo 5-Photo of Hood with String & Protractor 7/22/99

50      Photo 6-Photo of Hood with String & Protractor 7/22/99

51      Photo 7-Photo of Hood with String & Protractor 7/22/99

52      Photo 8-Photo of Hood with String & Protractor 7/22/99

53      P-12-bullets and casings recovered from scene - Murray
        exhibits

54      P-13-bullets and casings recovered from scene - Murray
        exhibits

55      P-14-bullets and casings recovered from scene - Murray
        exhibits

56      P-15-bullets and casings recovered from scene - Murray
        exhibits

57      P-16-bullets and casings recovered from scene - Murray
        exhibits

58      P-18-bullets and casings recovered from scene - Murray
        exhibits

59      P-24-Envelopes with Glass - Murray depo exhibits

60      P-25-Envelopes with Glass - Murray depo exhibits

61      handcuffs P-32

62      Registration P-33

63      Towing bill P-34

64      Items from  hood, P-36, redacted to exclude drug paraphernalia
        -  – **Objection to redaction re drug paraphernalia.**

| 65 | Broken glass P-42 |
| 66 | photo of glass-Twohill Exhibit 2 |
| 67 | photo of glass-Twohill Exhibit 3 |
| 68 | photo of glass-Twohill Exhibit  4 |
| 69 | photo of glass-Twohill exhibit 5 |
| 70 | photo of glass- Twohill exhibit 6 |
| 71 | not to scale sketch of the found bullet |
| 72 | Firearms Exam from James Stephenson & Edward Jachimowicz, 8/2/99 |
| 73 | Vehicle Summary Report redacted to remove references to drugs and paraphernalia under passenger seat and passenger front floor – **Objection to any redaction.** |
| 74 | Cross Slope Report |
| 75 | Victim's shirt – **Objection, probative value outweighed by prejudicial effect, subject to motion in limine** |
| 76 | Autopsy Photos – **Objection, probative value outweighed by prejudicial effect, subject to motion in limine** |
| 77 | Autopsy External Examination section, redacted to delete drug reference – **Objection to redaction.** |
| 78 | Autopsy report "Evidence of Injury" section |
| 79 | 7/26/92 medical  record of visit to eye doctor – **Objection, irrelevant testimony, not probative, subject to motion in limine** |
| 80 | Report of Dr. Forkiotis– **Objection, irrelevant testimony, not probative, subject to motion in limine** |
| 81 | Reconstruction Report, redacted to remove references to material challenged on Daubert grounds, including, e.g., reference to vertical angle of first bullet – **Objection to any redaction** |
| 82 | Report from Charles Manning, Ph.D, P.E. – **Objection, hearsay, irrelevant, subject to motion in limine** |

26

83       Information about James J. Fyfe (if Dr. Fyfe is unable to appear in person). Available at http://www.nyc.gov/html/nypd/html/training/dc_training.html - **Objection, hearsay, not subject to cross examination by defense.**

85       Still frames from animation showing Dr. Manning's conclusions – **Objection, subject to motion in limine.**

86       animation to demonstrate Schwendy conclusions– **Objection, subject to motion in limine, relevance, prejudicial outweighs probative value**

87       Prior version of animation, showing Dr. Manning's conclusions– **Objection, subject to motion in limine, relevance, prejudicial outweighs probative value**

88       Schwendy photograph of Camaro hood – **Objection, subject to motion in limine**

89       Schwendy table - sources of input data **- Objection, subject to motion in limine**

90       Schwendy table – calculations**- Objection, subject to motion in limine**

91       Schwendy table - reconstruction calculations**- Objection, subject to motion in limine**

92       Schwendy table - time line reconstruction **- Objection, subject to motion in limine**

93       Enlargement of animation still frame**- Objection, subject to motion in limine**

94       Enlargement of animation still frames side by side**- Objection, subject to motion in limine**

95       model of scene, hard copy of animation still frames and objects depicted in animation**- Objection, subject to motion in limine, never disclosed.**

96       photo of bullet strikes in  hood **- Objection, subject to motion in limine**

97       photo of bullet strikes in hood**- Objection, subject to motion in limine**

27

98        photo of bullet strikes in  hood **- Objection, subject to motion in limine**

99        photo of bullet strikes in  hood **- Objection, subject to motion in limine**

100       photo of bullet strikes in  hood **- Objection, subject to motion in limine**

101       photo of bullet strikes in  hood **- Objection, subject to motion in limine**

102       photo of bullet strikes in  hood **- Objection, subject to motion in limine**

103       photo of bullet strikes in  hood **- Objection, subject to motion in limine**

104       N. Branford policy re use of force as of 7/13/99 – **Objection, irrelevant to Trial #1.**

105       N. Branford policy re use of force, as changed after shooting– **Objection, irrelevant to Trial #1.**

106       Glock informational material

107       Exemplar Glock 22 – **Objection, prejudice outweighs probative value.**

108       Exemplar cartridge

109       Autostats data re Camaro

110        manufacturer specs re: acceleration of Camaro

111       Specs re headlight illumination

112       sketch by Maureen Small

113       Statement of Stephen Small, 8/11/99 – **Objection, hearsay.**

114       Atty John J. Kelly billing records for Michael Breen for the period July 13-27, 1999. **Objection, irrelevant, invasion of atty/client privilege, subject to motion in limine.**

115       collection of family photographs – **Objection, prejudice outweighs probative value.**

116       Vicki Cooper college transcript

117     Color Picture at Funeral - **Objection, prejudice outweighs probative value**.

118     Black & White Picture at Funeral- **Objection, prejudice outweighs probative value**.

119     Vicki Cooper payroll register from American Steakhouse -

120     Divorce Complaint, Breen v. Breen, April 1999 - **Objection, irrelevant, prejudice outweighs probative value**.

121     Financial Affidavit - Michael Breen, 6/7/99 **Objection, irrelevant, prejudice outweighs probative value**.

122     Financial Affidavit - Ann Breen, 6/7/99 **Objection, irrelevant, prejudice outweighs probative value**.

123     Agreement 6/7/99 **Objection, irrelevant, prejudice outweighs probative value**.

124     Connecticut State Police Training Academy - Physical Fitness Assessment-11/16/82 **Objection, irrelevant, prejudice outweighs probative value.**

125     Connecticut State Police - Exit Interview- **Objection, irrelevant, prejudice outweighs probative value.**11/29/82

126     To Officer Breen from Sgt. Delfino re: Written Warning re: forgetfulness of filling out paperwork-10/16/87 **Objection, irrelevant, prejudice outweighs probative value.**

127     To Officer Breen from Chief Matthew Canelli re: Motor Vehicle Accident (first at fault accident)-12/2/96 **Objection, irrelevant, prejudice outweighs probative value.**

128     To Officer Breen from Chief Matthew Canelli re: Motion Vehicle Accident (second at fault accident)-2/24/97 **Objection, irrelevant, prejudice outweighs probative value.**

129     North Branford Police Department - Firearms Training **Objection, irrelevant, prejudice outweighs probative value, no relevant in Trial #1.**

130     Firearms Training - Qualifying Scores-1996-1998 **Objection, irrelevant, prejudice outweighs probative value, no relevant in Trial #1.**

131     Objection to Disclosure of Records-10/13/99 **Objection, irrelevant, prejudice outweighs probative value, no relevant in Trial #1.**

132     Defendants' responses to requests for admission numbers 52, 78-81, 93, 161-166

133     Schwendy photograph of Camaro hood – **objection, subject to motion in limine.**

134     Schwendy photograph of Camaro hood– **objection, subject to motion in limine.**

135     Schwendy photograph of Camaro hood– **objection, subject to motion in limine.**

136     Schwendy photograph of Camaro hood– **objection, subject to motion in limine.**

137     Schwendy photograph of Camaro hood– **objection, subject to motion in limine.**

138     Schwendy photograph of Camaro hood– **objection, subject to motion in limine.**

139     Schwendy photograph of Camaro hood– **objection, subject to motion in limine.**

140     Schwendy photograph of exemplar hood– **objection, subject to motion in limine.**

141     Schwendy photograph of exemplar hood– **objection, subject to motion in limine.**

142     Schwendy photograph of exemplar hood– **objection, subject to motion in limine.**

143     Schwendy photograph of exemplar hood– **objection, subject to motion in limine.**

144     Schwendy photograph of test procedure– **objection, subject to motion in limine.**

145     Schwendy photograph of test procedure– **objection, subject to motion in limine.**

146     Schwendy photograph of test procedure– **objection, subject to motion in limine.**

147    Schwendy photograph of test procedure– **objection, subject to motion in limine.**

148    Schwendy photograph of test bullet strikes– **objection, subject to motion in limine.**

149    Schwendy photograph of test bullet strikes– **objection, subject to motion in limine.**

150    Schwendy photograph of test bullet strikes– **objection, subject to motion in limine.**

151    Schwendy photograph of test bullet strikes– **objection, subject to motion in limine.**

152    Schwendy photograph of test bullet strikes– **objection, subject to motion in limine.**

**B.    Defendants' Exhibits**

D-1      CSP Initial Report (Trooper Murray, 3 pages) **Objection: states expert conclusions; cumulative; unduly prejudicial; irrelevant**

D-2      CSP Supplemental Report (Detective Topulos, 1 page) **potential objection: document not completely identified**

D-3      CSP Supplemental Report (Detective Murray, 1 page)

D-4      Consent to Search signed by John Gurette

D-5      Video Report by Detective Guida dated 7/30/99 **Objection to sound and any reference to narcotics based on motion in limine**

D-6      Recording of police communications by Officer Breen before stop and after shooting – **Objection – defendants have not authenticated this exhibit despite requests**

D-7      Sketch re location of shell casings

D-8      Supplemental CSP Report entitled "Sketch Map Report," 1 page, Detective William Guida, together with attached sketch

D-9      Supplemental CSP Report entitled "Evidence Report" by Detective Twohill, 9 pages, dated 9/7/99 **Partial objection based on motion in limine re narcotics**

D-10    Inventory of property seized, prepared by Detective Murray dated 8/10/99, 7 pages  **Objection. Cumulative and objection based on motion in limine re narcotics**

D-11    Request for Examination of Physical Evidence prepared by Detective Thomas Murray, dated 7/16/99, 8 pages **objection: Cumulative and objection based on motion in limine re narcotics**

D-12    Request for Examination directed to Department of Health Services, 1 page, by Detective Murray **objection based on motion in limine re narcotics**

D-13    Toxicology Final Report, 4 pages, dated 11/3/99 **objection based on motion in limine re narcotics**

D-14    Handwritten notes containing information received from Dr. Pinder and Dr. Carver, 4 pages **objection based on motion in limine re narcotics, lack of foundation, and hearsay**

D-15    Report of Investigation by Office of the Chief Medical Examiner, 4 pages, dated 8/19/99 **Partial objection based on motion in limine re narcotics**

D-16    Postmortem Report by Office of Chief Medical Examiner, 6 pages, dated 8/19/99  **Partial objection based on motion in limine re narcotics**

32

D-17     Toxicology Report signed by Sherwood Lewis, Ph.D., 1 page, dated 9/2/99 **objection based on motion in limine re narcotics**

D-18     Search and Seizure Warrant, Application, and Inventory, 6 pages **Objection, cumulative, irrelevant, prejudicial (Rule 403), objection based on motion in limine re narcotics**

D-19     Supplement CSP Report entitled "Vehicle Survey Report," 5 pages, dated 7/15/99 by Trooper Mellekas **partial objection based on motion in limine re narcotics**

D-20     Patient and file notation from Yale University Eye Center, 1 page, dated 9/21/93, ID only, pending outcome of motion in limine

D-21     Supplemental CSP Report entitled "Trajectory Photography Report," 1 page, Detective Murray

D-22     Supplemental CSP Report, 1 page, Detective Murray, regarding measurement of crown on Route 80

D-23     Supplemental CSP report Color Photography report Det. Schaefer, 8-5-99

D-24     Photograph 1 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-25     Photograph 2 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-26     Photograph 3 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-27     Photograph 4 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-28     Photograph 5 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-29     Photograph 6 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-30     Photograph 7 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-31     Photograph 8 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-32     Photograph 9 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-33     Photograph 10 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-34     Photograph 11 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-35     Photograph 25 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-36     Photograph 26 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-37     Photograph 27 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-38     Photograph 28 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-39     Photograph 29 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-40     Photograph 30 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-41     Photograph 31 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-43     Photograph 33 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-44     Photograph 34 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-45     Photograph 35 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-46     Photograph 36 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as

Exhibit 23

D-47    Photograph 37 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-48    Photograph 38 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-49    Photograph 39 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-50    Photograph 40 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-51    Photograph 41 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-52    Photograph 42 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-53    Photograph 43 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-54    Photograph 44 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-55    Photograph 45 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-56    Photograph 46 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-57    Photograph 47 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-58    Photograph 48 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23

D-59    Photograph 51 taken by Detective Schaefer and matching the descriptions contained in the Color Photography Report marked as Exhibit 23 **objection based on motion in limine re narcotics;**

**irrelevant; cumulative; prejudicial under Rule 403.**

D-60    Technical information re Glock 9mm handgun

D-61    NBPD use of force policy (offered in 2d trial only)

D-62    Survey map of scene--Conklin

D-63    Plaintiff's employment records from Amtrak, and Bank **objection based on motion in limine re narcotics; prejudicial under Rule 403; cumulative.**

D-64    Atty. Dearington's report regarding the shooting death of Victoria Cooper **Objection see motion in limine**

D-65    State Police Videotape **Objection to sound – cumulative, prejudicial per Rule 403, objection based on motion in limine re narcotics**

D-66    Supplemental CSP Report regarding Dr. Henry Lee reconstruction, 2 pages, Detective Murray

D-67    Reconstruction report of Dr. Henry C. Lee **Partial objection based on motion in limine**

D-68    CSP Aerial Photograph 1 showing Dr. Lee's reconstruction of the event, 10-23-99.

D-69    CSP Aerial Photograph 2 showing Dr. Lee's reconstruction of the event, 10-23-99.

D-70    CSP Aerial Photograph 5 showing Dr. Lee's reconstruction of the event, 10-23-99.

D-71    CSP Aerial Photograph 6 showing Dr. Lee's reconstruction of the event, 10-23-99.

D-72    CSP Aerial Photograph 7 showing Dr. Lee's reconstruction of the event, 10-23-99.

D-73    CSP Aerial Photograph 8 showing Dr. Lee's reconstruction of the event, 10-23-99.

D-74    CSP Aerial Photograph 9 showing Dr. Lee's reconstruction of the event, 10-23-99.

D-75    CSP Aerial Photograph 10 showing Dr. Lee's reconstruction of the event,10-23-99.

D-76    CSP Ground Photograph 1 showing Dr.Lee's reconstruction of the event

D-77    CSP Ground Photograph 2 showing Dr. Lee's reconstruction of the event

D-78    CSP Ground Photograph 3 showing Dr. Lee's reconstruction of the event

| D-79 | CSP Ground Photograph 4 showing Dr. Lee's reconstruction of the event |
| D-80 | CSP Ground Photograph 5 showing Dr. Lee's reconstruction of the event |
| D-81 | CSP Ground Photograph 8 showing Dr. Lee's reconstruction of the event |
| D-82 | CSP Ground Photograph 9 showing Dr. Lee's reconstruction of the event |
| D-83 | CSP Ground Photograph 10 showing Dr. Lee's reconstruction of the event |
| D-84 | CSP Ground Photograph 11 showing Dr. Lee's reconstruction of the event |
| D-85 | CSP Ground Photograph 12 showing Dr. Lee's reconstruction of the event |
| D-86 | CSP Ground Photograph 13 showing Dr. Lee's reconstruction of the event |
| D-87 | CSP Ground Photograph 14showing Dr. Lee's reconstruction of the event |
| D-88 | CSP Ground Photograph 15 showing Dr. Lee's reconstruction of the event |
| D-89 | CSP Ground Photograph 16 showing Dr. Lee's reconstruction of the event |
| D-90 | CSP Ground Photograph 17 showing Dr. Lee's reconstruction of the event |
| D-91 | CSP Ground Photograph 18 showing Dr. Lee's reconstruction of the event |
| D-92 | CSP Ground Photograph 19 showing Dr. Lee's reconstruction of the event |
| D-93 | CSP Ground Photograph 20 showing Dr. Lee's reconstruction of the event |
| D-94 | CSP Ground Photograph 21 showing Dr. Lee's reconstruction of the event |
| D-95 | CSP Ground Photograph 22 showing Dr. Lee's reconstruction of the event |
| D-96 | CSP Ground Photograph 23 showing Dr. Lee's reconstruction of the event |
| D-97 | CSP Ground Photograph 24 showing Dr. Lee's reconstruction of the event |

| | |
|---|---|
| D-98 | CSP Ground Photograph 25 showing Dr. Lee's reconstruction of the event |
| D-99 | CSP Ground Photograph 26 showing Dr. Lee's reconstruction of the event |
| D-100 | CSP Ground Photograph 27 showing Dr. Lee's reconstruction of the event |
| D-101 | CSP Ground Photograph 28 showing Dr. Lee's reconstruction of the event |
| D-102 | CSP Ground Photograph 29 showing Dr. Lee's reconstruction of the event |
| D-103 | CSP Ground Photograph 30 showing Dr. Lee's reconstruction of the event |
| D-104 | CSP Ground Photograph 31 showing Dr. Lee's reconstruction of the event |
| D-105 | CSP Ground Photograph 32 showing Dr. Lee's reconstruction of the event |
| D-106 | Defendants response to plaintiffs first request for admissions, #57 (in the event no stipulation is received as to the fact admitted) **Objection; Defendants are not entitled to offer their own admission, and have not appropriately responded to requests for admission.** |

12.     **Deposition Testimony**

Plaintiff anticipates that the following depositions will be introduced at trial:

| | | |
|---|---|---|
| Charles Manning Deposition | • | 26,6 - 27,14 |
| | • | 30,22 - 31,5 |
| | • | 40,22 - 42,2 |
| | • | 65,9 - 16 |
| | • | 88,23 - 89,6 |
| | • | 89,23 - 91,5 |
| | • | 100, 7 - 101 |
| | • | 103,12 - 106,17 |
| | • | 109,15 - 112,8 |
| | • | 113,5 - 114,8 |
| | • | 116,4 - 117,16 |
| | • | 123,24 - 125,6 |
| | | |
| Alan Eberhardt Deposition | • | 8,22 - 11,3 |
| | • | 11,20 - 14,4 |
| | • | 28,15 - 29,16 |
| | • | 48 - 49 |
| | | |
| James Fyfe deposition (if Dr. Fyfe is unable to testify in person) | | 4, 8 - .12,  21 |
| | | 14, 15 - 112, 17 |
| | | 114, 23 - 123, 22 |

The defendants do not anticipate testimony by deposition unless they are notified that such witness is unavailable and will seek leave to obtain a trial deposition.

**13.     Requests for Jury Instructions.**

Filed separately.

**14.     Anticipated Evidentiary Problems.**

A.     Plaintiff is filing motions in limine on the following issues:

1.  Report and testimony of Michael Dearington

2.  Opinions of Dr. Henry Lee

3.  Evidence concerning illegal drugs

4.  Previous incidents involving Stephen Guerette

5.  Stephen Guerette's criminal record

6.  Vicki Cooper's personal body markings

7.  Other irrelevant conduct of Ms. Cooper

8.  Late disclosed exhibit – audio dispatch tape

B.     The defendants plan on filing motions in limine on the following issues/evidence:

1.     Testimony of Dr. Fyfe;

2.     Testimony of Dr. Forkitos;

3.     Testimony by any witness concerning decedent's vision condition;

4.     Testimony of Attorney Kelly  and any evidence concerning Officer Breen's meetings with Attorney Kelly;

5.     Testimony of Dr. Rounsaville;

6.     Testimony of Mr. Schwendy;

7.     Plaintiff's Animation;

8.     The decedent's clothes;

9.     Autopsy Photos of the plaintiff;

10.     Photos of the deceased from the State Police investigation

11.    Family photos;

12.    CVs of Dr. Fyfe and Dr. Rounsaville;

13.    Certain issues related to Monell claims not relevant to first trial;

14.    Written statement of Mr. Smalls.

15.    Deposition transcripts of Dr. Manning and Eberhardt

**15.    Proposed Findings and Conclusions.**

Not applicable.

**16.    Trial Time.**

The parties estimate the trial against Officer Breen will last between 5-7 days. The remaining evidence against the Town, if necessary, will occupy between 1-2 days.

**17.    Further Proceedings.**

The parties submit no further proceedings are necessary prior to trial other than the adjudication of their motions in limine as listed in section 14, *infra*

**18.    Election for Trial by Magistrate.**

The parties have not agreed to have the case tried by a United States Magistrate.

THE PLAINTIFF
MARGARET COWAN,
ADMINISTRATRIX OF THE ESTATE
OF VICTORIA COOPER

_____

David N. Rosen, ct00196
400 Orange Street
New Haven, Connecticut 06511
(203) 787-3513

DATE: _____

THE DEFENDANTS,
MICHAEL BREEN and TOWN OF
NORTH BRANFORD


____/s/ John J. Radshaw, III_____
Thomas R. Gerarde, ct5640
John J. Radshaw, III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)


DATE: _____