**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARGARET COWAN, | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF VICTORIA COOPER | : | NO.:  3:00 CV 0052 (RNC) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BREEN | : | |

| | | |
|---|---|---|
| MARGARET COWAN, | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF VICTORIA COOPER | : | NO.:  3:01 CV 0229 (RNC) |
| | : | |
| v. | : | |
| | : | |
| NORTH BRANFORD | : | JUNE 1, 2005 |

<u>**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**</u>

        The plaintiff in this case has claimed that her decedent was injured by the intentional acts of the defendant and that her constitutional rights were violated.  You are advised that the mere fact that a plaintiff may have been injured is not proof that an intentional harm, or constitutional violation occurred.  You may only impose liability on the defendant if the plaintiff proves an intentional harm or constitutional violation in accord with the tests and standards as I will explain them to you in the course of these jury instructions.

**I.**        <u>**INSTRUCTIONS ON 42 U.S.C. § 1983.**</u>

                                    *The Statute*

        The law to be applied in this case is the federal civil rights law which provides a remedy for individuals (or other entities) who have been deprived of their constitutional (or statutory) rights under color of state law.  Section 1983 of Title 42 of the United States Code states:

            Every person who, under color of any statute, ordinance, regulation,
            custom or usage of any State or Territory or the District of Columbia,
            subjects or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. 1983.

### Purpose of Statute

Section 1983 creates a form of liability in favor of persons who have been deprived of rights, privileges and immunities secured to them by the United States Constitution and federal statutes.  Before section 1983 was enacted in 1871, people so injured were not able to sue state officials or persons acting under color of state law for money damages in federal court.  Section 1983 was enacted to give people a federal remedy enforceable in federal court because it was feared that adequate protection of federal rights might not be available in state courts.

**Authority**:  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

### Burden of Proof

I shall shortly instruct you on the elements of plaintiff's section 1983 claim, and on the elements of defendant's affirmative defenses. The plaintiff has the burden of proving each and every element of his section 1983 claim by a preponderance of the evidence.  If you find that any one of the elements of plaintiff's section 1983 claim has not been proven by a preponderance of the evidence, you must return a verdict for the defendant. The defendant has the burden of proving each element of his affirmative defenses.  I shall shortly instruct you on the elements of these defenses.  If you find that any one of the elements of defendant's defenses has not been proven by a preponderance of the evidence, you must disregard the defense.

**Authority**:  *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

### Elements of a Section 1983 Claim

To establish a claim under section 1983, the plaintiff must establish, by a preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under color of state law;

Second, that this conduct deprived the plaintiff of rights, privileges or immunities

secured by the Constitution or laws of the United States; and

Third, that the defendant's acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff.

I shall now examine each of the three elements in greater detail.

**Authority**: *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

### *First Element-Color of Law*

The first element of the plaintiff's claim is that the defendant acted under color of state law. The phrase "under color of state law" is a shorthand reference to the words of section 1983, which includes within its scope action taken under color of any statute, ordinance, regulation, custom or usage, of any state (or territory or the District of Columbia). The term "state" encompasses any political subdivision of a state, such as a county or city, and also any state agencies or a county or city agency.

Action under color of state law means action that is made possible only because the actor is clothed with the authority of the state. Section 1983 forbids action taken under color of state law where the actor misuses power that he possesses by virtue of state law.

An actor may misuse power that he possesses by virtue of state law even if his acts violate state law; what is important is that the defendant was clothed with the authority of state law, and that the defendant's actions were made possible by virtue of state law.

**Authority**: *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1361 (1941); *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Home Telephone & Telegraph Co. v. City of Los Angeles*, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913); *Ex parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1880).

The act of a state official in pursuit of his personal aims that is not accomplished by virtue of his state authority is not action under color of state law merely because the individual happens to be a state officer.

**Authority**: *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Stengel v. Belcher*, 522 F.2d 438 (6th Cir. 1975); *cert. denied*, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed. 269 (1976).

I instruct you that the parties have agreed that Officer Breen was acting under

color of law.

### Second Element-Deprivation of Right

The second element of the plaintiff's claim is that she was deprived of a federal right by the defendant. The plaintiff claims that she was deprived of his right to be free from unreasonable seizure in violation of the Fourth Amendment to the United States Constitution. I will explain the elements of the plaintiff's Fourth Amendment claim later.

**Authority**: Martin A. Schwartz and George C. Pratt, Section 1983 Litigation Jury Instructions, 2002 Supplement, Volume 4, § 3.01.1

### Third Element-Causation

The third element which plaintiffs must prove is that each defendant's acts were a proximate cause of the injuries allegedly sustained by the plaintiffs. Proximate cause means that there must be a sufficient causal connection between the act or omission of each defendant and any injury or damage allegedly sustained by the plaintiff. An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury; that is, if the injury or damage was a reasonably foreseeable consequence of each defendant's act or omission, it was proximately caused by such act or omission. In other words, if a defendant's act or omission had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

If you find that any defendant has proved, by a preponderance of the evidence, that the plaintiff complains about an injury which would have occurred even in the absence of that defendant's conduct, you must find that the defendant did not proximately cause the plaintiff's injury.

A proximate cause need not always be the nearest cause either in time or in space. In addition, there may be more than one proximate cause of an injury or damage. Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

A defendant is not liable if plaintiff's injury was caused by a new or independent source of an injury, or the plaintiff's own actions, which intervenes or supersedes the defendant's act or omission and the plaintiff's injury and which produces a result which was not reasonably foreseeable by the defendant.

**Authority**: *Graham v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

### Injury Not Evidence of Intentional Act or Constitutional Violation.

The plaintiff in this case has claimed that she was injured by the intentional acts of the defendant and that her constitutional rights were violated. You are advised that the mere fact that a plaintiff may have been injured is not proof that an intentional harm or constitutional violation occurred. You may only impose liability on the defendant if the plaintiff proves an intentional harm or constitutional violation in accord with the tests and standards as I will explain them to you in the course of these jury instructions.

### *Use of Force*

All claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are analyzed under the Fourth Amendment and its reasonableness standard. Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. The right to make an arrest or investigatory stop carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he or she is actively resisting arrest or attempting to evade arrest by flight.

Notwithstanding probable cause to seize a suspect, an officer may only use deadly force under limited circumstances. Where a suspect threatens the officer with a weapon, or an officer otherwise reasonably believes that a suspect poses an imminent threat of serious physical harm, either to the officer or to others, it is constitutionally permissible for the officer to use deadly force.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

The reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Thus, by this standard, if you find that the defendant officer's use of force was objectively reasonable in the light of all the circumstances, you should find for the defendant.

**Authority**: *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *DeGraff v. District of Columbia*, 120 F.3d 298 (D.C. Cir. 1997); *Wardlaw v. Pickett*, 1 F.3d 1297 (D.C. Cir. 1993); *Washington v. District of Columbia*, 685 F. Supp. 264 (D.D.C 1988).

### *Officer Breen's Actions Must Be Measured By The Fourth Amendment, Not What He Could Have Done Better Or Should Have Done Differently*

The Fourth Amendment does not mandate that an officer who uses deadly force choose what in hindsight was the wisest or the best or the least intrusive alternative available.  Officers making split second decisions must only act within a range of objective reasonableness.  So it is not your responsibility to determine what Officer Breen could have done better or should have done differently, but rather to decide whether his conduct was objectively reasonable under the Fourth Amendment. The reasonableness standard does not require that officers use alternative less intrusive means, nor does the officer have to explore or attempt all feasible alternatives to avoid the situation in which deadly force was used.   The fourth Amendment does not ask whether the course of action chosen was the most prudent or the wisest one, but only whether the decision to use deadly force was objectively reasonable.

**Authority**:  *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) ("[T]he reasonableness standard does not require that officers use alternative less intrusive means."); *Deering v. Reich*, 183 F.3d 645, 652-53 (7th Cir. 1999) (it was not improper for the trial court to instruct the jury that the deputies did not need to use "all feasible alternatives" to avoid the situation in which deadly force was used);  *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 788 (4th Cir. 1998) ("Where an officer is faced with a split-second decision in the context of a volatile atmosphere about how to restrain a suspect who is dangerous, who has been recently – and potentially still is – armed, and who is coming towards the officer despite officers' commands to halt, we conclude that the officer's decision to fire is not unreasonable."); *Tauke v. Stine*, 120 F.3d 1363, 1366 (8th Cir. 1997) (court would not ask "whether the course of action chosen was the most prudent or the wisest one," but only "whether the decision to use deadly force was objectively reasonable, and we hold that it was as a matter of law."); *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995) ("[T]he Fourth Amendment prohibits unreasonable seizures, not unreasonable or ill-advised conduct in general. Consequently, we scrutinize only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment."); *Roy v. Inhabitants of Lewiston*, 42 F.3d 691,696 (1st Cir. 1994) (although "[t]he police may have done the wrong thing . . .

they were not 'plainly incompetent' nor were their actions 'clearly proscribed'"); Scott v. Henrich, 39 F. 3d 912, 915-16 (9th Cir. 1994) ("[A]s the text of the Fourth Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them."); *Plakas v. Drinsky*, 19 F.3d 1143, 1148-49 (7th Cir. 1994) ("The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the police officers actually did was reasonable."); *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993); *Tom v. Voida*, 963 F.2d 952, 963 (7th Cir. 1992); McRae v. Tena, 914 F. Supp. 363, 367 (D. Arizona 1996); *Estate of Saldana by Saldana v. Weitzel*, 912 F. Supp. 413, 416 (D. Wisc. 1996); *Yellowback v. City of Sioux Falls*, 600 N.W.2d 554, 560 (S.D. 1999).

### Officer Breen's Conduct Preceding Shooting Is Irrelevant to Determination of Reasonableness of His Actions

Plaintiffs argue that the defendant violated the Fourth Amendment because he unreasonably created the danger that required the use of deadly force.  You are reminded that the shooting was the seizure, and your scrutiny of whether the shooting complied with the reasonableness requirements of the Fourth Amendment should be limited to the events immediately preceding it.  Even if the officer committed mistakes in judgment or procedure before the shooting itself, the question you must answer is whether, at the moment of the shooting, the suspect posed an imminent threat of serious bodily harm to the officers or others.  If so, the use of deadly force would be justified and there would be no violation of the Fourth Amendment.

**Authority**:  *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001) ("An officer's conduct before the suspect threatens force is . . . relevant provided it is immediately connected to the seizure and the threat of force. . . .  The primary focus of our inquiry . . . remains on whether the officer was in danger at the exact moment of the threat of force. . . . ").  *Romero v. Board of County Commissioners*, 60 F.3d 702, 704-05 (10th Cir. 1995) ("We follow[ ] other circuits that have confined the reasonableness inquiry in excessive force cases to whether the officer was in danger at the moment of the threat."). *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995)

You should scrutinize only the shooting itself, not the events leading to the shooting, for reasonableness under the Fourth Amendment. It is from that point on that we judge the reasonableness of the use of deadly force, in light of all that the officer knew. We do not return to the prior segments of the event and, in light of hindsight, reconsider whether the prior police decisions were correct.

*Plakas v. Drinsky,* 19 F.3d 1143, 1150 (7th Cir. 1994) (officer shot from two arms

lengths away. "."). *Drewitt v. Pratt,* 999 F.2d 774, 780 (4th Cir. 1993) ("[F]ailure of [the officer] to display his badge when announcing himself as a police officer" and demanding that the driver stop, even if it was a violation of state law, was "irrelevant to the issue of whether at the moment of the shooting" the officer had probable cause to shoot). *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) ("[R]egardless of what had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe, at least at that moment, that there was a threat of physical harm."). *Rhodes v. McDaniel*, 945 F.2d 117, 120 (6th Cir. 1991). *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991). *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985). *Estate of Saldana by Saldana v. Weitzel*, 912 F. Supp. 413, 416 (E.D. Wisc. 1996). *Kathy St. Hilaire v. City of Laconia*, 885 F. Supp. 349 (D. N.H. 1995), *aff'd on other grounds*, 71 F.3d 20 (1st. Cir. 1995). *James v. City of Chester*, 852 F. Supp. 1288, 1295 (D. S.C. 1994). *Linder v. Richmond County, Ga.*, 844 F. Supp. 764, 767 (S.D. Ga. 1994). *Yellowback v. City of Sioux Falls,* 600 N.W.2d 554, 560 (S.D. 1999).

### *Effect of Violation of Regulation or General Order*

   In the course of this trial, there may have been evidence of various Town of North Branford Police Department rules, internal operating procedures, and general orders. While a violation of these rules, internal operating procedures, and general orders may subject an officer to discipline within the department, a violation does not necessarily determine whether the officer violated the reasonableness standard of the Fourth Amendment.

   Likewise, you may have heard testimony regarding generally accepted police practices and procedures, that is to say, national standards of conduct. If you find that the defendant violated generally accepted standards of conduct at the time deadly force was used, then you may consider such violation on the issue of whether the defendant acted reasonably under the Fourth Amendment. However, a violation by itself does not necessarily mean that the defendant violated the Constitution. That is a determination you should make in accordance with these instructions.

   **Authority:** *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (claims based on violations of state law and police procedure not actionable under § 1983); *Mettler v. Whitledge,* 165 F.3d 1197, 1203 (8th Cir. 1999) ("Most of the guidelines cited are for the protection of the sheriff's deputies, not of armed suspects, and in any event the breach of such guidelines is not dispositive to our determination of whether the deputies violated a clearly established constitutional right."); *Soller v. Moore*, 84 F.3d 964, 969 (7th Cir. 1996) (IACP (International Association of Chiefs of Police) Model Policy on off-duty officers engaging in traffic stops under circumstances where they are personally involved ruled inadmissible: "[W]hether it is wise public policy to allow off-duty police officers to chase late night traffic violators is beside the point; the action is not

unconstitutional and, more to the point, it has nothing to do with the key issue of whether the force used after a suspect is collared is excessive under the circumstances."); *Romero v. Board of County Commissioners*, 60 F.3d 702, 705 (10th Cir. 1995) (that officer failed to arrest and handcuff drunk driver as required under state law and procedures irrelevant: "[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim."); *Marti v. City of Maplewood*, 57 F.3d 680, 684 (8th Cir. 1995) (where plaintiff alleged officers failed to follow written policies, policies themselves not probative of municipal liability); *Scott v. Henrich,* 39 F. 3d 912, 915-16 (9th Cir. 1994) ("[Plaintiff] argues the police officers' conduct violated department guidelines for dealing with barricaded suspects. . . . Assuming internal police guidelines are relevant to determining whether use of force is objectively reasonable, they are relevant only when one of their purposes is to protect the individual against whom force is used."); *Plakas v. Drinsky,* 19 F.3d 1143, 1150-51 (7th Cir. 1994) ("[W]e think it is clear that the Constitution does not exact a police administrator's equipment list. We decline to use this case to impose constitutional equipment requirements on the police."); *Drewitt v. Pratt,* 999 F.2d 774 (4th Cir. 1993) ("failure of" the officer "to display his badge when announcing himself as a police officer" and demanding that the driver stop, even if it was a violation of state law, was "irrelevant to the issue of whether at the moment of the shooting" the officer had probable cause to shoot); *Fraire v. City of Arlington,* 957 F.2d 1268, 1276 (5th Cir. 1992) ("[E]ven a negligent departure from established police procedure does not necessarily signal violation of constitutional protections."); *Smith v. Freland*, 954 F.2d 343, 954 (6th Cir. 1992) (court rejected plaintiff's claim that officer should be liable for violating city policy that forbids officers to fire at moving vehicles and to apprehend misdemeanor suspect; issue was whether the officer violated the Constitution, "not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983."); *Elliott v. Cheshire County*, 940 F.2d 7 (1st Cir. 1991) (in suicide, properly posed constitutional question is not whether defendant adhered to agency protocols, but whether it disregarded known risk particular detainee would commit suicide); *Edwards v. Baer,* 863 F.2d 606, 608 (8th Cir. 1988) (officer's arrest on invalid warrant violated special order; but "police department guidelines do not create a constitutional right"); *Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1076 (N.D. Ill. 1999) (objective reasonableness, standard for excessive force claims, requires analysis of what hypothetical reasonable officer would have known and done in light of circumstances confronting actual officer in case; police regulations, general orders and officer training provide relevant (although not conclusive) benchmark for making such comparison); *Estate of Saldana by Saldana v. Weitzel*, 912 F. Supp. 413, 416 (D. Wisc. 1996) (decedent was holding knife, shouting, drunk and threatening people; officer shot from about fifteen feet; even if the plaintiff's expert was correct and closing gap to fifteen feet

was poor policing, poor policing, however, not constitutional violation); *Charles v. Cotter,* 867 F. Supp. 648, 663-64 (N.D. Ill. 1994) (evidence that defendants violated police rules, regulations relevant with respect to claim they violated constitutional rights, but, granting plaintiff's motion, court limited use to impeachment and refreshing witnesses' recollection); *Jones v. Chieffo*, 833 F. Supp. 498, 507 (E.D. Pa. 1993) (under then-existing reckless indifference standard, "[officer's] choice to pursue the vehicles and to prevent them from causing any future harm without the use of his siren and without explaining his reasons for the pursuit may have violated state law, police directives, or even constituted a common law tort, but it may not state a claim for a constitutional deprivation of due process."); *Cf. Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003) (because knowledge and state of mind are required elements of plaintiff's § 1983 claims, knowing violations of department regulations by defendants are relevant).

### *Fourth Amendment Claim Specific Claim of Unreasonable Use of Force*

Plaintiff claims that Officer Breen violated her decedent's Fourth Amendment rights by using excessive force when he shot at Victoria Cooper and killed her. The plaintiff claims that the vehicle driven by Cooper posed no threat to him and that he shot at and killed her out of malice because he was unable to apprehend the original driver. Officer Breen denies these allegations and submits that he was in imminent harm of deadly force by the motor vehicle driven by Cooper.

In a case such as this, where the parties' factual contentions are disputed, you must determine what actually occurred. The mere fact that the evidence in this case establishes that the bullet fired from Officer Breen's handgun would not be sufficient by itself to demonstrate that the defendant violated the plaintiff's constitutional rights.

If you find that Officer Breen could reasonably believe, based on the circumstances confronting him that he was at risk of serious bodily injury or death, because of the approaching Camaro, he would be justified in using deadly force. If, however, no reasonable officer could conclude he was at risk of serious bodily harm or death at the time he fired his weapon then his use of deadly force would not be justified.

**Authority**: *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *DeGraff v. District of Columbia*, 120 F.3d 298 (D.C. Cir. 1997); *Wardlaw v. Pickett*, 1 F.3d 1297 (D.C. Cir. 1993); *Washington v. District of Columbia*, 685 F. Supp. 264 (D.D.C 1988).

**Feasibility of Warning**

In this case you heard Officer Breen testify that he waved his arms and yelled "Stop" prior to firing his weapon. The Supreme Court has held that a warning, if feasible, should be given before deadly force is deployed. It is for yo to determine whether any such warning was given. If you find that it was that is the end of the inquiry. If you find that no warning was given, you should then determine whether under the circumstances a warning was feasible. In passing ofn this issue you may consider that the entire event, from the movement of the Camaro toward Officer Breen to the time the first shot was fired took place by all accounts in approximately 5 seconds.

**Authority**: *Tennessee v. Garner*, 471 U.S. 1 (1985); *Frane v. Kijowski*, 992 F.Supp 819 (N.D. Ill (1994); *Ridgeway v. City of Woolrich*, 924 F.Supp 653 (D.N.J. 1996).

**Multiple Shots Fired**

The constitution does not prescribe the number of shots that can be fired when an Officer deploys deadly force. An officer is justified in continue firing his weapon until he reasonably should perceive that the subject is no longer a threat.

**Authority:** *Elliott v. Leavitt* 99 F.3d 640 (4th cir. 1996).

**Less Intrusive Means**

The fourth Amendment does not require officers to use the least intrusive menas, or even less intrusive alternatives, in cases where use of excessive force is claimed. The only test is whether what the police officers actually did was reasonable.

**Authority**: *Plakas v. Drinsky* 19 F.3d 1143 (7th cir. 1994).

Evidence that the Officer could have and should have done things differently is not relevant to a Fourth amendment analysis, the only question being whether he acted reasonably. The Fourth Amendment prohibits unreasonable seizures not unreasonable

or ill-advised conduct in general.

**Authority**: *Schulz v. Long*, 44 F.3d 643 (8th cir. 1993)

## Motive to Resist

In this case you heard evidence that Ms. Cooper was in possession of several bags of cocaine at the time the car in which she was a passenger was stopped by Officer Breen. You may consider this evidence when assessing whether Ms. Cooper had a motive to move from the passenger seat to the driver's seat and operate the Camaro in a way to avoid being arrested by Officer Breen.

**Authority**: *Edwards v. Thomas*, 31 F.Supp 2d 1069 (N.D. Ill. 1999); Stevenson v. D.C. Metropolitan Police Dept. 248 f. 3d 1187 (D.C. Cir).

## II.    SECTION 1983 CLAIM AGAINST THE TOWN OF NORTH BRANFORD (only used at conclusion of second part bifurcated trial)

### *Introduction*

Because you have found that Officer Breen violated the plaintiff's decedent's federally protected rights, then you must also consider the plaintiff's claim against the Town of North Branford.

The fact that an employee or employees of the Town of North Branford may have deprived the plaintiff of his federally protected rights is not itself a sufficient basis for imposing Section 1983 liability against the Town itself. This is so because the Town cannot be liable under Section 1983 solely on the basis of an employee's wrongful conduct.

Instead, the plaintiff must prove misconduct on behalf of the Town of North Branford, in other words, that the employee's misconduct was in furtherance of an unlawful policy, ordinance, regulation, or decision officially adopted and ratified by the Town.

**Authority**: Schwartz & Pratt, Section 1983 Litigation, Jury Instructions, Volume 4, Section 15.04.1, 2, 3; *Monell v. New York Dept. of Social Serv.*, 436 U.S. 658, 692 (1978);

### *Specific Claims by Plaintiff*

In this case the plaintiff alleges that certain policies the Town of North Branford had in place were inadequate. The plaintiff further claims that even if those policies were adequate, the Town's practice of failing to enforce them constituted a failure to

properly supervise and train its police officers.

The plaintiff claims the Town

1.    failed to give its officers, including Officer Breen, training in when to shoot or refrain from shooting against vehicles

2.    failed to train Officer Breen not to fire his weapon twice if he fired at all;

3.    failed to have a reasonable policy that required the stopping officer to call for backup.

You may only impose liability on the Town if the plaintiff proves a constitutional violation in accord with the tests and standards as I will explain them to you in the course of these jury instructions.

### *Failure To Adopt Adequate Policies*

When a city adopts a particular course of action it may represent an act of official government "policy." Thus, a "policy" may be established by either a policy or decision adopted by the municipality or a single act of a municipality with final policymaking authority.

The plaintiff must first prove to you that the Town did not have in place adequate policies, specifically, (1) guidelines or instructions to give its officers, including Officer Breen, training in when to shoot or refrain from shooting against vehicles; (2) guidelines or instructions that required the stopping officer to call for backup.

If the plaintiff has not proven to you a failure by the Town to provide adequate guidelines or instruction concerning lawful use of force, in general, or the use or control of canines, then I instruct you to find in favor of the defendant.

If, however, the plaintiff has proven that the Town does not provide adequate guidelines or instructions concerning lawful use of force, the plaintiff must next prove that the claimed omitted guidelines or instructions to its officers was a deliberate and conscious decision by the Town not to adopt the specific policy, that is, proof that the Town of North Branford deliberately omitted the specific guidelines or instructions, and not merely a negligent oversight.

**Authority:**  *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 125 (2nd Cir. 2004); *citing, Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). See, St. Louis v. Prapotnik, 485 U.S. 112 (1988).Rhyne v. Henderson County, 973 F.2d 386, 392 (5th Cir. 1992); citing, City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed2d 412 (1989); see, also, City of Oklahoma v. Tuttle, 471 U.S. 808, 105, S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

### *Absence of Guidlines*

In your deliberations upon this issue, you may consider whether the absence of the specific guidelines or instructions would have been openly obvious to the Town of North Branford that the likely consequences of not adopting and implementing these policies would likely cause its officers to use unlawful force when making arrests.

**Authority:** *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed2d 412 (1989).

### *Obviousness of Need for Policy*

Consider for example, a municipality that arms its officers with firearms, knowing to a moral certainty that the armed officers will arrest fleeing felons.  The municipality would be deliberately indifferent in failing to adopt a policy to train its officers in the lawful use of deadly force, because the likelihood of unconstitutional consequences of the municipality's omission is obvious.  City of Canton, Ohio v. Harris, 489 U.S. 378, 390, n. 10, 109 S.Ct. 1197, 1205, n. 10, 103 L.Ed2d 412 (1989).

If, based on the law I instructed to you, you did find that the plaintiff proved to you by the preponderance of the evidence that the Town of North Branford made a conscious decision not to adopt specific policies, i.e., guidelines or instructions concerning the lawful use of force or use of force, you must next determine whether the plaintiff proved to you that the claimed unlawful use of force by the officers against him was a result of the Town's choice not to adopt such policies.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, n. 10, 103 L.Ed2d 412 (1989); *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 125 (2nd Cir. 2004).

If the plaintiff does not prove his claim upon the law as instructed to you, then you will next consider the plaintiff's claim that, even if the Town did have adequate policies, the Town of North Branford was deliberately indifferent to the rights of citizens or suspects by way of a practice of failing to enforce its policies.

### *Municipal Practice Or Custom – In General*

A municipal practice or custom has the force of law or "policy" when it has been approved, either expressly or implicitly, by the municipal entity's policymakers, or when the policymakers, after being placed on notice of a practice or custom of unlawful conduct, are deliberately indifferent to it.  Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.

To find a practice or custom of excessive use of force by officers within the Town of North Branford, the plaintiff must prove to you that unlawful use of force of the Town's police officers was so well-settled and widespread within the Town that the Town of

North Branford can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.

The plaintiff must further prove to you a direct casual link between the claimed widespread unlawful use of force within the Town of North Branford and the plaintiff's claim of unlawful use of force.

**Authority**:  Schwartz & Pratt, Section 1983 Litigation, Jury Instructions, Volume 4, Section 15.04.1,  6. *See, Board of Commissioners v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382 (1997); *citing, City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed2d 412 (1989).  *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989); *See, St. Louis v. Prapotnik*, 485 U.S. 112, 108 S.Ct. at 925-26 (1988).

### Claim Of A Practice Of Failing To Enforce Policies
### By Way Of A Failure To Train

The plaintiff claims that the Town of North Branford had a custom or practice of failing to train its officers knowing that its officers would improperly apply its use of force policies without more training, which was the cause of the individual officer's violation of her constitutional rights. That is, the Town failed to give its officers, including Officer Breen, training in when to shoot or refrain from shooting against vehicles; failed to train Officer Breen not to fire his weapon twice if he fired at all; and failed to train officers required the stopping officer to call for backup.

A municipality is deemed to be deliberately indifferent for a failure to provide proper training if, in light of the duties assigned to the specific officers, the need for more or different training is very obvious and the inadequacy will quite likely lead to the violation of constitutional rights.

Thus, the plaintiff in the instant case must establish, by a preponderance of the evidence, four elements:

(1) one or more of the individual officers violated the plaintiff's federal rights against unlawful use of force;

(2) the existence of a pattern or practice by the Town not to adequately train its officers about the proper limits on using force when making arrests;

(3) deliberate indifference to or tacit authorization of unlawful use of force by the Town by not providing adequate training of its officers concerning this issue; and

(4) that the Town's inadequate training program was the moving force behind the unlawful use of force claimed by the plaintiff in this case.

If you find that the plaintiff did not prove one or more of the elements of his claim, then I instruct you to find in favor of the defendant Town of North Branford on the

plaintiff's claim of a failure to enforce its policy concerning the training of its officers as to the lawful use of force.

      **Authority**:  *See, Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2nd Cir. 2004); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-91, 109 S.Ct. 1197, 103 L.Ed2d 412 (1989); *Walker v. City of New York*, 974 F.2d 293 (2nd Cir. 1992).

III.     **PENDENT STATE LAW CLAIMS.**

*Assault And Battery*

The plaintiff also sets forth a state law claim against the defendant officer based on the tort of assault and battery.  The elements of this state law claim of assault and battery generally track the elements of the federal Section 1983 excessive force claim.

The defendant has plead as affirmative defenses, that his use of deadly force was justified as self-defense pursuant to CGS Sections 53a-19 and 53a-22.  The law recognizes the right of an individual, including a police officer, to defend himself or herself and those the officer has a duty to protect, and he or she need not wait to do so at their peril or the perils of others.  In other words, he or she need not delay his or her defense until unmistakably and in fact the supposed aggressor has harmed the officer or others.  The test is if an officer had reasonable fear for his or her own safety or the safety of third persons by reason of the conduct of another, he or she may take reasonable steps to defend himself or herself or those third persons.  The reasonableness or unreasonableness of any action by police officers must be determined as of the time it occurred, and by an evaluation of all the circumstances which confronted the officer at that time.  An officer is called upon to, indeed, by statute he or she must, make judgments and decisions in many situations where there is no opportunity to pause and reflect, nor is there time to plan or evaluate different courses of conduct.  In determining what is reasonable and unreasonable, you must take into consideration all of the factors and circumstances which presented themselves at the time the officer was called upon to act.

In determining whether the officer in this case used excessive force in defending himself or herself, you must consider all the circumstances under which he or she acted. The claim of defense of self or others is not defeated if greater force than would have seemed necessary to a calm mind was used by the officer in the heat of passion generated by an assault or threatened assault upon himself, herself or others.  A belief which may be unreasonable to a calm mind may be actually and reasonably entertained in the heat of passion.

Thus, for plaintiff to prevail, you must find that plaintiff has shown by a preponderance of the evidence that the officer used clearly unreasonable force in the circumstances of this case.  If plaintiff has not convinced you that the officer used unreasonable force in defending himself and others against serious bodily injury or death, then you must return a verdict in favor of Officer Breen.

**Authority**:  *State v. Smith*, 73 Conn.App. 173, 807 A.2d 500 (2002), Conn. Gen. Stat. §53a-19, §53a-22; Martin A. Schwartz and George C. Pratt, Section 1983 Litigation Jury

Instructions 2002 Supplement, § 12.01.1 Supplemental State Law Claims, p. 12-5.

If the officer had reasonable grounds to believe that he or another person was in imminent danger of death or serious bodily harm the officer was not required to retreat or to consider whether she could safely retreat. The officer was entitled to stand his ground and use such force as was reasonably necessary under the circumstances to save his life, or protect himself, from serious bodily harm.

**Authority**: *State v. Smith*, 73 Conn.App. 173, 807 A.2d 500 (2002), Conn. Gen. Stat. §53a-19, §53a-22; Martin A. Schwartz and George C. Pratt, Section 1983 Litigation Jury Instructions 2002 Supplement, § 12.01.1 Supplemental State Law Claims, p. 12-5.

If the officer actually believed and had reasonable grounds to believe that he or someone else was in imminent danger of death or serious bodily harm from the plaintiff's decedent he would have been justified in using deadly force in defense of himself, even though it may afterwards have turned out that the appearances were false. If the officer reasonably believed that he was in imminent danger of death or serious bodily harm he could use deadly force even though there was in fact neither purpose on the part of the plaintiff to kill him or do him serious bodily harm, nor imminent danger that it would be done, nor actual necessity that deadly force be used in defense.

**Authority**: *State v. Smith*, 73 Conn.App. 173, 807 A.2d 500 (2002), Conn. Gen. Stat. §53a-19, §53a-22; Martin A. Schwartz and George C. Pratt, Section 1983 Litigation Jury Instructions 2002 Supplement, § 12.01.1 Supplemental State Law Claims, p. 12-5.

In this assault and battery cause of action, you must determine whether the force used by the defendants was reasonably believed to be necessary.

In making that decision, you must take into consideration all of the circumstances confronting Officer Breen at the time and place of the incident, including what he saw and what he heard and all the circumstances surrounding the dispute. Officer Breen is not required, at his own peril, to measure the precise amount of force necessary.

If you find that Officer Breen could reasonably have believed he was faced with imminent danger or serious bodily harm or death then he committed no assault and battery when he used deadly force on Ms. Cooper.

On the other hand, if you find that the plaintiff has established by a preponderance of the evidence that the defendant used more force than he reasonably could have believed was necessary then he committed an assault and battery.

**Authority**:  *State v. Smith*, 73 Conn.App. 173, 807 A.2d 500 (2002), Conn. Gen. Stat. §53a-19, §53a-22; Martin A. Schwartz and George C. Pratt, Section 1983 Litigation Jury Instructions 2002 Supplement, § 12.01.1 Supplemental State Law Claims, p. 12-5.

## IV.    DAMAGES.

### Consider Damages Only If Necessary

If the plaintiff has proven by a preponderance of the credible evidence that defendant is liable on any of the plaintiff's claims, then you must determine the damages to which the plaintiff is entitled.  However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiff is entitled to recovery.

**Authority:**  *Eulo v. Deval Aerodynamics, Inc.*, 47 F.R.D. 35 (E.D. Pa. 1969) *modified on other grounds*, 430 F.2d 325 (3d Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971); *Krieger v. Bausch*, 377 F.2d 398 (10th Cir. 1967).

### Nominal Damages

If you return a verdict for the plaintiff on a claim, but find that the plaintiff has failed to prove by a preponderance of the evidence that she has suffered any actual damages on that claim, then you must return an award of damages in some nominal amount such as one dollar.  Nominal damages must be awarded when the plaintiff has been deprived of a constitutional right by the defendant, but has suffered no actual damage as a natural consequence of that deprivation.

**Authority:** Adapted from 5 Hon. Leonard B. Sand, et al., Modern Jury Instructions, Instruction 87-88 (September 1997); *Gibeau v. Nellis*, 18 F.3d 107 (2d Cir 1994).

### Compensatory Damages

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendants' violation of the plaintiff's rights.  If you find that the defendant is liable on the claims, as I have explained them, then you must award the plaintiff sufficient damages to compensate him for any injury proximately caused by the defendant's conduct.

These are known as "compensatory damages."  Compensatory damages seek to make the plaintiff whole - that is, to compensate her for the damage that she has suffered.  Furthermore, compensatory damages are not limited merely to expenses that plaintiff may have borne.  A prevailing plaintiff is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he has suffered because of a defendant's conduct).

I remind you that you may award compensatory damages only for injuries that a

plaintiff proved were proximately caused by a defendant's allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive.  You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he is reasonably likely to suffer in the near future.  You may not award compensatory damages against the defendants for conduct you find to have been merely negligent.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

Your award may not include any compensation for attorney's fees or legal costs related to this civil proceeding.

The plaintiff is not entitled to damages based solely on the subjective importance of the constitutional right allegedly violated.  In other words, violation of a constitutional right, in and of itself, does not entitle plaintiff to an award of damages.  Your award, if any, should be based upon proof of actual injuries, not a demonstrated infringement of an abstract constitutional right.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

**Authority:**  *Story Parchment Co. v. Paterson Parchment Paper Co*., 282 U.S. 555, 51 S.Ct. 248,, 75 L.Ed. 544 (1931); *Kinty v. United Mine Workers of America*, 544 F.2d 706 (4th Cir. 1976), *cert. denied,* 429 U.S. 1093 (1977); *Northwestern National Casualty Co. v. McNulty*, 307 F.2d 432 (5th Cir. 1962); *U.C. Castings Co. v. Knight*, 754 F.2d 1363 (7th Cir. 1985); *Luria Brothers & Co., Inc. v. Pielet Brothers Scrap Iron Metal, Inc.,* 600 F.2d 103 (7th Cir. 1979); Connecticut Law of Torts, 3d Ed. § 174; *Markey v. Santangelo*, 195 Conn. 76, 485 A.2d 1305 (1985); *Abraham v. Gendlin*, 84 U.S. App. D.C. 307, 172 F.2d 881 (D.C. Cir. 1949); *Brandon v. Capitol Transit Co.*, 71 A.2d 621 (D.C. App. 1950); *Memphis Community School District v. Stachura*, 477 U.S. 299 (1986); *Carey v. Piphus*, 435 U.S. 247 (1978); Wayne C. Beyer, Police Misconduct: Principles Governing Money Damages and Other Relief Under 42 U.S.C. § 1983, 32 TORT & INSURANCE LAW JOURNAL 154, 157-59 (ABA 1996).

### *Punitive Damages*

Punitive damages may be awarded against individual defendants to punish the offender and to deter others from committing similar wrongs.  You may not award

punitive damages unless you find that the defendant's conduct was motivated by evil motive or intent, or it involved reckless or callous indifference to the federally protected rights of the plaintiff.

**Authority**: *Smith v. Wade*, 461 U.S. 30 (1983); *Morgan v. Woesner*, 997 F.2d 144, 1255 (9th Cir. 1993); *Angarita v. St. Louis County*, 981 F.2d 1537, 1546, 1548 (8th Cir. 1992); *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir. 1991).

### No Punitive Damages Against Municipality

I instruct you that you may not award punitive damages against the Town of North Branford.  Federal law prohibits the award of punitive damages against a municipality.  Accordingly, you may not award punitive damages against the Town of North Branford.

**Authority:**  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); Conn. Gen. Stat. §7-465

### Mitigation of Damages

In considering damages to award to the plaintiff, you must determine whether the plaintiff's decedent could have done something to lessen the harm that she suffered. The burden is on the defendant to prove, by a preponderance of the evidence, that the plaintiff could have lessened the harm that was done to her, and that she failed to do so.  If the defendant convinces you that the plaintiff could have reduced the harm done to her but failed to do so, the plaintiff are entitled only to damages sufficient to compensate her for the injury that she would have suffered if she had taken appropriate action to reduce the harm done to her.

**Authority:**  Adapted from 5 Hon. Leonard B. Sand,  et al., Modern Jury Instructions, Instructions 87-34 and 87-90 (September 1997).

### No Double Recovery

You may only compensate the plaintiff for a violation of her constitutional rights if you have found her claim of a constitutional violation to have been proved by a preponderance of the evidence. If you have found that the plaintiff has proven only the common law claims based upon intentional torts, you may not compensate the plaintiff for violation of her constitutional rights.

Likewise, if you find that plaintiff has only proved a violation of her constitutional rights, but has not proved any intentional tort, you may compensate plaintiff only for a violation of her federal constitutional rights and you may not compensate her on her common law claims.

However, if you find for the plaintiff on both the constitutional and common law

intentional tort, you are instructed that the harm, if any, plaintiff has suffered for any of the alleged wrongs committed by the defendants is the same.  That is to say, all of plaintiff's damages are identical, no matter what the legal basis of recovery might be.

In making your award of damages, if any, you should decide upon one award of damages which encompasses all wrongs.

**Authority:** *Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996); *Lewis v. Kendrick*, 944 F.2d 949, 954 (1st. Cir. 1991); *Quezada v. County of Bernalillo*, 944 F.2d 710, 723 (10th Cir. 1991); *Gilmere v. City of Atlanta*, 864 F.2d 734, 740-41 (11th Cir.), *cert denied*, 493 U.S. 817 (1989); *Clapplier v. Flynn*, 605 F.2d 519, 529 (10th Cir. 1979); *Dellums v. Powell*, 566 F.2d 216, 225-228 (D.C. Cir. 1977).

## V.    SPECIAL VERDICT WITH INTERROGATORIES

When you retire to the jury room to conduct your deliberations, I will ask you to record your findings on a special verdict form which the clerk will provide for you.  The special verdict form contains a number of interrogatories to which you are asked to respond either "YES" or "NO."  You should carefully follow the instructions contained on the special verdict form, and answer only those interrogatories which are necessary in order for you to conclude your deliberations.

On the other hand, you should answer each and every one of the interrogatories on the special verdict form except where the instructions indicate otherwise.  Your response to each interrogatory must be unanimous, and must reflect the conscientious judgment of each juror.

Should you need to reach the damages issue, the special verdict form also contains appropriate spaces in which you are asked to record the amount of damages to be awarded.  As with your answers to each of the questions contained on the form, your award of damages, if any, must be unanimous and must reflect the conscientious judgment of each juror.

**Authority:**  Adapted from Modern Federal Jury Instructions § 78.01, Instruction No. 78-8 (1993).

VI.     **ADDITIONAL REQUESTS.**

        The defendants respectfully request leave to supplement their request for jury instructions after the evidence and prior to the charging conference.

        This request is made in an abundance of caution and on the theory that the defendants cannot reasonably anticipate how the evidence will be presented and what instructions, in addition to the foregoing and accompanying legal issues, will be necessary to enable the jury to reach their verdict.

                                        THE DEFENDANTS,
                                        MICHAEL BREEN and TOWN OF
                                        NORTH BRANFORD

                                        ____/s/ John J. Radshaw, III_____
                                        Thomas R. Gerarde, ct5640
                                        John J. Radshaw, III, ct19882
                                        Jeffery E. Potter, ct26356
                                        HOWD & LUDORF
                                        65 Wethersfield Avenue
                                        Hartford, CT  06114
                                        (860) 249-1361
                                        (860) 249-7665 (fax)

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 1st day of June 2005.

David N. Rosen, Esquire
400 Orange Street
New Haven, CT  06511


                                                           _____/s/ John J. Radshaw, III_____
                                                           Thomas R. Gerarde
                                                           John J. Radshaw, III
                                                           Jeffery E. Potter