UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARGARET COWAN,<br>  as Administratrix of the<br>  Estate of Victoria Cooper,<br>          Plaintiff, | | |
| V.<br><br>MICHAEL BREEN,<br>          Defendant. | :<br><br>: | CIVIL NO.: 3:00CV00052(RNC)<br>ALL CASES |
| MARGARET COWAN,<br>  as Administratrix of the<br>  Estate of Victoria Cooper,<br>          Plaintiff, | | |
| V.<br><br>TOWN OF NORTH BRANFORD<br>          Defendant. | :<br><br>: | CIVIL NO.: 301CV00229 (RNC)<br><br>JUNE 1, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE
RE: EVIDENCE CONCERNING ILLEGAL DRUGS**

The investigation following this incident developed evidence that Vicki Cooper had cocaine in her possession when she was shot and had used cocaine that night as well as previously. Because evidence of "cocaine usage would serve to misfocus the jury's attention from the central issues in this case ... [and] create a trial within a trial on a collateral issue potentially consuming a great deal of time with only slight probative effect," *Fletcher v. Conway*, 1991 U.S. Dist. LEXIS 2041, 2-5 (D. Ill., 1991), this evidence should be excluded. In case after case courts have held that such evidence of drug use is irrelevant and prejudicial. The case for

1

exclusion is particularly strong here because defendants' own expert testified, repeatedly and emphatically, that the available evidence does not support any inferences about the impact of drug use either on Vicki Cooper's behavior the night she was shot or on the course of her life if she had not been shot. The controlling principle, therefore, is the one announced by the Second Circuit: "there are few subjects more potentially inflammatory than narcotics and thus such evidence should usually be excluded in a non-narcotics trial." *United States v. Ong*, 541 F.2d 331, 339-40 (2d Cir. 1976), *cert. denied*, 429 U.S. 1075 (1977).

## FACTS

**1. The evidence of drug use.**

Defendant Breen did not question Ms. Cooper, except to ask for identification, or observe her with any drugs, but after he shot her State Police investigators found packages of cocaine stuffed in her sock as well as drug paraphernalia in the Camaro. Investigation showed additional evidence relating to drug use, which is summarized in the reports of the parties' experts. To give the more negative view of that evidence, we attach the report of defendants' expert, Kenneth M. Selig, M.D. as Tab 1.

As Dr. Selig noted in his report, the state toxicologist reported that Ms. Cooper had cocaine in her blood stream at the time of death, possibly indicating that she had swallowed cocaine in an effort to avoid detection. Dr. Selig opined that Ms. Cooper had begun to use cocaine late in her short life (she was 41 when she was killed) and that she used cocaine an indeterminate amount, but probably far more frequently than the once a week reported by the only available direct source, Mr. Guerette. He thought that drug use led to her losing a job at Amtrak (she was fired for "shy bladder" after being put on probation), and though she did not

have a criminal record, she was once given a summons for unlawful trespassing in connection with her presence at a suspicious location and was in additional suspicious situations (e.g., she reported her car stolen nearly a day after she had, she said, loaned it to a friend). There was additional evidence of drug use, including the report of a fellow waitress at the American Steak House that Ms. Cooper had said that she could get cocaine, and from family members who said that she had lost weight and did not look well in the months previous to her death, though her weight at the time of her death (103 pounds) was within normal limits for her height (5' 2").

> **2.     The defense expert's agreement that no relevant conclusions can be drawn from the evidence of drug use.**

Dr. Selig's report candidly recognized that it is simply not possible to draw *any* reliable conclusions about the effect of Ms. Cooper's drug use either on her behavior the night she was killed or on the course of her future life. With regard to the first question, he deferred to the state toxicologist, who, he noted "was unable to correlate the [blood] level of cocaine with the amount of use or her mental state." With regard to prognosis, Dr. Selig was equally frank:

> In summary, any attempts to make a psychiatric diagnosis, within reasonable medical probability, based on this record can be nothing more than mere speculation, because of unreliable data, contradictory data, and inadequate data. Furthermore, even if a diagnosis of either Cocaine Abuse or Cocaine Dependence could be made, it is not possible with our present scientific knowledge to render an opinion within reasonable medical probability as to what the future course of cocaine use would be and as to whether or not it would affect an individual's life span.

Tab 1 at 5.

Dr. Selig's deposition made the same point; his testimony underscored, the irrelevance of Ms. Cooper's cocaine use to the issues the jury has to decide. The key points he made at his deposition were the following:

3

*1. There is no basis in the evidence for any inference that Ms. Cooper's ingestion of cocaine affected her behavior the night she was shot:*

> Q. Did Dr. Lewis tell you that he was unable to correlate the level of cocaine with the amount of use or her mental state, as he indicated that it does depend on the route of administration, the time of intake, and of course the amount?
> A. Yes, that is what he told me.
> Q. Is it accurate to say that because he could not correlate the level of cocaine with Ms. Cooper's mental state, it means that he could not say to a reasonable degree of medical probability what effect her cocaine use had on her behavior during the seconds or minutes before herdeath?
> A. Yes.
> Q. Is it your opinion as well, based on your training and expertise, and your evaluation of the materials in this case, that *it is not possible to say to a reasonable degree of medical probability what effect, if any, Ms. Cooper's cocaine use had on her behavior in the seconds or minutes before her death?*
> A. *Yes*; and I'm assuming that by the word "behavior" you're including, for example, her judgment.
> Q. Correct.
> A. *Yes, I agree, that is correct; and I don't think anybody could within reasonable medical probability. I just don't think there's enough information.*

Deposition of Kenneth M. Selig, M.D., March 23, 2004, at 28-29 (attached as Tab 2) (emphasis added).

*2. There is no basis in the evidence for an inference that Ms. Cooper's cocaine use would affect her life expectancy:*

> Q. Is it your opinion that had Victoria Cooper not been shot and killed in July of 1999, you cannot say with reasonable medical probability what effect, if any, her history of cocaine use would have on her life expectancy to a reasonable degree of medical probability?
> A. *Neither me, nor anyone else*.

*Id.* at 21 (emphasis added).

*3. There is no basis in the evidence for an inference that Ms. Cooper's cocaine use would affect her future life, had she not been killed:*

4

> Q. Is it also your assessment of the record that there's insufficient evidence concerning Ms. Cooper's cocaine use to allow any conclusions about the effect of that use on her future life?
> A. The answer is yes; both the history of her use, the use within, you know, one to two months prior to her death, and what her use would be in the future had she survived.
> Q. These are all unknowns?
> A. These are all unknowns.
> Q. And so your opinion is that *you and anybody else cannot say to a reasonable degree of medical probability what, if any, impact or lack of impact cocaine use would have on Ms. Cooper had she lived?*
> A. *That is correct.*

*Id.* at 27 (emphasis added).

*4. At least part of the reason that it is impossible to say that cocaine use would have affected Ms. Cooper's future life had she not been shot is that it is impossible to say that she would have even continued to use cocaine.*

> Q. So what you're saying is that Ms. Cooper's cocaine use might have affected her long term and it might not have affected her long term, and there's just no way for you to say one way or the other to areasonable degree of medical probability?
> A. Me or anybody. It's just not a question that can be answered.
> Q. *You don't think it's knowable whether she would have stopped using cocaine a week or a month or several months later or not; is that correct?*
> MR. RADSHAW: Object to the form of the question.
> A. *Correct, correct.*

*Id.* at 40 (emphasis added).

With this factual record in mind, we turn to consideration of Rules 401, 402, and 403. As courts have said time and again, this sort of evidence of a plaintiff's drug use has no place in the trial of a personal injury or wrongful death case.

## ARGUMENT

Defendants regularly try to introduce evidence of their victims' drug use, but courts rebuff these efforts, in the name of fairness as well as efficiency.

5

## I. EVIDENCE OF DRUG USE SHOULD BE EXCLUDED UNDER RULE 403 ON GROUNDS OF PREJUDICE

To be admissible, evidence of Vicki Cooper's drug use must be relevant, and it must not be unfairly prejudicial. The evidence passes neither of those tests. Sustaining a trial court's decision to exclude such evidence, the Seventh Circuit has explained why, with reasoning that fully applies here:

> The [trial] court determined that, without an expert to analyze Mankey's history of substance abuse as it would relate to his life expectancy and future earning capacity, the admission of such evidence would be merely prejudicial and (standing alone) of no probative value.
>
> We agree that the only rationale for admitting the evidence was to enable the expert witness to offer an opinion about how Mankey's drug and alcohol abuse would affect his life expectancy and future earning capacity. With no expert to lay a foundation and tie the substance abuse to an impact on Mankey's life expectancy and ability to earn an income, such evidence was not admissible. *Meller v. Heil Co.*, 745 F.2d 1297, 1303 (10th Cir. 1984). Under these circumstances, any probative value of that substance abuse evidence was substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403.

*Mankey v. Bennett*, 38 F.3d 353, 360 (7th Cir., 1994).

In *Meller,* the court had sustained the exclusion of hash pipes in view of the fact that the defendant had "provided no medical foundation for its claim that [the plaintiff's] life expectancy was diminished by drug use." 745 F.2d at 1303. Likewise, in *Wilson v. Union Pac. R.R.*, 56 F.3d 1226, 1231 (10th Cir., 1995), the court sustained exclusion of a party's prior drug offense conviction on prejudice grounds. The Fifth Circuit has gone even farther, finding error in the trial court's refusal to exclude evidence that a decedent had used marijuana in the past. *Harless v. Boyle-Midway Div., American Home Prods.*, 594 F.2d 1051, 1057 (5th Cir. 1979)("We question the relevance of this evidence and find it to be tenuous at most. In contrast to any slight value it

might have upon the jury's determination of damages, we view the evidence as being highly prejudicial.") The decisions of these four Circuit Courts of Appeals should control this case.

They are joined by both district court cases interpreting Rule 403 and state court decisions applying analogous state rules of evidence. Federal cases include *Chladek v. Milligan,* 1998 U.S. Dist. LEXIS 17393 (D. Pa., 1998) ("No evidence has been presented to the Court regarding how such drug use affected Mr. Chladek's 'perception' of the arrest, or how long-term drug use affected his overall 'health'."); *Dighera v. Jones,* 1996 U.S. Dist. LEXIS 16375 (D. Kan., 1996) (rejecting claim that drug use and conviction history should be admitted because they were relevant to future employability); and *Fletcher v. Conway*, *supra.* State court decisions say the same thing and have emphasized how prejudicial such evidence would be. As one of these courts explained,

> Confronted with this evidence of prior drug use there is serious danger that a jury would conclude that [plaintiff] was a "bad person" and thus less entitled to recover damages. We hold that the trial court abused its discretion in admitting this highly prejudicial evidence.

*Shawhan v. Polk County*, 420 N.W.2d 808, 809 (Iowa, 1988). *See also Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 132 (Tenn., 2004); *Mydlarz v. Palmer-Duncan Construction Co.*, 682 P.2d 695, 704 (Mont. 1984) (evidence of the plaintiff's alcoholism in a personal injury action likely to mislead the jury); *Rittenhouse v. Erhart*, 337 N.W.2d 626 (Mich. App. 1983).

To be sure, there are instances where prior drug use may be relevant. For example, in *Lewis v. District of Columbia*, 793 F.2d 361, 363 (D.C. Cir. 1986), the court observed that:

> [plaintiff's] past use of drugs suggests that some of the suffering and nightmares he experienced following the shooting may have been proximately caused by drug withdrawal and not the shooting; the jury therefore would be aided by this

evidence in measuring fairly the extent of damages.[1]

But Ms. Cooper died at the scene, so *Lewis's* rationale is inapplicable.[2] And without a particularized justification, as well as an evidentiary foundation, a decision to admit evidence of prior drug use is at best unpersuasive, as in *Egebergh v. Village of Mt. Prospect,* 2004 U.S. Dist. LEXIS 6851 (D. Ill., 2004) *(*prior drug evidence admissible "as it was probative of the value to [plaintiff's decedent] of his own life"). This record convincingly shows that evidence of drug use is both irrelevant and prejudicial.

As we now show, it would also be confusing and a huge waste of time.

## II. EVIDENCE CONCERNING DRUG USE SHOULD BE EXCLUDED ON GROUNDS OF CONFUSION AND WASTE OF TIME

The evidence concerning drug use is disputed and confusing, and it would waste everyone's time to have the trial be about Vicki Cooper's drug use instead of whether or not the shooting was lawful. Dr. Selig's report narrates some of his disputes with plaintiff's expert, Dr. Rounsaville. Many hours if not days could be consumed by the duel between these two experts over the scope of Vicki Cooper's past drug use. Such evidence has no place in this trial, and in the end these two experts should not testify because they have nothing to add about the issues

---

[1] *See also, EEOC v. Kim & Ted, Inc.*, 1996 U.S. Dist. LEXIS 586 (D. Ill., 1996) (twenty-year history of drug abuse might impair complainant's ability to recall or be relevant to her emotional distress claim); *Ocasio v. Amtrak*, 690 A. 2d 682, 684-85 (N. J. App. 1997) (twenty-year history of drug addiction relevant to plaintiff's ability to enjoy life in the future); *Liimatta v. Vest*, 45 P.3d 310, 313-315 (Alaska, 2002) (history of "drug seeking behavior" relevant to "the central issues in the case," including causation and the plaintiff's credibility after she denied such behavior, as well as loss of enjoyment).

[2] Thus, *Fletcher v. City of New York*, 54 F. Supp. 2d 328, 333-334 (S.D.N.Y., 1999), which relies on *Lewis*, cannot support admissibility of drug evidence here because it offers no reason why the drug evidence in that case was relevant to the issue of damages, much less a reason that would apply here.

that actually are significant. Add to these conflicts a whole series of others, and the trial is very likely to be hijacked by this irrelevant issue. For example, when Ms. Cooper was terminated from Amtrak for "shy bladder," was she concealing drug use, or did she suffer from that medical condition, which prevents some innocent people from giving drug samples? Defendants have identified three separate witnesses from Amtrak to discuss Ms. Cooper's termination. Their testimony will add nothing of value. The same is true of testimony from Mr. Guerette about Vicki Cooper's giving a bracelet to a friend with whom she apparently also used drugs. Did she, as Guerette says, give the bracelet as an act of friendship and charity because the woman could not feed her children, or was she making a payoff for a drug purchase? This irrelevant issue can also consume hours. These are just two of the side issues that will threaten to dominate the trial of this case if evidence about Vicki Cooper's drug use is permitted.

### III. EVIDENCE CONCERNING MR. GUERETTE'S POSSESSION OF COCAINE OR PARAPHERNALIA BEFORE THE SHOOTING IS IRRELEVANT AND PREJUDICIAL

Defendant Breen's report states that when he searched Mr. Guerette he found empty packages that he suspected had held drugs, and laboratory testing later confirmed the presence of cocaine. This prejudicial evidence is irrelevant because it did not have any impact on Breen's decision to shoot Ms. Cooper. He explained as much in his deposition:

> Q.   Is it your testimony that the reason that you thought that the vehicle was going to strike you was because of the path of the vehicle, the fact that it didn't stop, the information you've already given me, correct?
> MR. GERARDE: Objection to form.
> A.   Yes. The reason I believe the vehicle was going to strike me because it was traveling directly at me, and the operator had disregarded any type of -- disregarded my commands for her to stop.
> Q.   You didn't base that judgment on any particular information about who the operator was or the kind of person she was, did you, or did you?

9

    A.      No, sir.  I didn't even know who she was at that point.
    Q.      You didn't base your decision on any -- okay.  You based your decision solely and exclusively on what you saw the vehicle doing; is that correct?
MR. GERARDE:  Object to the form.
    A.      Right.  Again, I based my decision on what the operator was doing driving the vehicle directly at me and disregarding my commands for her to stop, yes, sir.

Deposition of Michael Breen, July 12, 2000, at 193-94 (attached as Tab 3).

Since any information about drugs had nothing to do with Breen's decision to shoot Ms. Cooper, it should be excluded under Rule 403 as irrelevant and in any case as unduly prejudicial.

## **CONCLUSION**

Evidence concerning drug use and possession is irrelevant and prejudicial. It should be excluded under Fed. R. Evid. 403 both in order to promote fairness and to prevent distraction, digression, and time-wasting during the trial.

                                  THE PLAINTIFF

                                  By  /s/
                                  David N. Rosen
                                  400 Orange Street
                                  New Haven, Connecticut 06511
                                  (203) 787-3513
                                  CT00196
                                  E-mail: drosen@davidrosenlaw.com

CERTIFICATION

      I hereby certify that a copy of the foregoing Memorandum was sent first class mail, postage prepaid on June 1, 2005 to:

Thomas R. Gerarde, Esquire
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut  06114


                                        /s/
                                David N. Rosen