TAB 2

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
------------------------------x
MARGARET COWAN,                   :        ORIGINAL
    Plaintiff,                    :     Civil Action No.
       -v-                        :     3:00 CV 00052(DJS)
MICHAEL BREEN,                    :
    Defendant.                    :
MARGARET COWAN,                   :
As Administratrix of the
Estate of Victoria Cooper,        :     Civil Action No.
    Plaintiff,                            3:01 CV 00229(DJS)
       -v-                        :
TOWN OF NORTH BRANFORD,
    Defendant.                    :


------------------------------x
```

　　　　　Deposition of MICHAEL DEARINGTON, taken pursuant to the Federal Rules of Civil Procedure, at the Law Offices of David N. Rosen, 400 Orange Street, New Haven, Connecticut, before James A. Martone, LSR and Notary Public, in and for the State of Connecticut, on May 18, 2005 at a.m. p.m.

**SANDERS, GALE & RUSSELL**
**(203) 624-4157**

1  a State's Attorney, first in Ansonia/Milford, and
2  for the last 18 years, in New Haven.
3      Q.   Okay.  What branch of the service were
4  you in?
5      A.   Army.
6      Q.   What was your assignment?
7      A.   I was -- by assignment, where I was
8  assigned, or what my MOS was?  I'm not certain.
9      Q.   You can tell me both.
10     A.   I was an enlisted person.  Went through
11 Fort Dix for basic training and advanced
12 training.
13          After I got out of law school I
14 was a -- trained as a radio operator, and then I
15 was assigned to several assignments in the
16 Washington, DC area.
17     Q.   Were you ever an MP?
18     A.   No.
19     Q.   Have you ever had police training?
20     A.   No.
21     Q.   Have you ever worked as a police
22 officer?
23     A.   No.
24     Q.   Your area of expertise is the law; is
25 that correct?

1   prosecutor?
2        A.   No.
3        Q.   Okay.  Have you ever trained police in
4   the legal requirements of their job?
5        A.   Yes.
6        Q.   Okay.  Have you ever given police
7   training in any area other than what the law
8   requires of them?
9        A.   No.
10       Q.   Okay.  Do you consider yourself
11  qualified to instruct police officers in any area
12  other than the areas where you have taught police
13  officers?  You look quizzical.  Should I restate
14  the question?
15       A.   Please.
16       Q.   All right.  Other than the area of the
17  legal requirements for police officers, do you
18  consider yourself an expert in any other area of
19  police practice or procedure?
20       A.   If the question deals with other than
21  law that's applicable to police officers, the
22  answer is there would be nothing beyond that.
23       Q.   Okay.  Would it be fair to describe
24  your role in preparing the report that you did
25  arising out of the death of Victoria Cooper, as

1  making a legal judgment as to whether the police
2  officer did violate the criminal laws of the
3  State of Connecticut?
4       A.   Yes.
5       Q.   Did you do any independent factual
6  investigation?
7       A.   Me personally?
8       Q.   Yes.
9       A.   No.
10      Q.   Did anyone acting under your
11 supervision and control other than the
12 Connecticut State Police and local police
13 departments do any investigation of this case?
14      A.   Well, I assume you mean the state lab
15 and the medical examiner's office?  You're
16 including them?
17      Q.   I am.
18      A.   Other than them, the answer is no.
19      Q.   And what you did was to take the
20 information that had been prepared by these law
21 enforcement agencies, and analyze them to
22 determine in your legal judgment whether the laws
23 of the State of Connecticut had been violated, is
24 that fair to say?
25      A.   Yes.

1    Q.    Okay.  Did you purport to reach any
2    independent factual findings about what happened
3    in this case?
4    A.    Independent of what?
5    Q.    Independent of the State Police and
6    associated agencies' investigations?
7    A.    No.
8    Q.    You brought with you a copy of your
9    report; is that right?
10   A.    Yes, I did.
11           MR. ROSEN:  Let's mark your report
12   as an exhibit.
13           (Plaintiff's Exhibit 1 marked
14           for identification.)
15   Q.    Let me get right to something I'm
16   curious about.  Do you think you have anything to
17   add to the fact-finding process that's going to
18   happen in the civil trial in this case, other
19   than being able to tell the court or jury what it
20   is that you read in these various reports?
21           MR. GERARDE:  Object to form.
22   Q.    You can answer.
23   A.    No.
24   Q.    Other than reading what was in the
25   reports, which I'm sure you did carefully; is

1           MR. O'HARE:  He can answer -- if
2  you ask him if he considered specific facts in
3  his investigation, then he can answer that
4  question.  But if you ask him more generally in
5  terms of what were the factors that led you to
6  reach your conclusion, that I would have to
7  object to.
8           MR. ROSEN:  Let me just understand
9  where we are.
10     Q.   In terms of the specific facts that you
11  considered, you read the entire State Police
12  investigation report; is that correct?
13     A.   Yes.
14     Q.   You read Henry Lee's entire report,
15  correct?
16     A.   Yes.
17     Q.   You read all the witness statements,
18  correct?
19     A.   Yes.
20     Q.   You considered all of those facts; is
21  that right?
22     A.   Yes.
23     Q.   I guess what I want to know is, you to
24  let me know, Mr. O'Hare, whether this is outside
25  or inside of what you consider the framework to

1  be.  What I want to know is how did all of those
2  pieces of information that you received lead to
3  the conclusion that you reached?
4              MR. O'HARE:  That I would have to
5  direct the witness not to answer.  If may I just
6  have a moment.
7              (Pause in the proceedings.)
8              MR. ROSEN:  You just conferred
9  with counsel for a minute.  Do you want to
10 amplify something, or is there something that you
11 feel that the witness can answer?
12             MR. O'HARE:  He asked me if he
13 could give a particular answer to that question
14 and I said that he could.
15     Q.   Okay.  What is the answer that you have
16 been authorized to give by your lawyer?
17     A.   It's not only a review of the facts,
18 but it's applying the law to the facts, that led
19 me to my conclusion.
20     Q.   Applying the law to the facts is the
21 special additional expertise that you brought to
22 this particular process, correct?
23     A.   Yes.
24     Q.   The fact gathering, and factual
25 determinations involved in this case were made by

1   others; is that correct?
2           MR. GERARDE:  Object to the form.
3       A.  Yes.  But for the fact I am at liberty
4   to accept or reject the conclusion, the factual
5   conclusions presented to me.
6       Q.  Okay.  Well, can you explain to me the
7   basis on which you accepted or rejected factual
8   conclusions that were presented to you?
9       A.  I accepted all of them.
10      Q.  And can you explain to me what it was
11  that led you to accept all of the factual
12  conclusions that were presented to you?
13          MR. O'HARE:  I would direct the
14  witness not to answer that question.
15      Q.  Just so that we have a clear record, is
16  it the case that each and every time you've
17  instructed the witness not to answer, it's based
18  on the deliberative process privilege?
19          MR. O'HARE:  That's correct.
20          MR. ROSEN:  And can we say that
21  unless there's some other reason, if you direct
22  the witness not to answer, it's going to be
23  because of the deliberative process privilege?
24          MR. O'HARE:  If there is another
25  reason, I will so indicate.

1   something that you understood purported to
2   represent the scene of the shooting on Route 80?
3        A.    Correct.
4        Q.    Okay.  And was it understandable to you
5   as you watched the animation, what the sequence
6   of events was that was shown in the animation?
7        A.    Yes.
8        Q.    Okay.  Now if you learned that the
9   events on Route 80 on the night of the shooting
10  unfolded in the way that the animation showed,
11  would that change any of your conclusions?
12       A.    I don't know if it would change my
13  conclusion, but I think it would be -- give me
14  pause for thought in terms of assessing the whole
15  scenario, again.
16       Q.    Can you explain why?
17             MR. O'HARE:  I'll direct the
18  witness not to answer that question.
19       Q.    Did you see anything in the animation
20  that was inconsistent with your understanding of
21  the facts?
22       A.    I can't answer that because I don't
23  recall all of the information that I had
24  available to me in terms of the angles and
25  locations of the car and the officer.

1    A.    With respect to an a site arrest, then
2  we're not involved in the decision-making, and
3  the case comes to us, so -- as far as the arrest
4  itself and the case being referred to us, I
5  typically wouldn't have any input on an on site.
6  As far as a warrant arrest, the answer is yes.
7    Q.    Do you think that you have had a
8  decision-making role in -- let me restate the
9  question.
10           To your knowledge, has any police
11 officer been prosecuted for alleged crimes
12 involving excessive use of force within your
13 jurisdiction during the time that you have been
14 State's Attorney, either in New Haven or in
15 Ansonia/Milford?
16   A.    Not that I can recall.
17   Q.    Okay. And in addition to the 10 or 15
18 reports involving police actions resulting in the
19 death of a civilian, have you also had occasion
20 to review incidents involving situations where
21 civilian's have been injured or allegedly injured
22 by police officers?
23   A.    Yes.
24   Q.    And in those situations, you have had
25 to make a judgment as to whether there was

1  evidence warranting prosecution of the police
2  officer for criminal offense, correct?
3      A.   The answer is that there are examples
4  of what you're referring to, where officers
5  reacted in self-defense, and inflicted injuries,
6  but I suppose that the answer would be yes, I
7  guess in any one of those situations, we would
8  consider whether the police officer was
9  justified.
10     Q.   And the determination that the officer
11 acted in in justifiable self-defense is a
12 determination that you and your colleagues in
13 your office make?
14     A.   Yes.
15     Q.   And had you made a determination that
16 the officer had not been justified, that would
17 have been something that would have required you
18 to bring a prosecution; is that correct?
19     A.   Yes.
20              MR. ROSEN:  Off the record.
21              (Discussion off the record.)
22     Q.   I'm not sure whether or not I asked you
23 this question.  Have you or your office to your
24 knowledge, ever prosecuted a police officer for
25 any crime allegedly involving excessive use of

1  criminal assault; is that correct?
2      A.   Yes.
3      Q.   And it would include knowledge
4  obviously of the laws of homicide from murder on
5  down; is that correct?
6      A.   Yes.
7      Q.   And the process that you engaged in, in
8  the aftermath of this shooting involved you
9  having access to information provided to you by
10 not only the State Police but also Henry Lee's
11 office, and then applying that information to
12 your knowledge of the law; is that correct?
13     A.   Yes.
14     Q.   Okay.  I want to ask you a question
15 about page 15 of your report, it's entitled
16 "Conclusion."
17     A.   Yes.
18     Q.   There's a reference to a section of the
19 Connecticut General Statutes, it's 51-277(a).
20 And you've quoted some of it there, but I take it
21 that this statute mandates that whenever a peace
22 officer in the performance of his duties uses
23 deadly physical force upon another person and
24 such person dies, as a result of such use of
25 force, that this type of investigation has to

# CERTIFICATE

I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition was by me duly sworn and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to print under my direction, and the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither of counsel nor related to either of the parties to said suit, nor am I interested in the outcome of said cause.

Witness my hand and seal as Notary Public this ___30___ day of ___May___, 20_05_.

_____
NOTARY PUBLIC
**JAMES MARTONE**

My Commission Expires:

APRIL 2008