

Photograph # 27



Photograph # 28



Photograph # 29



Photograph # 30



Photograph # 31



Photograph # 32

# TAB 2

```
            UNITED STATES DISTRICT COURT
               DISTRICT OF CONNECTICUT
```

MARGARET COWAN, as            )
Administratrix                )
of the Estate of              )
Victoria Cooper,              )
       Plaintiff,             )
                              )   CIVIL NO.:  3:00CV00052(DJS)
   vs.                        )   ALL CASES
                              )
MICHAEL BREEN,                )
       Defendant.             )
------------------------------
MARGARET COWAN, as            )
Administratrix                )
of the Estate of              )
Victoria Cooper,              )
       Plaintiff,             )
                              )   CIVIL NO.:  301CV00229(DJS)
   vs.                        )
                              )   MARCH 7, 2002
TOWN OF NORTH BRANFORD,       )
       Defendant.             )
------------------------------

               D E P O S I T I O N   O F

        C H A R L E S   R.   M A N N I N G,  P H. D.,  P. E.


                    A P P E A R A N C E S

For the Plaintiff:              Mr. David N. Rosen
  (via videoconference)         Rosen & Dolan
                                400 Orange Street
                                New Haven, Connecticut
                                                    06511

For the Defendants:             Mr. Thomas R. Gerarde
                                Howd & Ludorf
                                65 Wethersfield Avenue
                                Hartford, Connecticut
                                                    06114-1190

In Raleigh, N.C.                Reported by:
May 29, 2002                    Carol M. Smith, CVR

COPY
```



**Pace Reporting Service**

*General Court Reporting & Videotaping*
P.O. Box 252 • Cary, North Carolina 27512
Telephone: (919) 859-0000 • Facsimile: (919) 859-1215

Manning                       Direct                          -110-

| | | |
|---|---|---|
| 1 | Q | All right. And in terms of determining the angle, |
| 2 | | how do you determine the angle? |
| 3 | A | How do you determine the angle? Well, it's obvious |
| 4 | | as far as--you could--you could get the angle. We |
| 5 | | know that if you take the first bullet fired at |
| 6 | | forty-three feet or forty-four feet, we know the |
| 7 | | height of the hood on the Camaro. |
| 8 | | We know that it penetrated it, so we can |
| 9 | | determine what the angle is. I didn't determine |
| 10 | | the angle, because when--when we shot it, we shot |
| 11 | | it at fifty-seven inches, and we went through the |
| 12 | | hood of the Camaro, and we could see that it was a |
| 13 | | shallow angle. The one thing that-- |
| 14 | Q | You mentioned-- |
| 15 | A | I'm sorry. May I finish? |
| 16 | Q | Go ahead. |
| 17 | A | When you--the police stuck a rod down there. |
| 18 | | Miller stuck a rod down there, and they took a |
| 19 | | laser. Well, it's pretty obvious after we put |
| 20 | | eight holes through there, that you cannot--that |
| 21 | | you're talking seven-point-two-three (7.23) |
| 22 | | degrees. There isn't any way with that bullet |
| 23 | | tearing that up like that that you can--you can |
| 24 | | measure what that angle is in any kind of accuracy. |

Manning                     Direct                        -111-

1          We know that--we know what the--we know
2     what the angle is coming in, because we can measure
3     the side of the hole.
4          And we know what the angle is, if you
5     want to know it, by knowing if you fire at a
6     certain level and at a distance, you can measure--
7     you can determine it.  But sticking that stick in
8     there--and we did that--it's just not that
9     accurate.  And it wasn't--I'm sorry.
10   Q    When did you stick a stick in there?
11   A    When we had the hood, I stuck a stick in there two
12        or three times.  We've got--we've got some quarter-
13        inch dowel pins, and some three-eighths-inch dowel
14        pins that we'd stick in there.
15   Q    And what were you able to determine using the dowel
16        pins?
17   A    I determined that, in the first place, it wasn't--
18        it wasn't meaningful to me.  I know how fast the
19        vehicle's going.  I know what the bullet does.  I
20        was able to reconstruct this very carefully.  I can
21        put the dowel pin in there, though, and I can get--
22        I can get a pretty vari--wide variation in numbers
23        when I put the dowel pin in there, because of the
24        way that bullet, when it's spinning, tears that

Manning                    Direct                              -112-

1            hole up.
2   Q        Do you get a wide variation in the angle to the
3            center line from the way the bullet tears the metal
4            up?
5   A        Oh, no.  You don't get any variation in center line
6            where you're shooting, because we're able to
7            measure very carefully that line in front of it in
8            the right side.  But going down in, no.
9   Q        All right.  I'm looking at your report.  And you
10           state here in Paragraph 2 of your report--this is
11           back to Exhibit 1, Doctor.
12  A        Okay.
13  Q        It says, "The Camaro was moving twenty-five to
14           thirty miles an hour, was moving forward at thirty-
15           six to forty-four feet per second," is that right?
16  A        Yes.
17  Q        Okay.  And then you say, "The time between the two
18           shots of Officer Breen has been reported as one to
19           two seconds"?
20  A        Yes.
21  Q        And you continue--and you continue, "Thus, during
22           that time, the Camaro moved forward by between
23           thirty-six and eighty-eight feet," is that right?
24  A        Yes.

STATE OF NORTH CAROLINA                                         -127-

COUNTY OF WAKE

### C E R T I F I C A T E

I, Carol M. Smith, CVR, a Notary Public in and for the State of North Carolina, duly commissioned and authorized to administer oaths and to take and certify depositions, do hereby certify that on May 29, 2002, CHARLES R. MANNING, PH.D., P.E., being by me duly sworn to tell the truth, thereupon testified as above set forth as found in the preceding 126 pages, his examination being reported by me verbatim and then reduced to typewritten form under my direct supervision; that the foregoing is a true and correct transcript of said proceedings to the best of my ability and understanding; that I am not related to any of the parties to this action; that I am not interested in the outcome of this case; that I am not of counsel nor in the employ of any of the parties to this action.

IN WITNESS WHEREOF, I have hereto set my hand and affixed my official notarial seal, this the 20th day of June, 2002.

_____
Notary Public

My Commission Expires 11/30/04

Carol M. Smith, CVR
PACE REPORTING SERVICE
P. O. Box 252
Cary, North Carolina  27512
Telephone:  919/859-0000 (Raleigh)
            910/433-2926 (Fayetteville)
            910/790-5599 (Wilmington)

# TAB 3

# COWAN -V- BREEN/NORTH BRANFORD - KENT M. SCHWENDY, P.E. - 5/13/05

## Page 1 to Page 248

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY: NIZIANKIEWICZ & MILLER

*NIZIANKIEWICZ & MILLER*
*972 Tolland St.*
*East Hartford, CT   06108-1533*
*Phone:   860-291-9191*
*FAX:   860-528-1972*

Page 137

1  already discussed, yes.
2  Q.  So you differ from Dr. Lee in
3  that regard?
4  A.  Yes.
5  Q.  Okay. What about the location of
6  the officer in the roadway at the time of the
7  first shot; vis-a-vis the car. Do you have a
8  difference from Dr. Lee on that issue?
9  A.  As I recall, he gave a range of
10  potential location. I'm not sure if my
11  calculated number falls within that range. I
12  know it's close to it.
13  MR. ROSEN:  You can look at his
14  report if you want. It's not a
15  quiz.
16  THE WITNESS:  That might be
17  helpful if I can, yes.
18  MR. GERARDE:  Okay. It's in item
19  number seven. It's on page six. It
20  states that the bullet defect -- let
21  me skip down a little further.
22  It's referring to the trajectory
23  of the bullet that struck the hood.
24  And the trajectory of the bullet
25  cause of defect was determined by

Page 138

1  positioning rods and by laser siding
2  as shown in photograph number 26.
3  The trajectory of the bullet was
4  determined to be from front to back,
5  right to left, and downward. With
6  the angle of impact of the hood as
7  approximately ten degrees as shown
8  in photograph number 27.
9  Based on the trajectory of the
10  bullet and the angle of impact, the
11  most likely location of the police
12  officer at the time of the shooting
13  was established.
14  That ten degrees varies from the
15  15.5 degrees that I determined.
16  Because in the testing that I did, I
17  was able to determine that although
18  the defect angle and the angle of
19  the original shooter are directly
20  related. They are not equal.
21  (BY MR. GERARDE):
22  Q.  Okay. Is there anything else
23  that comes to mind where you believe you
24  differ from the finding of Dr. Lee?
25  A.  Let's see if I go through their

Page 139

1  conclusions. I will just read through them,
2  and if there is anything I differ from I will
3  let you know.
4  Again, they state the first shot
5  was fired back, right to left at a downward
6  angle of approximately ten degrees impacting
7  the hood from the Camaro.
8  I don't necessarily disagree with
9  that, but I don't think that the way that they
10  determined ten degrees was reliable by using
11  the penetration mark on the hood.
12  In the testing that I did, one of
13  the things that I noticed was that even though
14  I was using a controlled situation so that the
15  vertical angle was always the same between the
16  fire arm and the sheet metal that I was using
17  as a target.
18  Some of the bullets would
19  penetrate down through the metal. Some would
20  glance off and go up. Some would actually
21  tear very long trails through the metal. The
22  vertical angle that resulted from those
23  penetrations then varied greatly, and I didn't
24  see any form or pattern based on the original
25  angle.

Page 140

1  So with that, I don't necessarily
2  disagree with ten degrees. I don't think
3  though that the method they used is reliable.
4  I don't know if the results are correct or not
5  correct, because I don't have the methodology
6  to determine that.
7  Q.  I understand. Is there anything
8  else?
9  A.  In item six they state that
10  although the exact speed at which the vehicle
11  was traveling cannot be determined at this
12  time. The pattern and distribution of glass
13  across Route 80 suggests the Camaro was not
14  moving slowly at this time.
15  Again, I don't disagree with that
16  statement. But I was through my calculations
17  able to determine the speed that fits all of
18  the other input data.
19  Q.  Including the assumption that
20  Breen was 50 feet from the vehicle at the time
21  he began to pull the trigger?
22  A.  Correct.
23  Q.  Okay. Is there anything else?
24  A.  In item eight again they say the
25  exact position of the officer at the time of

Page 245

1  MR. GERARDE: I'm just wondering.
2  There was a lot of testimony on what
3  the significance of the vertical
4  angle measured by the state police
5  between 10 and 7 degrees meant. And
6  what that meant with respect to
7  where the officer was located.
8  (BY MR. GERARDE):
9  Q. Do you remember reading any of
10 that in Miller's deposition?
11 A. I read it. But since I had
12 already formed a conclusion that it was not
13 reliable. I didn't spend a lot of time
14 judging his opinion.
15 Q. I now actually have some more
16 information for you. I took his deposition on
17 two occasions, and I think you only have one.
18 A. I have both depositions.
19 Q. You have both?
20 A. Yes.
21 Q. It would be in the first
22 deposition. Okay. So your answer stays?
23 A. I recall the discussion, but I
24 just didn't use it in my calculations. So I
25 didn't rely on that.

Page 246

1  MR. GERARDE: Okay. That's all I
2  have. All set.
3  MR. ROSEN: That's great.
4  Nothing further.
5  (Whereupon, the deposition
6  concluded at 7:30 P.M.)

Page 247

1  STATE OF CONNECTICUT
   CERTIFICATE OF NOTARY
2  I, DENISE D. HARPER-FORDE, Licensed
   Registered Professional Reporter, and Notary
3  duly commissioned and qualified in and for the
   State of Connecticut, do hereby certify that
4  pursuant to notice there came before me on the
   13th day of May, 2005, the following-named
5  person to wit: KENT M. SCHWENDY, P.E. (EXPERT

6  WITNESS), who was taken before me at the time

7  and place hereinbefore set forth.
   That the witness was by me first duly
8  sworn to testify to the truth, the whole
   truth, and nothing but the truth. That he was
9  thereupon carefully examined upon his oath,
   which was duly recorded by me
10 stenographically, and later reduced to
   computer transcription. I certify that this
11 deposition is a true and correct transcript of
   my stenographic notes so taken.
12 I further certify that I am neither
   attorney nor counsel for, nor related to, nor
13 employed by any of the parties to the action
   in which this deposition is taken. And
14 further that I am not a relative or employee
   of any attorney or counsel employed by the
15 parties hereto, or financially interested in
   this action.
16 IN WITNESS THEREOF, I have hereunto set
17 my hand and affixed my seal this 13th day of
18 May, 2005.
19
20    Denise D. Harper-Forde
21    Licensed Registered Professional Reporter
22    License No.: 00133
23    Notary Public
24    My Commission Expires
25    December 31, 2008

Page 248

INDEX
WITNESS DIRECT CROSS REDIRECT RECROSS
KENT M. SCHWENDY, P.E.
(EXPERT WITNESS)
4  236  239  241
242  243
243

EXHIBITS PAGE

Defendant's Exhibit 1, Notice of
Deposition  13
Defendant's Exhibit 2, Deponent's
File  46
Defendant's Exhibit 2-A, Conklin &
Soroka General Location Survey  46
Defendant's Exhibit 2-B, May 12th
Report  130
Defendant's Exhibit 2-C, Supplement
to Report  130

TAB 4

COWAN vs. BREEN                                          October 3, 2002

```
                                                              Page 1

 1   IN THE UNITED STATES DISTRICT COURT

 2   FOR THE DISTRICT OF CONNECTICUT

 3   - - - - - - - - - - - - - - - - - -

 4   MARGARET COWAN, as Administratrix  :

 5   Of the Estate of Victoria Cooper,  :

 6           Plaintiff,                 : Civil Action No.

 7           vs.                        :   3:00CV00052

 8   MICHAEL BREEN,                     :      (DJS)

 9           Defendant.                 :

10   - - - - - - - - - - - - - - - - - x

11   MARGARET COWAN, as Administratrix  :

12   Of the Estate of Victoria Cooper,  :

13           Plaintiff,                 :    Case No.

14           vs.                        :   3:01CV00229

15   TOWN OF NORTH BRANFORD,            :      (DJS)

16           Defendant.                 :

17   - - - - - - - - - - - - - - - - - x

18            Deposition of HENRY LEE, taken

19   pursuant to the Federal Rules of Civil Procedure at

20   the Connecticut State Forensic Laboratory, 278

21   Colony Road, Meriden, Connecticut, before Elizabeth

22   A. Zawacki, LSR #00087, a Registered Merit Reporter

23   and Notary Public in and for the State of

24   Connecticut, on October 3, 2002, at 9:53 a.m.

25
```

[stamp: ORIGINAL]

SANDERS, GALE & RUSSELL

COWAN vs. BREEN                                           October 3, 2002

Page 24

1  determined, therefore we give an approximate area,
2  instead of saying single spot, to cover other
3  possibilities.
4      Q.    So the bullet casing on a roadway can roll
5  or bounce or be kicked by a person on the scene?
6      A.    Could be.
7      Q.    Those are all things that would affect the
8  location?
9      A.    Location, exact location of the finding.
10           MR. ROSEN:  That's all I have at this
11 time, Doctor.  I know Mr. Gerarde has questions.
12           MR. GERARDE:  Thank you.  Why don't
13 we go off the record for a minute, and I can set
14 some exhibits up.
15           THE VIDEOGRAPHER:  Going off the
16 record at 10:29.
17           (Recess:  10:29 to 10:32 a.m.)
18           THE VIDEOGRAPHER:  On the record at
19 10:32.
20 CROSS-EXAMINATION
21 BY MR. GERARDE:
22      Q.    Doctor, I'd like to direct your attention
23 to the enlargement of the road diagram prepared by
24 the major crime squad, and if you look at the bottom
25 of the diagram, you'll see there are red circles

```
 1                    C E R T I F I C A T E
 2        I hereby certify that I am a Notary Public, in
 3   and for the State of Connecticut, duly commissioned
 4   and qualified to administer oaths.
 5        I further certify that the deponent named in
 6   the foregoing deposition was by me duly sworn and
 7   thereupon testified as appears in the foregoing
 8   deposition; that said deposition was taken by me
 9   stenographically in the presence of counsel and
10   reduced to print under my direction, and the
11   foregoing is a true and accurate transcript of the
12   testimony.
13        I further certify that I am neither of counsel
14   nor attorney to either of the parties to said suit,
15   nor of either counsel in said suit, nor am I
16   interested in the outcome of said cause.
17           WITNESS my hand and seal as Notary Public this
18   17th day of October, 2002.
19
20                        _____
21                        Elizabeth A. Zawacki
22                             LSR #00287
23                             Notary Public
24   My commission expires:
25   February 28, 2005
```