**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARGARET COWAN, | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF VICTORIA COOPER | : | NO.: 3:00 CV 0052 (RNC) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BREEN | : | |

| | | |
|---|---|---|
| MARGARET COWAN, | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF VICTORIA COOPER | : | NO.: 3:01 CV 0229 (RNC) |
| | : | |
| v. | : | |
| | : | |
| NORTH BRANFORD | : | JUNE 1, 2005 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE RE TESTIMONY OF JAMES J. FYFE, PH.D.

**I.    BACKGROUND.**

This case involves the death of a citizen, Victoria Cooper, who was shot by

Officer Michael Breen as she drove a motor vehicle towards him on a darkened

roadway in North Branford, Connecticut following a stop of that vehicle and escape of

the driver, Steven Guerrette.  Despite having ample opportunity to change direction and

avoid a confrontation, Cooper drove toward Officer Breen, who, fearing that the deadly

force embodied in a moving motor vehicle would be used against him imminently, fired

two shots from his service weapon at the vehicle. The first shot deflected off of the hood

of the vehicle; the second shot struck Cooper and fatally wounded her.

It is the defendants' contention that Officer Breen reasonably believed that his life was in danger of the imminent deadly force embodied by the motor vehicle driven toward him by Victoria Cooper. The defendants submit Officer Breen is protected by the doctrine of qualified immunity and self-defense. Concerning the plaintiff's claim that the Town of North Branford violated the decedent's rights as a result of its failure to train its officers about shooting at motor vehicles, the defendants submit that there is no factual basis for this claim.

The plaintiff is expected to introduce the testimony of Dr. James J. Fyfe. Dr. Fyfe is a nationally known police practices expert. (Exhibit A intentionally omitted). Dr. Fyfe's report is attached as Exhibit B. The excerpts which the plaintiff intends to use in lieu of live testimony if Dr. Fyfe is unavailable are attached as Exhibit C.

In his report dated January 30, 2001, Dr. Fyfe offers four opinions, three against Officer Breen and one against the Town of North Branford. These opinions are as follows: (1) Any reasonable and competent police officer, administrator, or investigator would conclude that Officer Breen's account of this event is false; (2) Officer Breen failed to follow generally accepted police custom and practice for effect a high risk vehicle stop, and this failure was a direct and proximate cause of the death of Ms. Cooper; (3) The shooting of Ms. Cooper by Officer Breen was unjustifiable, unnecessary, and in gross violation of both generally accepted police custom and

2

practice and the specific policies of the North Branford Police Department, and (4) The improper conduct of Officer Breen and the unnecessary and unjustifiable shooting and death of Ms. Cooper were direct and predicable results of grossly improper supervisory and training customs, practices and policies on the part of the North Branford Police Department.

As set forth in the disclosure in the Joint Trial Memorandum, the plaintiff disclosed that Dr. Fyfe will testify as follows:

> He will testify that 1) proper police procedure when faced with an on coming vehicle is to get out of the way rather than shoot, since shooting may disable the car or the driver and put the police officer (and any bystanders) in even greater danger. 2) Thus, even if Breen reasonably believed that the on coming car posed a serious threat of harm to him the decision to fire at the car was flagrantly inconsistent with proper police procedure. 3) The decision to fire the second shot was entirely inconsistent with proper police procedure for an additional reason. Breen said that he fired the second shot because he was trained always to fire twice if he fired once. Such a practice is entirely inconsistent with proper police practice. Proper police practice requires that each shot be justified. If the second shot was not necessary – as it was not – it was completely inconsistent with proper police practice even if the first shot had been proper (which it wasn't). These principles are fundamental to police work, and known to every reasonable officer. 4) No reasonable officer could think that it was appropriate to open fire on a vehicle that was approaching in the circumstances described by the defendant: the proper practice was perfectly clear: get out of the way of the car. 5) Likewise, no reasonable officer could think that it was appropriate to fire the second shot under the circumstances described by the officer: the officer's position made the second shot useless at best; and the decision to fire a second shot because a first shot had been fired is completely at odds with the basic rules of the use of force well known to every police officer. 6) Dr. Fyfe will also testify that the decision to shoot from the position where the officer was actually located relative to the car was grossly improper, in

violation of the most elementary standards of police practice. This conclusion applies fully to both the first and second shots.  7) A reasonable police officer would know that shooting Vicki Cooper for the purpose of preventing her from leaving the scene was absolutely prohibited by universally applicable principles of police conduct. 8) Defendant Breen's conduct before the shooting was inappropriate and put him in a situation where he was aware of having created unnecessary risks. 8) Such other matters as are covered in his deposition in the pages identified below.

Plaintiff's disclosure in the joint trial memorandum.

Although not identified in the initial disclosure, plaintiff's counsel provided the Dr. Fyfe's deposition transcript pages citations.[1]

The defendants submit that the bulk of Dr. Fyfe's testimony must be precluded as set forth below. The defendants request that this Court conducts a preliminary hearing into Dr. Fyfe's opinions as contemplated by *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## II.    LAW AND ARGUMENT.

### A.    STANDARD OF REVIEW.

Fed.R.Evid. 702, which governs the admissibility of scientific or technical expert testimony, provides:

---

[1]The defendants have learned that the plaintiff plans to elicit the above-stated opinions from Dr. Fyfe if he is called live.  If Dr. Fyfe is unavailable, the plaintiff intends on using excerpts from Dr. Fyfe's discovery deposition: page 4, line 8 through page  12, line 22, page 14, line 14 through page 112, line 17, and page 114, line 23 through page 123, line 22. Those pages are attached hereto as Exhibit C.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

Expert testimony must be helpful to the jury in comprehending and deciding issues beyond the understanding of a layperson. *Id.*

In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court made clear that the district court has a "gatekeeping" function under Rule 702, and is charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. In fulfilling this role, the district court must consider both the reliability and relevance of the proffered testimony. In gauging reliability, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on "sufficient facts or data;" (2) that the testimony "is the product of reliable principles and methods;" and (3) that "the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. In so doing, the district court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

152 (1993).

Although Rule 702 sets forth specific criteria for the district court's consideration, these criteria are not exhaustive. The district court may consider a number of other factors in determining the reliability of the proffered testimony, including: (1) whether a theory or technique has been or can be tested; (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the technique's known or potential rate of error" and "the existence and maintenance of standards controlling the technique's operation;" and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community. *See Daubert*, 509 U.S. at 593-94.

Expert witnesses may not testify based on their personal view of the veracity of a lay witness's testimony. *See United States v. Scop*, 846 F.2d 135, 142 (CA2 1988), *rev'd in part on other grounds*, 856 F.2d 5 (CA2 1988); *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1072 (CA3 1996). Similarly, "[Expert witness] statements embodying legal conclusions exceed[ ] the permissible scope of opinion testimony under the Federal Rules of Evidence". *United States v. Scop*, 846 F.2d at 139; *see also, United States v. Bilzerian*, 926 F.2d 1285, 1294 (CA2 1991), *citing Expert Legal Testimony*, 97 HARV.L.REV. 797 (1984).

Whether to admit expert testimony is a matter left to the discretion of the trial judge and is set aside only when the decision is "manifestly erroneous." *United States v.*

*Schwartz*, 924 F.2d 410, 425 (CA2 1991).

Whether the expert is "qualified" is initially a question for the Court. Fed.R.Evid. 104(a). There is no presumption that a witness is competent to give an opinion; it is incumbent upon a party offering an expert witness to establish that the witness possesses the necessary learning, knowledge, skill, or practical experience to enable him or her to give expert testimony. The Rule 104(a) inquiry requires the proponent of the expert to show by a preponderance of the evidence that the expert's opinion is admissible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993), *citing Bourjaily v. United States*, 43 U.S. 171, 175-76 (1987).

**B.    SO MUCH OF DR. FYFE'S OPINION THAT MAKES CREDIBILITY DETERMINATIONS OR RELIES ON THE SAME MUST BE PRECLUDED AS IT INVADES AND USURPS THE PROVINCE OF THE JURY.**

It would be manifest and reversible error to allow Dr. Fyfe to make credibility determinations about Officer Breen's account of the events that occurred on July 13, 1999. It is axiomatic that expert witnesses may not testify based on their personal view of the veracity of a lay witness's testimony. *See United States v. Scop*, 846 F.2d 135, 142 (CA2 1988), *rev'd in part on other grounds*, 856 F.2d 5 (CA2 1988); *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1072 (CA3 1996).

A cursory examination of Dr. Fyfe's opinions reveals that the bulk of his testimony is based on his disbelief of Officer Breen's version of events.  Indeed, four of

7

ten pages of his written report are exclusively devoted to his opinion that "Any reasonable and competent police officer, administrator, or investigator would conclude that Officer Breen's account of this event is false". *See* **Exhibit B**, pp. 2-5. Fyfe's credibility determinations continue into his second opinion that "The shooting of Ms. Cooper by Officer Breen was unjustifiable, unnecessary, and in gross violation of both generally accepted police custom and practice and the specific policies of the North Branford Police Department". *See* **Exhibit B**, pp. 7 – 10. Such testimony is inadmissible and must be precluded.  Fyfe's concession that he does not intend to usurp the fact-finding role does not make his opinion in this regard any more admissible. *See* **Exhibit B**, p. 2.

Dr. Fyfe's testimony in this regard invades the province of the jury regarding its position as the trier of fact.  It is the province of the jury and the jury alone to ascertain the truth of the matters and assess the credibility of witnesses.  This is not the first time that Dr. Fyfe has endeavored to usurp the province of the jury in this regard. In *Whitmill v. City of Philadelphia*, 29 F.Supp.2d 241 (1998) the district court rejected the admission of Dr. Fyfe's "lengthy discussion" of the credibility of a defendant police officer in the context of a claim that the plaintiff's civil rights were violated. The *Whitmill* court held that "allowing Dr. Fyfe to testify concerning [the] Officer['s] credibility would have usurped the jury's role in assessing credibility." 29. F.Supp.2d at 247. It is both disappointing and surprising that Dr. Fyfe would offer such an opinion in the present

case, having been precluded from offering such an opinion on credibility in the past.

Accordingly, this Court must preclude any testimony concerning the credibility of any witness or any opinion by Dr. Fyfe that relies, in whole or in part, on the assessment of credibility of any witness. To hold otherwise is manifest error. *United States v. Schwartz*, 924 F.2d 410, 425 (CA2 1991).

**C.    SO MUCH OF DR. FYFE'S OPINION THAT STATES OFFICER BREEN'S ACTIONS WERE UNREASONABLE, UNJUSTIFIABLE OR OTHERWISE COUCHED IN A LEGAL STANDARD MUST BE PRECLUDED AS IT INVADES AND USURPS THE PROVINCE OF THE JURY.**

It would be manifest and reversible error to allow Dr. Fyfe to offer opinions that Officer Breen's actions were unreasonable, unjustifiable or otherwise couched in a legal standard. Again, a cursory examination of Dr. Fyfe's opinions reveals that the bulk of his testimony is addressed in terms such as "reasonableness," "unreasonableness," "unjustified" or "justified" or couched in a legal standard. These words are throughout Fyfe's report and throughout his deposition. *See* **Exhibit B, C**.

It is axiomatic that "[expert witness] statements embodying legal conclusions exceed[ ] the permissible scope of opinion testimony under the Federal Rules of Evidence". *United States v. Scop*, 846 F.2d at 139; *see also, United States v. Bilzerian*, 926 F.2d 1285, 1294 (CA2 1991), *citing Expert Legal Testimony*, 97 HARV.L.REV. 797 (1984). While the Rules of Evidence allow testimony by experts on the ultimate issue in a case, that does not mean experts are allowed to express that opinion in a legal

standard. An expert cannot express an opinion in terms of the ultimate legal issue the jury is to decide: that the criminal defendant is "guilty"; or that the civil defendant was "negligent". *United States v. Barile*, 286 F.3d 749, 760 (CA4 2002) (role of district court is to distinguish opinion testimony that embraces ultimate issue of fact from opinion testimony that states legal conclusion). Likewise, an expert cannot opine directly on whether the Constitution was violated. *See, e.g., Burkhart v. Washington Metro. Area Transit Authority*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) (expert may not testify as to whether that legal standard has been satisfied); *Estes v. Moore*, 993 F.2d 161, 163 (CA8 1993) (expert's testimony as to probable cause properly excluded as legal conclusion); *Hygh v. Jacobs*, 961 F.2d 359 (CA2 1992) (error to admit definition of deadly force that differed from state statute; that conduct was "not justified under the circumstances", not "warranted under the circumstances", and was "totally improper"); *Rhodes v. McDaniel*, 945 F.2d 117, 119 (CA6 1991) ("the expert opinion on police procedure [would not have been] conclusive as to whether the officers' actions [were] 'objectively reasonable'").

Again, in *Whitmill v. City of Philadelphia*, 29 F.Supp.2d 241 (1998) the district court rejected the claim that Dr. Fyfe's expression of an opinion of the legality of a traffic stop. In that report, Dr. Fyfe opined that the defendant officers did not make "a proper *Terry* stop". 29 F.Supp.2d at 246. The *Whitmill* court concluded that such a determination was a matter for the jury to decide following instruction on the law from

the court. *Id.* The *Whitmill* court observed that Dr. Fyfe is not a lawyer. *Id.*  Dr. Fyfe has

be specifically precluded on this issue in the past.  This court should do so as well.

Accordingly, this Court must preclude any testimony concerning the

reasonableness, justification of Officer Breen's actions or any such testimony couched

in a legal standard by Dr. Fyfe and preclude any opinion that relies, in whole or in part,

on such conclusions. To hold otherwise is manifest error. *United States v. Schwartz*,

924 F.2d 410, 425 (CA2 1991).

**D.    DR. FYFE'S OPINION THAT OFFICER BREEN'S FAILURE TO
      CALL FOR BACKUP WAS A DIRECT AND PROXIMATE CAUSE
      OF VICTORIA COOPER'S DEATH MUST BE PRECLUDED AS IT
      WILDLY SPECULATIVE, IS INCONSISTENT WITH
      ESTABLISHED LAW, AND AMOUNTS TO NOTHING MORE
      THAN JUNK SCIENCE.**

Dr. Fyfe's second opinion in his report claims that Officer Breen's failure to treat

the initial stop of the vehicle driven by Steven Guerrette as a "high-risk, felony or

suspicious vehicle stop" proximately caused Victoria Cooper's death. Fyfe opines that

Officer Breen should have called a backup officer and should not have attempted to

stop the Guerrette vehicle alone. *See* **Exhibit B**, pp. 6-7.  Fyfe observes a variety of

dangers associated with making vehicle stops by a lone police officer. *Id.* From that

point, Fyfe summarily concludes that had Officer Breen had a backup officer present,

advised Cooper she was not free to leave, and prevented the keys from remaining in

the ignition of the subject vehicle, Officer Breen "would not have would up this event by

shooting Ms. Cooper." **Exhibit B**, p. 7. This worst kind of wild, unsupported speculation must be precluded and Dr. Fyfe must be prevented from offering this junk science to the jury.

Fed.R.Evid. 702 requires that expert testimony be: (1) "based upon sufficient facts or data"; (2) "the product of reliable principles and methods"; and (3) "applied ... reliably to the facts of the case." Fed.R.Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 & n. 7 (1993) (holding that pursuant to the trial judge's "gatekeeping responsibility," she "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"). The opinions of police practices and procedures experts are subject to the *Daubert* analysis, particularly on suspect causation questions involving the failure to screen, train, supervise and discipline, or claims that are nothing more than but/for causation claims. *See Berry v. City of Detroit*, 25 F.3d 1342, 1348-54 (CA6 1994) (suggesting that police science may be "junk science," court questioned qualifications of expert to testify that failure to discipline caused event); *see also Estate of Macias v. Lopez*, 42 F. Supp.2d 957 (N.D. Cal. 1999) (expert opinions that failing to intervene in specific case was substantial factor in murder-suicide too speculative), *reversed on other grounds, Estate of Macias v. Ihde*, 219 F.3d 1018 (9th Cir. 2000); *Holland v. City of Houston*, 41 F. Supp.2d 678, 705 (S.D. Tex. 1999) (plaintiff's decedent shot in parking lot of club where officer was working off-duty; expert opinion that policy of permitting off-duty employment in premises that sell

alcoholic beverages caused incident was only in but-for sense; it was insufficient to show that municipal policy or decision reflected conscious disregard of high risk that officers with extra duty jobs in bars would use excessive force in violation of patrons' federally protected rights).

Consequently, Dr. Fyfe must do more than express personal opinion and experience, but to cite to specific studies that establish a causal nexus between systemic failures in screening, training, supervision and discipline and the incidence of actionable misconduct. In *Holland v. City of Houston*, 41 F. Supp.2d 678, 705 (S.D. Tex. 1999), the district court rejected Dr. Fyfe's opinion as nothing more than a "but for" notion of causation. The *Holland* court found that Dr. Fyfe's opinion about the administrator's actions in question `espoused a negligence standard. The court found Fyfe's analysis of the City's policy implying the utilization of a negligence standard, which is inapplicable to cases brought under § 1983. 41 F.Supp.2d at 704. The *Holland* court specifically rejected Fyfe's conclusory "but for" causation claim.

Fyfe's speculative opinion in this regard is expressly prohibited by both the law of causation and the law governing the reasonableness of Officer Breen's actions.  Officer Breen's actions leading up to the shooting are irrelevant to the objective reasonableness of his conduct at the moment he decided to employ deadly force. *Salim v. Proulx*, 93 F.3d 86, 88 (CA2 1996). *See also, Greenidge v. Ruffin*, 927 F.2d 789 (CA4 1991) (officer shot plaintiff during prostitution arrest; held that plaintiff's evidence that

13

officer recklessly created dangerous situation by approaching car at night without flashlights was properly excluded from trial); *Schulz v. Long*, 44 F.3d 643, 648 (CA8 1995) (evidence that officer created a need to use force by their actions prior to moment of a seizure is irrelevant); *Fraire v. City of Arlington*, 957 F.2d 1268 (CA5), *cert. denied*, 506 U.S. 973 (1992) (failure of officer to display his badge and identify himself as a police officer while in plain clothes would not create liability for fatal shooting where officer fired at decedent's vehicle to prevent decedent from running officer down). The cases cited stand for the proposition that the Fourth Amendment right to be free from unreasonable seizure has never been equated by the Court with the right to be free from a negligently executed stop or arrest.

Moreover, Fyfe's basis for his speculative claim rests on certain guidelines promulgated by the International Association of Chiefs of Police ("IACP"). These policies have little to do with whether Cooper's constitutional rights were violated. *See Mettler v. Whitledge*, 165 F.3d 1197, 1203 (CA8 1999) ("Most of the guidelines cited are for the protection of the sheriff's deputies, not of armed suspects, and in any event the breach of such guidelines is not dispositive to our determination of whether the deputies violated a clearly established constitutional right."); *Soller v. Moore*, 84 F.3d 964, 969 (CA7 1996) (IACP Model Policy on off-duty officers engaging in traffic stops under circumstances where they are personally involved ruled inadmissible: "[W]hether it is wise public policy to allow off-duty police officers to chase late night traffic violators is

beside the point; the action is not unconstitutional and, more to the point, it has nothing

to do with the key issue of whether the force used after a suspect is collared is

excessive under the circumstances."); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276

(CA5 1992) ("[E]ven a negligent departure from established police procedure does not

necessarily signal violation of constitutional protections.").  Whether the traffic stop of

the Guerrette vehicle should have been stopped by one officer or two officers is quite

beside the point of the legality of Officer Breen's decision to employ deadly force.

Accordingly, this Court must preclude any testimony concerning the claim that

Cooper's death was caused by Officer Breen's failure to call for backup before initiating

a traffic stop of the subject vehicle and preclude any opinion that relies, in whole or in

part, on such conclusions. To hold otherwise is manifest error. *United States v.*

*Schwartz*, 924 F.2d 410, 425 (CA2 1991).

### E. DR. FYFE'S OPINION ON THE LIABILITY OF THE TOWN OF NORTH BRANFORD MUST BE PRECLUDED BECAUSE IT IS CONCLUSORY, UNSUPPORTED BY ANY EVIDENCE, IS INCONSISTENT WITH ESTABLISHED LAW, AND AMOUNTS TO NOTHING MORE THAN JUNK SCIENCE.

Dr. Fyfe expresses two opinions on the issue of the liability of the Town of North

Branford. *See* **Exhibit B**, p. 10 and **Exhibit C**, pp. ____. The first opinion concerns the

alleged failures of the Town as to Officer Breen's training.  Fyfe contends that Officer

Breen's training was insufficient.  He opines that the failure to have explicit training on

shooting at vehicles and the failure to not have Officer Breen shoot twice, if he shoots at

all, amount to violations of well-established police principles that resulted in Victoria Cooper's death.  The second opinion concerns the sufficiency of the Town's written policies concerning the use of force and shooting at motor vehicles.

Fed.R.Evid. 702 requires that expert testimony be: (1) "based upon sufficient facts or data"; (2) "the product of reliable principles and methods"; and (3) "applied ... reliably to the facts of the case." Fed.R.Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 & n. 7 (1993) (holding that pursuant to the trial judge's "gatekeeping responsibility," she "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable").  The opinions of police practices and procedures experts are subject to the *Daubert* analysis, particularly on suspect causation questions involving the failure to screen, train, supervise and discipline, or claims that are nothing more than but/for causation claims.  *See Berry v. City of Detroit*, 25 F.3d 1342, 1348-54 (CA6 1994) (suggesting that police science may be "junk science," court questioned qualifications of expert to testify that failure to discipline caused event); *see also Estate of Macias v. Lopez*, 42 F. Supp.2d 957 (N.D. Cal. 1999) (expert opinions that failing to intervene in specific case was substantial factor in murder-suicide too speculative), *reversed on other grounds, Estate of Macias v. Ihde*, 219 F.3d 1018 (9th Cir. 2000); *Holland v. City of Houston*, 41 F. Supp.2d 678, 705 (S.D. Tex. 1999) (plaintiff's decedent shot in parking lot of club where officer was working off-duty; expert opinion that policy of permitting off-duty employment in premises that sell

alcoholic beverages caused incident was only in but-for sense; it was insufficient to show that municipal policy or decision reflected conscious disregard of high risk that officers with extra duty jobs in bars would use excessive force in violation of patrons' federally protected rights).

Dr. Fyfe's opinions concerning Officer Breen's training and North Branford Police Department policies are nothing more than expressions of his personal opinion and experience. He makes no effort to cite to specific studies that establish a causal nexus between systemic failures in training on these issues or on the use of force policy in question. In *Holland v. City of Houston*, 41 F. Supp.2d 678, 705 (S.D. Tex. 1999), the district court rejected Dr. Fyfe's opinion as nothing more than a "but for" notion of causation. The Holland court found that Dr. Fyfe's opinion about the administrator's actions in question espoused a negligence standard. The court found Fyfe's analysis of the City's policy implying the utilization of a negligence standard, which is inapplicable to cases brought under § 1983. 41 F.Supp.2d at 704. The *Holland* court specifically rejected Fyfe's conclusory "but for" causation claim. This Court should reach the same conclusion here.

Fyfe's testimony on the application of certain policies of other municipalities should be rejected. San Diego, Houston, Dallas and New York City are all vastly different municipalities than North Branford. Knowing these policies are incomparable to North Branford's policies, Fyfe points to the policy of Manlius, NY as an upstate town

17

with a police agency similar to North Branford's. Fyfe's opinion that North Branford should have a shooting policy similar to Manlius, NY overlooks (and ignores) governing law. The Sixth Circuit rejected plaintiff's claim that officer should be liable for violating city policy that forbids officers to fire at moving vehicles and to apprehend misdemeanor suspect; issue was whether the officer violated the Constitution, "not whether he should be disciplined by the local police force. The Sixth Circuit observed that a city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983." *See Smith v. Freland*, 954 F.2d 343, 954 (CA6 1992). Fyfe's personal opinion is just that – his own and not reflective of our principles of law.

F.    **DR. FYFE'S OPINION THAT OFFICER BREEN'S CONDUCT SHOULD BE EVALUATED BY INCLUDING ALL THE EVENTS PRECEDING THE SHOOTING IS IRRELEVANT, IMMATERIAL AND ANY PROBATIVE VALUE IS OUTWEIGHED BY THE PREJUDICIAL EFFECT.**

Dr. Fyfe opines that the defendant violated the Fourth Amendment because he unreasonably created the danger that required the use of deadly force.  Our law establishes that even if the officer committed mistakes in judgment or procedure before the shooting itself, the question is whether, at the moment of the shooting, the suspect posed an imminent threat of serious bodily harm to the officers or others.  If so, the use of deadly force would be justified and there would be no violation of the Fourth Amendment.  Dr. Fyfe's opinion to the contrary – that Officer Breen should have gotten

out of the way or should have had a backup officer is irrelevant.

Moreover, it is not the law of the land.  *Salim v. Proulx*, 93 F.3d 86, 88 (CA2 1996); *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001) ("An officer's conduct before the suspect threatens force is . . . relevant provided it is immediately connected to the seizure and the threat of force. . . .  The primary focus of our inquiry . . . remains on whether the officer was in danger at the exact moment of the threat of force. . . . "). *Romero v. Board of County Commissioners*, 60 F.3d 702, 704-05 (10th Cir. 1995) ("We follow[ ] other circuits that have confined the reasonableness inquiry in excessive force cases to whether the officer was in danger at the moment of the threat."). *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995); *Drewitt v. Pratt*, 999 F.2d 774, 780 (4th Cir. 1993) ("[F]ailure of [the officer] to display his badge when announcing himself as a police officer" and demanding that the driver stop, even if it was a violation of state law, was "irrelevant to the issue of whether at the moment of the shooting" the officer had probable cause to shoot). *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) ("[R]egardless of what had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe, at least at that moment, that there was a threat of physical harm."). *Rhodes v. McDaniel*, 945 F.2d 117, 120 (6th Cir. 1991). *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th  Cir. 1991). *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985). *Estate of Saldana by Saldana v. Weitzel*, 912 F. Supp. 413, 416 (E.D. Wisc. 1996). *Kathy St. Hilaire v. City of Laconia*, 885 F. Supp. 349 (D.

N.H. 1995), *aff'd on other grounds*, 71 F.3d 20 (1st. Cir. 1995). *James v. City of Chester*, 852 F. Supp. 1288, 1295 (D. S.C. 1994). *Linder v. Richmond County, Ga.*, 844 F. Supp. 764, 767 (S.D. Ga. 1994). *Yellowback v. City of Sioux Falls*, 600 N.W.2d 554, 560 (S.D. 1999).

Accordingly, this Court must preclude any testimony concerning the claim that Cooper's death was caused by Officer Breen's own actions or that he should have gotten out of the way of the vehicle, in whole or in part, on such conclusions. To hold otherwise is manifest error. *United States v. Schwartz*, 924 F.2d 410, 425 (CA2 1991).

    **G.**    **DR. FYFE'S OPINION THAT OFFICER BREEN VIOLATED A REGULATION OR POLICY OF THE TOWN OF NORTH BRANFORD POLICE DEPARTMENT IS IRRELEVANT, IMMATERIAL AND ANY PROBATIVE VALUE IS OUTWEIGHED BY THE PREJUDICIAL EFFECT.**

Dr. Fyfe's complains that Officer Breen's technical violation of Town of North Branford Police Department rules, internal operating procedures, and general orders caused the death of Victoria Cooper.  Such testimony is irrelevant, immaterial and any probative value will be outweighed by the prejudicial effect.  While a violation of these rules, internal operating procedures, and general orders may subject an officer to discipline within the department, a violation does not determine whether the officer violated the reasonableness standard of the Fourth Amendment. *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (claims based on violations of state law and police procedure not actionable under § 1983); *Mettler v. Whitledge,* 165 F.3d 1197, 1203 (8th

Cir. 1999) ("Most of the guidelines cited are for the protection of the sheriff's deputies, not of armed suspects, and in any event the breach of such guidelines is not dispositive to our determination of whether the deputies violated a clearly established constitutional right."); *Soller v. Moore*, 84 F.3d 964, 969 (7th Cir. 1996) (IACP (International Association of Chiefs of Police) Model Policy on off-duty officers engaging in traffic stops under circumstances where they are personally involved ruled inadmissible: "[W]hether it is wise public policy to allow off-duty police officers to chase late night traffic violators is beside the point; the action is not unconstitutional and, more to the point, it has nothing to do with the key issue of whether the force used after a suspect is collared is excessive under the circumstances."); *Romero v. Board of County Commissioners*, 60 F.3d 702, 705 (10th Cir. 1995) (that officer failed to arrest and handcuff drunk driver as required under state law and procedures irrelevant: "[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim."); *Marti v. City of Maplewood,* 57 F.3d 680, 684 (8th Cir. 1995) (where plaintiff alleged officers failed to follow written policies, policies themselves not probative of municipal liability); *Scott v. Henrich,* 39 F. 3d 912, 915-16 (9th Cir. 1994) ("[Plaintiff] argues the police officers' conduct violated department guidelines for dealing with barricaded suspects. . . . Assuming internal police guidelines are relevant to determining whether use of force is objectively reasonable, they are relevant only when one of their purposes is to protect the individual against whom force is used."); *Plakas v. Drinsky,* 19

F.3d 1143, 1150-51 (7th Cir. 1994) ("[W]e think it is clear that the Constitution does not enact a police administrator's equipment list. We decline to use this case to impose constitutional equipment requirements on the police."); *Drewitt v. Pratt,* 999 F.2d 774 (4th Cir. 1993) ("failure of" the officer "to display his badge when announcing himself as a police officer" and demanding that the driver stop, even if it was a violation of state law, was "irrelevant to the issue of whether at the moment of the shooting" the officer had probable cause to shoot); *Fraire v. City of Arlington,* 957 F.2d 1268, 1276 (5th Cir. 1992) ("[E]ven a negligent departure from established police procedure does not necessarily signal violation of constitutional protections."); *Smith v. Freland*, 954 F.2d 343, 954 (6th Cir. 1992) (court rejected plaintiff's claim that officer should be liable for violating city policy that forbids officers to fire at moving vehicles and to apprehend misdemeanor suspect; issue was whether the officer violated the Constitution, "not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983."); *Elliott v. Cheshire County*, 940 F.2d 7 (1st Cir. 1991) (in suicide, properly posed constitutional question is not whether defendant adhered to agency protocols, but whether it disregarded known risk particular detainee would commit suicide); *Edwards v. Baer,* 863 F.2d 606, 608 (8th Cir. 1988) (officer's arrest on invalid warrant violated special order; but "police department guidelines do not create a constitutional right"); *Edwards v. Thomas*, 31 F. Supp. 2d

1069, 1076 (N.D. Ill. 1999) (objective reasonableness, standard for excessive force

claims, requires analysis of what hypothetical reasonable officer would have known and

done in light of circumstances confronting actual officer in case; police regulations,

general orders and officer training provide relevant (although not conclusive) benchmark

for making such comparison); *Estate of Saldana by Saldana v. Weitzel,* 912 F. Supp.

413, 416 (D. Wisc. 1996) (decedent was holding knife, shouting, drunk and threatening

people; officer shot from about fifteen feet; even if the plaintiff's expert was correct and

closing gap to fifteen feet was poor policing, poor policing, however, not constitutional

violation); *Charles v. Cotter,* 867 F. Supp. 648, 663-64 (N.D. Ill. 1994) (evidence that

defendants violated police rules, regulations relevant with respect to claim they violated

constitutional rights, but, granting plaintiff's motion, court limited use to impeachment

and refreshing witnesses' recollection); *Jones v. Chieffo*, 833 F. Supp. 498, 507 (E.D.

Pa. 1993) (under then-existing reckless indifference standard, "[officer's] choice to

pursue the vehicles and to prevent them from causing any future harm without the use

of his siren and without explaining his reasons for the pursuit may have violated state

law, police directives, or even constituted a common law tort, but it may not state a

claim for a constitutional deprivation of due process.")

Accordingly, this Court must preclude any testimony concerning the claim that

Cooper's death was caused by Officer Breen's violation of department regulations, in

whole or in part, on such conclusions. To hold otherwise is manifest error. *United States*

23

*v. Schwartz*, 924 F.2d 410, 425 (CA2 1991).

**III.     CONCLUSION.**

For the reasons set forth above, the defendants, MICHAEL BREEN and TOWN

OF NORTH BRANFORD, pray that their motion in limine is granted.

<div style="margin-left:50%;">

THE DEFENDANTS,
MICHAEL BREEN and TOWN OF
NORTH BRANFORD

/s/John J. Radshaw, III
Thomas R. Gerarde, ct5640
John J. Radshaw, III, ct19882
Jeffery E. Potter, ct26356
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)

</div>

## **CERTIFICATION**

    This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 1st day of June 2005.

David N. Rosen, Esquire
400 Orange Street
New Haven, CT  06511


                                    /s/John J. Radshaw, III
                                    Thomas R. Gerarde
                                    John J. Radshaw, III
                                    Jeffery E. Potter