```
 1                           DISTRICT COURT OF CONNECTICUT
 2                           LAW DIVISION - DISTRICT COURT
 3                           DOCKET NO. 3:00CV52(DJS)
 4   MARGARET COWAN,              *
     ADMINISTRATRIX OF THE
 5   ESTATE OF VICTORIA COOPER,   *
 6        Plaintiffs,             *    CIVIL ACTION
 7        vs.                     *    Deposition of:
 8   MICHAEL BREEN,               *    JAMES J. FYFE
 9        Defendant.              *
10   - - - - - - - - - - - - - - - - -
11   MARGARET COWAN,              *    NO. 3:01CV229(DJS)
     ADMINISTRATRIX OF THE
12   ESTATE OF VICTORIA COOPER,   *
13        Plaintiffs,             *
14        vs.                     *
15   NORTH BRANFORD,              *
16        Defendant.              *
17        T R A N S C R I P T  of the stenographic notes
     of the proceedings in the above-entitled matter, as
18   taken by and before MANDY J. FEIN, a Shorthand Reporter
     and Notary Public of the State of New Jersey, held at 25
19   Parkside Drive, Princeton, New Jersey 08540, on Monday,
     October 29, 2001, commencing at approximately 10:40 in
20   the FORENOON, pursuant to notice.
21              CONTINENTAL REPORTING
22              500 UNION STREET, SUITE 926
23              SEATTLE, WASHINGTON 98101
24
25              1 - (800) - 308 - DEPS
```

```
 2    J A M E S    F Y F E, residing at 25 Parkside
 3         Drive, Princeton, New Jersey 08540, is duly
 4         sworn by a Notary Public of the State of New
 5         Jersey and testifies under oath as follows:
 6
 7    DIRECT EXAMINATION BY MR. GERARDE:
 8
 9         Q       Would you state your name for the
10    record.
11    A      James J. Fyfe.
12         Q       Do you prefer to be called Professor
13    Fyfe?
14    A      Whatever is easiest for you.
15         Q       Professor Fyfe, my name is Thomas
16    Gerarde and I am the lawyer for the Town of North
17    Branford and Officer Michael Breen.  And the
18    purpose of today's deposition is to ask you some
19    questions in connection with a lawsuit that has
20    been brought against my clients.
21              My first question to you is sir, have you
22    been through the deposition process before?
23    A      Yes.
24         Q       I have the benefit of your resume and
25    documents and I believe you know the drill.  I
```

2  records and this is part of your file; is that
3  right, sir?
4  A     That's correct.
5     Q     It indicates that on September 3 of
6  2000 you worked three and a half hours on the
7  matter?
8  A     That's correct.
9     Q     Would that represent the first
10 billable time in your analysis of this case?
11 A     Yes, sir.
12    Q     On January 9, 6 hours and January 30,
13 11 hours?
14 A     That's correct.
15    Q     You essentially billed it all
16 together when you had all the information?
17 A     That's correct.
18    Q     Did you generate any preliminary
19 reports that predated the final report that you
20 sent to Attorney Rosen?
21 A     No, sir.
22    Q     I noticed some things as I was
23 flipping through the file that was identified only
24 without a title but it just says, "opinions," and
25 it is four or five pages stapled together. What

2   made them on September 3. I don't think they
3   exist in my file like this any more. I think what
4   I did was take this opinion page and use it as a
5   draft for my report. These were made, I assume,
6   last September or January.
7       Q   The last page has a title on it,
8   "Michael Breen Statement," with no notes?
9   A   Right.
10      Q   Were there ever any notes?
11  A   No.
12      Q   Did you read the Breen statement?
13  A   Yes, I did. These are first impressions
14  rather than opinions.
15      Q   Understood. Now, your file has a
16  current CV in it; is that right?
17  A   Yes.
18          MR. GERARDE: We will mark that as
19      Exhibit 4.
20          (Whereupon, Document (CV), dated
21      October 29, 2001, received and marked
22      Defendant's Exhibit 4 for Identification.)
23      Q   For the record Exhibit 4 is your
24  current CV and I take it you have a copy of this
25  in front of you?

2   access to information that the police department
3   does. What does the police department do if the
4   cop says the Miranda Warnings. If he says please
5   tell me what happened and the person says no I
6   reserve to tell you. So, does that mean that the
7   police department says okay. No.
8           The police department has to conduct its
9   own administrative proceeding not using the standard of
10  care but his own policies, his police custom and
11  practice that justifies the deadly force.
12  Q       Did you notice whether or not there
13  was any approval or local justification for the
14  shooting that was found by North Branford? Did
15  you determine in looking at any of these papers
16  whether or not anyone from North Branford passed
17  judgment on the propriety of Officer Breen's
18  shooting?
19  A       I think they concluded that the DA found
20  nothing wrong so we found nothing wrong. But my
21  recollection of the policy is that it imposed an
22  obligation to conduct an investigation and they
23  didn't do it.
24  Q       Is there any criticism that you have
25  of the training received by Officer Breen?

```
 2    A       Right.
 3            Q       They had to make that judgment right
 4    up until the very last time the trigger was pulled
 5    by each of them?
 6    A       Right.  In fact, Carroll reloaded his gun.
 7     It was during the course of him reloading his gun
 8    that Mr. Diallo went down.
 9            Q       Were any shots fired after the
10    reloading?
11    A       No.  He fired 16 shots loaded the gun and
12    Diallo went down.
13            Q       The circumstances which were unique
14    to that case justified each of those four officers
15    making the justification that the threat persisted
16    and that deadly force was justified?
17    A       It is not a circumstance where you are
18    talking about a motor vehicle.  Right.  My opinion
19    was also by the only eyewitness who described the
20    situation three separate times but who reneged on
21    her testimony in the actual trial.
22                    MR. GERARDE:  Off the record.
23                    (Whereupon, a discussion was held
24         off the record.)
25                    MR. GERARDE:  We have had some
```

```
 1                    C E R T I F I C A T E
 2
 3
 4         I, MANDY FEIN, a Notary Public and
 5   Shorthand Reporter of the State of New Jersey, do
 6   hereby certify that prior to the commencement of the
 7   examination the witness was duly sworn by me to
 8   testify the truth, the whole truth and nothing but
 9   the truth.
10         I DO FURTHER CERTIFY that the foregoing is
11   a true and accurate transcript of the testimony as
12   taken stenographically by and before me at the time,
13   place and on the date hereinbefore set forth.
14         I DO FURTHER CERTIFY that I am neither a
15   relative of, nor employee, nor attorney, nor counsel
16   for any of the parties to this action and that I am
17   neither a relative nor employee of such attorney or
18   counsel, and that I am not financially interested in
19   the action.
20
21
                    _____
22                  NOTARY PUBLIC OF THE STATE OF
                              NEW JERSEY
23
24
25
```