**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARGARET COWAN, ADMINISTRATRIX OF THE ESTATE OF VICTORIA COOPER | : <br> : <br> :    NO.: 3:00 CV 0052 (RNC) |
| v. | : <br> : |
| MICHAEL BREEN | : |

| | |
|---|---|
| MARGARET COWAN, ADMINISTRATRIX OF THE ESTATE OF VICTORIA COOPER | : <br> : <br> :    NO.: 3:01 CV 0229 (RNC) |
| v. | : <br> : |
| NORTH BRANFORD | :    JUNE 1, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION IN LIMINE RE TESTIMONY AND EVIDENCE**
**REFERENCING VISION PROBLEMS**

**I.      BACKGROUND.**

This case involves the death of a citizen, Victoria Cooper, who was shot by Officer Michael Breen as she drove a motor vehicle towards him on a darkened roadway in North Branford, Connecticut following a stop of that vehicle and escape of the driver, Steven Guerrette.  Despite having ample opportunity to change direction and avoid a confrontation, Cooper drove toward Officer Breen, who, fearing that the deadly force embodied in a moving motor vehicle would be used against him imminently, fired two shots from his service weapon at the vehicle. The first shot deflected off of the hood

of the vehicle; the second shot struck Cooper and fatally wounded her.

It is the defendants' contention that Officer Breen reasonably believed that his life was in danger of the imminent deadly force embodied by the motor vehicle driven toward him by Victoria Cooper. The defendants submit Officer Breen is protected by the doctrine of qualified immunity and self-defense. Concerning the plaintiff's claim that the Town of North Branford violated the decedent's rights as a result of its failure to train its officers about shooting at motor vehicles, the defendants submit that there is no factual basis for this claim.

The plaintiff is expected to introduce testimony and exhibits (plaintiff's exhibits 79 and 80, records from 7/26/92 visit to eye doctor and Report of Dr. Forkiotis) concerning Victoria Cooper's medical condition that allegedly created problems and difficulty with depth perception and rendered her vision at night poor. Plaintiff intends to introduce testimony from Dr. Constantine Forkiotis. Dr. Forkiotis provided the State Police with a report assessing the decedent's eyesight. He is expected to testy to the following:

1. Vicki Cooper's eyesight, corrected and uncorrected;

2. Vicki Cooper's poor night vision and depth perception and lack of ability to perceive figures in conditions at the scene of the incident.

The defendants now move to exclude the testimony of Dr. Forkiotis and the exhibits and testimony of family members regarding eyesight because they unreliable,

irrelevant and unfairly prejudicial.

## II.     LAW AND ARGUMENT.
### A.     STANDARD OF REVIEW.

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396, 109 (1989) (internal citations and quotation marks omitted).  "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.

3

(internal citations and quotations marks omitted). The question is whether the totality of the circumstances justifies a particular sort of search or seizure. Tennessee v. Garner, 471 U.S. 1, 9 (1985). "The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-397.

"As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. at 397. "It is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003). "The reasonableness inquiry depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force." Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996). See also,

4

Holeman v. City of New London, 330 F.Supp.2d 99, 116 (D. Conn. 2004).

"When a jury measures the objective reasonableness of an officer's action, it must stand in *his* shoes and judge the reasonableness of his actions based upon the information he possessed and the judgment he exercised in responding to that situation."  Sherrod v. Berry, 856 F.2d 802, 804 -805 (7th Cir. 1988) (emphasis in original).  "We do not use hindsight to judge the acts of police officers; we look at what they knew (or reasonably should have known) at the time of the act."  Rodriguez v. Farrell, 280 F.3d 1341, 1353 (11th Cir. 2002).

### B. THE TESTIMONY OF DR. FORKIOTIS, VICTORIA COOPER'S MEDICAL RECORDS AND ANY OTHER TESTIMONY REGARDING HER EYESIGHT MUST BE EXCLUDED BECAUSE IT IS IRRELEVANT.

The Defendants anticipate that the plaintiff will attempt to offer evidence the Victoria Cooper could not see Officer Breen on the night of the shooting due to a medical condition with her eyes known as strabismus.  The Defendants seek to preclude all evidence and testimony concerning Ms. Cooper's allegedly poor eyesight through the testimony of Dr. Forkiotis, family members, medical records or any other witnesses or evidence.  There is absolutely no showing, not one scintilla of evidence, that Officer Breen had any knowledge or any reason whatsoever to know or anticipate that Victoria Cooper had any kind of vision problem.

In fact, the evidence is to the contrary.  The only information available to Officer Breen regarding Ms. Cooper was from his physical observation of her that evening.  At

5

the time of the shooting, Breen may have been able to observe that Ms. Cooper was wearing glasses. The fact that she was wearing glasses and then attempted to drive a motor vehicle at night would lead a reasonable police officer in Officer Breen's position to conclude that Ms. Cooper was physically able to perform the act of driving the vehicle at night without endangering herself or others and that she was able to see him in the road in front of her.

In Sherrod v. Berry, 856 F.2d 802, 805 (7th Cir. 1988) (en banc), a police shooting case, the court found it was error to admit evidence that the shooting victim was unarmed. The court wrote:

> Knowledge of facts and circumstances gained after the fact (that the suspect was unarmed) has no place in the trial court's or jury's proper post-hoc analysis of the reasonableness of the actor's judgment. Were the rule otherwise, as the trial court ruled in this instance, the jury would possess more information than the officer possessed when he made the crucial decision. Thus, we are convinced that the objective reasonableness standard articulated in *Lester* requires that Officer Berry's liability be determined exclusively upon an examination and weighing of the information Officer Berry possessed immediately prior to and at the very moment he fired the fatal shot. The reception of evidence or any information beyond that which Officer Berry had and reasonably believed at the time he fired his revolver is improper, irrelevant and prejudicial to the determination of whether Officer Berry acted reasonably under the circumstances.

Sherrod v. Berry, 856 F.2d 802, 805 (7th Cir. 1988).

In Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002), the plaintiff sued the police for twisting his arm around his back to handcuff him. The twisting, although

6

found by the court to be normally reasonable force, because of a prior injury to the plaintiff, resulted in twenty-five surgeries and then amputation of the arm. Id. The court found the force was reasonable stating,

> [N]o evidence has been presented that Sgt. Farrell knew of plaintiff's recent elbow surgery or, more important, knew that handcuffing plaintiff would seriously aggravate plaintiff's preexisting condition. We do not use hindsight to judge the acts of police officers; we look at what they knew (or reasonably should have known) at the time of the act.

Rodriguez v. Farrell, 280 F.3d 1341, 1351 -1353 (11th Cir. 2002).

Evidence of the plaintiff's alleged poor vision at night is irrelevant to the question to jury must determine, namely whether under the facts and circumstances known or reasonably knowable by Officer Breen, his use of force was objectively reasonable. Thus, pursuant to Federal Rules of Evidence 401, Ms. Cooper's allegedly poor eyesight is irrelevant because it is not a fact of any consequence to the determination of the action because her allegedly poor sight was not a fact known of even reasonably knowable to Officer Breen. It is simply not relevant to the facts and circumstances of this case. Allowing the introduction of such evidence would invite the jury to engage in judging Officer Breen's actions, not from his perspective, but with impermissible 20/20 hindsight.

### C. EVEN IF RELEVANT, ANY TESTIMONY ABOUT MS. COOPER'S EYESIGHT MUST BE EXCLUDED BECAUSE ITS PROBATIVE VALUE, IF ANY, IS CLEARLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE.

Pursuant to the Federal Rules of Evidence, even if evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Since Officer Breen did not know of the alleged poor eyesight, allowing such evidence would be completely unfair and prejudicial to Officer Breen. Such evidence would only invite the jury to find that it was possible that Cooper did not see Officer Breen. This in turn, would invite the jury to speculate that Ms. Cooper was unknowingly driving toward Officer Breen. However, this fact is unfairly prejudicial because the facts of the case reveal Officer Breen did not know that Ms. Cooper might not have seen him.

Thus, the jury would be allowed to engage in looking at the incident with 20/20 hindsight, rather through the perspective of Officer Breen. "[C]ourts and juries must determine the propriety of the officer's actions based upon a thorough review of the knowledge, facts and circumstances known to the officer at the time he exercised his split-second judgment as to whether the use of deadly force was warranted." Sherrod v. Berry, 856 F.2d 802, 805 (7th Cir. 1988).

**D.  THE TESTIMONY OF DR. FORKIOTIS SHOULD BE EXCLUDED BECAUSE IT IS SPECULATIVE, AT BEST, AND THE RECORDS ARE SO OLD AND INCOMPLETE THAT THE OPINIONS ARE NOT RELIABLE.**

Fed.R.Evid. 702, which governs the admissibility of scientific or technical expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

Expert testimony must be helpful to the jury in comprehending and deciding issues beyond the understanding of a layperson. Id.

In Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court made clear that the district court has a "gatekeeping" function under Rule 702, and is charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. In fulfilling this role, the district court must consider both the reliability and relevance of the proffered testimony. In gauging reliability, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on "sufficient facts or data;" (2) that the testimony "is the product of reliable principles and methods;" and (3) that "the witness has applied the principles and methods reliably to

9

the facts of the case." Fed.R.Evid. 702. In so doing, the district court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152 (1993).

In this case, Dr. Forkiotis reviewed medical records that were seven years old and determined that the decedent had problems with depth perception due to being nearsighted and having a condition known as strabismus and concluded that she should have been referred by her doctor for more treatment. He unequivocally states "**all** nearsighted individuals always complain of night time vision and seeing.  They **all** ask for stronger glasses for night driving."  (**Exhibit A**, Report of Dr. Forkiotis, *emphasis added*).  He concludes, "being aware of the problem makes her [Cooper] more distractive having to undergo much compensatory judgments attempting to operate a motor vehicle under conditions of any degree of speed and under conditions of eyeball-vision duress."  (**Exhibit A**, p. 2).

These opinions are clearly flawed and are not based upon reliable facts or methodology.  The statements regarding **all** nearsighted individuals are clearly exaggerations or outright false.  Dr. Forkiotis never examined the decedent and his deduced opinions regarding the decedent's eyesight are nothing more than opinions about nearsighted individuals as a group.  In this regard, his opinions have no

applicability or reliability with respect to specific opinions about the decedent. Furthermore, these medical records were seven years old at the time of her death. (**Exhibit B**, Cooper's medical records). As such, there opinions resulting from the medical records may be unreliable because the records are so old they may not be relevant to the time of the incident.  It is highly likely that the decedent saw another doctor regarding her eyesight in those seven years and may have even received treatment for her condition.  In fact, the bottom right of page five of the medical records states, "pt. will keep appt she has in Mar 94."  As such, Dr. Forkiotis's opinions must be excluded.

      **E.     FORKITOTIS'S REPORT IS INADMISSIBLE HEARSAY.**

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801.  Hearsay is inadmissible except as provided by the Federal Rules of Evidence, rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress.  Fed. R. Evid. 802.

The report of Dr. Forkiotis is being offered for the truth contained therein and no hearsay exception exists for its introduction.  As such, it must be excluded.

### III. **CONCLUSION.**

For the reasons set forth above, the defendants, MICHAEL BREEN and TOWN OF NORTH BRANFORD, pray that their motion in limine is granted.

                                       THE DEFENDANTS,
                                       MICHAEL BREEN and TOWN OF
                                       NORTH BRANFORD

                                       /s/John J. Radshaw, III
                                       Thomas R. Gerarde, ct5640
                                       John J. Radshaw, III, ct19882
                                       Jeffery E. Potter, ct26356
                                       HOWD & LUDORF, LLC
                                       65 Wethersfield Avenue
                                       Hartford, CT  06114
                                       (860) 249-1361
                                       (860) 249-7665 (fax)

### **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 1st day of June, 2005.

David N. Rosen, Esquire
Rosen & Dolan, PC
400 Orange Street
New Haven, CT  06511

                                       /s/John J. Radshaw, III
                                       Thomas R. Gerarde
                                       John J. Radshaw, III
                                       Jeffery E. Potter