**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARGARET COWAN, ADMINISTRATRIX OF THE ESTATE OF VICTORIA COOPER | : : : : | NO.: 3:00 CV 0052 (RNC) |
| v. | : : | |
| MICHAEL BREEN | : | |

| | | |
|---|---|---|
| MARGARET COWAN, ADMINISTRATRIX OF THE ESTATE OF VICTORIA COOPER | : : : : | NO.: 3:01 CV 0229 (RNC) |
| v. | : : | |
| NORTH BRANFORD | : | JUNE 1, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION IN LIMINE RE ANIMATIONS**

**I.   BACKGROUND.**

This case involves the death of a citizen, Victoria Cooper, who was shot by Officer Michael Breen as she drove a motor vehicle towards him on a darkened roadway in North Branford, Connecticut following a stop of that vehicle and escape of the driver, Steven Guerrette. Despite having ample opportunity to change direction and avoid a confrontation, Cooper drove toward Officer Breen, who, fearing that the deadly force embodied in a moving motor vehicle would be used against him imminently, fired two shots from his service weapon at the vehicle. The first shot deflected off of the hood of the vehicle; the second shot struck Cooper and fatally wounded her.

1

It is the defendants' contention that Officer Breen reasonably believed that his life was in danger of the imminent deadly force embodied by the motor vehicle driven toward him by Victoria Cooper. The defendants submit Officer Breen is protected by the doctrine of qualified immunity and self-defense. Concerning the plaintiff's claim that the Town of North Branford violated the decedent's rights as a result of its failure to train its officers about shooting at motor vehicles, the defendants submit that there is no factual basis for this claim.

The plaintiff is expected to introduce two animations. The first animation is an overhead projection of what the plaintiff purports were the actual circumstances of the shooting. The entire view is overhead as if the viewer were a satellite. The second animation is from an oblique angle, above and behind the figure which purports to be Officer Breen.

From the time of disclosure, late in 2004, until the present day, the animation has changed substantially. It has become two separate illustrations, changing again on May 10, 2005 and then again on May 17, 2005.

II. **LAW AND ARGUMENT.**
    A. **STANDARD OF REVIEW.**

Rules 403, 702 and the court's gatekeeper function direct the district court to carefully and meticulously make an early pretrial evaluation of issues of admissibility, particularly of scientific expert opinions in films or animations illustrative of such

opinions. *Robinson v. Missouri Pacific R.R. Co.*, 16 F.3d 1083, 1089 (CA10 1994).

In addition, objections based on lack of relevancy or reliability, other possible grounds to exclude computer simulations and animations and the like, are lack of authentication (Fed.R.Evid. 901(a)); hearsay or lack of foundation when computer software developer has not testified (Fed.R.Evid. 801); and undue prejudice as an attempted reenactment (Fed.R.Evid. 403). *See Perma Research & Development Co. v. Singer Co.*, 542 F.2d 111, 124-26 (2d Cir.) (*Van Graafeiland, J., dissenting*), *cert. denied,* 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976) *and M. Bright and R. Carlson, Objections at Trial*, pp. 45-49 (Butterworth Legal Publishers, rev. ed. 1993); *Robinson v. Missouri Pacific R. Co.* 16 F.3d 1083, *1089 (C.A.10 (Okl.),1994)

The applicable literature identifies four overlapping main categories of computer generated exhibits: static images, animations, simulations, and computer models. *See, e.g., Fred Galves, Where the Not-So-Wild Things Are: Computers in the Courtroom, the Federal Rules of Evidence, and the Need for Institutional Reform and More Judicial Acceptance*, 13 HARV. J. LAW & TECH. 161, 177-81 (2000); *Lori G. Baer & Christopher A. Riley, Technology in the Courtroom: Computerized Exhibits and How to Present Them*, 66 DEF. COUNS. J. 176 (1999); *Timothy W. Cerniglia, Computer-Generated Exhibits-Demonstrative, Substantive or Pedagogical-Their Place in Evidence*, 18 AM. J. TRIAL ADVOC. 1, 4-5 (1994). Presentations are frequently in a "power point" format with the attorney calling up data and images as needed from huge files.

The first category "consists of static images that are simply projected onto a large screen or computer panel or onto individual monitors by a computer display system." *Galves, supra*, at 177. These representations are common in courtrooms. They include tables, graphs, maps and diagrams. Animations are, in their simplest terms, moving pictures. The computer allows otherwise static images to be "shown in rapid succession to create the [illusion] of motion." *Baer & Riley, supra*, at 177. The graphics are often crude or oversimplified. *138 Animations are not intended "to recreate or simulate an event." *See Cerniglia, supra*, at 5.

The third category is "simulations" or "recreations." Computer functions allow the user to simulate actual events--or, more properly, the opinion of the creator as to the nature of the events. Most simulations are detailed and realistic. The recreated computer image of the event can be manipulated. It can be portrayed from different angles or from the viewpoints of different witnesses. A common use involves the recreation of accidents. *See, e.g., Datskow v. Teledyne Continental Motors*, 826 F.Supp. 677, 685-86 (W.D.N.Y.1993) (noting that defendant objected to the "use of a videotaped computer-generated animation which illustrated ... theory of where the fire began inside the engine and how it spread.").

The fourth category, computer models, is "nothing more than a compilation of mathematical formulae and expressions that are integrated into a sophisticated computer program or series of programs." *Cerniglia, supra*, at 6. An expert witness may

test multiple hypotheses with the model and form opinions based on the results, producing graphics explicating the results.

A fifth category should be admitted. It is "enhanced images," occupying the space between static images and animations. For the most part, an enhanced image is static, but the attorney or witness may manipulate the image through, for example, highlighting, enlarging particular areas, and utilizing side-by-side split screen presentations or video-taped depositions with printed commentary or transcripts moving below in tandem with the image and audio of the deponent. Different colors can be used to emphasize particular elements of the presentation or to show which parts of a deposition are being presented by one side or the other. The parties may highlight selected text, enlarge graphics, modify images, or enlist other special effects to illuminate a relevant point. *See, e.g., Galves, supra*, at 177 ("The computer technology here, therefore, simply makes those functions easier, quicker, and more legible and understandable."). A sixth category, easel writings and diagrams created by an expert or attorney during the trial and in the presence of the trier, is old-hat. The technique is now improved by almost instantaneous computer creation of printed versions that can be projected onto the screen and converted to hard copy for the trier's notebook.

**B.  THE PLAINTIFF'S ANIMATION CANNOT BE AUTHENTICATED AND SHE CANNOT LAY A FOUNDATION FOR ITS USE.**

While the plaintiff purports to utilize the disclosed animations as demonstrative exhibits, the plaintiff has not (and never has) disclosed the expert who created the

5

animation. Absent a foundation, the animations are inadmissible hearsay and must be precluded. See Fed.R.Evid. 901(a), foundation, authentication; hearsay or lack of foundation when computer software developer has not testified (Fed.R.Evid. 801); and undue prejudice as an attempted reenactment (Fed.R.Evid. 403). *See also Perma Research & Development Co. v. Singer Co.*, 542 F.2d 111, 124-26 (2d Cir.) (*Van Graafeiland, J., dissenting*), cert. denied, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976) *and M. Bright and R. Carlson, Objections at Trial*, pp. 45-49 (Butterworth Legal Publishers, rev. ed. 1993); *Robinson v. Missouri Pacific R. Co.* 16 F.3d 1083, *1089 (C.A.10 (Okl.),1994)

### C. THE PLAINTIFFS UNTIMELY DISCLOSURE OF THE ANIMATIONS, INCLUDING THE MULTIPLE VERSIONS OF THE SAME, AMOUNTS TO TRIAL BE AMBUSH AND THE EVIDENCE SHOULD BE PRECLUDED.

Motions in limine refer to any motion, whether made before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2; 105 S.Ct. 460, 462 n. 2, 463 (1984). The defendants argue that the plaintiff's animation should be precluded because it was untimely and not disclosed within the confines of the pretrial order in this case. Moreover, the plaintiff did not finalize the animation until May 17, 2005 or later, all of which evidences the prejudice suffered by the defendants.

While relevant evidence is admissible, it can be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

6

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403 (emphasis added). This is a balancing test. For "relevant evidence to be excluded ... the imbalance must be substantial." Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir.1997). A trial judge is afforded broad discretion in a Rule 403 decision since so much depends upon critical perceptions of the jury's reaction to day-to-day dynamics of a trial not evident from the printed record. See, e.g. United States v. Abel, 469 U.S. 45, 54, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

Evidence that supports liability is "prejudicial" to the defendant. Unfair prejudice under Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) (quoting Fed.R.Evid. 403 Advisory Committee Notes, 28 U.S.C.App., p. 860 (1972)); Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir.1997) (same).

In *Van Houten-Maynard v. ANR Pipeline Co.,* 1995 WL 317056 (N.D.Ill.), the court precluded the plaintiff from offering an animation addressed to the circumstances of the subject accident. In *Van Houten-Maynard*, accident occurred shortly after Maynard's truck entered into the westbound lanes of Interstate 80. It was then that Maynard's truck struck an object on the road, causing it to veer off the road, then travel some 350 feet across a ditch, a field, and through two fences, and then collide with

7

ANR's above ground natural gas pipeline. The collision caused the pipeline to rupture, igniting the escaping natural gas, which engulfed the truck, ultimately killing Maynard. In precluding the animation, the court observed that ANR had not received timely notice of plaintiff and Jones' intention to use computer animation with the filing of the pretrial order. The court held that "ANR has thus been severely prejudiced in its ability to respond to the credibility, reliability, accuracy and materiality of this evidence." *Van Houten-Maynard*, 1995 WL 317056 *12.

> The Van Houten court also recognized that
>
> this type of evidence [the animation] can be highly influential upon a jury, well beyond its reliability and materiality, due to its documentary-type format presented in a "television" like medium. Additionally, we believe that computer animation evidence, by reasons of its being in a format that represents the latest rage and wrinkle in video communications and entertainment, may well have an undue detrimental effect on other more reliable and trustworthy direct-type evidence. We conclude this evidence has been untimely brought into the case, and thus should be excluded. We also find this evidence as being excludable under Fed.R.Evid. 403 by reasons of its great potential for being misleading and prejudicial.

*Van Houten-Maynard*, 1995 WL 317056 *12.

These are exactly the considerations expressed in the present case. The plaintiff's animation is untimely and any probative value is outweighed by its prejudicial effect. Those reasons are detailed elsewhere in this memorandum. Accordingly, the defendants' motion in limine regarding the animation should be granted.

    **D.    THE ANIMATION IS MORE PREJUDICIAL THAN PROBATIVE AND MUST BE PRECLUDED.**

The animation, in any form, is inadmissible because it was experimental evidence that attempted to recreate the events but failed to reflect conditions substantially similar to those existing at the time of the shooting. The bulk of the condition-related issues are discussed in the defendants motion in limine regarding the opinions of Mr. Schwendy. See Doc. #__. The case would be different if the plaintiff was offering an animation that merely illustrated principles forming an expert's opinion are not required to reflect conditions substantially similar to those at issue in the trial. *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1051 (4th Cir.1984). It is also because of that distinction that tests or experiments that merely illustrate a theory or scientific principle are not required to possess as high a degree of similarity to the actual event as are purported re- creations of the event. *See, e.g., Roland v. Langlois*, 945 F.2d 956, 963 (7th Cir.1991); *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1278 (8th Cir.1987); *Datskow v. Teledyne Continental Motors Aircraft Products, a Div. of Teledyne Industries, Inc.*, 826 F.Supp. 677, *686 (W.D.N.Y.,1993). A casual viewing of the animations demonstrates nothing is a purported illustration, it is a re-creation.

Many courts have recognized the unique problems presented by the introduction of videotapes purporting to recreate events at the focus of a trial. In *Gladhill*, the court noted the potential prejudicial effect of such *evidence because the jury viewing a recreation might be so persuaded by its life-like nature that it becomes unable to visualize an opposing viewpoint of those events. Hence, the court established a

9

requirement that video taped evidence purporting to recreate events at issue must be substantially similar to the actual events to be admissible. *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1051 (4th Cir.1984).

    Obviously, the requirement of similarity is moderated by the simple fact that the "actual events" are often the issue disputed by the parties. Nonetheless, to the extent the conditions are not a genuine trial issue, they should be reflected in any videotaped recreation. In *Gladhill*, for instance, the plaintiff crashed his car into a utility pole. He sued General Motors in a products liability action, contending that the brakes were faulty. The parties agreed that at the time of the accident it was night, and plaintiff was driving down a hill at a sharp curve in the road when he struck the utility pole. General Motors introduced a videotaped recreation of the accident that was conducted at a test facility on a flat, straight, asphalt surface in daylight by an experienced driver. The Court rejected the use of this videotape, holding that "when the demonstration is a physical representation of how an automobile behaves under given conditions, those conditions must be sufficiently close to those involved in the accident at issue to make the probative value of the demonstration outweigh its prejudicial effect." *Id.* at 1052; *see also Chase v. General Motors Corp.*, 856 F.2d 17, 19-20 (4th Cir.1988).

    Although there is a fine line between a recreation and an illustration, the practical distinction "is the difference between a jury believing that they are seeing a repeat of the actual event and a jury understanding that they are seeing an illustration of someone

else's opinion of what happened." *Datskow v. Teledyne Continental Motors Aircraft Prods.*, 826 F.Supp. 677, 686 (W.D.N.Y.1993).

The plaintiff's animation is replete with prejudicial embellishments, all of which outweigh the probative value of the animation:

- The glowing bullet trajectory
- The glowing bullet hole
- Oblique angle
- Overhead angle
- Lighting, overall
- Headlights of car, size, placement, measurement of illumination
- Size of car
- Diminished curve in road
- Appearance of lines on the road

Each one of the above represent prejudicial embellishments that compel preclusion of the animations. The defendants discuss each in turn.

The glowing bullet trajectory and the glowing bullet hole are gratuitous embellishments of the worst kind.  Even the claimed firearms and engineering expert proffered by the plaintiff cannot testify that either shot fired on the night in question left such a blazing path towards the subject vehicle. Similarly, not one of the plaintiff's witness would ever testify that the bullet hole glowed as the subject vehicle passed. These additions to the plaintiff's animation are unnecessary prejudicial embellishments that are placed in the animation to persuade, not to aid the jury in understanding the

11

plaintiff's expert's theory – assuming that is its avowed purpose, not as a simulation.

The viewing angle presented b the animations is the single greatest reason why the animation should be precluded.  The plaintiff could have disclosed an animation that showed this entire event from the eye-level perspective of Officer Breen.  Of course, that animation would likely show the danger reasonably perceived by Officer Breen.  Rather than be objective, the plaintiff's animation provides persuasion in the distorted view from a raised, oblique angle and from overhead.  Neither view was accessible to the officer and should be precluded. The ultimate issue is whether Officer Breen reasonable believed he was in danger and from the information possessed by him at the moment he employed deadly force.  Officer Breen did not have the benefit of a fifty foot tall tower on an oblique angle to ascertain the position of the subject vehicle. Similarly, Officer Breen did not have some overhead, flying drone or satellite to provide him a sterilized, detached view. To the extent that this animation fails to take into account the eye-level view, its prejudicial effect outweighs any probative value and is inconsistent with the benchmark of Officer Breen's conduct – the Fourth Amendment.

The overall lighting has no basis in fact. Whether it is the streetlights, the natural illumination or the headlights of the subject vehicle, there is no evidence about any of the sources of light at that location, be it the illumination in candle-feet or otherwise. There is no evidence about the dispersion of the headlights of the subject vehicle, their placement, their size or the measurement of illumination from said headlights. This

illustration in the form of an animation is nothing more than an illusion of what the plaintiff has placed before the court. Nothing therein is placed to provide the jury with an aid to understanding an expert's opinion – all of the foundationless presentation of the conditions of illumination is to persuade and not to aid the jury.

The miniature size of car relative to the officer, the diminished curve in road, shown in the CSP photographs, and the appearance of freshly painted lines on the subject road in the animation without any evidence of the line's condition on the night in question are just more reasons why this animation should be precluded.

Of course, the plaintiff omits any even-handed views in the animation: the eye level view, the sound of the subject vehicle or an accurate representation of the headlights.

This court should preclude this animation in its entirety.  The court in *Racz v. R.T. Merryman Trucking, Inc.* 1994 WL 124857, *5 (E.D.Pa.), succinctly covered why that is so:

> Relying upon the old adage, "seeing is believing," we conclude that the jury may give undue weight to an animated reconstruction of the accident. We are particularly concerned with the translation to visual representation of the discrepancy in the expert report noted in the discussion of the previous motion. The apparent decision of the accident reconstructionist to discount the testimony of a witness who reported seeing the trailer portion of the truck encroach into the decedent's lane of travel is magnified and given enhanced credibility when such decision becomes part of the data upon which an animated visual representation is based. It would be an inordinately difficult task for the plaintiff to counter, by cross-examination

> or otherwise, the impression that a computerized depiction of the accident is necessarily more accurate than an oral description of how the accident occurred. Because the expert's conclusion would be graphically depicted in a moving and animated form, the viewing of the computer simulation might more readily lead the jury to accept the data and premises underlying the defendant's expert's opinion, and, therefore, to give more weight to such opinion than it might if the jury were forced to evaluate the expert's conclusions in the light of the testimony of all of the witnesses, as generally occurs in such cases.

*Racz v. R.T. Merryman Trucking, Inc.* 1994 WL 124857, *5 (E.D.Pa.) (E.D.Pa.,1994)

Therefore, the animation should be precluded.

E.  **IF THE COURT DOES NOT PRECLUDE THE ANIMATION, THE MUST GIVE LIMITING, CAUTIONARY INSTRUCTIONS, BEFORE AND AFTER EACH TIME THE ANIMATION IS SHOWN.**

To avoid any likelihood of prejudice and to reduce the possibility that the jury might interpret the animation to be re-creations of the accident, the court should instruct the jury at the time plaintiff seeks to introduce the animations that the animations are not meant to be a re-creation of the accident but simply computer pictures to help them understand the opinions and testimony of Mr. Schwendy. *See Datskow v. Teledyne Continental Motors*, 826 F.Supp. 677 (W.D.N.Y.1993); *Robinson v. Missouri Pacific R. Co.*, 16 F.3d 1083, 1086 (10th Cir.1994) (jury instructed that a re-creation of the accident was impossible, and video of computer animation was only to support expert witness' opinion). The court also prohibit the plaintiff from showing the animation until she has proven all of the foundational elements for its introduction into evidence.

III. **CONCLUSION.**

14

For the reasons set forth above, the defendants, MICHAEL BREEN and TOWN OF NORTH BRANFORD, pray that their motion in limine is granted.

>                    THE DEFENDANTS,
>                    MICHAEL BREEN and TOWN OF
>                    NORTH BRANFORD
>
>                    _____
>                    Thomas R. Gerarde, ct5640
>                    John J. Radshaw, III, ct19882
>                    Jeffery E. Potter, ct26356
>                    HOWD & LUDORF
>                    65 Wethersfield Avenue
>                    Hartford, CT  06114
>                    (860) 249-1361
>                    (860) 249-7665 (fax)

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 1st day of June 2005.

David N. Rosen, Esquire
400 Orange Street
New Haven, CT  06511

 

_____
Thomas R. Gerarde
John J. Radshaw, III
Jeffery E. Potter