**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARGARET COWAN, | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF VICTORIA COOPER | : | NO.: 3:00 CV 0052 (RNC) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BREEN | : | |

| | | |
|---|---|---|
| MARGARET COWAN, | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF VICTORIA COOPER | : | NO.: 3:01 CV 0229 (RNC) |
| | : | |
| v. | : | |
| | : | |
| NORTH BRANFORD | : | JUNE 20, 2005 |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION IN LIMINE RE DRUG EVIDENCE**

**I.    BACKGROUND.**

This case involves the death of a citizen, Victoria Cooper, who was shot by

Officer Michael Breen as she drove a motor vehicle towards him on a darkened

roadway in North Branford, Connecticut following a stop of that vehicle and escape of

the driver, Steven Guerrette. Despite having ample opportunity to change direction and

avoid a confrontation, Cooper drove toward Officer Breen, who, fearing that the deadly

force embodied in a moving motor vehicle would be used against him imminently, fired

two shots from his service weapon at the vehicle. The first shot deflected off of the hood

of the vehicle; the second shot struck Cooper and fatally wounded her. It is the

defendants' contention that Officer Breen reasonably believed that his life was in danger

of the imminent deadly force embodied by the motor vehicle driven toward him by

Victoria Cooper.  The defendants submit Officer Breen is protected by the doctrine of qualified immunity and self-defense.

The plaintiff is concerned that the defendants will attempt to introduce evidence concerning her decedent's drug use and other drug evidence arising from the night in question and the other individual present before the shooting.  The existence and strength of this evidence is not seriously disputed. The plaintiff's motion in limine was filed before the Court suggested bifurcation of the trial into liability and damages phases. The cases have already been bifurcated to separate the claims against the Town from the claims against Officer Breen.

With that background in mind, the Plaintiff's principal argument on brief is that Cooper's drug use is irrelevant and it is so prejudicial that effect outweighs any probative value, assuming the trial is held with the issues of liability and damages together. Plaintiff's entire argument is diminished in light of this posture. Plaintiff also claims that examining the competing testimonial expert evidence on drug use and effect from Drs. Rounsaville and Selig would confuse the jury and be a waste of time. Dr. Selig's opinions relate only to Dr. Rounsaville's claims about cocaine and Cooper's life expectancy. Neither doctor has an opinion as to the effect of cocaine on Cooper and Guerette's motive or intent.  Plaintiff also claims that the evidence that Guerette was in possession of drugs should also be precluded because Officer Breen did not rely on such evidence when he shot at the subject vehicle. In sum, the plaintiff argues that the drug evidence should be summarily precluded from the jury in this case and on all issues, liability and damages.  This conclusion is plainly wrong.

For analytical purposes, the defendants divide the so-called "drug evidence" into three categories. The first category of "drug evidence" is that evidence demonstrative of Cooper's drug use over time, her history of drug use, abuse and dependence, her purchase and use for herself and friends, her purchase for sale to others, her drug intoxication at work, the marginalizing effects of her drug use on her life and her loss of the Amtrak job as a result of her failure to complete a drug test during the probationary period, among other personal consequences of drug use and abuse. The second category of drug evidence is that evidence establishing Cooper's drug use and intoxication on the night in question, the possession of bags of crack cocaine in her sock on the night in question, and the constructive possession of bags of crack cocaine in the subject vehicle near her on the night in question. The third category of drug evidence is that evidence establishing Guerette's drug use and intoxication on the night in question, Officer Breen's discovery of Guerette's possession of two bags with a white powdery substance at the time Officer Breen attempted to take Guerette into custody.

Taking these analytical categories in mind, the so-called drug evidence, under the circumstances present in this case, is relevant, admissible and any prejudicial effect does not outweigh the probative value of such evidence.  The first category of evidence is unquestionably relevant, admissible and not overly prejudicial to the issue of damages only. The second and third categories of drug evidence, undeniably relevant, admissible and not overly prejudicial to the issue of damages, are relevant, admissible and not overly prejudicial to the issue of liability.

## II.    LAW AND ARGUMENT.

### A.    STANDARD OF REVIEW.

The decisions of the district court on evidentiary issues are reviewed for abuse of discretion. *United States v. Garcia*, 291 F.3d 127, 139-40 (CA2 2002). Federal district courts have the power to exclude evidence in limine pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). This court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See United States v. Connelly*, 874 F.2d 412, 416 (CA7 1989), *citing Luce*, 469 U.S. at 41 ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.") *See generally*, 21 *Charles A. Wright & Kenneth W. Graham*, Jr., FEDERAL PRACTICE AND PROCEDURE ¶¶ 5037, 5042 (1977 & Supp.1993).

Fed.R.Evid. 401 provides "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed.R.Evid. 403 provides although relevant, evidence may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See SEC v. Peters*, 978 F.2d 1162, 1171 (CA10 1992) (noting almost all evidence, in the eyes of one party or the other, will be perceived as prejudicial).

Evidence of other acts is not admissible to prove that the actor had a certain character trait, in order to show that on a particular occasion he acted in conformity with that trait. Rule 404 provides that, with certain exceptions not pertinent here, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," Fed.R.Evid. 404(a), and that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," Fed.R.Evid. 404(b). Rule 404(b) does, however, provide that other crimes, wrongs, or acts "may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*; *see also Huddleston v. United States,* 485 U.S. 681, 687-88 (1988); *United States v. Pitre,* 960 F.2d 1112, 1119 (CA2 1992).

Where intent is in issue, evidence of other acts that bear on intent is properly admissible under Rule 404(b). *Hynes v. Coughlin*, 79 F.3d 285, 290-291 (CA2 1996). For example, in a civil rights suit brought by a prison inmate, where the plaintiff testifies that he struck a corrections officer reflexively and by accident, the trial court may properly admit evidence of the plaintiff's prison disciplinary record of assaults to show

the absence of mistake. *See Young v. Rabideau* 821 F.2d 373, 376-80 (CA7 1987),

*cert. denied,* 484 U.S. 915 (1987).

> **B.     EVIDENCE CONCERNING MR. GUERETTE'S POSSESSION OF COCAINE AND PARAPHERNALIA BEFORE THE SHOOTING IS RELEVANT, ADMISSIBLE AND ITS PROBATIVE VALUE IS NOT OUTWEIGHED BY ANY PREJUDICE.**

Taking the third category first, it is clear that the evidence of Guerette's drug use

and intoxication on the night in question, Officer Breen's discovery of Guerette's

possession of two bags with a white powdery substance at the time Officer Breen

attempted to take Guerette into custody is  relevant, admissible, and not overly

prejudicial so as to outweigh any probative value. Without citation to any legal authority,

the plaintiff argues that any evidence concerning Mr. Guerette's possession of crack

cocaine or drug paraphernalia before the shooting is irrelevant and prejudicial. The

plaintiff bases this entire argument on the claim that the evidence "did not have any

impact on Breen's decision to shoot Ms. Cooper."   *See* Pl. Mem. p. 9. Not only is this

claim factually incorrect, Guerette's possession of cocaine and/or drug paraphernalia is

both relevant and probative of issues concerning the objective reasonableness of the

shooting as it is part of Officer Breen's foundation of knowledge at the time he employed

deadly force.

"As in other Fourth Amendment contexts, however, the "reasonableness" inquiry

in an excessive force case is an objective one: the question is whether the officers'

actions are "objectively reasonable" in light of the facts and circumstances confronting

them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490

U.S. at 397.  "It is not objectively reasonable for an officer to use deadly force to

apprehend a suspect unless the officer has probable cause to believe that the suspect

poses a significant threat of death or serious physical injury to the officer or others."
*O'Bert ex rel. Estate of O'Bert v. Vargo,* 331 F.3d 29, 36 (CA2 2003). "The
reasonableness inquiry depends only upon the officer's knowledge of circumstances
immediately prior to and at the moment that he made the split-second decision to
employ deadly force." *Salim v. Proulx,* 93 F.3d 86, 92 (CA2 1996). *See also, Holeman
v. City of New London*, 330 F.Supp.2d 99, 116 (D. Conn. 2004). "When a jury
measures the objective reasonableness of an officer's action, it must stand in *his* shoes
and judge the reasonableness of his actions based upon the information he possessed
and the judgment he exercised in responding to that situation." *Sherrod v. Berry*, 856
F.2d 802, 804 -805 (CA7 1988). "We do not use hindsight to judge the acts of police
officers; we look at what they knew (or reasonably should have known) at the time of
the act." *Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (CA11 2002).

   At his deposition, Officer Breen confirmed that he was aware that Guerette was
in possession of contraband at the time he searched him behind the subject vehicle
before he fled. *See* **Exhibit A,** Depo. Breen, p. 201. This knowledge undermines the
plaintiff's claim that Breen "only" relied on the fact that the subject vehicle was
approaching him with speed to justify his first shot.

> Q.   And when you had Steven Guerette behind the vehicle before he fled,
> you had probable cause to arrest him, and in connection with the search
> you discovered that he had contraband on his person; is that correct?
>
> A.   Yes.
>
> Q.   And as that vehicle approached you, you wanted to stop that vehicle
> in furtherance of your police duties; is that correct, sir?
>
>  A.   Yes.

Plaintiff apparently overlooked this section of Officer Breen's deposition as well
as the whole host of facts and circumstances in his mind at the time he fired at the

subject vehicle. *See* **Exhibit A,** Depo. Breen, pp. 200-202.  Indeed, Officer Breen had a

number of things in his mind, some of which were discussed at his deposition:

BY ATTORNEY GERARDE:

Q.  Now, I would like to confirm some of the circumstances that were known to you at the time of the shooting and shortly before the shooting. In other words, the circumstances that existed as the sequence led to the point where you made the decision to shoot.

Now, you certainly knew that your cruiser was stopped behind the Camaro on Foxon Road; is that right, sir?

A.  Yes.

Q.  And your cruiser lights were flashing at that time; is that right, sir?

A.  Yes.

Q.  And you knew once the vehicle began traveling toward you after you had aborted your foot chase that the passenger in the vehicle had moved over to the driver's side and was operating the vehicle; is that correct, sir?

A.  Yes.

Q.  And you certainly were aware that the driver of this vehicle did not seek to avoid you by taking a U-turn and traveling in the opposite direction; is that correct?

A.  Yes.

Q.  And you were aware that the driver did not seek to avoid you by taking a left at the fork onto Old County Road; is that correct, sir?

A.  Yes.

Q.  I'm sorry.  That's County Road, not Old County Road. And you were aware that you were in front of the vehicle as it approached you, and its headlights were on you; is that correct, sir?

A.  That's correct.

Q.  And you were waving your arms while the vehicle drove toward you, and you were in the headlights; is that correct?

A.  Yes, sir.

Q.  And the roadway was wet as the vehicle approached you; is that correct, sir?

A.  Yes.

Q.  And it was dark; is that correct?

A.  Yes.  Yes.

Q.   And you had just been at the end of a foot chase of Steven Guerette as you described for us; is that correct, sir?

A.   Yes.

Q.   And when you had Steven Guerette behind the vehicle before he fled, you had probable cause to arrest him, and in connection with the search you discovered that he had contraband on his person; is that correct?

A.   Yes.

Q.   And as that vehicle approached you, you wanted to stop that vehicle in furtherance of your police duties; is that correct, sir?

A.   Yes.

**Exhibit A**, Depo. Breen, pp. 199-202.

Officer Breen stopped the vehicle that he suspected to be involved in criminal activity after observing suspicious behavior at the Quick-Mart. He then observed the Guerette vehicle cross the yellow line on three occasions. Following the observation of the traffic violation, Officer Breen decided to stop and investigate, possibly for a violation of the motor vehicle laws concerning operating while impaired or under the influence of alcohol. After uncovering other violations in the course of the stop (insurance, license, etc), Officer Breen discovered Guerette in possession of suspected crack cocaine. Officer Breen then made the decision to arrest. Guerette's flight in the face of this evidence informs Officer Breen's knowledge, experience and assumptions concerning Guerette, his vehicle and the passenger. Officer Breen's conduct is measured by the facts he knows, not what he should have know or what is in the mind of others.

Indeed, Officer Breen had been paying close attention to Guerette and Cooper when he first saw them in the subject vehicle. *See* **Exhibit A,** Depo. Breen, p. 122. Officer Breen observed Guerette's and Cooper's nervous behavior when he questioned them about their identification. *See* **Exhibit A,** Depo. Breen, p. 126. Officer Breen observed them making eye contact and nervous looks which informed him that

something more than a routine traffic stop was underway. *See* **Exhibit A,** Depo. Breen, p. 126-7. Officer Breen believed that Cooper should have known that she was not free to leave and that she was part of Guerette's criminal activity. *See* **Exhibit A,** Depo. Breen, pp. 130-1. Even Dr., Fyfe identifies Cooper and Guerette as seedy. Depo. Fyfe, p. 111:12.

At this point and with this evidence, Officer Breen concluded that the white powdery substance in the plastic bag was contraband and cocaine. *See* **Exhibit A**, Depo. Breen, p. 139-42. This fact is reinforced by Guerette's resistance to arrest and subsequent flight. Whether or not he was later successful in arresting Guerette after a chase, Officer Breen now has reasonable suspicion to search the vehicle and the passenger, Ms. Cooper. Common sense, the law, and Officer Breen's understanding would be that Cooper was not free to leave. From Guerette's possession and flight, Officer Breen could have inferred that the vehicle contained additional contraband, that he was subject to warrants, that Cooper possessed contraband, that Guerette was intoxicated, and that Cooper was intoxicated.

All of this information was available to Officer Breen at the time he employed deadly force. *See* **Exhibit A**, Depo. Breen,199-201. It is relevant to understanding why Cooper left the passenger seat and decided to leave the scene in the motor vehicle. It is certainly reasonable for Breen to conclude that more contraband exists under these circumstances.[1] Moreover, Guerette's possession of contraband, particularly bags that

---

[1] While Officer Breen does not claim that Guerette or Cooper were in possession of firearms or other weapons, the established fact that "weapons and violence are frequently associated with drug transactions," underscores the reasonableness with which Officer Breen could conclude that Cooper was in possession of contraband and sought to flee at any costs. *United States v. Brown*, 913 F.2d 570, 572 (CA8), *cert. denied*, 498 U.S. 1016 (1990). *See also Michigan v. Summers*, 452 U.S. 692, 702 (1981) ("the

formerly held crack cocaine underscores his recent use of the substance and

possession. Just because it looked like a "white powder" does not diminish Officer

Breen's conclusions. Officer Breen did not need to field test the bag before chasing

Guerette.  The test to determine if the plain view of the white substance provided

sufficient probable cause is whether the criminal nature of the seized object was

immediately apparent in light of the officer's particular experience.  *Texas v. Brown*, 460

U.S. 730, 742-43 (1983); *United States v. Szymkowiak*, 727 F.2d 95, 97 (CA6 1984).

Officer Breen had such experience.  It was immediately apparent to him that defendant

possessed cocaine.   An officer can justifiably rely upon his training and experience in

asserting whether criminal activity is occurring. *Texas v. Brown*, 460 U.S. at 742-43.   In

the present case, when Guerette reacted with physical resistance when the bags were

discovered, Officer Breen's suspicions were confirmed. This action indicated that the

substance, which looked like cocaine, was not a legal substance and made it more likely

than not that it was an illegal substance. Like all police officers, Officer Breen had

experience in observing cocaine and knew how it was packaged by drug dealers, he

reasonably believed that this substance was cocaine once defendant engaged in these

furtive actions that were consistent with drug concealment activity and subsequent

flight. Additionally, Guerette had a motive to escape arrest at the event in issue because

he would be caught in possession of drugs, a possible felony charge. *Dean, by Williams*

---

execution of a *81 warrant to search for narcotics is the kind of transaction that may give rise to sudden
violence"); *United States v. Salazar*, 945 F.2d 47, 51 (CA2 1991), *cert. denied*, 504 U.S. 923, (1992)
(police "know that narcotics dealers frequently carry weapons"); *United States v. Salas*, 879 F.2d 530, 535
(CA9), *cert. denied*, 493 U.S. 979 (1989) ("[i]t is not unreasonable to assume that a dealer in narcotics
might be armed"); *United States v. Gilliard*, 847 F.2d 21, 25 (CA1 1988), *cert. denied*, 488 U.S. 1033
(1989) (guns are "tools of the trade" of drug dealers); *State v. Wartberg*, 586 So.2d 627 (La.Ct.App.1991)
("[T]hese officers were satisfied that they had seen a drug transaction and they were dealing with four drug
suspects in an automobile. It would be reasonable to infer that such subjects would be armed and
dangerous."); and *State v. Richardson*, 156 Wis.2d 128, 456 N.W.2d 830 (1990) ("drug dealers and

*v. Watson,* 1995 WL 692020, *3 (N.D.Ill.) (N.D.Ill.,1995).  Not only is it relevant, but given the presence of cocaine and/or drug paraphernalia on Guerette, a reasonable police officer would have probable cause to believe that there may have been more drugs present in the vehicle and/or that Ms. Cooper had knowledge of the presence of such drugs and and/or was involved in the possession and/or use of the drugs.  At minimum, the lawful arrest of Guerette would have allowed a search of the Camaro incident to arrest, for weapons or destructible evidence.  *See New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Furthermore, closed containers in the passenger compartment within the arrestee's reach may also be searched incident to arrest. *See New York v. Belton* 453 U.S. at 461.  Such a search may be conducted even if the defendant is no longer occupying the vehicle. Thorton v. United States, 541 U.S. 615 (2004). Permitted purposes of a warrantless search incident to arrest include protecting officers and preventing the destruction of evidence. *See New York v. Belton* 453 U.S. at  457 (*citing Chimel v. California*, 395 U.S. 752, 763 (1968)).

Additionally, such evidence is probative of whether Guerette was intoxicated by crack cocaine or other illicit substances and is certainly relevant to explain his motive to flee as well as his ability to testify accurately about the events of that evening.  This evidence is certainly relevant to impeach Guerette's credibility. *United States v. Burnside*, 824 F.Supp. 1215, 1264-6 (N.D. Ill. 1993) (evidence that witness was using drugs when observing an incident and had prior long term history of drug use relevant to credibility and ability to accurately relate his observations). If the court excludes this evidence, the defendants will be unable to present evidence that would provide

weapons go hand in hand").

sufficient "information to appraise the biases and motivations of the witness." *United States v. Parker*, 991 F.2d 1493, 1497 (9th Cir.), *cert. denied*, 114 S.Ct. 121 (1993).

Accordingly, the court should deny the plaintiff's motion in limine with respect to any evidence about Steven Guerette's drug use, abuse, possession, or criminal activity associated thereto. Therefore, the third category of drug evidence is admissible in all aspects of this case.

> **C.    EVIDENCE CONCERNING COOPER'S USE OF CRACK COCAINE ON THE NIGHT IN QUESTION, POSSESSION OF DRUGS IN HER SOCK ON THE NIGHT IN QUESTION AND CONSTRUCTIVE POSSESSION OF DRUGS IN THE SUBJECT VEHICLE BEFORE THE SHOOTING IS RELEVANT, ADMISSIBLE AND ITS PROBATIVE VALUE IS NOT OUTWEIGHED BY ANY PREJUDICE.**

Turning to the second category of drug evidence, all of this evidence is relevant, admissible and probative. The decedent's drug use on the night in question is not a collateral issue.  Plaintiff's motion in limine draws too bright a line as it assumes that liability and damages would be tried together. Whether or not that is the case, that assumption and the plaintiff's demonstrated selective reading of authority illustrates that exclusion of certain drug evidence as it relates to Victoria Cooper would be an abuse of discretion by this court. The defendants argue the following evidence should be admitted in all aspects of this case: (1) Cooper's cocaine intoxication at the time of the shooting, the amount of cocaine in her blood and the evidence that she smoked crack cocaine near in time to the shooting, (2) Cooper's possession of bags of crack cocaine in her sock while in the subject vehicle, and (3) Cooper's constructive possession of bags of crack cocaine in the subject vehicle, near in vehicle where Cooper had been sitting as a passenger. This evidence is relevant, admissible and the probative value of

this evidence outweighs any prejudicial impact. The defendants argue that such is the case whether the suit is bifurcated on liability and damages or not – if bifurcated, the case is even stronger for admission.

The drugs found in the possession of Cooper that night indicate a motive to run, and escape, at any cost; which includes a motive to injure or kill Officer Breen. The presence of a substantial amount of drugs on Cooper and her cocaine intoxication is both relevant and probative to motive for the decedent getting into the driver's seat and driving toward Officer Breen. The plaintiff was facing arrest and possible prosecution. It would be highly prejudicial to the defendants to exclude this evidence, because without it, the jury is left to speculate as to why the decedent attempted to escape the scene. *Manatt v. Union Pacific R. Co.* 122 F.3d 514, *517 (CA8 1997) (drug use and depression properly admitted it as relevant evidence under Fed.R.Evid. 401 and 402 because the cause of the initial accident was directly in issue, and the extent of [Scott's impairment] is evidence that clearly bears on the accident's cause, *citing Swajian v. General Motors Corp.*, 916 F.2d 31, 35 (CA1 1990))

Evidence tending to show a motive to flee is relevant, admissible and the probative value exceeds any prejudice shown. In *Dean v. Watson*, 1995 WL 692020, at *1-*2 (N.D.Ill. Nov. 16, 1995), the court concluded that evidence of two outstanding bond forfeiture warrants for his arrest at the time of the Incident "g[ave the plaintiff] a strong motivation to avoid capture." Id. at *2. The court held the evidence of the bond warrants admissible for the purpose of demonstrating the plaintiff's motive to resist arrest. *Id.* at 3. The court in *Daniels v. Loizzo* 986 F.Supp. 245, *248 (S.D.N.Y.,1997), agreed, holding the introduction of evidence about the outstanding parole warrant as

motive for resisting the arrest as appropriate.  Certainly, possession of bags of crack cocaine is a motive to run or avoid arrest just as a warrant.

It is accepted law to establish evidence of conduct leading that could lead to an arrest or the arrest itself, including the convictions stemming from that arrest as admissible to provide the jury with a full account of the events giving rise present claims and to demonstrate a motive to run, hide, and resist arrest. *See, e.g., Hernandez v. Cepeda*, 860 F.2d 260, 265 (CA7 1988) (holding that evidence of charges on which arrestee was being arrested at time of alleged civil rights violations was admissible to demonstrate motive to resist arrest). In *Greene v. Distelhorst,* 116 F.3d 1480, 1997 WL 351298, *4 (CA6 1997), the court concluded a drug abuse conviction was based on the marijuana found in the plaintiff's possession at the time of the arrest was admissible for the purpose of demonstrating *Greene* plaintiff's motive to flee and resist arrest and the officers' motive to maintain pursuit. The court held the conviction for resisting arrest was admissible for two reasons: first, the circumstances surrounding that arrest were critical to the determination of whether the officers used excessive force in arresting the plaintiff; and second, because the plaintiff was found guilty of resisting arrest, he was precluded from re-litigating that issue in this action. The court found the evidence was necessary to provide the jury with a full account of the events surrounding the plaintiff's claims against the City and the police officers, it was admissible for that legitimate purpose, and the district court did not abuse its discretion in admitting it for that limited purpose. Not only is it relevant, but given the presence of cocaine and/or drug paraphernalia on Steven Guerette, a reasonable police officer would have probable cause to believe that there may have been more drugs present in the vehicle and/or that

Ms. Cooper had knowledge of the presence of such drugs and and/or was involved in the possession and/or use of the drugs.

Furthermore, the presence of drugs in the vehicle is evidence that the decedent saw the officer waving his arms in heard him yelling stop, and decided not to stop or slow down.  Cooper's past drug use is not admissible to prove his/her bad character or to show that she acted in conformity therewith under Fed. R. Evid. 404(a) – it is relevant to damages. *See, infra*, Section II.D.  However, it is admissible under Fed. R. Evid. 404(b) for other purposes, such as explaining the suspect's reason to resist detention, flee and avoid capture or attempt to injure or kill an arresting officer, even if they are not known to the arresting officer at the time.  *Stevenson v. D. C. Metropolitan Police Dep't*, 248 F.3d 1187, 1191 (D.C. Cir.) (although not known at time to police, subject's possession of gun was relevant, because it showed his motivation to escape at all costs); *Edwards v. Thomas,* 31 F. Supp. 2d 1069, 1073 (N.D. Ill. 1999) (jury could view plaintiff's consumption of contraband, 49 bags of heroin, as significant in determining whether was "vigorously and actively" resisting); *Daniels v. Loizzo*, 986 F. Supp. 245 (S.D.N.Y. 1997) (court admitted evidence of existing parole warrant to prove motive to resist arrest); *Schadler v. Anthem Life ins. Co.*, 1999 WL 1044486 (N.D.Tex. 1999) (decedent's state of mind and intent are informed by the types of particular drugs ingested); *United States v. Bitterman*, 320 F.2d 723, 727, 60 Fed.R.Evid.Service. 1047 (CA7 2003) (admission of evidence supporting heroin use five years before robbery and evidence of drug addiction was relevant and admissible to defendant's motive to commit the robbery in question); *Grimes v. Mazda North American Operations*, 355 F.3d 566, 63 Fed.R.Evid.Serv. 309 (CA6 2004) (evidence of alcohol and drug use on evening of

accident relevant to existence of impaired memory and credibility of witness); *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505, 40 Fed.R.Evid.Serv. 598 (CA5 1994) (post-accident positive drug test admissible to show plaintiff was under the influence at the time of the accident); *State v. Dickson*, 12 Utah 2d 8, 13 361 P.2d 412 (1961) (evidence that defendant was fugitive from justice and would be trying to desperately to avoid capture by police and would therefore have strong motive for killing peace officer relevant and admissible to show motive for killing); *Mendoza v. Gates*, 19 Fed.Appx. 514, 2001 WL 1003066 (CA9 2001) (evidence of cocaine ingestion/possession relevant to decedent's motive to flee in connection with high-speed police pursuit that ended in justified use of deadly force by officer against the decedent driver); *United States v. Johnson*, 1997 WL 732436 *1 (D.D.C.) (fact that possession of illegal drugs could lead to substantial prison term provided strong motive to flee); *United States v. Cort*, 1998 WL 732429 *3 (D.D.C.) (fact that possession of illegal drugs could lead to deportation provided strong motive to flee); *State v. Boyd*, 2004 WL 440207 (Wash.App.Div. 2) (evidence that defendant's driver's license was suspended is admissible and probative to determine defendant's motive to resist arrest); *Barnes v. City of New York*, 296 A.D.2d 330, 745 N.Y.S.2d 20 (2002) (jury verdict in favor of plaintiff set aside and judgment reversed when trial court precluded evidence of plaintiff's membership in antisocial gang which espoused ideological hatred for police in personal injury action against peace officer who shot plaintiff in course of pursuit and arrest).

In her effort to keep any and all evidence of drug use or possession from the jury in this matter, the plaintiff has proposed an order that is not supported by the authorities. Indeed, the plaintiff cites a number of authorities that support admission of this

evidence, particularly, *Lewis v. District of Columbia,* 793 F.2d 361 ( D.C.Cir. 1986). The plaintiff argues that the holding of Lewis supports the admission of drug evidence on the issue of damages only. See. Pl. Mem. p. 8. While the *Lewis* court does conclude that the drug evidence was relevant to damages, the court also held that the drug evidence was relevant to motive and intent, particularly whether the *Lewis* plaintiff fled the police officer as a result of a mistake or to avoid arrest. *Id.* at 363. The plaintiff's selective reading of *Lewis* demonstrates the weakness in her overall argument to keep out this second category of evidence. This is an issue in the present case – the plaintiff argues that Cooper's intent was to merely drive away. The defendants suggest otherwise – Cooper was attempting to escape at all costs, driving the subject vehicle directly at Officer Breen despite having two opportunities to avoid Officer Breen – a U-turn or turn onto Old County Road.

To buttress that claim, the plaintiff has disclosed Dr. Forkiotis to testify concerning Victoria Cooper's vision and eyesight on the night in question.[2] *See* JTM, p. 9. Obviously, the plaintiff intends on introducing this evidence to show that Cooper did not see Officer Breen and ask the jury to draw the inference that Officer Breen's use of force was therefore unlawful, despite the plaintiff being unable to produce a single iota of evidence that Officer Breen knew of Cooper's vision condition. If plaintiff is allowed to introduce evidence from Dr Forkiotis that plaintiff was night blind as an explanation for her not seeing him, the defendants should clearly be allowed to admit this evidence to explain that she was not night blind but was in fact trying to avoid arrest for cocaine

---

[2] Dr. Forkiotis's testimony and related evidence is subject to a motion in limine. See Docs. #119, 120.

possession and driving under the influence (once she got behind the wheel she was subject to arrest, given the cocaine in her blood).[3]

Accordingly, the court should deny the plaintiff's motion in limine with respect to any evidence about Victoria Cooper's drug use, possession, or criminal activity associated thereto in the liability phase of this trial. Therefore, the second category of drug evidence is admissible in all phases of this case, certainly the liability phase.

**D.  EVIDENCE OF COOPER'S DRUG USE IS RELEVANT, ADMISSIBLE AND THE PROBATIVE VALUE OUTWEIGHS ANY PREJUDICIAL EFFECT ON THE ISSUE OF THE RESIDUAL VALUE OF HER LIFE ON THE QUESTION OF DAMAGES IN A BIFURCATED TRIAL.**

Taking the first category last, if the case is bifurcated on the issues of liability and damages, the defendants concede that testimony and evidence of Cooper's prior drug possession, use and sale for several years prior to the shooting is both irrelevant to the issue of liability and the prejudicial impact would outweigh any probative value.  Under such circumstances, the defendants would be essentially offering inadmissible character evidence. The defendants would not offer such evidence at the liability phase of this trial. The bulk of the plaintiff's opposition relies on spill-over prejudice from the relevance of drug use on the issue of damages onto the question of liability, assuming the issues of liability and damages are tried together. Such concerns are no longer present in this case if the liability and damages are separated into two, distinct phases. At the damages phase of this trial, however, the question of Cooper's drug use is relevant, admissible, and probative of the residual value of her life. Indeed, the cases support the introduction of such evidence.

---

[3] *See supra,* Section II.C., pp. 16-7.

The plaintiff's citation of the decision in *Harless v. Boyle-Midway*, 594 F.2d 1051 (CA5 1979) offers no support to the plaintiff's argument that drug evidence should be categorically excluded from a trial. In *Harless*, the Court of Appeals concluded that the evidence that the decedent or his brother smoke marijuana on one occasion should impact his life expectancy. Of course the Court of Appeals concluded that this slight evidence had a mere tenuous connection at best. The *Harless* court did not purport to issue some rule of law – the prejudicial effect of evidence of smoking marijuana on one occasion outweighed probative effect. *Id.*, 1057-8.  It appears liability and damages were tried together.  In the present case, Cooper smoked crack cocaine for at least 3 years and suffered a number of ill effects and she was selling it to her co-workers. Moreover, she had smoked crack cocaine on the night she died. Undoubtedly, her use was a major part of her life, nothing at all like the situation in *Harless*. The *Harless* has nothing to do with the drug evidence concerning Cooper's use on the night in question or as to Guerette's use and possession.

The case of *Meller v. Heil Co.*, 745 F.2d 1297, 1303 (CA10 1984) is similarly distinguishable as *Harless*. In *Meller*, the defendant sought to introduce evidence that hashish pipes were found at the scene of the accident. The court properly affirmed the decision to exclude this evidence as no evidence could be adduced that the *Meller* plaintiff used marijuana close in time to the accident. This case is clearly distinguishable.  Cooper was using crack cocaine on the night in question, she was intoxicated on this illicit substance and was in possession of crack cocaine that would have amounted to a very serious criminal charge. The evidence in the present case shows more than the jury inference sought in *Meller*. The defendants agree that a few

hashish pipes does show a diminished life expectancy.  On the other hand, more than three years of serious crack cocaine use, sale to co-workers and other criminal actions in her lifestyle demonstrate a much more significant quantum of use than evidence of possession of hashish pipes and nothing else.

The plaintiff's reliance on *Mankey v. Bennett*, 38 F.3d 353 (CA7 1994) is misplaced. In that case, the court precluded evidence of drug and alcohol abuse because the defendant had failed to disclose an expert to explain this subject. The court precluded the expert as a disciplinary measure for the failure to disclose. *Id.*, 356-9. The *Mankey* court, in one short paragraph, states expert testimony is needed to introduce such evidence. Multiple witnesses are available to do so – Drs. Carver and Selig, to name two. Plaintiff argument with respect to *Mankey* should be rejected.

The plaintiff's citation of *Wilson v. Union Pacific RR*, 56 F.3d 1226, 1231 (CA10 1995) is unpersuasive and distinguishable. In *Wilson*, the Court of Appeals for the Tenth Circuit did not embrace the fact that the trial court excluded evidence of the plaintiff's drug conviction as some general principle. The *Wilson* defendant had argued plaintiff's damages expert failed to take into consideration the plaintiff's inability to remain as a brakeman given his drug conviction. The *Wilson* defendant argued such omission invalidated the plaintiff's damages expert's calculations.  The *Wilson* court agreed, in part, but upheld the exclusion because the plaintiff's expert re-calculated the proposed damages in the nature of lost earnings.  None of the considerations faced by the *Wilson* court are present here. Liability and damages will be bifurcated. At the damages phase with the plaintiff not presenting any evidence about the decedent's life, the defendants are free to put on this evidence of her use at that time. This case has nothing to do with

the drug evidence concerning Cooper's use on the night in question or as to Guerette's use and possession.

In *Knight v. Demin*, 2002 WL 360667 (Cal.App. 5 Dist.), the court specifically found that injured passenger's drug history was relevant to issues of damages, causation, and credibility, in passenger's personal injury action against drive. The court found the passengers experience with unhealthful or illicit substances was relevant to the psychological and neurological problems she attributed to the accident, which could have been consequences of the drug use. *Id.,* *7-8. Just because Cooper is dead does not give her a pass. If it is relevant to the injuries of the living, it goes to the quality of life of the now dead.

In *Botte v. Pomeroy, d/b/a South Seas Apartments*, 497 So.2d 1275, 1277-79 (Fla. 4th DCA 1986), the court, while observing that ordinarily it would disapprove evidence of plaintiff's prior drug use, stated that, under the circumstances, such evidence was material to the issue of contributory negligence, in that there was evidence that plaintiff had overdosed on drugs the day of the accident. Evidence of plaintiff' alcoholism is relevant and discovery because it relates to damages. *Appel v. Quilantang*, 629 So.2d 1004 (Fla. 4th DCA 1993), *Russell v. Stardust Cruisers, Inc.*, 690 So.2d 742 (Fla. 5th DCA 1997)

In *Bulter v. French*, 83 F.3d 942 (CA8 1996), a circuit case the plaintiff over looked, the Court of Appeals for the Eighth Circuit concluded the trial court did not abuse its discretion to allow the defendants to introduce evidence of long history of alcohol abuse. The court agreed with the defendants, finding such evidence was relevant to damages for future lost income. *Bulter, citing Haney v. Mizell Memorial*

*Hospital*, 744 F.2d 1467, 1475 (11th Cir.1984) (admission of evidence on plaintiff's past history of alcohol problems relevant to issue of future loss of earnings). *See, e.g., Cook v. American Steamship Co.*, 53 F.3d 733, 743 (6th Cir.1995) (admission of evidence on plaintiff's past history of alcohol problems not plain error, where defendant alleged that plaintiff had shorter life expectancy because of alcoholism); *Haney v. Mizell Memorial Hospital*, 744 F.2d 1467 (CA11 1984). Evidence of alcohol consumption is relevant to the determination of life expectancy for damage calculations. *See Smith v. Southland Corp.*, 738 F.Supp. 923, 926 (E.D.Pa.1990); *Stramara v. Dorsey Trailer, Inc.*, 1998 WL 848053 *3 (E.D.Pa. Dec. 7, 1998) (regular consumption of alcohol and prior methamphetamine addiction admissible to show effect on life expectancy). Plaintiff's life expectancy was an issue in this case for purposes of the calculation of damages See *Miller v. Consolidated Rail Corp.*1999 WL 179799, *1 -2  (E.D.Pa.,1999). *Carroll v. Morgan*, 17 F.3d 787, *791 (C.A.5 1994) (Defendant entititled to show decedent was not a healthy person and that his intemperance might have resulted in a reduced life expectancy. *citing, Smith v. Southland Corp.*, 738 F.Supp. 923, 925-26 (E.D.Pa.1990) and *Pharr v. Anderson*, 436 So.2d 1357 (Miss.1983)); *Phillips v. Hillcrest Medical Center*, 244 F.3d 790, *800 (C.A.10 (Okla.),2001) (drug use is an important indicator of an patient's physical condition; while plaintiffs would have preferred evidence of Phillips' drug use not be presented to the jury, simple prejudice alone is insufficient to warrant exclusion. *See SEC v. Peters*, 978 F.2d 1162, 1171 (CA10 1992) (noting almost all evidence, in the eyes of one party or the other, will be perceived as prejudicial). *Manatt v. Union Pacific R. Co.*  122 F.3d 514, *517 (CA8 1997) (drug use and depression properly admitted it as relevant evidence under Fed.R.Evid. 401 and 402 because the

cause of the initial accident was directly in issue, and the extent of [Scott's impairment] is evidence that clearly bears on the accident's cause, *citing Swajian v. General Motors Corp.*, 916 F.2d 31, 35 (CA1 1990))

A long history of alcoholism is no different than just four years prior to the injury in question. Plaintiff's drinking habits are indeed relevant to a jury's consideration of the mortality tables, and defendants are entitled to introduce evidence of Mr. Smith's alcoholism for the limited purposes for which it is offered. *Smith v. Southland Corp.* 738 F.Supp. 923, *925 -926 (E.D.Pa. 1990). In *Ward v. Loomis Brothers Inc*, 532 N.W.2d 807 (1995), the court concluded that use of an illegal drug is relevant, admissible and not overly prejudicial when the use of the illegal drug is relevant to the incident in question and/or where it is relevant to the damages issue. *Ward*, 532 N.W.2d at 811. The court concluded that drug evidence bears on the question of decedent's lack of concern for his own safety and extended use, is relevant on the issue of his projected future earnings and the question of loss of value to his estate. *Ward, citing Lang v. City of Des Moines*, 294 N.W.2d 557, 562-63 (Iowa 1980) (evidence of alcoholism is relevant in determining future earnings); *Century '21' Shows v. Owens*, 400 F.2d 603, 610 (CA8 1968) (court, in applying Iowa law, considered it proper to look at a victim's alcohol consumption habits with respect to longevity issues in calculation of damages). *Ward v. Loomis Bros., Inc.*, 532 N.W.2d 807, *811 (Iowa App.,1995); Kraus v. Taylor, 710 A.2d 1142, 1144 (Pa. 1998) (evidence of chronic drug abuse was relevant, admissible and probative value outweighed prejudicial effect of such evidence). Allowing a plaintiff to pursue a claim for permanent injury, while simultaneously barring defendants from access to plaintiff's long history of drug and alcohol abuse, "would be manifestly unfair

and grossly prejudicial." *O'Boyle v. Jensen*, 150 F.R.D. 519, 522 (M.D.Pa. 1993);
accord, Kraus v. Taylor, 710 A.2d 1142, 1145 (Pa. 1998); *Pulliam v. Fannie*, 850 A.2d
636, 2004 Pa. Super 116 (2004) (drug rehab evidence, DUI evidence, positive urine test
for marijuana and cocaine was highly probative of plaintiff's life expectancy).

*Ocasio v. Amtrak*, 299 N.J.Super. 139, 690 A.2d 682 (1997), cited by the plaintiff,
provides the precise rationale why the first category of drug evidence is relevant for
damages only. In *Ocasio*, the trial court's decision granting the plaintiffs made a motion
in limine to bar defendants from introducing any evidence of the plaintiff's drug history
was overturned as an abuse of discretion. The *Ocasio* defendants were prepared to
present evidence that *Ocasio* had a ten year history of drug abuse problems involving
cocaine, heroin and alcohol which had continued until the accident. They also indicated
that they were prepared to present evidence that the plaintiff had gone through two
long-term methadone treatment programs during the two years preceding the accident.
The *Ocasio* defendants argued that "the jury, in making determinations as to the quality
of the life and the loss of enjoyment of the life, should be entitled to see what this
person's life was like before this incident so they can weigh it." The trial court granted
plaintiffs' motion to exclude this evidence, stating that its prejudicial effect would
outweigh its probative value with respect to the plaintiff's claim for loss of enjoyment of
life.

In *Ocasio*, the plaintiff offered testimony of his twelve year old daughter who
testified that her father, who was separated from her mother, regularly visited with her,
that he would take her to the park, and that he enjoyed spending time with her. The
plaintiff's sister testified that she and the other members of the family all had very close

relationships with him. She also testified that the plaintiff enjoyed raising pigeons and that "[h]e was always in a happy mood." She went on to characterize her brother as "talkative," "energetic," "friendly" and "very happy." The reviewing court found that the trial court's ruling on plaintiffs' in limine motion foreclosed defendants from cross-examining these witnesses with respect to the plaintiff's history of drug addiction and the impact of that addiction upon his life.  Based on the testimony of the plaintif's daughter and sister, plaintiffs' attorney argued in summation that the plaintiff "liked to laugh, talk, walk," that his "family loved him," and that the accident had forever deprived him of the opportunity to "look into his daughter's eyes, go over a report card, go to a first dance, talk to her." The reviewing court found that the trial court had abused its discretion in preventing the defendants from eliciting evidence on the plaintiff's drug use, abuse, addiction and treatment.

The *Ocasio* court held a defendant is entitled to show that the plaintiff's present pain and suffering is caused in part by a preexisting condition which became manifest before the accident. The *Ocasio* court also held a defendant also may present evidence that the plaintiff's preexisting disabilities prevented him from engaging in recreational or social activities or otherwise affected his quality of life. *Ocasio, citing Pearce v. Fletcher*, 74 N.C.App. 543, 328 S.E.2d 889, 890 (1985) (evidence of history of drug and alcohol abuse relevant to determination of decedent's monetary value to dependents). Similarly, the *Ocasio* court held if a plaintiff seeks recovery for lost future earnings, the defendant may present evidence of his preexisting mental or emotional problems to show that his earning capacity was diminished before the accident. *See Ransom v. Adams Dairy Co.*, 684 S.W.2d 915, 917-18 (Mo.Ct.App.1985).

To establish their damages claim under this standard, plaintiffs presented evidence of Ocasio's personal and social activities, such as taking his daughter to the park and raising pigeons, as well as his sister's testimony that he was an "energetic" and "very happy" person. However, the court refused to allow defendants to present evidence of a significant negative aspect of Ocasio's life-a long-term addiction to drugs which he was still struggling to overcome at the time of the accident. If the court had admitted this evidence, the jury could have reasonably inferred that Ocasio was probably experiencing physical pain and personal dissatisfaction with his life at the time of the accident.

 Consequently, this evidence would have been directly relevant both to the jury's evaluation of the credibility of plaintiffs' witnesses and to its ultimate determination of the quality of Ocasio's life before the accident. However, the complete exclusion of evidence of *Ocasio's* serious drug addiction, which was highly probative of his damages claim for loss of enjoyment of life, constituted an abuse of discretion. *Ocasio v. Amtrak* 299 N.J.Super. 139, *155-160, 690 A.2d 682,*690-692 (N.J.Super.A.D.,1997).

Looking at the Joint Trial Memorandum, the plaintiff, the decedent's mother, plans to testify, along with the decedent's children, her sister-in-law, her brother, her sister, her softball coach and a softball teammate. To prevent the defendants from examining these witnesses at a damages phase of this case on Cooper's drug use, abuse and the effect of the same on Cooper's life would be an abuse of discretion. Indeed, the *Ocasio* stated it was an abuse of discretion even when the liability and damages were not bifurcated – a limiting instruction would have sufficed to cure any

prejudice. Here, we have a bifurcated trial on liability and damages; those concerns are no longer present.

Accordingly, the court should deny the plaintiff's motion in limine with respect to any evidence about Victoria Cooper's history of drug use, abuse, possession, or criminal activity associated thereto in a damages phase of this trial. Therefore, the first category of drug evidence is admissible in the damages phase only.

## III.    <u>CONCLUSION.</u>

For the reasons set forth above, the defendants, MICHAEL BREEN and TOWN OF NORTH BRANFORD, pray that the plaintiff's motion in limine is denied.

THE DEFENDANTS,
MICHAEL BREEN and TOWN OF
NORTH BRANFORD

By____/s/ John J. Radshaw, III_____
Thomas R. Gerarde, ct5640
John J. Radshaw, III, ct19882
Jeffery E. Potter, ct26356
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 20th day of June 2005.

David N. Rosen, Esquire
400 Orange Street
New Haven, CT  06511

_____/s/ John J. Radshaw, III_____
Thomas R. Gerarde
John J. Radshaw, III
Jeffery E. Potter