**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARGARET COWAN, | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF VICTORIA COOPER | : | NO.:  3:00 CV 0052 (RNC) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BREEN | : | |

| | | |
|---|---|---|
| MARGARET COWAN, | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF VICTORIA COOPER | : | NO.:  3:01 CV 0229 (RNC) |
| | : | |
| v. | : | |
| | : | |
| NORTH BRANFORD | : | JUNE 20, 2005 |

<u>**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF, MARGARET COWAN'S**
**MOTION IN LIMINE: REPORT AND TESTIMONY OF MICHAEL DEARINGTON**</u>

**I.    RELEVANT BACKGROUND**

During the evening of July 12, 1999, and the early morning of July 13, 1999,

Officer Breen was working as a police officer for the Town of Branford, Connecticut.  At

about 11:11 pm, Officer Breen observed a 1985 Chevrolet Camaro parked outside the

pay phone at the Xtra Mart Store at the intersection of Ciro Road and Route 80 in North

Branford.

Officer Breen noticed the driver acting suspiciously and decided to monitor the

vehicle further.  After checking the license plate with dispatch, Officer Breen learned

that the vehicle was registered to Steven Guerette, that Steven Guerette's license was

under suspension, and he had a prior criminal history.

Officer Breen continued to monitor the vehicle as it pulled out of the Xtra Mart and onto Route 80.  Shortly, Officer Breen pulled over the car based on his observations of the occupants both at the Xtra Mart and while driving, and because the vehicle crossed into the oncoming lane of traffic.  The time was 11:32 pm.

Officer Breen then asked the male operator of the vehicle to get out and step to the rear of the vehicle when neither the driver, nor the passenger, Victoria Cooper, could not produce identification.  Officer Breen noticed that both occupants appeared to be nervous, their arms and legs were shaking and they looked at each other as if unsure of how to respond.  Officer Breen suspected that both individuals were under the influence of drugs and/or alcohol.

A search of Guerette incident to arrest revealed two plastic bags containing white powder that Officer Breen believed to be narcotics.  As Officer Breen took out his handcuffs, Guerette suddenly pulled his arm away and ran easterly on Route 80.  Officer Breen pursued Guerette on foot, leaving Victoria Cooper in the passenger seat of the Camaro.

Officer Breen could not catch Guerette and turned back to Route 80 in order to return to his vehicle.  As he arrived on Route 80 and walked toward the area where Mr. Guerrette's Camaro and his cruiser were parked, he saw the Camaro was now moving eastbound on Route 80 towards him with the headlights on.  Victoria Cooper had moved from the passenger seat to the driver's seat and was operating the vehicle.

Ms. Cooper did not seek to avoid Office Breen by taking a U-turn and traveling in the opposite direction on Route 80.  Furthermore, Cooper did not seek to avoid Officer Breen by turning left off of Route 80 at a fork onto County Road, prior to encountering

Breen.  As the Camaro operated by Cooper approached Officer Breen, its headlights shone on him.  As the Camaro approached, Officer Breen waived his arms, signaling the vehicle to stop.  Victoria Cooper did not stop the vehicle in response to the order by Officer Breen.

At that time, fearing for his safety, Officer Breen drew his service weapon and fired twice at the oncoming vehicle.  The first shot went into the vehicle hood.  The second shot went through the driver's side window, striking the driver, later to be determined as Victoria Cooper who suffered a fatal wound.  The shots were fired approximately one second apart, with Officer Breen moving quickly to his right between the first and second shots.

On February 8, 2000, State's Attorney Michael Dearington completed and submitted to the Chief State's Attorney his report on the shooting death of Victoria Cooper.  Pursuant to Connecticut General Statutes 51-277a, Attorney Dearington has a mandatory duty to investigate and determine whether Officer Breen's use of deadly force was appropriate under Section 53a-22 of Connecticut General Statutes and whether the Division of Criminal Justice should take any further action.

As part of the investigation, Attorney Dearington compiled statements made by Officer Breen, Mr. Guerette and other witnesses to the incident.  These statements were then compared and used to assess Officer Breen's credibility and to make a determination of the events that occurred on July 13, 1999.  Additionally, Attorney Dearington coordinated with Dr. Henry Lee and the Connecticut State Police major Crime Squad, who performed a thorough investigation, collection of evidence and reconstruction of the event.  Dr. Lee used photographs of the scene, measurements

taken by the Central District Major Crime Squad on July 13, 1999, and laboratory

experiments to reconstruct this event.

Based on the evidence assembled by Attorney Dearington and pursuant to

Connecticut General Statute 51-277a, Attorney Dearington determined no further action

was to be taken by the Division of Criminal Justice.

## II.     LAW AND ARGUMENT

### A.     Hearsay Exception embodied in FRE 803 (8)

"Hearsay is a statement, other than one made by the declarant while testifying at

the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed.

R. Evid. 801.  "Hearsay is not admissible except as provided by these rules or by other

rules prescribed by the Supreme Court pursuant to statutory authority or by Act of

Congress."  Fed. R. Evid. 802.

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> **(8) Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803.

Fed.R.Evid. Rule 803(8)(C) creates an exception to the traditional hearsay rule

and allows for the admission of evidence in the form of  "reports . . . of factual findings

resulting from an investigation made pursuant to authority granted by law."  See Beech

<u>Aircraft Corp. v. Rainey</u>, 488 U.S. 153 (1988).  "[T]he rule applies only to factual findings. Courts have construed this term broadly, however, and regularly have admitted conclusions and opinions found in evaluative reports of public agencies."  <u>Perrin v. Anderson</u>, 784 F.2d 1040, 1046-47 (10th Cir. 1986).   "[T]he party opposing the admission of evidence under this Rule has the burden of showing untrustworthiness."  <u>Ariza v. City of New York,</u> 139 F.3d 132, 134 (2d Cir. 1998).

**B.    <u>Dearington's Report is Admissible Pursuant to the Hearsay Exception.</u>**

By its plain language, Rule 803(8)(C) states that reports, such as the Report to the Chief State's Attorney (Dearington Report, attached hereto as **Exhibit A**), are admissible as evidence.  The language of this rule limits admissibility of such reports, at the trial court judge's discretion, only if there is an indication that the source of the report or the information included in the report is not trustworthy.  Fed. R. Evid. 803(8)(C). Because there is no indication that the sources of the information or the information itself included in the Dearington Report are not trustworthy, this Report is fully admissible under Rule 803(8)(C).

Reports containing information similar to that in the Dearington report are regularly admitted into evidence.   See <u>Clarke v. Clabaugh</u>, 20 F.3d 1290, 1294 (3d Cir. 1994) (state police investigation report, including opinions, conclusions and recommendations, allowed in opposition to motion for summary judgment); <u>Perrin v. Anderson</u>, 784 F.2d 1040, 1046 (10th Cir. 1986) (admitting conclusion of 5-member shooting review board that officer acted within policy); <u>Wilson v. Beebe</u>, 743 F.2d 342 (6th Cir. 1984) (plaintiff shot while being handcuffed; investigative report prepared by district commander admissible), <u>vacated on other grounds</u>, 770 F.2d 578 (6th Cir.

1985); <u>Grimm v. Lane</u>, 895 F. Supp. 907 (S.D. Ohio 1995) (prison beating; investigative report prepared by research associate for corrections institute inspections committee admitted).

<u>Paolitto v. Brown E. & C. Inc.</u>, 151 F.3d 60 (2d Cir. 1998), which the plaintiff cites for the proposition that the report should be excluded, is distinguishable from this case. Paolitto dealt specifically with CHRO (Commission on Human Rights and Opportunities) reports noting that "they vary greatly in quality and factual detail." <u>Paolitto</u>, 151 F.3d at 65 (citation and quotations omitted). In this case, the substance of what is required in the report is dictated by statute and the report's thoroughness and analysis cannot be seriously questioned.

In <u>Paolitto</u>, the Second Circuit Court of Appeals affirmed the court's decision to exclude a CHRO report in that case. The Second Circuit cited Judge Goetell's reasons for excluding the report. "Judge Goettel gave two reasons for excluding the CHRO determination: the evidence Paolitto introduced at trial undercut many of the CHRO's factual findings and Brown had a full opportunity to present to the jury all the evidence it had submitted to the CHRO. These were legitimate reasons to exclude the CHRO determination." <u>Paolitto</u>, 151 F.3d at 65.

These reasons are not applicable in this case. In this case, despite plaintiff's assertions to the contrary, the only evidence that undercuts Dearington's factual findings is the speculative evidence from plaintiff's unqualified expert. Furthermore, that evidence isn't really even inconsistent if, as Dearington concludes, Officer Breen was closer to the car than Breen estimated when he shot. Dearington's opinions and factual findings are not presented by other evidence. He is the only person that evaluated all of

the evidence.  And, if plaintiff is successful in some of her evidentiary motions, defendants will not have the ability to present all the evidence that Dearington considered.   For example, Dearington considered the possibility that Steven Guerette set in motion the events that led to Cooper's death by considering that in prior incidents when Guerette was pulled over by police, he instructed a girl in the car to flee to avoid being caught with drugs, and, in another incident, sped off in a car himself in an attempt to avoid being caught.  Dearington drew the inference that the Guerette may have instructed Cooper to escape pursuant to his established modus operandi.

Plaintiff has the burden of proving the report is not trustworthy.  Ariza, 139 F.3d at 134.  The Plaintiff has failed to demonstrate that Attorney Dearington or the Dearington Report lack trustworthiness; therefore, this Report falls squarely within the 803(8)(C) exception to the hearsay rule.  Bridgeway Corp. v. Citibank, 201 F.3d 134 (2d Cir. 2000)(noting that once the court determines the report meets the minimum requirements of Rule 803(8)(C), the burden shifts to the party opposing the report to show "lack of trustworthiness").

Moreover, by using the four indicia of untrustworthiness provided in the Advisory Committee Notes to Rule 803(8)(C) as guideposts, this report is plainly trustworthy. The Advisory Committee suggests that courts evaluate the lack of trustworthiness by considering: "(1) the timeliness of the investigation, (2) the investigator's skill or experience, (3) whether a hearing was held, and (4) possible bias when reports are prepared with a view to possible litigation."  Rainey, 488 U.S. at n.11 (citing Advisory Committee note).  Weighing these factors leads to the inevitable conclusion that the Dearington Report is admissible.

The Dearington Report is based on documents and evidence that were promptly submitted and investigated; accordingly, the Advisory Committee Note's first factor, timeliness, weighs in favor of admitting the Dearington Report.  Notably, the Advisory Committee was primarily concerned that reports would be based on stale evidence when it included timeliness as a factor to be used to determine lack of trustworthiness. Gentile v. County of Suffolk, 129 F.R.D. 435, 450 (E.D.N.Y. 1990) aff'd 926 F.2d 142 (2d Cir. 1991).  This is not an issue here.  The evidence Mr. Dearington used in his report was obtained from the intensive investigation, collection and preservation of evidence, as well as the  reconstruction that followed over the next several weeks after the incident.  Thus, this report is timely, reliable, and trustworthy.  See Gentile v. County of Suffolk, 129 F.R.D. 435, 450 (E.D.N.Y. 1990) (noting that when investigative reports are primarily based on documents "the passage of time does not appreciably detract from reliability").

Furthermore, Attorney Dearington possesses the skill and expertise required to produce a trustworthy report. Attorney Dearington has acted as the State's Attorney of New Haven, Connecticut for last eighteen years and prior to his service in New Haven he was the State's Attorney in Ansonia/Milford, Connecticut.  Dearington Deposition, p. 11, attached hereto as **Exhibit B**.  Attorney Dearington stated during his deposition that one aspect of his job is to instruct police officers in the legal requirements of their job. **Exhibit B**, p. 13.  Additionally, in his capacity as State's Attorney, Attorney Dearington is vested with the power to investigate and prosecute criminal matters.  Conn. Gen. Stat. § 51-277.  After the death of Victoria Cooper, Attorney Dearington was mandated by the legislature of the State of Connecticut to investigate and determine the

circumstances of the incident and "whether the use of deadly force . . . was appropriate under Section 53a-22." Conn. Gen. Stat. Section 51-277a. Pursuant to that authority, Attorney Dearington performed his investigation and filed this report with the Chief State's Attorney.

As part of the investigation, Attorney Dearington relied on photographs, diagrams, the reconstruction report of renowned forensic scientist, Dr. Henry Lee, witness statements, Officer Breen's report, and the report of Dr. Wayne Carver, Chief Medical Examiner. **Exhibit A**, p. 2. These are typical documents relied upon by State's Attorneys in the preparation of reports and, therefore, reinforce the conclusion that the report is both trustworthy and reliable.

The Advisory Committee considers the commencement of a hearing in conjunction with the report important to a determination of trustworthiness. While plaintiff concludes that the report is not trustworthy because no formal hearings were held, this is not dispositive of its admissibility. See In the Matter of Munyan, 143 F.R.D. 560, 564 (D.N.J. 1992)(noting that the failure to hold a hearing does not indicate lack of trust when the "type of investigation undertaken by . . . officials does not typically generate formal hearings."). The failure to hold a formal hearing is not an "absolute requisite" in determining a report lacks trust. Id. Mr. Dearington is required by law to investigate and make a determination regarding the use of deadly force and typically, these investigations do not result in hearings. The intensive investigation and reconstruction of the event provides sufficient indicia of reliability to find the report trustworthy.

The final indication of lack of trustworthiness discussed in the Advisory Committee notes is whether the preparer of the report had an ulterior motive. Specifically, the Advisory Committee warns against reports prepared in anticipation of litigation. Beech Aircraft Corp v. Rainey, 488 U.S. 153, 168 n.11 (1988). Here, plaintiff does not assert that this report is biased because it was prepared in view of future litigation; instead, plaintiff suggest that Attorney Dearington, after reviewing the evidence, came to his determination because of an alleged institutional favoritism towards police officers.

"Rule 803(8) "is based upon the assumption that public officers will perform their duties, that they lack motive to falsify, and that public inspection to which many such reports are subject will disclose inaccuracies." Bridgeway, 201 F.3d at 143 (citations and quotations omitted). Attorney Dearington is bound by law to take "all steps necessary and proper to prosecute all crimes and offenses against the laws of the State." Conn. Gen. Stat. 51-277(b). Furthermore, the Dearington Report is unlike the Congressional Reports held inadmissible in Pearce v. E.F. Hutton Group, Inc.. 653 F.Supp. 810, 814 (D.D.C. 1987). In Pearce, the Court noted that "a politically-motivated, partisan body" prepares Congressional Reports. Id. The Dearington Report, on the other hand, was prepared specifically to provide an independent determination of whether the force used by Officer Breen warranted criminal charges. Plaintiff points to no language contained within the Report that supports a conclusion that Attorney Dearington favored Officer Breen. Despite an accusation of bias towards police officers, Plaintiff does not offer any specific evidence demonstrating such alleged bias.

In fact, other than accusations that Attorney Dearington is biased in favor of his "client police departments" and that he has failed to prosecute egregious cases of police misconduct, the plaintiff provides no other support that the report is untrustworthy. Despite the plaintiff's gross mischaracterization of Attorney Dearington's relationship with police departments, police departments are not Attorney Dearington's clients. Plaintiff has not submitted any evidence that Attorney Dearington's previous investigations of police use of force and subsequent findings were based upon anything but the facts of those cases. A review of the report demonstrates that Attorney Dearington explored many possible inferences that could be drawn form the evidence and considered the evidence in an impartial manner. In addition, Attorney Dearington requested that Dr. Lee perform a reconstruction of the incident, rather than taking Officer Breen's statement at face value. All these factors lead to the conclusion that the report is trustworthy.

### C.     The Probative Value of Attorney Dearington's Report is not Substantially Outweighed by Any Possible Unfair Prejudice

The Dearington Report is highly probative of the material issues at hand. In particular, plaintiff proposes to introduce a theory in the present case that Officer Breen moved *closer* to the Camaro, by way of animation and expert testimony, that suggests to the jury an act of intentional murder. Even if admissible for no other reason, the Report and Dearington's testimony are admissible to rebut this evidence. In fact, in light of evidence presented by the plaintiff in the Paolitto case that impeached the CHRO findings, the court stated "Judge Goettel might well have been within his discretion in admitting the CHRO determination in these circumstances." Paolitto, 151 F.3d at 66.

The Dearington Report and Attorney Dearington's testimony will also articulate to the jury the standard procedures used by the State's Attorney in ultimately concluding that no further action was necessary and will provide a necessary background to his involvement in this case and the circumstances in which Dr. Lee performed his reconstruction of the incident.

Both Attorney Dearington's testimony and the Dearington Report are highly probative of the material issues at hand. Therefore, to the extent that the evidence is in conformity with the requirements of Connecticut General Statue Section 51-277a, both the Dearington Report and Dearington's testimony should be admitted.  .

Plaintiff intends to introduce evidence that Officer Breen consulted an attorney after this incident, intending to have the jury draw the inference that he did so because he thought he had done something wrong. The Defendant objects to the calling of Attorney Kelly as a witness, however, if plaintiff is allowed to call Attorney Kelly then Attorney Dearington's investigation into Breen's conduct is highly probative of Breen's motivation to consult an attorney and his conclusions are highly probative of the fact that Breen did not commit a criminal act. Nor does Dearington's determination that no criminal charges were warranted require the jury to conclude that the decedent's civil rights were violated. The court may issue to the jury a limiting instruction that Attorney Dearington's determination does not relieve them of the responsibility to review allof the evidence and apply the burden of proof as appropriate. Perrin v. Anderson, 784 F.2d 1040, 1046 (10th Cir. 1986)

Both the conclusions contained in the Dearington Report and Attorney Dearington's testimony are fully admissible under Fed. R. Evid. 702, 703, 704 and 803(8)(C). Fed. R.

Evid. 704 plainly states "testimony in the form of an opinion . . . otherwise admissible . . . is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  See Perrin v. Anderson, 784 F.2d 1040, 1046 (10th Cir. 1986) (admitting a report by the Shooting Review Board that concluded that there was "no doubt that [officer] acted within the guidelines set forth in the Policies and Procedures Manual" with accompanying limiting instruction stating: "'an agency hearing of its own personnel and for its own purpose' and was to have no 'determinative effect on any issue in the case.'").

The danger of unfair prejudice to the plaintiff is extremely low in comparison with the high probative value of the Report.  The factual findings in the report are highly relevant to the issues in this case.   Attorney Dearington sets forth numerous findings regarding the circumstances of the incident, the danger that Officer Breen faced, the inferences that Officer Breen reasonably could draw from the circumstances of the incident, the threat presented to Officer Breen, and an evaluation of Breen's response to such threat, all within the context of his statutory mandate.   Although not dispositive of the issues presented in this case, State's Attorney Dearington's findings of fact and analysis are relevant and probative of many issues the jury must determine.

The Plaintiff fears that the jury will afford the report too much weight, the jury will be confused and misled by its contents, the factual findings contained in the report will be challenged by other evidence presented at trial, and the factual findings are cumulative.  These fears are baseless.  Plaintiff's only real concern is that the factual findings contained in the report undercut her position.  See Gentile, 129 F.R.D. at 461("Rule 403 [is] not . . . intended to be used to exclude evidence merely because it

damages or discredits a party's claim").  The court may issue the jury a limiting

instruction that it must make its own determination of the evidence and that it must

consider the report and Dearington's testimony in light of all the evidence.

A party's fear that an investigative report will weaken their claim is not, in itself, a

sufficient reason for that report to be barred under Rule 803(8)(C).  Id. at 461.   For

example, in Gentile, defendant police officers sought to exclude from evidence an

official report finding the systemic failure in the investigation and punishment of police

officers accused of police misconduct.  Id. at 439.  In Gentile the District Court admitted

several of the report's findings, despite their tendency to incriminate the police officers.

Id.  Here, Plaintiff seeks to bar the State's Attorney Report because of its tendency to

exculpate Officer Breen.  Based on the Gentile decision, an exclusion of the Dearington

Report would be inconsistent with the law.

Additionally, the jury will have no problem understanding the contents of the

report or evaluating the factual findings it contains.  Reports prepared by the

government are said to embody an 'aura of special reliability.'  City of New York v.

Pullman, 662 F.2d 910, 915 (2d Cir. 1981).  This 'aura,' however, is countered by the

Dearington Report's plain language, reliance on easily understood documents, the

supplemental testimony of the officers, and any limiting instructions offered by the

Court.  See Gentile 129 F.R.D. at 461("[t]he credibility of a government report and the

weight attached to it are matters to be decided by the trier of fact").  The probative value

of the report as a well-reasoned and thorough investigatory document are simply not

outweighed by the possible unfair prejudice.  Furthermore, this "aura" may be

addressed by a limiting instruction to the jury that they are to give the report and findings no more or less weight than any other evidence in the case.

Thus, under this Rule, Attorney Dearington's factual findings and determination to not proceed with criminal charges against Officer Breen are admissible.

### D.  Both the Findings of Fact and Conclusions Presented in the Dearington Report are Admissible under Fed.R.Evid. 803(8)(C)

The Dearington Report "fit[s] within the purview of Rule 803(8)(C) [because it] (1) contain[s] factual findings, and (2) [is] based upon an investigation made pursuant to legal authority." Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2d Cir. 2000).  State's Attorney, Michael Dearington, is vested with the authority to investigate and determine the potential criminal liability of police officers whenever a police officer "uses deadly force upon another person and such person dies as a result thereof." See Conn.Gen.Stat. sec. 51-277a.  Pursuant to this authority, Attorney Dearington is required to file a report that contains:  "(1) The circumstances of the incident, (2) a determination of whether the use of deadly physical force by the peace officer was appropriate under section 53a-22, and (3) any future action to be taken by the Division of Criminal Justice as a result of the incident." Id.  Each of the above-enumerated sections of the Dearington Report is admissible under 803(8)(C).

The Dearington Report is similar to the investigative report in Beech Aircraft Corp. v. Rainey.  488 U.S. 153 (1988).  In Beech, the Supreme Court found that both the findings of fact and conclusions contained in an investigative report prepared pursuant to legal authority are admissible under 803(8)(C).  Indeed many of the statements contained in the Beech report amount to a "reconstruction of the possible set of events"

and the investigator's conclusion of what could have occurred.  Id. at 444 n.2.  In the same way, State's Attorney Dearington created a reconstruction of the possible events that took place and concluded, "no further action [was] to be taken by the Division of Criminal Justice."  **Exhibit A**, p. 20.

An attempt to characterize Dearington's factual determinations as legal conclusions only frustrates the purposes of Conn. Gen. Stat. 51-277a and Rule 803(8)(C).  While several courts in the Second Circuit have questioned whether reports containing legal conclusions are admissible under Rule 803(8)(C), the United States Supreme Court has declined to offer an "opinion on whether legal conclusions contained in an official report are admissible as "findings of fact under Rule 803(8)(C)."  Beech, 488 U.S. at 450 n.13.

Most importantly, "Rule 803(8)(C) is to be applied in a common sense manner."  City of New York v. Pullman, Inc., 662 F.2d 910, 914 (2d Cir. 1981).  This requires first, an analysis of the report using the plain language of Rule 803(8)(C) and second, a weighing of the Rule 403 factors.  See Gentile v. County of Suffolk, 129 F.R.D. 435 (E.D.N.Y. 1990) (providing an in-depth example of review under Rule 803(8)(C)) aff'd 926 F.2d 142 (2d Cir. 1991).  Moreover, the parsing out of conclusions contained in reports into 'legal conclusions' serves no additional purpose if the report is ultimately subjected to a Rule 403 probative versus prejudice balancing test.

Notably, none of the decisions in this Circuit conclusively hold legal conclusions are categorically inadmissible under Rule 803(8)(C).  In Paolitto, for example, the Court of Appeals affirmed the District Court's decision to exclude findings of insufficient evidence on the grounds that it is within the District Court's discretion to exclude evidence if its probative value is substantially outweighed by its prejudicial effect.  Paolitto, 151 F.3d at

65.  Visibly absent from the Court of Appeal's decision is any affirmation that the CHRO findings were legal conclusions.  Instead, the Second Cicuit affirmed based on the traditional Rule 403 analysis.

The Dearington report included no statements indicating that there was a lack of evidence rendering the Division of Criminal Justice unable to proceed.  Instead, this report, stated that "it is not clear as to whether Officer Breen could have removed himself from the perilous situation without firing his weapon, or indeed whether the firing of such weapon, in fact, diminished the threat to him, or whether another officer would have responded differently to the circumstances."  Dearington Report, pg. 20.  This statement is markedly similar to the admissible statements made by the JAG investigator in Beech.  488 U.S. at 157-158.  In the Beech report, the investigator reconstructed the events leading to the accident and noted several possibilities for what actually occurred.  Id.

In other circuits, in these types of police misconduct cases, plaintiffs are regularly allowed to present evidence to a jury that an officer did not follow or violated accepted police practices.  See, e.g. Ford v. Childers, 855 F.2d 1271, 1272-73 (7th Cir. 1988) (plaintiff's expert testified that officer's use of force violated state statute, police department manual and generally accepted police practices).  Plaintiff intends to offer such testimony from James Fyfe in this very case.  If plaintiff is allowed to offer opinion evidence that Officer Breen violated accepted police practices, then without a doubt, defendants should be able to offer opinion evidence that Officer Breen did not violate state statute, as neither expresses an opinion as to the issue of whether Cooper's civil

rights were violated.  Such testimony does not invade the province of the jury because it does not tell the jury what result to reach or inform the jury of the standard to apply.

For example, in <u>Samples v. City of Atlanta,</u> 916 F.2d 1548, 1552 (11th Cir. 1990), the Circuit Court affirmed the admission of a detective's testimony that a police office's shooting was justified.  The Court stated:

> The plaintiffs contend that the court also erred in allowing Detective Genson to testify as to whether based upon his investigation of the shooting he thought the shooting was justified. Again, we agree that the question as posed could tend to elicit a response that would invade the province of the jury, but it is clear from the entirety of the testimony presented by Detective Genson that his investigation focused on determining whether the shooting happened as Officer Oglesby said it did, and whether criminal charges could be brought against Officer Oglesby for homicide. Thus, Detective Genson's opinion that the shooting was "justified" meant only that he determined that the physical evidence supported Officer Oglesby's description of what had happened and that no criminal charges should be brought against the officer. We therefore find no reversible error in the admission of any of Detective Genson's testimony.

<u>Samples v. City of Atlanta</u>, 916 F.2d 1548, 1552 (11th Cir. 1990).  This is the type of testimony that the defendants seek from Attorney Dearington in the present case.  <u>See also</u> <u>Combs v. Wilkinson,</u> 315 F.3d 548, 556 (6th Cir. 2002)  (error to exclude Use of Force Committee's report, investigating use of force in prison, from motion for summary judgment in excessive force civil rights case because it was admissible under Fed.R.Evid. 803(8), unless the district court finds that the sources of information or other circumstances indicate lack of trustworthiness); <u>Crawford v. Bundick,</u> 32 Fed.Appx. 785, *87, 2002 WL 484996, **1 (8th Cir. 2002) "the district court did not abuse its discretion in admitting Johnson's opinion on the ultimate issue of whether Deputy Bundick's use of deadly force was proper."

**E.**   **Dearington's Testimony as both a Fact Witness  and an Expert Witness is Admissible**

It cannot be argued that State's Attorney Dearington should be precluded from testifying as a fact witness to basic facts, such as his job description, the statutory obligation to conduct an investigation, and that he conducted such an investigation and reached findings.  Furthermore, given the latitude afforded expert witnesses under Rules 702, an absolute exclusion of Attorney Dearington's testimony, even if the report itself is excluded, is not supported by the Federal Rules of Evidence.  Daubert v. Merrell Dow Pharmaceuticals, Inc, 509 U.S. 579, 592 (1993).  The proper resolution to this issue is to allow the District Court to handle specific questions and answers during the trial.  See Rivera v. Mill Hollow Corp., 2000 WL 1175001 (S.D.N.Y. 2000)(noting that the reliability of an expert witness is determined by the trial court judge and there are "no rigid or standardized set of factors which determine this issue).

Moreover, under Rule 704, Attorney Dearington is permitted to state his opinions related to the "ultimate issue to be decided by the trier of fact."  Fed. R. Evid. Rule 704(a).  However, experts may not testify to legal standards.  Marx & Co. v. Diner's Club, Inc., 550 F.2d 505 (2d Cir. 1977).  See also, Hygh v. Jacobs, 961 F.2d 359 (2d Cir. 1992).  The limitation on expert testimony that expresses a legal position is based upon the fear that the testimony would tell the jury what result to reach. Id. at 363.  This fear is not realized here.  Primarily, this is because the testimony offered by Mr. Dearington will simply highlight the methods used during the investigation and the ultimate determination of facts and opinions based upon those methods.  And,

Dearington is not expressing an opinion as to whether the plaintiff's civil rights were violated.

### i.    Bias, if any, on the part of Attorney Dearington is not reason to exclude his testimony.

Bias, if any, is proper grounds for cross-examination.  It is not sufficient to exclude Attorney Dearington's testimony.  Furthermore, plaintiff's reference to "the bias of the State's Attorney in favor of his client police departments" is an outright mischaracterization of the responsibilities of Attorney Dearington's position.

### ii.    Attorney Dearington's factual findings and opinions are not cumulative.

Attorney Dearington is expected to testify as to his involvement in the incident and his request to the forensic laboratory to conduct an investigation and reconstruction of the event.  This testimony is clearly not cumulative.  Attorney Dearington was required by statute to conduct an investigation into this matter.  In that investigation, apart from the police investigation and the reconstruction, he reached his own evaluation of the evidence, although he included evidence from the state police and the forensic science laboratory, as well as information provided by plaintiff's attorney, in reaching his evaluation.   Attorney Dearington's determination that no criminal charges were warranted is not expressed by any other evidence or witness.

### iv.    The plaintiff has not sufficiently cited the "legal conclusions" of Attorney Dearington that are objectionable.

Plaintiff assert that Dearington's report should be excluded because it states legal conclusion.  However, plaintiff fails to cite a single legal conclusion to which she objects. The party opposing testimony on the grounds that it states legal conclusions must

demonstrate that they are legal conclusions and not factual discussions.  See  E.E.O.C.

v. Morgan Stanley & Co.,  324 F.Supp.2d 451, 460 (S.D.N.Y. 2004).  "[F]actual

conclusions on an ultimate issue to be decided by the jury are permissible."  In re

Rezulin Products Liability Litigation, 309 F.Supp.2d 531, 541 (S.D.N.Y. 2004).  Thus, all

of Attorney Dearington's factual conclusions are admissible.

For example, although Attorney Dearington may be precluded from testifying that

"Officer's Breen's conduct was reasonable based upon the totality of the

circumstances," because this opinion comes too close to articulating a constitutional

standard, he should be allowed to testify that "Officer Breen through, no fault of his own,

was confronted with a motor vehicle weighing over three thousand pounds bearing

down on him and the operator did not heed his efforts to stop or slow down."  **Exhibit

A**, p. 20.  As such, Attorney Dearington's testimony must be admitted.

> **v.     Deliberative Privilege**

Plaintiff's counsel seeks full disclosure of opinions, however, Attorney Dearington is

not an expert witness specifically retained or employed as an expert witness, as

referenced in Federal Rules of Civil Procedure 26.   Fed. R. Civ. P. 26 states in relevant

part:

> **(B)** Except as otherwise stipulated or directed by the court, this disclosure shall, *with respect to a witness who is retained or specially employed to provide expert testimony* in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions

Fed. R. Civ. P. 26 (emphasis added).  The plaintiff claims the defendants are required to

disclose the basis of Atty. Dearington's opinions, which Attorney Dearington partially

withheld at deposition due to the deliberative process priviliege.  However, because he was not retained or specially employed as an expert in this case, the fact that Attorney Dearington has not disclosed the basis of some of his findings because of deliberative privilege is not a reason for excluding his testimony.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the defendants, Michael Breen and the Town of North Branford, pray that this court deny Plaintiff's Motion in Limine.

THE DEFENDANTS,
MICHAEL BREEN and TOWN OF
NORTH BRANFORD


By____/s/ John J. Radshaw, III_____
Thomas R. Gerarde, ct5640
John J. Radshaw, III, ct19882
Jeffery E. Potter, ct26356
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 20th day of June 2005.

David N. Rosen, Esquire
400 Orange Street
New Haven, CT  06511


_____/s/ John J. Radshaw, III_____
Thomas R. Gerarde
John J. Radshaw, III
Jeffery E. Potter