1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NO.: 3:00CV52 (RNC)

MARGARET COWAN,                         )
ADMINISTRATRIX OF THE ESTATE            )
OF VICTORIA COOPER                      )
            Plaintiff                   )
vs.                                     )
                                        )
MICHAEL BREEN                           )
----------------------------------------)
                NO.: 3:01CV229 (RNC)
MARGARET COWAN,                         )
ADMINISTRATRIX OF THE ESTATE            )
OF VICTORIA COOPER                      )
            Plaintiff                   )
vs.                                     )
                                        )
TOWN OF NORTH BRANFORD                  )
            Defendant                   )
----------------------------------------)

DEPOSITION OF:  KENT M. SCHWENDY, P.E.,

(EXPERT WITNESS) to be taken before Denise D.
Harper-Forde, Licensed Registered Professional
Reporter and Notary in and for the State of
Connecticut, pursuant to notice, at HOWD &
LUDORF, LLC, 65 Wethersfield Avenue, Hartford,
Connecticut on May 13, 2005.

APPEARANCES  _____

DAVID ROSEN & ASSOCIATES
Attorneys for the Plaintiff
400 Orange Street
New Haven, Connecticut  06511
  (203) 787-3513
  BY:  DAVID N. ROSEN ESQ.

        Denise D. Harper-Forde
 Licensed Registered Professional Reporter
        License No.: 00133
        NIZIANKIEWICZ & MILLER
        972 Tolland Street
 East Hartford, Connecticut  06108-1533
            (860) 291-9191


            NIZIANKIEWICZ & MILLER

2

```
 6              slightly turned.  Which would not be
 7              a standard driving position.  I
 8              can't say that she couldn't have
 9              still been in control of the
10              vehicle.
11                 (BY MR. ROSEN):
12       Q.     But at the time of the second
13 shot, the autopsy findings and the other
14 evidence indicate that she was not in a usual
15 driving position?
16       A.     Correct.
17              MR. ROSEN:  You were asked about
18              other things that might happen
19              between now and trial.  And I just
20              want to note a couple of things.
21                 (BY MR. ROSEN):
22       Q.     In terms of presentation of your
23 findings and opinions.  If I asked you or
24 discuss with you the creation of some
25 demonstrative aids like diagrams or models or
                NIZIANKIEWICZ & MILLER
```

                                                           239

```
 1 in particular the animation.  Is that
 2 something you would consider within the scope
 3 this assignment?
 4       A.     Yes.
 5              MR. ROSEN:  That's all I have.
 6              MR. GERARDE:  I would like to
```

7         follow-up on that.
8         REDIRECT EXAMINATION BY MR. GERARDE:

9    Q.    Are you saying that you relied on
10   Dr. Manning's work as a peer review, even
11   though you don't know his methodology?
12   A.    No, I'm saying that the fact that
13   several of his findings are consistent with
14   mine, leads me to feel that the collaborative
15   basis for competence in my own findings.  Not
16   to be used as a complete peer review.  But he
17   was doing a similar -- attempting to calculate
18   the similar things, and came up with similar
19   results.  I don't know what his methodology
20   was, but it seems to corroborate what I did.
21   Q.    Okay.  But in terms of you saying
22   typically engineers will rely on other
23   engineer's work in a peer review type
24   situation.  If you believe that Dr. Manning's
25   methods were unreliable, you wouldn't rely on

NIZIANKIEWICZ & MILLER

240

1    them to corroborate your own work, would you?
2    A.    In an actual peer review the work
3    done by the engineer is reviewed by someone
4    else, not done separately.  So this isn't a
5    true peer review.
6          I am just saying it gives a
7    similar corroborative effect.  In this case

```
 8   the work that I did was actually peer reviewed
 9   internally by another engineer.
10       Q.    If you thought that Dr. Manning's
11   methods were unreliable, would you rely on
12   them anyway?  Would you rely on his results
13   just because they happen to come near yours?
14           MR. ROSEN:  Objection to the
15       form.
16           THE WITNESS:  I don't rely on his
17       results.  I'm merely indicating they
18       are close to my results.
19           (BY MR. GERARDE):
20       Q.    Did you say that you made a
21   determination of the path of the Camaro after
22   the second shot was fired?
23       A.    No, I don't believe so.
24       Q.    Okay.  Now, you also indicated
25   that you believe Victoria Cooper was raised up
               NIZIANKIEWICZ & MILLER
                                          241
 1   and turned at the time the second shot was
 2   fired from the muzzle of Officer Breen's gun?
 3       A.    Yes.
 4       Q.    In the driver's seat; is that
 5   right?
 6       A.    Yes.
 7       Q.    Are you saying that she could not
 8   reach the steering wheel at that time?
```

9       A.      No.

10      Q.      She just wasn't in the standard

11 position that driver's are in when they are

12 seated in the seat and their arms are

13 typically extended forward?

14      A.      Correct.

15              MR. GERARDE:  That's all I have.

16          Thank you.

17 RECROSS EXAMINATION BY MR. ROSEN CONT'D:

18      Q.      With regard to Dr. Manning, you

19 indicated that you did not rely on his

20 results.  But the role of his results as is

21 stated in your supplemental report, which is

22 that they provide additional corroborative

23 basis for the competence of your findings; is

24 that correct?

25      A.      Correct.

              NIZIANKIEWICZ & MILLER

                                        242

1               MR. ROSEN:  Nothing further.

2               MR. GERARDE:  I'm going to

3           follow-up on that.

4  REDIRECT EXAMINATION BY MR. GERARDE CONT'D:

5       Q.      There is a reason why.  You said

6  that you didn't rely on Manning in reaching

7  your own conclusions; is that right?

8       A.      Correct.

```
 9      Q.    And you're saying that they are
10 corroborative just because those numbers are
11 close to yours; is that correct?
12      A.    Since I don't know his exact
13 methodology.  I don't know if his methodology
14 was correct or not.  However --
15      Q.    And you don't know if that's the
16 way you would do it, even if you were asked to
17 do the same thing that he was?
18      A.    Since I don't know how he did it
19 -- I know how I would do it because I have
20 done.  And that's the way that I would do it.
21 I don't know how he did it.  So I can't
22 compare the two.
23      Q.    And you can't rule out the fact
24 that Dr. Manning just got lucky and came close
25 to your numbers for all you know; is that
```

                    NIZIANKIEWICZ & MILLER

                                                243

```
 1 correct?
 2           MR. ROSEN:  Objection to the
 3      form.
 4           THE WITNESS:  No, I can't.
 5           MR. GERARDE:  Okay.  That's all I
 6      have.
 7           MR. ROSEN:  I'm going to
 8      follow-up.
```

9   RECROSS EXAMINATION BY MR. ROSEN CONT'D:

10      Q.    In terms of one of these items,
11  number four.  Vertical angle of the
12  penetration defect could not be reliably
13  related to the actual vertical angle between
14  the barrel of the firearm and the target.
15            Do you have a recollection of Dr.
16  Manning saying that they tried to see whether
17  there was a consistent angle, and the
18  different test shots that they did and didn't
19  come up with any consistency?
20      A.    I believe he stated that he did
21  not -- that they didn't come up with any
22  consistency.  I don't recall if he stated his
23  methodology in determining that.
24            MR. ROSEN:  Nothing further.
25  REDIRECT EXAMINATION BY MR. GERARDE CONT'D:

NIZIANKIEWICZ & MILLER

244

1       Q.    But you were not provided on that
2   specific issue with what Michael Miller
3   concluded with respect to downward angle, were
4   you?
5       A.    I was provided with his
6   depositions.  If it was in his deposition I
7   would have read it, because I read his entire
8   depositions.

```
 9                I don't recall that.  Again the
10   vertical angles at that time and throughout my
11   study were not essential to the reconstruction
12   methodology that I was using.
13       Q.   Did you read where he testified
14   that by looking at the vertical angle and
15   extending the vertical angle forward of the
16   vehicle, you could make judgments about how
17   far the officer could possibly have been based
18   on how tall the officer was when he fired the
19   gun?
20             MR. ROSEN:  Objection.  You're
21          not suggesting that Mr. Miller did
22          any testing or anything to verify
23          that there is a relationship between
24          the vertical angle that's measured
25          by a dowel?
                  NIZIANKIEWICZ & MILLER
                                                245

 1             MR. GERARDE:  I'm just wondering.
 2          There was a lot of testimony on what
 3          the significance of the vertical
 4          angle measured by the state police
 5          between 10 and 7 degrees meant.  And
 6          what that meant with respect to
 7          where the officer was located.
 8             (BY MR. GERARDE):
 9       Q.   Do you remember reading any of
```

10  that in Miller's deposition?

11      A.   I read it.  But since I had

12  already formed a conclusion that it was not

13  reliable.  I didn't spend a lot of time

14  judging his opinion.

15      Q.   I now actually have some more

16  information for you.  I took his deposition on

17  two occasions, and I think you only have one.

18      A.   I have both depositions.

19      Q.   You have both?

20      A.   Yes.

21      Q.   It would be in the first

22  deposition.  Okay.  So your answer stays?

23      A.   I recall the discussion, but I

24  just didn't use it in my calculations.  So I

25  didn't rely on that.

                NIZIANKIEWICZ & MILLER

                                            246

1            MR. GERARDE:  Okay.  That's all I
2        have.  All set.
3            MR. ROSEN:  That's great.
4        Nothing further.
5            (Whereupon, the deposition
6             concluded at 7:30 P.M.)
7
8
9
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NIZIANKIEWICZ & MILLER

247

STATE OF CONNECTICUT

CERTIFICATE OF NOTARY

I, DENISE D. HARPER-FORDE, Licensed Registered Professional Reporter, and Notary duly commissioned and qualified in and for the State of Connecticut, do hereby certify that pursuant to notice there came before me on the 13th day of May, 2005, the following-named person to wit: KENT M. SCHWENDY, P.E. (EXPERT WITNESS), who was taken before me at the time and place hereinbefore set forth.

That the witness was by me first duly sworn to testify to the truth, the whole truth, and nothing but the truth. That he was thereupon carefully examined upon his oath, which was duly recorded by me stenographically, and later reduced to computer transcription. I certify that this

deposition is a true and correct transcript of my stenographic notes so taken.

    I further certify that I am neither attorney nor counsel for, nor related to, nor employed by any of the parties to the action in which this deposition is taken. And further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially interested in this action.

    IN WITNESS THEREOF, I have hereunto set my hand and affixed my seal this 13th day of May, 2005.

_____
Denise D. Harper-Forde
Licensed Registered Professional Reporter
License No.: 00133
Notary Public
My Commission Expires
December 31, 2008

NIZIANKIEWICZ & MILLER

248

INDEX

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| KENT M. SCHWENDY, P.E. (EXPERT WITNESS) | 4 | 236 | 239 | 241 |
|  |  |  | 242 | 243 |
|  |  |  | 243 |  |

| EXHIBITS | PAGE |
|---|---|
| Defendant's Exhibit 1, Notice of Deposition | 13 |
| Defendant's Exhibit 2, Deponent's File | 46 |
| Defendant's Exhibit 2-A, Conklin & | |