UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARET COWAN,
  as Administratrix of the
  Estate of Victoria Cooper.
      Plaintiff,

V.            :      CIVIL NO.: 3:00CV00052(RNC)

MICHAEL BREEN,      :
      Defendant.

MARGARET COWAN,
  as Administratrix of the
  Estate of Victoria Cooper.
      Plaintiff,

V.            :      CIVIL NO.: 3:01CV00229(RNC)

TOWN OF NORTH BRANFORD,    :      JUNE 20, 2005
      Defendant.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
<u>MOTION IN LIMINE RE DR. JAMES FYFE</u>**

**I. DEFENDANTS DO NOT OBJECT TO MOST OF DR. FYFE'S TESTIMONY, AND IT IS PLAINLY ADMISSIBLE**

Defendants seek to exclude the testimony of Dr. James Fyfe, the Deputy Commissioner for Training of the New York City Police Department, whom the Defendants describe as "a nationally known police practices expert,"[1] and whose testimony on the subject of police standards and practices has routinely been admitted in excessive force cases.[2]

---

[1] <u>Defendants' Memorandum of Law in Support of Defendants' Motion In Limine Re Testimony of James J. Fyfe, Ph.D.</u> [hereinafter <u>Defendants' Memorandum of Law</u>] at 2.

[2] *See, e.g.*, *Zuchel v. Denver*, 997 F.2d 730, 738 (10th Cir. 1993) *Larez v. Los Angeles* (946 F.2d 630, 635) (9th Cir. 1991). In *Whitmill v. City of Philadelphia*, 29 F.Supp.2d 241, 247 (E.D. Pa 1998), a case relied upon by Defendants, Dr. Fyfe's expert testimony was in fact admitted, subject to minor limitations. In *Holland v. City of Houston*, 41 F. Supp.2d 678 (S.D. Tex. 1999), another case relied upon by Defendants, the court considered Dr. Fyfe's written report, affidavit and deposition testimony on a motion for summary

1

Plaintiff intends to call Dr. Fyfe to testify that, taking Defendant Breen's testimony as accurate, Breen violated well-known, fundamental principles of police procedure in shooting Victoria Cooper. In the Joint Trial Memorandum, Plaintiff disclosed that Dr. Fyfe would testify as follows:[3]

> [Dr. Fyfe] will testify that 1) *proper police procedure* when faced with an on coming vehicle is to get out of the way rather than shoot, since shooting may disable the car or the driver and put the police officer (and any bystanders) in even greater danger.[4] 2) Thus, even if Breen reasonably believed that the on coming car posed a serious threat of harm to him the decision to fire at the car was flagrantly inconsistent with *proper police procedure*. 3) The decision to fire the second shot was entirely inconsistent with *proper police procedure* for an additional reason. Breen said that he fired the second shot because he was trained always to fire twice if he fired once. Such a practice is entirely inconsistent with *proper police practice*. Proper police practice requires that each shot be justified. If the second shot was not necessary – as it was not – it was completely inconsistent with proper police practice even if the first shot had been proper (which it wasn't). These principles are fundamental to police work, and known to every reasonable officer.[5] 4) No reasonable officer could think that it was appropriate to open fire on a vehicle that was approaching in the circumstances described by the defendant: the *proper practice* was perfectly clear: get out of the way of the car.[6] 5) Likewise, no reasonable officer could think that it was appropriate to fire the second shot under the circumstances described by the officer: the officer's position made the

---

judgment. The *Holland* court's comments went to the weight of Dr. Fyfe's testimony and did not address its admissibility at trial.

[3] Dr. Fyfe apparently will be unable to testify at trial due to illness. If he is well enough, the parties will take a trial deposition; otherwise, plaintiff will use Dr. Fyfe's discovery deposition.

[4] "Q: What is your understanding as to how it was that Officer Breen was able to get out of the way, in other words, by doing what? A: I think he says he moved 5 feet … I believe it was a sudden movement. That is one of the reasons that police officers are instructed to try and get out of the way of cars because they can make sudden movements and [to] which the operator of a car cannot respond." Deposition of Dr. James J. Fyfe at 54:10-54:21. Our copy of Defendants' Memorandum has only a few pages of deposition. The transcript that plaintiff will offer is attached to this Memorandum at tab 1.

[5] "Q: Would it be fair to state that Officer Breen would have to have an independent justification for each of his shots in order to justify the shooting that occurred in this case? A: Yes. He would have to have a justification … And officers are generally trained to shoot until resistance [ceases]. In this case you can't tell when resistance ceases because a car doesn't stop." Deposition of Dr. James J. Fyfe at 99:13-99:24.

[6] "A: If you read the [International Association of Chiefs of Police] standard it says you will not fire at a moving vehicle. If you read the New York or Boston standard … it says you will not use deadly force unless the occupants of a vehicle are shooting at you. The other standards that I did provide tell the officer that he shouldn't voluntarily put himself in a position in front of the car. And it is my opinion that Breen did that. He may have been surprised when the car came at him but he stood in the middle of the road instead of getting away." Deposition of Dr. James J. Fyfe at 100:16-116:5.

2

second shot useless at best; and the decision to fire a second shot because a first shot had been fired is completely at odds with *the basic rules of the use of force well known to every police officer*. 6) Dr. Fyfe will also testify that the decision to shoot from the position where the officer was actually located relative to the car was grossly improper, in violation of *the most elementary standards of police practice*. This conclusion applies fully to both the first and second shots. 7) A reasonable police officer would know that shooting Vicki Cooper for the purpose of preventing her from leaving the scene was absolutely prohibited by *universally applicable principles of police conduct*. 8) Defendant Breen's conduct before the shooting was inappropriate and put him in a situation where he was aware of having created unnecessary risks.[7] 8) Such other matters as are covered in his deposition in the pages identified below. (emphasis added)

Although Defendants ask that the court exclude the "bulk" of Dr. Fyfe's testimony, Defendants' objections actually apply only to a limited portion of Dr. Fyfe's testimony. Defendants seek to preclude Dr. Fyfe from testifying only regarding the following: (1) the credibility of Officer Breen;[8] (2) the applicable legal standard to the case at bar; (3) his opinion that Defendant Breen's failure to call for backup was a direct and proximate cause of Victoria Cooper's death; (4) his opinion that the North Branford Police Department inadequately trained Officer Breen; (5) events prior to Officer Breen's shooting of Ms. Cooper; and (6) his opinion that Officer Breen violated the official policy of the North Branford Police Department.[9]

Thus, Defendants do not argue that expert testimony about police practices would be inadmissible in this case. More specifically, they do not object to the

---

[7] "A: [Officer Breen] should have had another car there. He is stopping the car because he suspects they are in criminal activity. So, he should not have attempted the situation alone. He should have had another car there. That's correct, if you go through the [International Association of Chiefs of Police] policy or training the point is to select the spot to stop the car and direct the people in the car to put their hands out, to throw the keys of the car out on the ground and to get the people out one at a time when standing in a position of cover." Deposition of Dr. James J. Fyfe at 88:21-89:7.

[8] Plaintiff does not offer the testimony of Dr. Fyfe for the purpose of any direct comments about Defendant Breen's credibility. Indeed, any such comments are irrelevant to Dr. Fyfe's central opinions for which, as Dr. Fyfe explains in his report, Dr. Fyfe takes Defendant Breen's "version of the incident at face value." Report of Dr. James J. Fyfe at 8.

[9] *See* Defendants' Motion In Limine Re Dr. James J. Fyfe at ¶¶ 1-6.

3

admissibility of Dr. Fyfe's core opinion -- that Officer Breen violated well-known, fundamental principles of police procedure in shooting Ms. Cooper. Nor could they, in view of the Second Circuit's approval of Dr. Fyfe's testimony. The Court said:

> Moreover, even if Breen was in grave danger, Cowan's expert witness evidence casts doubt on whether the decision to shoot under such circumstances was an objectively reasonable one. Cowan's expert stated that proper police procedure when faced with an on-coming vehicle is to get out of the way rather than shoot, since shooting may disable the car or the driver and put the police officer (and any bystanders) in even greater danger. Thus, even if Breen reasonably believed that the on-coming car posed a serious threat of harm to him, if Cowan's evidence is believed, the decision to fire two shots at the car may well have not been one that a "reasonably competent officer" would have made.

*Cowan v. Breen,* 352 F.3d 756, 763 (2d Cir. 2003).

And of course courts regularly admit expert testimony regarding police practice and policies in § 1983 excessive force cases. *See, e.g., Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir. 1992) (affirming admission in a § 1983 excessive force case of "a larger body of otherwise unobjectionable [expert] testimony concerning police procedures involving violent arrestees …"); *Zuchel,* 997 F.2d at 738 (testimony of Dr. Fyfe on police practices); *Larez,* 946 F.2d at 635 (same); *Samples v. City of Atlanta*, 916 F.2d 1548, 1551 (4th Cir. 1990) (affirming admission in § 1983 excessive force case of expert testimony concerning "prevailing standards in the field of law enforcement" and "the industry standards for judging the appropriate use of force"); *Kladis v. Brezek*, 823 F.2d 1014, 1019 (7th Cir. 1987) (affirming admission in § 1983 excessive force case of expert testimony "as to the proper level of force to be used by police in various situations"); *Wierstak v. Heffernan*, 789 F.2d 968, 973 (1st Cir. 1986) (affirming admission in § 1983 excessive force case of expert testimony concerning "police work"); *McCloughan v. City of Springfield*, 208 F.R.D. 236, 239 (C.D. Ill. 2002) (noting that "expert testimony on

police practices and the use of force is, generally, admissible in a § 1983 excessive force case" and admitting expert testimony "in this area"). Expert testimony about police practices and policies is admissible "under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry.

The first seven of the nine items listed in the above-quoted Joint Trial Memorandum disclosure consists of reasons why Officer Breen's shooting of Ms. Cooper violated proper police practice – a topic concerning which Defendants have no objection. Of the nine items listed in the disclosure, Defendant's objections actually pertain only to item number 8: "Defendant Breen's conduct before the shooting was inappropriate and put him in a situation where he was aware of having created unnecessary risks."

## II.     DR. FYFE WILL TESTIFY ABOUT POLICE PRACTICES, NOT LAW

Although Rule 704(a) allows an expert witness's testimony to "embrace[] an ultimate issue to be decided by the trier of fact," parties may not present testimony of experts on matters of law. This prohibition arises largely out of the concern that a purported "legal expert" may usurp the role of the Court in instructing the jury on matters of law. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *United States v. Scop*, 846 F.2d 135, 139-40, *modified*, 856 F.2d 5 (2d Cir. 1988).

In *Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992), the Second Circuit directly applied the prohibition against legal experts to a § 1983 excessive force claim. The expert in that case was a professor of criminal justice, who, like Dr. Fyfe, had legitimate expertise on police practices and procedures. In *Hygh*, the court excluded only a portion

5

of the expert's testimony, namely the expert's conclusion that the defendant's use of force had been "totally improper," *id*. at 364, on the grounds that this conclusion "'merely [told] the jury what result to reach.'" *Id*. (quoting Fed. R. Evid. 704 Advisory Committee Notes). Furthermore, the court held that

> "[e]ven if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury. Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury." *Id*. (citations omitted).

*Id.*

However, the court held that the trial court's error was harmless error because the "impermissible testimony was expressed within a larger body of otherwise unobjectionable testimony concerning police procedures involving violent arrestees from which the jury could easily have drawn the same conclusions that [the expert] did." *Id.* at 365. Thus, while the *Hygh* court concluded that it was improper for an expert to testify to the legal standard applicable to the use of force by police officers and to direct the jury on what conclusion to reach, the court affirmed that expert testimony concerning police practices and procedures can be admissible in a § 1983 excessive force case.

Dr. Fyfe's central opinions are different from the objectionable portion of the expert's testimony in *Hygh*. In *Hygh*, the expert offered a variety of opinions about the application of legal doctrine to the facts of the case. In addition to concluding that the defendant's use of force was "totally improper," the *Hygh* expert offered in his testimony a legal definition of "deadly physical force." *Id.* at 362.

In contrast, Plaintiff does not offer Dr. Fyfe's testimony to illustrate legal doctrine or the definition of legal terms. The opinions Dr. Fyfe expressed at his deposition are

6

firmly grounded in proper police practice. Dr. Fyfe's opinion that Defendant Breen violated proper police practice is not based on an understanding of current legal doctrine or constitutional jurisprudence.[10] It is rather based upon his study and experience of actual police policies and procedures.

During his depositions, Dr. Fyfe emphasized that the opinions he offered as an expert witness concerned the subject of proper police practices and that his opinions were not conclusions regarding federal law.[11] In his central opinions, Dr. Fyfe did not discuss legal matters or the legal standard applicable to this case, but, on the contrary, stuck to the subject matter concerning which he is an expert, proper police practice.[12] This testimony is admissible. *See, e.g., Zuchel v. Denver, supra*. In *Zuchel,* the defendants also challenged Dr. Fyfe's testimony on the grounds that he had impermissibly testified to legal conclusions. Dr. Fyfe's central opinion was that the police shooting of the plaintiff "was inappropriate 'based on [his] understanding of generally accepted police custom and practice in Colorado and throughout the United States.'" *Id*. at 742-43 (quoting Dr. Fyfe's testimony at trial). The *Zuchel* court rejected the defendants' objection to Dr. Fyfe's testimony, noting that "[c]ourts generally allow experts in this

---

[10] *See, e.g.,* Deposition James J. Fyfe at 27:10-16 ("Q: Do you attempt to stay current on the latest decisions from the US Supreme Court in your field from the fourth amendment? A: I do but I am not nearly as current as an attorney would be. I am going by whether the police used custom and practice not by the fourth amendment.")

[11] *See, e.g.,* Deposition of Dr. James J. Fyfe at 25:6-25:12 ("Q: I am kind of jumping ahead but I want to stay with that last comment. I am I am not sure how deep you get into constitutional law -- A: Not at all because you would slap me *if I said that this was an unconstitutional shooting.* You would object and say I have no authority to do so since I am not a lawyer.") (emphasis added).

[12] See, e.g., Deposition of Dr. James J. Fyfe at 100:25-101:10 ("[T]here are many more people who try to run away from the police rather than try to run them over. There is no way that he had any indication that she was trying to run him over. She was trying to get away. He is in the direction where she was coming. *What the police have learned is that is not a situation in which responsible police administrators regard deadly force as reasonable.* What you are doing is basically shooting someone because they want to get away.") (emphasis added); *Id*. at 95:22-96:2 ("Q: Reasonable force does not equate to minimum force; do you agree with that? A: *The standard that the police use* is the minimum reasonable necessary to accomplish a mission. *That is what they talk about*.") (emphasis added).

7

area to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement." *Id*. at 742.

To be sure, Dr. Fyfe discussed legal doctrine in response to repeated direct questioning about legal doctrine by defense counsel.[13] However, Dr. Fyfe testified at his deposition to his central opinions without reference to any impermissible legal conclusions.[14] If Dr. Fyfe is able give a trial deposition, counsel for both sides will be aware of the rule against asking experts for legal opinions.[15]

Dr. Fyfe's expert testimony on police procedure will aid the jury, whose members do not know what police officers are supposed know or what they are supposed to do. Dr. Fyfe does. As he testified at his deposition, Dr. Fyfe has devoted considerable study to the issue of the use of force appropriate for an officer on foot confronting a driver in a motor vehicle.[16] Dr. Fyfe's opinions on this specific topic are based not only on his study of the topic, but also on his own experience implementing a policy regarding the use of force and motor vehicles as chairman of the science department at the New York Police Academy.[17] In order to evaluate Breen's conduct, the jury has to learn about the "standards and practices" of the police profession. *See Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) (in a securities case, experts may testify about industry practice).

---

[13] *See, e.g.,* Deposition of Dr. James J. Fyfe at 26:5 ("Q: What is your understanding of [qualified immunity]?"); *Id.* at 26:10-26:15 ("Q: I just want to circle back to the original question in this series. Do you think that the reasonableness that officers get judged by when talking about qualified immunity is a different reasonableness that the prosecutors would utilize in bringing charges against them? "); *see also id.* at 103:5-103:12.
[14] *See supra* footnotes 4 - 7, 12
[15] *See, e.g., Bank Brussels Lambert v. Credit Lyonnais*, 93 Civ. 6876 (LMM), 2000 U.S. Dist. LEXIS 16402 at *2 - *5 ("No expert may testify as to what the law is … The Court is confident that counsel on both sides can, especially after study of the relevant opinions, avoid any questions that would elicit improper testimony. If not, objections may be made at trial.") (citations omitted).
[16] *See* Deposition of Dr. James J. Fyfe at 27:17-28:6.
[17] *See* Deposition of Dr. James J. Fyfe at 116:19-117:6.

8

Defendants object to Dr. Fyfe's use of the words "justified" and "reasonable" in articulating his opinions regarding proper police practice. However, an expert's use of a common word is not objectionable merely because it is contained in a legal standard. *See U.S. v. Duncan*, 42 F.3d 97, 101-102 (2d Cir. 1994) (witness's use of words contained in statutes and regulations permissible so long as testimony does not "track[] the exact language of the statutes and regulations."); *U.S. v. Sherry*, No. 95-1281, 1996 U.S. App. LEXIS 1908 at *7 - *8 (2d Cir. Feb. 8, 1996) (in a tax fraud case, expert testimony that a reported tax loss was "false" was not an impermissible legal conclusion; "false" has an ordinary English meaning in addition to its specialized legal meaning). It is therefore permissible for Dr. Fyfe to use words like "reasonable" when opining that Breen's actions were inconsistent with proper police practice.

In order to evaluate Breen's conduct against the standard of a reasonable police officer, a lay jury needs to know what the police profession has learned through experience are proper police responses to situations like the one Breen was in. Otherwise the jury will have to guess what police officers are supposed to know in such a situation or invent and apply their own manual of police practices. Dr. Fyfe is exactly the right person to explain what the police profession has learned and what every police officer should know, and his testimony is therefore admissible.

### III. DR. FYFE'S TESTIMONY ABOUT EVENTS LEADING UP TO THE SHOOTING IS RELEVANT.

Defendants object to Dr. Fyfe's testimony regarding events before the shooting,[18] both because (1) Dr. Fyfe opines in his report that Defendant Breen's failure to call for

---

[18] Defendants advance an overbroad conception of events prior to Defendant Breen's shooting of Ms. Cooper. In this category, Defendants include the conclusion "that Officer Breen should have gotten out of

9

backup was a direct and proximate cause of Ms. Cooper's death and because (2) Defendant Breen's actions prior to shooting Ms. Cooper, defendants argue, are irrelevant to whether Ms. Cooper posed an imminent threat of serious bodily harm to Defendant Breen at the time of the shooting.

To take the first objection off the table, plaintiff does not offer Dr. Fyfe's testimony for the proposition that Defendant Breen's failure to call for backup was a direct and proximate cause of Ms. Cooper's death. Addressing the second objection, the point is that "Defendant Breen's conduct before the shooting was inappropriate and put him in a situation where *he was aware of* having created unnecessary risks."[19] This awareness is an important clue to why he opened fire. The jury will ask, why would he shoot if he *wasn't* in danger? One reasonable answer to that question that the jury might credit is, because he was furious and humiliated by having made one costly mistake after another. The jury is entitled to conclude that Breen came unglued because he had made a series of blunders that was about to leave him empty-handed, and Dr. Fyfe's testimony is directly relevant to that issue.[20]

### IV.     DR. FYFE'S TESTIMONY ABOUT NORTH BRANFORD'S TRAINING AND POLICIES IS RELIABLE AND RELEVANT.

Defendants object to Dr. Fyfe's testimony concerning the training provided to Defendant Breen by the North Branford Police Department. Defendants argue that it is impermissible for Dr. Fyfe to suggest that the abysmally inadequate training Breen received was a cause of Ms. Cooper's death. Far from junk science, Dr. Fyfe's conclusion

---

the way." Defendants' Memorandum of Law at 18-19. However, as Dr. Fyfe makes quite clear, Breen's obligation to avoid Ms. Cooper's vehicle rather than firing on it continued up to the time he shot her.

[19] *See supra* § A (quoting the Joint Trial Memorandum) (emphasis added).

[20] As Judge Raggi suggested at oral argument on defendants' appeal, perhaps Breen acted as he did because he had lost one suspect and was determined that he was not going to lose another.

is based on his study of thousands of shooting incidents in innumerable police departments. He knows very well how important training is and is perfectly qualified by virtue of his training and experience to say that a properly trained officer would have known enough to get out of the way.

Finally, Defendants object to Dr. Fyfe's testimony that Defendant Breen violated official policy of the North Branford Police Department because such "a violation does not determine whether the officer violated the reasonableness standard of the Fourth Amendment." Def. Mem. at 20.  But evidence of rules and policy is *relevant* even if not conclusive. *Tennessee* v. *Garner,* 471 U.S. 1, 18-19(1985). The cases that defendants rely on recognize this truism. *See, Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) (regulations are relevant if they are intended to "protect the individual against whom force is used. …[S]uch regulations are germane to the reasonableness inquiry in an excessive force claim.";  *Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1076 (N.D. Ill. 1999) ("Objective reasonableness, the standard for excessive force claims … requires an analysis of what a hypothetical reasonable officer would have known and done in light of the circumstances confronting the actual officer in the case. Police regulations, general orders and officer training provide a relevant (although not conclusive) benchmark for making such a comparison. Any potential for the jury's automatically finding regulatory violations to equal constitutional violations can be curbed by appropriate jury instructions."); *Charles v. Cotter,* 867 F. Supp. 648, 664 (S.D. Ill. 1994)(same). *See also, Ludwig v. Anderson*, 54 F.3d 465, 472 (8th Cir. 1995)(same). In fact, just last year the Supreme Court relied on departmental policies to overcome a qualified immunity defense in a *Bivens* case. *Grosh v. Ramirez,* 540 U.S. 551, 564 (2004)(" In fact, the guidelines of

petitioner's own department placed him on notice that he might be liable for executing a manifestly invalid warrant.") Testimony about department rules and policy is admissible.

## CONCLUSION

For the foregoing reasons, the motion should be denied.

                                                  THE PLAINTIFF

                                                  By /s/ David N. Rosen
                                                  David N. Rosen
                                                  400 Orange Street
                                                  New Haven, Connecticut 06511
                                                  (203) 787-3513
                                                  CT00196
                                                  E-mail: drosen@davidrosenlaw.com

                                                 CERTIFICATION

     I hereby certify that a copy of the foregoing Memorandum was sent first class mail, postage prepaid on June 20, 2005 to:

Thomas R. Gerarde, Esquire
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut  06114

                                                  /s/ David N. Rosen
                                                 David N. Rosen