# TAB 1

Page 1

1

2            IN THE UNITED STATES DISTRICT COURT

3              FOR THE DISTRICT OF CONNECTICUT

4

5    ------------------------------x

6    MARGARET COWAN, AS                    :

     ADMINISTRATRIX OF THE                 :

7    ESTATE OF VICTORIA COOPER,            :

8                 Plaintiff,               :

9         -versus-                         :    300 CV 0052 (DJS)

10   MICHAEL BREEN,                        :

11                Defendant.               :

12   ------------------------------x

13

14

15

16        Deposition of MATTHEW CANELLI, Designee of the

17   North Branford Police Department, taken pursuant to

18   the Federal Rules of Civil Procedure, at the law

19   offices of Rosen & Dolan, 400 Orange Street, New

20   Haven Connecticut, before Brenda K. Granfield, a

21   Registered Professional Reporter and a Notary Public

22   in and for the State of Connecticut, on Friday, July

23   7, 2000 at 10:32 a.m.

24

25

Page 34

1    Q. If an officer discharges a firearm to
2 shoot --
3    A. They report it.
4    Q. They report it. And that happens from
5 time to time.
6    A. October and November maybe several times a
7 week.
8    Q. Thank you for clarifying that. Let me put
9 that to one side and ask you about occasions when an
10 officer discharges a firearm for any reason other
11 than to shoot an animal.
12    A. When was the last time?
13    Q. Yes.
14    A. Couple years ago. I'd say maybe two years
15 ago.
16    Q. And what was that incident?
17    A. A sergeant had a chase on Route 80.
18 Sergeant D'Ancicco, and I think it was a sport
19 utility vehicle with tinted glass, and the car
20 was -- the vehicle was stopped on Route 80, and as
21 D'Ancicco got out of his vehicle, the vehicle
22 started to come towards him and was pinning him
23 between his vehicle and the SUV, and he fired a
24 round at the tire.
25    Q. From your description I don't have a clear

Page 35

1 picture of just what happened.
2    A. Me either. I'm trying to recall. Maybe
3 it was five years ago. I'm just trying to recall
4 what happened.
5    Q. You described your officer being pinned
6 between his vehicle and this SUV.
7    A. Uh-huh.
8    Q. Do you mean that the SUV -- question
9 withdrawn. Was the SUV moving when he shot the
10 tire, do you know?
11    A. I would have to look up the report. It
12 was so long ago. I don't know I'd be giving you the
13 right information. But I know a round was
14 discharged by the sergeant. I don't think I was
15 even in town. I may have been away on vacation
16 because I would probably have recalled the shooting
17 more vivid than I am right now.
18    Q. May be as many as five years ago?
19    A. It may be, yes.
20    Q. Was there some investigation or report of
21 the shooting that was made at the time?
22    A. Yes. The deputy chief did the
23 investigation.
24    Q. And do you know whether that was treated
25 as a use of force by an officer?

Page 36

1    A. I don't recall.
2    Q. Do you recall whether the sergeant received
3 any discipline as a result of that incident?
4    A. I'm going to say no, but with an asterisk
5 next to it because I'm not sure. I'm going to say I
6 don't believe he received any discipline.
7    Q. Before that incident, when was the last
8 time an officer discharged a firearm except for
9 shooting animals?
10    A. I don't believe there was any.
11    Q. In your tenure on the department.
12    A. You want me to go back and think 30
13 years? Is that what you're asking?
14    Q. Yes. I'll do it step by step. During the
15 time you've been chief, as far as you can recall,
16 there were only these two incidents?
17    A. Yes.
18    Q. Before you were chief, can you recall any
19 other incidents?
20    A. There was one incident where I had to be a
21 patrolman, so we're talking probably in the
22 Seventies. Maybe '74-75. As a matter of fact, the
23 officer since has passed away. There was a report
24 that there was three or four individuals having a
25 fight. And when he pulled up, there was one person

Page 37

1 lying in the road, and two or three people running
2 from him, from the officer, and he fired at them.
3 He didn't hit anybody. And I think he had
4 discipline for that. I don't even think our
5 policies were in effect back then. That was the
6 chief wasn't even the chief yet. He was a constable.
7    Q. When did the department get organized so
8 that the chief was a chief?
9    A. Right about that time. He was a
10 constable. Then he went to the police academy.
11 Probably '73-74, right around then. Then he left
12 like in '75-76.
13    Q. During the time that you've been chief, do
14 you recall any incident where one of your officers
15 was shot at?
16    A. No.
17    Q. Do you recall any incidents where one of
18 your officers was attacked with a knife or under
19 deadly weapon?
20    A. There's probably been numerous times going
21 to a domestic. A deadly weapon becomes an iron from
22 the fireplace, frying pan. There's been numerous,
23 you know, disable a dispute and all of a sudden
24 someone picks up a shovel and tries to attack the
25 officer.

SANDERS, GALE & RUSSELL *203)624-4157



Page 130

1           JURAT
2
3
4
5
6
7         MATTHEW CANELLI
8
9
        Subscribed and sworn to before me on this
10
        day of        2000.
11
12
13
14
15
   Notary Public
16 My Commission expires:
17
18
19
20
21
22
23
24
25

Page 131

1           WITNESS INDEX
2                        PAGE
3 DIRECT EXAMINATION
   BY MR. ROSEN:..................................... 3
4
5
6
7         EXHIBIT INDEX
8 Plaintiff's
9 1: Notice of Deposition......................... 4
10 2: Letter September 28, 1999................... 39
11 3: Policy regarding use of force.............. 39
12 4: Letter and Minutes......................... 41
13 5: List of Instructors........................ 89
14 6: Memo 2/29/2000............................ 101
15 7: Memo March 16, 1999....................... 102
16 8: Report................................. 117
17 9: Memo February 14, 2000.................... 120
18 10: Letter October 7, 1999.................... 124
19
20 NOTE:   Exhibits retained by counsel
21
22
23
24
25

Page 132

1           C E R T I F I C A T E
2     I hereby certify that I am a Notary Public, in
3 and for the State of Connecticut, duly commissioned
4 and qualified to administer oaths.
5     I further certify that the deponent named in
6 the foregoing deposition, to wit:  MATTHEW CANELLI,
7 came before me on the 7th day of July 2000 and was
8 by me duly sworn and thereupon testified as appears
9 in the foregoing deposition; that said deposition
10 was taken by me stenographically in the presence of
11 counsel and reduced to computer-aided typewriting
12 under my direction, and the foregoing is a true and
13 accurate transcript of the testimony.
14     I further certify that I am neither attorney
15 nor counsel for nor related to nor employed by any
16 of the parties to the action in which this
17 deposition is taken, and further that I am not a
18 relative or employee of any attorney or counsel
19 employed by the parties hereto, or financially
20 interested in this action.
21
        IN WITNESS THEREOF, I have hereunto set my hand
22 as Notary Public this 24th day of July 2000.
23
        Brenda K. Granfield, RPR-CP
24     LSR 00147
        Notary Public:
25     My Commission expires April 30, 2001

SANDERS, GALE & RUSSELL *203)624-4157