# TAB 1

```
 1
 2           IN THE UNITED STATES DISTRICT COURT
 3              FOR THE DISTRICT OF CONNECTICUT
 4
 5   ------------------------------x
 6   MARGARET COWAN, AS             :
     ADMINISTRATRIX OF THE          :
 7   ESTATE OF VICTORIA COOPER,     :
 8              Plaintiff,          :
 9      -versus-                    :    300 CV 0052 (DJS)
10   MICHAEL BREEN,                 :
11              Defendant.          :
12   ------------------------------x
13
14
15
16        Videotaped deposition of MICHAEL BREEN, taken
17   pursuant to the Federal Rules of Civil Procedure, at
18   the law offices of Rosen & Dolan, 400 Orange Street,
19   New Haven Connecticut, before Brenda K. Granfield, a
20   Registered Professional Reporter and a Notary Public
21   in and for the State of Connecticut, on Wednesday,
22   July 12, 2000 at 10:40 a.m.
23
24
25
```

COWEN VS. BREEN                                                                                   JULY 12, 2000

### Page 54

1   A.  Yes.
2   Q.  To whom?
3   A.  My attorney, Jack Kelly.
4   Q.  Anybody else?
5   A.  There was a member of the Employee's
6   Assistance Program who was present as well.
7   Q.  Present at the scene?
8   A.  No, at the police department. This was
9   after.
10  Q.  All right. Who was that?
11  A.  I can't recall his name right now.
12  Q.  When did you first speak to Mr. Kelly?
13  A.  That was at the police department after
14  the incident took place.
15  Q.  At approximately what time?
16  A.  Approximately 4:00 a.m.
17  Q.  Do you know how it is that you -- that Mr.
18  Kelly happened to be at police accident at 4:00 a.m.
19  A.  I contacted Mr. Kelly.
20  Q.  And had he represented you before?
21  A.  No.
22  Q.  Okay. How did you think to contact him?
23  A.  I was advised to contact him.
24  Q.  By whom?
25  A.  Other police officers.

### Page 55

1   Q.  Do you recall who suggested that?
2   A.  Not specifically. Members of the East
3   Haven Police Department.
4   Q.  And after that first meeting with Mr.
5   Kelly, did you meet with Mr. Kelly again?
6   A.  Yes.
7       MR. GERARDE: Objection to form.
8   Q.  And when -- question withdrawn.
9       How long was your meeting with Mr. Kelly
10  at the police accident?
11  A.  Approximately an hour, hour and a half.
12  Q.  When was the next time you met with Mr.
13  Kelly?
14  A.  Date and time I don't know, sir.
15  Q.  Was it within a short period of time
16  thereafter?
17  A.  Yes.
18  Q.  And did you meet with him on repeated
19  occasions between the 13th and the 27th of July?
20  A.  I --
21      MR. GERARDE: Objection to form.
22  A.  Between the 13th and the 27th?
23  Q.  Yes, the 27th being the date you submitted
24  your police report.
25  A.  I might have met with him once or twice.

### Page 56

1   Q.  But no more than twice?
2   A.  I believe so.
3   Q.  Now, there were reports in the newspapers
4   and on TV about this incident. You're aware of that?
5   A.  Yes.
6   Q.  Did you read any of the news reports?
7   A.  Yes.
8   Q.  In what newspaper or newspapers did you
9   read any of the reports?
10  A.  New Haven Register, Hartford Courant.
11  Q.  As the articles appeared about this --
12  question withdrawn.
13      Did you usually read the Courant?
14  A.  Not usually. Usually the Register.
15  Q.  You got the Courant in connection with
16  this incident because the Courant was covering the
17  incident and had news reports about it; is that
18  correct?
19  A.  Yes. That's a fair statement.
20  Q.  Okay. And you wanted to read what was
21  being written about this incident that you had been
22  involved in in the press, correct?
23  A.  Yes.
24  Q.  And you read the reports as they came out
25  in those two newspapers, correct?

### Page 57

1   A.  Yes.
2   Q.  And you also saw at least some of the
3   reports on TV, correct?
4   A.  Yes.
5   Q.  Did you speak with anyone from the press
6   in between the 13th of July and the 27th when you
7   filed your police report?
8   A.  I believe one -- between that time period,
9   I believe one reporter contacted me at home.
10  However, I did not speak to him. There were several
11  attempts to contact me, but I did not speak to the
12  press, on the advice of my attorney.
13  Q.  Did you speak to any of your friends and
14  family about the incident?
15      MR. GERARDE: Objection to form, only
16  because there's no time frame to it.
17      MR. ROSEN: Oh, okay.
18  BY MR. ROSEN:
19  Q.  Between the time of the incident and the
20  27th of July, did you speak to any friends or family
21  about the incident?
22  A.  Yes.
23  Q.  To whom?
24  A.  My wife.
25  Q.  Anyone else?

15 (Pages 54 to 57)

Page 206

```
 1              CERTIFICATE
 2      I hereby certify that I am a Notary Public, in
 3   and for the State of Connecticut, duly commissioned
 4   and qualified to administer oaths.
 5      I further certify that the deponent named in
 6   the foregoing deposition, to wit:  MICHAEL BREEN,
 7   came before me on the 12th day of July 2000 and was
 8   by me duly sworn and thereupon testified as appears
 9   in the foregoing deposition; that said deposition
10   was taken by me stenographically in the presence of
11   counsel and reduced to computer-aided typewriting
12   under my direction, and the foregoing is a true and
13   accurate transcript of the testimony.
14      I further certify that I am neither attorney
15   nor counsel for nor related to nor employed by any
16   of the parties to the action in which this
17   deposition is taken, and further that I am not a
18   relative or employee of any attorney or counsel
19   employed by the parties hereto, or financially
20   interested in this action.
21
        IN WITNESS THEREOF, I have hereunto set my hand
22   as Notary Public this 4th day of August 2000.
23
     Brenda K. Granfield, RPR-CP
24   LSR 00147
     Notary Public:
25   My Commission expires April 30, 2001
```