# TAB 1

AFFIDAVIT

Charles R. Manning, Jr., first being duly sworn, deposes and says:

I am President of Accident Reconstruction Analysis, Inc. 5801 Lease Lane, Raleigh, NC 27617. My Curriculum Vitae is attached as Exhibit "A" and incorporated by reference.

To date I have reviewed numerous documents regarding the death of Victoria Cooper on July 1999, including the State Police report, reconstruction, and photographs.

Based on my education, training and experience, review, and analysis in this matter, I express the following findings, conclusions and opinions:

1. The initial speed of pieces of broken glass that slide to a stop along a roadway can be determined by measuring the sliding distance of travel before coming to rest.
2. The Camaro driven by Victoria Cooper was traveling between 20 and 30 miles per hour at the time the driver's window glass was broken by a gunshot. This range of speed is consistent with the length of the pattern of window glass, as reported in the reconstruction report.
3. The distance from which a gunshot is fired can be evaluated from the residue detected on the surface that is struck.
4. Powder residue found on the glass fragments and reported in the police investigation, can be detected for a distance of a few feet ahead of the muzzle of the gun. The gunshot that broke the Driver's window glass was fired from a distance of up to a few feet.
5. The speed of the Cooper vehicle at 20 to 30 miles per hour corresponds to 30 to 44 feet per second. From a position in front of the vehicle, officer Breen was in the act of firing the second shot before the vehicle reached his position. He had only a fraction of a second from being in front of the car to being at the position from which the second shot was fired.

Respectfully submitted this ___ day of November 2001.

ACCIDENT RECONSTRUCTION ANALYSIS, INC.

_/s/ Charles R. Manning Jr._
Charles R. Manning, Jr., Ph.D., P.E.

_/s/ Jennifer Metz_

Sworn to and Subscribed before me this
28 day of November, 2001

My Commission Expires: 5-25-03

[Notary Seal: JENNIFER METZ, NOTARY PUBLIC, WAKE COUNTY, N.C.]

1

# TAB 2

Case 3:00-cv-00052-RNC     Document 144-2     Filed 06/20/2005     Page 3 of 11

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARGARET COWAN,<br>ADMINISTRATRIX OF THE ESTATE<br>OF VICTORIA COOPER | NO.: 3:00CV52 (DJS) |
| v. | |
| MICHAEL BREEN | |
| | |
| MARGARET COWAN,<br>ADMINISTRATRIX OF THE ESTATE<br>OF VICTORIA COOPER | NO.: 3:01CV229 (DJS) |
| v. | |
| NORTH BRANFORD | DECEMBER 14, 2001 |

**DISCLOSURE OF EXPERT WITNESSES**

Defendants, pursuant to Rule 26 of the Federal Rules of Civil Procedure hereby disclose the following expert witnesses:

1.  Charles R. Manning, Jr., Ph.D., P.E.
    Accident Reconstruction
      Analysis, Inc.
    5801 Lease Lane
    Raleigh, NC 27617

      Dr. Manning is a materials engineer and accident reconstructionist, who will testify regarding the location of Officer Breen at the time two shots were fired in the direction of Victoria Cooper. Dr. Manning also will testify as to the speed of the vehicle being driven by Victoria Cooper at the time the shots were fired. Dr. Manning is expected to testify that Officer Breen was in front of the subject Camaro at the time the first shot was fired and within a few feet of the subject Camaro at the time the second shot was fired. Dr. Manning is further expected to testify that the subject Camaro was traveling between 20-30 mph at the time Officer Breen fired two shots at it. Dr. Manning will also testify as to all of the opinions offered by plaintiff's accident reconstructionist, Michael Miller, particularly those which address the issues of the location of Officer Breen at the time shots were fired, and the speed of the subject Camaro at the time shots were fired.

      Dr. Manning will base his opinions upon his review and analysis of the documents produced during the course of discovery in this matter including, the depositions of the parties and witnesses, the depositions of plaintiff's experts, the Connecticut State Police Reconstruction Report and the State Medical Examiner's report. Dr. Manning will further base his opinions on his education, training, background and experience as an engineer and accident reconstructionist.

2

Dr. Manning's CV, expert witness history, publication history and lecture history are attached. This disclosure will be supplemented with a complete written report detailing Dr. Manning's opinions and the exhibits relied thereon within the next several days. Dr. Manning is available for deposition at a mutually convenient time.

2.  Lieutenant Daniel C. Wicks
    Massachusetts State Police
    Bedford, MA  01730

Lieutenant Wicks is expected to testify on the issues of (1) the reasonableness of Officer Michael Breen's actions July 13, 1999; and (2) the training provided to North Branford police officers. Lieutenant Wicks is expected to testify that it would be reasonable for a police officer to fire his weapon at a motor vehicle, given the totality of circumstances then and there existing at the time Michael Breen fired his weapon at the vehicle operated by Victoria Cooper on July 13, 1999. Lieutenant Wicks will further testify that the regulations , training and policies of the North Branford Police Department regarding use of force are adequate. Lieutenant Wicks will also address the opinions regarding Officer Breen's conduct and the training provided by the North Branford Police Department, as expressed by plaintiff's expert James Fyfe. Lieutenant Wicks will base his opinions on his

3

# TAB 3



# Accident Reconstruction Analysis, Inc.

*INVESTIGATION INTO BREEN SHOOTING*

*TO:*

*HOWD & LUDORF*
*65 Wethersfield Avenue*
*Hartford, CT 06114-1190*
*Attention: Tom Gerarde*

*FROM:*

*ACCIDENT RECONSTRUCTION ANALYSIS, INC.*
*5801 Lease Lane*
*Raleigh, North Carolina 27617*

*Prepared By: Charles R. Manning, Jr., Ph.D., P.E.*
*January 9, 2002*



PLAINTIFFS EXHIBIT

I am President of Accident Reconstruction Analysis, Inc., 5801 Lease Lane, Raleigh, NC 27617. My Curriculum Vitae is attached as Exhibit "A" and incorporated by reference.

To date I have reviewed numerous documents regarding the death of Victoria Cooper on July 13, 1999, including the following:

Connecticut State Police investigation documents
Connecticut State Police Reconstruction Report
Autopsy and toxicology reports
AUTOSTAT data for the 1985 Chevrolet Camaro IROC Z 2-Door Coupe
Engineer's Report of Michael Miller
Deposition testimony of Michael Breen and Michael Miller

I have also reviewed the results of field tests of spread patterns of shattered window glass, and field tests of bullet entry and trajectory along a Camaro hood.

Based on my education, training and experience, and review and analysis in this matter, I express the following findings, conclusions and opinions:

1. The pattern and extent of the pieces of window glass from the driver's side door of the Camaro were documented at the scene. A drawing that depicts the spread of the glass and measurements made at the scene show that the glass had come to rest in a fan shaped pattern 110 feet in length. The glass fragments along Route 80 were deposited diagonally across the road along the path of the Camaro. The speed of the car caused the glass to spread down Route 80, much like small stones being thrown from a bucket. The speed of the glass is initially the same as the speed of the car. This speed causes

the glass to slide down the roadway. This type of spread is often found to result from traffic accidents, and is used to determine the speed of a vehicle at the moment the glass is broken. Using this technique and the length and pattern of the spread glass, the speed of the Camaro is determined to be between 25 and 30 miles per hour.

2. The Camaro, when moving at 25 to 30 miles per hour, is moving forward at 36 to 44 feet per second. The time between the two shots of Officer Breen has been reported as one to two seconds. Thus, during that time, the Camaro moved forward by between 36 and 88 feet. This movement is consistent with the estimated distance between shots given by Officer Breen, who estimated 50 feet to the Camaro at the first shot, and very close to the front bumper when he attempted the second shot. At the time the trigger is squeezed for the second shot, Officer Breen is within a few feet of the front of the Camaro.

3. The Glock 22 handgun has a trigger pull of 5.5 pounds, and a trigger travel for discharge of one-half inch. Thus, the gun does not discharge at the instant a force is applied to the trigger, but is delayed by the time for trigger pull travel and release of the firing pin. It is expected that Officer Breen's second shot would be delayed by about one-quarter of a second, the time required to fully apply the 5.5 pounds of force and move the trigger one-half inch for the second shot. During that time, the Camaro, moving at 36 to 44 feet each second, moved forward an additional 9 to 11 feet, placing Officer Breen in close proximity to the driver's door window at the time the gun discharged.

4. Firing a handgun produces residue of the combustion products, and unburned primer or powder fragments. These fragments spread behind and around the bullet in a shape that is approximately conical. Because of their small size, they have a very low mass and they do not travel far beyond the muzzle of the gun. Residue patterns containing many particles can generally be detected at eight inches, but even single particles are seldom observed if the gun is fired at a distance greater than a few feet. Gunshot residue analysis of the glass fragments of the driver's door window of the Camaro

indicates the presence of lead, antimony, and barium. These are the major primer elements. These elements would be found scattered across the window glass fragments only if the gun were discharged in close proximity to the glass surface.

5. Two cartridge cases were found on the roadway at the beginning of the pattern of glass fragments. Both of the cartridge cases were located approximately ten feet from the side of the road, and less than six feet apart. The Glock 22 typically throws a cartridge case upward and outward to a distance of up to five feet. Although the cases do not indicate the exact location of the gun at the time of each firing, the proximity of the two cases indicates that the two shots were fired from within several feet of each other. This distance and location are consistent with the time between shots of one second. During the one to two second interval, Officer Breen could move only up to several feet in attempting to move out of the path of the oncoming Camaro.

6. The first shot fired by Officer Breen struck the hood of the Camaro at a shallow angle. The shallow angle is indicated by the deflection of the bullet, which created an impression approximately three inches long in the surface of the hood. The impression is not straight, but J-shaped. Using a rod placed in the groove with an attached light (a laser), the angle between the gun and the direction of travel of the Camaro was measured by state police investigators. Tests show that Officer Breen was at a significantly narrower angle to the oncoming car than that suggested by the state police investigation.

Respectfully Submitted,

*Charles R. Manning*

Charles R. Manning, Jr., Ph.D., P.E.

[North Carolina Professional Engineer Seal 8559 — Charles R. Manning, Jr.]