# TAB 5

# 02-9179

In The United States Court of Appeals
For The Second Circuit

---

MARGARET COWAN, ADMINISTRATRIX OF THE ESTATE OF
VICTORIA COOPER,
*Plaintiff-Appellee,*

v.

MICHAEL BREEN,
*Defendant-Appellant,*

TOWN OF NORTH BRANFORD,
*Consolidated-Defendant-Appellant.*

---

On Appeal from the United States District Court
for the District of Connecticut

(Hon. Dominic J. Squatrito, U.S.D.J.)
(Hon. Thomas P. Smith, U.S.M.J.)

---

## BRIEF FOR DEFENDANTS-APPELLANTS

---

Thomas R. Gerarde
John J. Radshaw, III
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT 06114-1190
(860) 249-1361
(860) 249-7665 (fax)
Attorneys for Defendants-Appellants

*To Be Argued By*
Thomas R. Gerarde

> We must avoid substituting our personal notions of proper police
> procedure for the instantaneous decision of the officer at the scene.
> We must never allow the theoretical, sanitized world of our
> imagination to replace the dangerous and complex world that
> policemen face every day.

*Smith v. Freland, supra*, 954 F.2d at 347.

It is precisely this analysis which leads inescapably to the conclusion that summary judgment based on qualified immunity should enter in favor of Officer Michael Breen. In the Statement of Undisputed Facts, the defendant has cited to the sworn deposition testimony of both plaintiff's experts, Michael Miller, PE and Dr. James J. Fyfe, and accepts the statements by the plaintiff's experts set forth in the Local Rule 9(c)(1) Statement as undisputed. *See* D.Conn.L.R. 9(c); . None of the facts set forth in the Local Rule 9(c)(1) Statement attributable to Officer Breen conflict with the statements of plaintiff's experts, (A. 41-50); nor is the reconstruction of the Connecticut State Police in material conflict with plaintiff's experts. Even the affidavit of defendants' expert, Dr. Charles Manning, has been limited to two areas plaintiff's expert Miller did not address: (1) The meaning of the pattern of shattered glass in the roadway following the shooting; and (2) the presence of gunshot residue on the subject Camaro. *Compare* (A. 213) *with* (A. 357-60). Accordingly, there are no issues of fact material to this Court's decision, and the qualified immunity issue can and must be decided as a matter of law in accordance with the principles announced in *Saucier v. Katz* and its progeny.

16. As the vehicle approached Officer Breen, Breen wanted to stop the vehicle in furtherance of his police duties. **(A. 212).** Dep. of Michael Breen, p. 201, Exhibit 3.

17. Victoria Cooper had no legal right to move the Camaro given that the police cruiser had lawfully stopped it and remained behind it with its flashing lights on. **(A. 141-2; 175-8, 187).** Dep. of James Fyfe, pp. 91-92, 111, Exhibit 2; Dep. of Michael Breen, pp. 129-134, 147, Exhibit 3.

18. Officer Breen had a right to search the vehicle for contraband under the circumstances. **(A. 138, 143; 212).** Dep. of James Fyfe, pp. 87, 97, Exhibit 2; Dep. of Michael Breen, p. 201, Exhibit 3.

19. Victoria Cooper did not stop her vehicle in response to the order by Officer Breen. **(A. 194-7).** Dep. of Michael Breen, pp. 157-160, Exhibit 3.

20. As the Camaro approached Officer Breen he fired two shots, approximately one second apart, striking Victoria Cooper with the second shot. **(A. 161-3; 108).** Dep. of Michael Breen, pp. 82-84, Exhibit 3; CSP Report, ¶¶3-4, Exhibit 1.

21. The first shot fired by Officer Breen impacted the hood of the Camaro. **(A. 108).** CSP Report, ¶ 3-4, Exhibit 1.

22. The second shot fired by Breen impacted the driver's side window of the Camaro, shattering the glass. **(A. 108-9).** CSP Report, ¶¶ 3- 5, Exhibit 1.

23. The distribution of the broken glass on the road indicates the Camaro was not stationary, but in motion at the time the bullet impacted the window. **(A. 108-9).** CSP Report, ¶¶ 3-5, Exhibit 1.

24. The pattern of distribution of glass across Route 80, covering a distance of 110 feet, is consistent with the Camaro not moving slowly at the time the glass was broken, but instead moving at 20-30 mph at the time the second shot was fired. **(A. 213).** Aff. of Charles Manning, Exhibit 4.

25. The second shot was fired by Officer Breen as the Camaro began to pass him. **(A. 108-10; 163).** CSP Report, Exhibit 1; Dep. of Michael Breen, p. 93, Exhibit 3.

26. Gunshot residue was found on the door of the Camaro. The gunshot residue found indicates Officer Breen's weapon was within

Officer[] to believe that [his] actions were legal." *Tierney*, 133 F.3d 189, 194-5. The decision whether Officer Breen's actions were lawful – the ultimate contested issue – is purely a question of law and one that should have been made by the courts below.

Neither the Recommended Ruling nor the Order considers whether Officer Breen's perception was accurate. Even if Officer Breen's perception was mistaken, mistaken perceptions in the context of the qualified immunity analysis are acceptable as long as the mistake is reasonable. *Saucier v. Katz*, 533 U.S. 194 (2001); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (qualified immunity extends to public officers where there mistaken belief that decision was objectively reasonable).

The defendants' motion for summary judgment is based on undisputed facts, provided by Connecticut State Police investigators, (A. 101-128), the testimony of the plaintiff's own experts – Dr. Fyfe and Mr. Miller, (A. 129-145; 214-221), Officer Breen, and to a lesser extent, a defense expert, Dr. Manning, (A. 213). Critically, the only information relied upon by defendants provided by the defendants' expert addressed issues on which the plaintiff's expert, Michael Miller, admittedly lacked the expertise to offer an opinion, (A. 357-60). The limited proof offered by the defendants' expert is confined to two issues which the plaintiff's expert, Miller, expressly was unqualified to consider and that Miller, himself, did

- 51 -

not consider: (1) the significance of the 110' glass fragmentation pattern, which

unquestionably demonstrates the movement of the vehicle, (see A. 357-60); and (2)

the significance of the gunpowder residue on the side of the Cooper vehicle which

unquestionably demonstrates the close proximity of Breen to the vehicle at the

time the shot which struck Victoria Cooper was fired, (*Id.*).

IV.    **BECAUSE NO CONSTITUTIONAL VIOLATION BY BREEN**
       **OCCURRED, JUDGMENT SHOULD ENTER IN FAVOR OF THE**
       **TOWN ON THE CLAIM BASED ON *MONELL V. DEP'T OF SOC.***
       ***SERVS*, 436 U.S. 658 (1978).**

In the present case, the consolidated-defendant-appellant, Town of North

Branford, also argues that the Recommended Ruling and Order contain additional

error insofar as the Recommended Ruling and Order hold that a claim stands

against the Town based on *Monell v. Dep't of Soc. Servs*, 436 U.S. 658 (1978)

given the plaintiff's arguments below and a fair reading of the complaint.

As addressed in Section II and III, *supra*, Officer Michael Breen is entitled

to judgment as a matter of law either because he did not violate a clearly

established constitutional right held by Cowan's decedent, Cooper, or Officer

Breen's actions were objectively reasonable under the circumstances then and

there existing. Qualified immunity attaches when even if Officer Breen was

mistaken, albeit reasonably so, and therefore no constitutional violation can then be

found. As a matter of law, this conclusion negates civil rights liability as to the

Town of North Branford. In *City of Los Angeles v. Heller*, 475 U.S. 796 (1986),

- 52 -

# TAB 6

<u>CRITICISMS OF METHODS AND OPINIONS OF SCHWENDY</u>

I.     Schwendy fires only two rounds at an exemplar Camaro hood, only one of which penetrates the hood.  Schwendy sheet-steel firing results are not statistically correlated to the Schwendy Camaro hood firing results.

HAVING FIRED ONLY ONE PENETRATING HOOD SHOT, SCHWENDY HAS NO STATISTICAL BASIS OF COMPARISON FOR HIS TEST RESULTS ON FLAT SHEET-METAL PANELS.

II.    Flat sheet metal panels are not substantially similar to a Camaro hood with regard to impact and penetration, including obvious material and mechanical characteristics as follows:

     Different steel alloy and composition
     Different yield strength
     Different strain hardening
     Different ultimate strength
     Different formed shape
     Different stiffness
     Different thickness
     Different finish
     Different support and weight

HAVING MADE NO DETERMINATION OF MATERIAL CHARACTERISTICS, SCHWENDY HAS NO MECHANICAL BASIS OF COMPARISON FOR HIS TEST RESULTS ON FLAT SHEET-METAL PANELS.

III.    The bullet-hole right edge is neither straight nor easily measured.  In the one Camaro hood bullet hole that was produced by Schwendy, the right edge is far from a straight line, and in fact the line curves, its angle varying by 18 degrees along its length.

     Furthermore, the subject Camaro hood bullet hole has a right edge that appears to curve over a range of no less than 11 degrees along its length.

     However, Schwendy [p. 226 ln. 10-11, 13-15] claims a hypothesis that,
     "I could relate the angle of the right edge of the defect."
     "Seeing that was the only **relatively straight line** that I thought **I could measure easily**."

THE CLAIM THAT THE RIGHT EDGE OF THE BULLET HOLE IS A RELATIVELY STRAIGHT LINE AND EASILY MEASURED, IS FALSE, AND SCHWENDY'S HYPOTHESIS IS THUS FLAWED IN ITS BASIC ASSUMPTIONS.

Schwendy has made additional errors and assumptions that will produce significant errors in his measurement results, as follows:

- His vertical angle of inclination is unreliable and unknown.
- He adjusted his vertical angle of impact to achieve bullet penetration of the sheet metal.
- He did not record his test firing impact marks and measurements with any documentation or by photos.

TAB 7

**Deposition of Charles Manning, March 7, 2002 (excerpts)**

A      What we know is that the true angle of that bullet is marked by the opposite side
       of the bullet, or the right side, because we fired eighteen bullets into a Camaro
       hood, and we knew we were standing right in front of the hood when we fired
       them. So we know the angle that it was coming from. So the right--the side over
       here, the right side of the--of the bullet is the correct angle. And you can see that's
       where I made a mark, the black mark up here. Now, here is a straight line which
       is parallel to the line they've got here down the dead center of the hood. And if
       you measure off of this line here, you'll find that the actual bullet was
       between--was thirteen degrees.

Manning Deposition 21

Q      You're saying that the line on the right, or the outside of the vehicle in this
       particular case, is--it's your testimony that accurately shows the path of the bullet?
A      That's correct.
Q      All right. And you said that you know that from firing bullets at a Camaro hood,
       is that right?
A      That's correct.

*Id.* 27

Q      So you're saying that the--that it's unreliable to look at the left side of the
       indentation for that reason?
A      Yes, it is.
Q      All right. But it's reliable to look at the right side of the indentation?
A      Absolutely.

*Id.* 32

A      I measured the hood at the office. We measured it together. We measured it from
       the center line, along that right side of the bullet.

*Id.* 39

1

A       When we took the--when we took a straight line-- sorry.  If we took--when we took a straight line along the hood, we then went ahead and measured that angle from a straight line over to the right side of the bullet.  And that was thirteen degrees.  We also took and measured that angle from the angle that they--that the police had off the right--left side of the bullet, and that was twenty-nine degrees, which they thought was thirty [sic] degrees...

Q       You said that their problem was that the measured ... from the left side of the ... bullet mark?

A       Yes.  They took--they took the line along the left side, which was incorrect. ... The line along the right side is the correct angle that you should measure it from...

*Id.* 40 - 41

Q       So is it your testimony that you can tell by looking at the angle of the left side of the strike what the angle of incidence of the bullet is by taking that angle and subtracting sixteen degrees?

A       I don't think that's a good way to do it, because you're not sure, that bullet goes in there and it's starting to tear to the left, that it's always going to tear exactly the same.  The correct way is to measure the right side, in which you always get the right--the right angle.

*Id.* 42 - 43

A       The right side, you'll always get the correct mark as the bullet comes down the right side.

*Id.* 44

A       ...We were able to know what the angles should be, and we were able to measure the angles should be, and we were able to measure it.  And we were able to show clearly that you had to use the--the one side, from a science approach.

*Id.* 53

Q       [A]nd you said that that tear, the right side of the tear, accurately reflects the angle of incidence of the bullet, correct?

A       Exactly.

*Id.* 57

Q       Okay.  What you told me before--tell me if I'm wrong--was that the way you want to do it is you want to measure the right side of the bullet strike, correct?

A       Absolutely.  And here it is.

2

*Id.* 59

| Q | ...And how do you know that that is the right line to use? |
|---|---|

Q ...And how do you know that that is the right line to use?
A Well, we know that is the right line to use because when we fired--if you look at Exhibit 14–
Q Yes.
A --if you look at the--at the top, up here–
Q Yes.
A --these are ones that did not penetrate, and you can see how straight this right side follows through, each one of these that didn't penetrate. The--it goes very--always follows that right side.
Q Okay.
A And you have to remember, we know where we were--we know where we were standing, so we know where the--what angle the bullet was at. And it matched every time.

*Id.* 63 - 64

A ...The ones that did penetrate, if we followed the right side, we had the correct angle. If you tried to take the left side, where the bullet was spinning and tearing out, it was absolutely misleading.
Q Do you get a wide variation in the angle to the center line from the way the bullet tears the metal up?
A Oh, no. You don't get any variation in center line where you're shooting, because we're able to measure very carefully that line in front of it in the right side.

Id. 65

3