UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARGARET COWAN,<br>  as Administratrix of the<br>  Estate of Victoria Cooper,<br>       Plaintiff, | | |
| V. | : | CIVIL NO.: 3:00CV00052(RNC) |
| MICHAEL BREEN,<br>       Defendant. | : | |
| MARGARET COWAN,<br>  as Administratrix of the<br>  Estate of Victoria Cooper,<br>       Plaintiff, | | |
| V. | : | CIVIL NO.: 301CV00229(RNC) |
| TOWN OF NORTH BRANFORD<br>       Defendant. | : | JUNE 20, 2005 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE RE BRUCE J. ROUNSAVILLE, M.D.**

    Defendants' motion is the best argument for excluding evidence of cocaine use from both the damage as well as the liability phase. Defendants argue that the evidence Dr. Rounsaville relied on to opine concerning Ms. Cooper's future course is too scanty to allow any predictions. If so, the jury should not hear about Ms. Cooper's cocaine use because you can bet that in the absence of scientific evidence the jurors will make their own predictions – as well as their own moral judgments that will pollute their deliberations.[1]

---

[1] All agree that it is not possible to say how, if at all, Ms. Cooper's ingestion of cocaine affected her behavior the night of the shooting.

1

That said, Dr. Rounsaville's report and opinions represent reasonable use of available scientific information. Dr. Rounsaville is a Professor of Psychiatry at Yale Medical School who has devoted his 25-year professional career to research and treatment of drug and alcohol abuse. He also directs a center established by the Veterans Administration to investigate dual diagnoses of mental illness and drug or alcohol abuse. To be sure, it is, as defendants point out, harder to study the use of illegal substances than legal ones, but there are many researchers, including Dr. Rounsaville, who do so in hopes of understanding and treating drug dependency and addiction.

Dr. Rounsaville based his opinions on all the evidence in the record, including at least sixteen depositions of people who knew Vicki Cooper, as well as medical and other records. He also relied on the best available studies, as well as his vast clinical experience. He summarized some of the information he relied on as follows:

> A. Well, Dr. Kandel's and Chin's article is an example of those studies, and it includes numerous references to other studies that have been done.Generally these are done as panel studies of, say, high school students or junior high school students, and then they'll take a thousand or a couple thousand students and follow them over a 10-, 20-, 30-year course and look and see who's used drugs when and how long they stay and so forth and so on.
> Q. So it would be your opinion that it's unusual for an individual to begin using crack cocaine late in life?
> A. Yes. But when it does happen, it generally is an indicator that it's, you know, that that has a pretty benign course, you know, that people who start late in life, it's often circumstantial, like getting involved with a cocaine-using boyfriend, or something along those lines.

Deposition of Bruce J. Rounsaville, M.D., September 9, 2002, 52-53.

Dr. Rounsaville then summarized additional bases for his conclusion that it is more likely than not that Vicki Cooper would have had a reasonably benign course with her cocaine use had she not been killed:

> Q. Towards the end of your report you say here, "Regarding the most likely trajectory of her cocaine use," referring to Cooper, "the most common course for nontreatment-seeking regular cocaine users is one of episodic use followed by natural recovery with use tapering off."
> A. Yes.
> Q. So why do we have the war on drugs?
> A. Well, the most common course is that. But the fact is that a proportion, around 10 to 20 percent of people have more severe problems and that it doesn't just taper off. But again, if what you're asking for is what's the most probable thing, if you sort of say Victoria Cooper is in this set of people who are cocaine users, you know, and you're asked to sort of say, if you had to bet how is she going to be doing, you would bet that she'd be doing how most of the people are doing as opposed to betting that she'd be doing how the worst part was doing. So drug use is something that can have terrible consequences and ruin people's lives, but fortunately, it's only the minority for which this is the case.

*Id.* 58-59.

Defendants have not shown that this analysis is so fundamentally flawed that it would not be helpful to a jury. In fact, they have barely tried, contenting themselves with presenting the Court with two competing expert reports, one by Dr. Rounsaville, an expert in cocaine addiction research, the other by Dr. Selig, a specialist in forensic psychiatry with no special interest in cocaine addiction. Certainly if the jury does hear about Ms. Cooper's cocaine use, it should also hear that drug use is not as ominous a portent as many think. But, again, the real point is that hijacking the trial by turning it into a debate about cocaine would be as unproductive as it would be unfair.

## CONCLUSION

The motion should be denied.

THE PLAINTIFF

By /s/ David N. Rosen
David N. Rosen
400 Orange Street
New Haven, Connecticut 06511
(203) 787-3513
CT00196
E-mail: drosen@davidrosenlaw.com

CERTIFICATION

I hereby certify that a copy of the foregoing Memorandum was sent first class mail, postage prepaid on June 20, 2005 to:

Thomas R. Gerarde, Esquire
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut  06114

/s/ David N. Rosen
David N. Rosen