UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARET COWAN,
  as Administratrix of the
  Estate of Victoria Cooper,
         Plaintiff,

V.                          :        CIVIL NO.: 3:00CV00052(RNC)
                                    ALL CASES

MICHAEL BREEN,          :
        Defendant.

MARGARET COWAN,
  as Administratrix of the
  Estate of Victoria Cooper,
         Plaintiff,

V.                          :        CIVIL NO.: 301CV00229 (RNC)

TOWN OF NORTH BRANFORD     :        JUNE 20, 2005
        Defendant.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
<u>MOTION IN LIMINE RE ANIMATION</u>**

This motion concerns a computerized animation illustrating the testimony of plaintiff's

expert, Kent Schwendy.[1]  The animation is Exhibit 86 in the Court's binder of plaintiff's exhibits

and can be played on a dvd player. The purpose of the animation is to show the relative locations

of defendant Breen and the Camaro at different points in time. Because the events underlying this

_____

[1]This defense motion can appropriately be considered in conjunction with two others:
Defendants' Motion in Limine re Testimony of Kent M. Schwendy, P.E. Docket No. 121, *see*
No. 122 (memorandum in support) because Mr. Schwendy's testimony provides the foundation
for the animation; and  Defendants' Motion in Limine re Deposition testimony of Dr. Manning or
Dr. Eberhardt, No. 99, *see* No. 100 (memorandum in support) because Mr. Schwendy's testing
and opinions are closely related to those of the defense experts Dr. Manning and Dr. Eberhardt.

case involved what Dr. Lee has rightly called a "dynamic" scene, with both the Camaro and

Breen in motion, a moving image – an animation – can, if it fairly represents facts with a

foundation in the evidence, communicate more relevant information than a still illustration.

That is what this animation does.  It is based entirely on facts that are solidly established

by the record. Since Mr. Schwendy will testify at the *Daubert* hearing, the Court will have an

opportunity to see and hear how he assembled the information needed to make the animation.  In

summary, the sources Mr. Schwendy used are the following:

•      A surveyor's map of the scene. (Defendants have themselves identified this document as

an exhibit.)

•      Measurements of the Camaro, including the location of the mark left by defendant

Breen's first bullet. (These measurements can be verified – the Camaro is available for

inspection – and do not appear to be disputed.)

•      Measurements and findings of Dr. Lee, including a) his finding that the Camaro traveled

177 feet from its original location where Breen pulled it over to the point of the second

shot; b) his findings about the length of time it took the Camaro to travel the 177 feet at

different speeds; c) his finding concerning the Camaro's location at the time of the

second, fatal shot; and d) his finding concerning the location of the second shot relative to

the Camaro. (Defendants have identified Dr. Lee as an expert witness and do not appear

to contest his findings.)

•      Rule 36 admissions, including the admission that Breen was approximately 50 feet from

the Camaro at the time he started to pull the trigger that resulted in the firing of his first

shot; the related admission that it took Breen a quarter second to pull the trigger; and the

2

admission that the most probable time interval between the shots was a quarter second.

•     Generally available information such as the speed of a bullet of the type used by Breen and specific information including Breen's approximate height; and

•     Mr. Schwendy's own test result that the angle of the first bullet was not less than 15.5 degrees.

Each of these sources is reliable: all but Mr. Schwendy's test results should be uncontested. From them Mr. Schwendy was able to recreate the events surrounding the shooting with good accuracy, and it is that recreation that is depicted in the animation.

## ARGUMENT

### 1. The Animation Was Timely Disclosed and Defendants Are Not Prejudiced

The animation is actually the second one that plaintiff disclosed to defendants; it is closely similar to one that was disclosed in 2003, now marked as Exhibit 87. What has happened in the meanwhile is that defendants announced that they no longer believed their expert Dr. Manning, on whose opinions the first animation was based, so that plaintiff had to scurry to get an analysis from Mr. Schwendy to replace the data provided by Dr. Manning. Defendants therefore agreed, appropriately, not to object to the timing of the disclosure of Mr. Schwendy. (Plaintiff also agreed, in exchange, not to object to the timing of the defendants' recent disclosure of State's Attorney Michael Dearington as an expert.) The animation is essentially part of the Rule 26(a) report that Mr. Schwendy has produced within the time constraints defense counsel said were agreeable.

Mr. Schwendy's results are closely similar to Dr. Manning's, and his animation is therefore very similar to the earlier animation based on Dr. Manning's results. Both the earlier

animation and the recent animation get the bulk of their data from Dr. Lee's findings or other uncontested information. Moreover, almost all the features that defendants complain about were in the earlier animation, which defendants have had for the past year and a half. These features include the perspectives (overhead and over-the-shoulder, or "oblique"), lighting, indication of the bullet trajectory, size of the car (which is exactly to scale), the curvature of the road (which is the same as the actual roadway), and the lines on the road (which are no brighter than the lines on the roadway. *See* Defendants' Memorandum in Support of Motion in Limine, June 1, 2005 ("Def. Mem.") at 11.

In short, defendants have had an animation very similar to this one for well over a year. They got this one as late as they did only because they decided at the eleventh hour to change their position about the evidence, forcing plaintiff to scramble in response. Nevertheless, plaintiff got the animation and the rest of Mr. Schwendy's report to defendants in time for them to question Mr. Schwendy about the entire report, including the animation, at his deposition. Defendants have not been unfairly prejudiced by the timing of the disclosure of the animation.

**2. Mr. Schwendy Will Lay the Foundation for the Animation**

The animation is admissible if but only if it fairly reflects admissible findings and conclusions of plaintiff's expert Mr. Schwendy. It does. Mr. Schwendy had examined the animation and verified that it reflects his data, findings, and conclusions. He will explain this process at the hearing on this motion.

**3.    The Animation Is Fair and Not Unduly Prejudicial**

The animation is a helpful tool for Mr. Schwendy to explain his opinions and results. To see how helpful, one need only try to figure out Mr. Schwendy's data *without* using an animation.

4

His data are presented in the five tables attached as tab 1. These tables all make sense, and Mr. Schwendy can explain them. In fact, as Mr. Schwendy can explain, the inputs that he used determined his results to a mathematical certainty. But it is vastly more informative for a jury to see what these data mean than it is for them to hear all the numbers.

The purpose of each of the features of the animation that defendants find objectionable is to convey relevant information. None is a gratuitous prejudicial embellishment.  Thus, for example, the recent animation has numerical indications of the angles and distances involved; and it also indicates the precise point on the hood where the bullet struck. These are pieces of information that are useful in explaining the animation and will be useful to the jury.

While defendants object to showing the bullet trajectory line, a flash, and an audible indication of when the gun is fired, the recent animation makes the bullet trajectory line visible for just a moment, so that the line is hard to see at normal speed. That change was made in response to comments by defense counsel, after viewing the earlier animation, that keeping the bullet trajectory line in view for more than a moment was misleading. However, that change made it necessary  to have some other way to tell when the shots were fired, and a flash and sound serve that role.

The trajectory line itself is included to show the path of the bullet. No one could think that the inclusion of the line is meant to suggest that the bullet itself left a yellow line. It is included because this is a computerized reconstruction that does not purport to be a movie.  The trajectory line represents data and is useful for that purpose.

Likewise, the perspectives selected – overhead and from over the officer's shoulder (what the programmers term "oblique") – serve important purposes. The overhead perspective allows

the viewer to see the precise angles and distances involved and, not incidentally, to verify the accuracy of the animation. This is not prejudicial; it is indispensable. The over-the-shoulder perspective is also very informative: it gives the clearest view of the officer's movements at each point in time. Showing the same scene from these two different perspectives gives the jury a clear understanding of the meaning of the data that provide the foundation for the animation.

The purpose of headlights and other lighting features is simply to indicate in a general way that these events took place at night, without purporting to show the precise beam of the headlight. Plaintiff is happy to make any adjustments that would make the animation more accurate in terms of lighting – for example by showing the headlight beams projecting further forward.

The curve of the road, criticized as "diminished," simply reflects the surveyor's map, without diminishment or enhancement.

In short, the specific criticisms of the animation's fairness and accuracy are groundless. Defendant must therefore criticize the whole idea of using an animation. That criticism fails in view of the fact that this animation will be helpful to the jury. There are two fundamental reasons the animation will be helpful:

1.  This was a dynamic scene; and

2.  There is enough information available to permit creation of an animation based on available data rather than guesswork.

The law recognizes that visual aides like the animation can be very helpful to a jury. The fullest discussion in the caselaw may be Judge Weinstein's opinion in *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 331 F. Supp. 2d 136 (E.D.N.Y. 2004), which defendants have quoted

at length. *See* Def. Mem. at 3-5. As Judge Weinstein explains,

> Increased flexibility in the use of educational devices will probably result in
> courtroom findings more consonant with truth and law. Whether designated as
> "pedagogical devices" or "demonstratives," this material may be admitted as
> evidence when it is accurate, reliable and will "assist the factfinder in
> understanding the evidence."

331 F. Supp. 2d at 144, *quoting United States v. Bray*, 139 F.3d 1104, 112 (6th Cir. 1998). *See also, e.g.*, *Dastkow v. Teledyne Continental Motors Aircraft Products*, 826 F. Supp. 677, 685 (S.D.N.Y. 1993) (holding in a case concerning an airplane crash that computer-generated animation was admissible for the purpose of illustrating an expert witness's "theory of where the fire began inside the engine and how it spread"); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 425 (4th Cir. 1996); *Robinson v. Missouri Pacific Railroad Co.*, 16 F.3d 1083, 1088 (10th Cir. 1994).

This animation does not present a danger of confusion. *See, Datskow,* 826 F.Supp at 685 ("If audio or visual presentation is calculated to assist the jury, the court should not discourage the use of it ... Jurors, exposed as they are to television, the movies, and picture magazines, are fairly sophisticated. With proper instruction, the danger of their overvaluing such proof is slight.") (citing 1 J. Weinstein & M. Berger, Weinstein's Evidence § 403[5] at 403-88 (1992 ed.)); see also 1 Graham, Michael, Handbook of Federal Evidence § 401.7, footnote 14 (5th ed. 2001) ("The jury is aware, no matter whether called a 'recreation' or 'illustration', that the computer animation is not the actual event."). On the other hand, it meets the test of "substantial similarity" to the scene it purports to depict. *See Hinkle*, 81 F.3d at 425. It accurately reflects data that are either uncontested or firmly grounded in reliable evidence.

## CONCLUSION

The animation is a useful demonstrative exhibit to help the jury understand the facts.

Defendants have had it or its substantially similar predecessor since 2003. Mr. Schwendy will explain the animation and provide a foundation for its admission by verifying its accuracy. Defendants' motion should be denied.

THE PLAINTIFF

By   /s/ David N. Rosen
David N. Rosen
400 Orange Street
New Haven, Connecticut 06511
(203) 787-3513
CT00196
E-mail: drosen@davidrosenlaw.com

CERTIFICATION

I hereby certify that a copy of the foregoing Memorandum was sent first class mail, postage prepaid on June 20, 2005 to:

Thomas R. Gerarde, Esquire
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut  06114

  /s/ David N. Rosen
David N. Rosen

8